UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| SUNIL AMIN and TRUSHAR PATEL, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and DAIMLER AG,<br><br>    Defendants. | **COMPLAINT - CLASS ACTION FOR:**<br><br>(1) Breach of Express Warranty<br>(2) Breach of Express Warranty – Magnuson-Moss Warranty Act<br>(3) Breach of Implied Warranty<br>(4) Breach of Implied Warranty – Magnuson-Moss Warranty Act<br>(5) Violations of Georgia Fair Business Practices Act<br>(6) Violations of Uniform Deceptive Trade Practices Act<br>(7) Breach of Implied Warranty of Merchantability<br>(8) Fraud by Concealment<br>(9) Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiffs Sunil Amin and Trushar Patel bring this action individually for themselves and on behalf of all persons who purchased or leased in Georgia certain vehicles equipped with uniform and uniformly defective HVAC Systems designed, manufactured, distributed, warranted, marketed, and sold or leased by Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG ("Daimler") (collectively, "Mercedes"), as described below.

2.     The vehicles at issue in this action include the 2004-2012 Mercedes A-Class, 2001-2017 Mercedes C-Class, 2000-2014 Mercedes CL-Class, 2013-2017 Mercedes CLA-Class, 2003-2009 Mercedes CLK-Class, 2004-2017 Mercedes CLS-Class, 2003-2016 Mercedes E-Class, 2007-2017 Mercedes GL-Class, 2010-2016 Mercedes GLK-Class, 2006-2016 Mercedes M-Class, 2017 Mercedes GLE-Class, 2006-2015 Mercedes R-Class, 1999-2017 Mercedes S-Class, 2003-2012 Mercedes SL-Class, 2004-2016 Mercedes SLK-Class, and 2002-2013 Maybach 57 and 62 (the "Class Vehicles").[1]

3.     This action is brought to remedy violations of law in connection with Mercedes's design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' heating, ventilation, and air conditioning systems ("HVAC Systems") have a serious design defect that causes the HVAC System to (a) accumulate mold and mildew residue or growth within the HVAC System; (b) emit a moldy or mildewy odor that permeates the vehicle cabin when the HVAC System is activated; and (c) cause the Vehicle's passenger cabin to be unbearable and thus unusable for its intended purpose.

4.     On information and belief, the HVAC Systems are substantially the same, from a mechanical engineering standpoint, in all Class Vehicles, in that the HVAC System in each Class Vehicles is made up of substantially the same components (e.g. evaporator, evaporator housing, ducting, fan, filter, drain lines, etc.), and employs the same general mechanism to deliver ventilation, heating, and cooling to the passenger cabin.

---

[1] Discovery will enable Plaintiffs to more precisely determine which model-years share the same uniform (and uniformly defective) HVAC System design.

5.      Because of its faulty design, during normal and expected conditions the HVAC System fails to properly evaporate or drain the condensation that accumulates within the system, creating a moist, hospitable environment for the growth of bacteria, fungus, mold, and spores, which then are blown into the passenger cabin when the HVAC System is in use (the "Defect" or "HVAC System Defect"). The mold-carrying air has a foul, mildewy smell that is highly unpleasant and can cause respiratory problems and aggravate allergies.

6.      The moldy, smelly air emitted by the HVAC System Defect is not a one-time event in the Class Vehicles – Class Members report it occurs every time the HVAC System is turned on, and is especially pervasive in humid weather or after it has rained.

7.      When Plaintiffs and Class Members complain to Mercedes about the HVAC System Defect, Mercedes's only "solutions" are temporary "band aids" such as replacement of the cabin air filter, "flushing the system,"[2] and applying various cleaners, none of which remedies the original defective HVAC System design, and therefore are not permanent fixes for the Defect. What is worse, Mercedes made Class Members pay out of pocket for these nonpermanent "solutions" for the HVAC System Defect even if Class Members' vehicle remained under warranty at the time.

8.      The HVAC System Defect inhibits Class Members' proper and comfortable use of their Class Vehicles' HVAC Systems, and requires Class Members to pay for repeated temporary "band aid" services for the HVAC System.

_____

[2] "Flushing the system" consists of partially disassembling the dashboard and drilling a hole into the HVAC System and applying a disinfecting solution to the evaporator coil.

9.      On information and belief, prior to the manufacture and sale of the Class Vehicles, Mercedes knew of the HVAC System Defect through, or as evidenced by, sources such as pre-release design and testing information; arbitration panel decisions; technical service bulletins; service center data; replacement part sales data; early consumer complaints made directly to Mercedes, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done, including testing in response to consumer complaints; aggregate data from Mercedes dealers; and other internal sources unavailable to Plaintiffs without discovery. Yet despite this knowledge, Mercedes failed to disclose and actively concealed the HVAC System Defect from Class Members and the public, and continued to market and advertise the Class Vehicles as "sophisticated," "comfortable," and "state-of-the-art" vehicles, which they are not.

10.     Mercedes knew or should have known that the "solutions" it charged Class Members for to "remedy" the HVAC System Defect – replacing the cabin air filter, "flushing the system," using cleaners – were not permanent solutions for the Defect.

11.     Mercedes has failed to provide a permanent in-warranty fix for the Defect and failed to reimburse Class Members for the costs of its inadequate and temporary "solutions."

12.     As a result of Mercedes's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the HVAC System Defect, and Mercedes has not provided a permanent remedy for this Defect. Furthermore,

Plaintiffs and Class Members incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the HVAC System Defect.

## PARTIES

*Plaintiff Sunil Amin*

13.     Plaintiff Sunil Amin resides in Atlanta, Georgia.

14.     Mr. Amin owns a 2013 Mercedes C250 Coupe, which he purchased new on November 10, 2012, from RBM of Atlanta North in Alpharetta, Georgia.

15.     Mr. Amin's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDGJ4HB0DF966835.

16.     Mr. Amin purchased the Class Vehicle for his personal, family, and household use.

17.     Mr. Amin expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know, or expect, that mold would develop in his vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

18.     Mr. Amin first experienced a noxious odor caused by the HVAC System in approximately January of 2014.

19.     Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists.

20.     The strength of the odor intensifies after any periods of rain.

21.     Mr. Amin regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Mercedes C250 Sports Coupe in 2012. Although he does not recall the specifics of the many Mercedes advertisements he saw before he purchased his Sports Coupe, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase his vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Amin that the Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System and/or air filtration system, he would have purchased his Class Vehicle, or would have paid less for it.

22.     On January 29, 2016 Mr. Amin, through counsel, sent Mercedes a letter sent pursuant to the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq*., requesting relief and repair of the defects exhibited in Class Vehicles for Mr. Amin and others similarly situated. Mercedes responded through counsel. It denied the existence of any defect, did not offer to repair Mr. Amin's or anyone else's vehicles, did not offer to compensate out-of-pocket expenses for all those who have incurred them, and did not guarantee to honor warranty claims for the HVAC System Defect going forward.  Instead, it offered only a small sum to resolve Mr. Amin's individual claim alone. Further, Mercedes characterized the problem as "a maintenance issue," presumably implying that all purchasers who have experienced foul odors failed to properly maintain their Class Vehicles. Mr. Amin found this response from Mercedes to be unsatisfactory .

*Plaintiff Trushar Patel*

23.     Plaintiff Trushar Patel resides in Johns Creek, Georgia.

24.     Dr. Patel owns a 2014 Mercedes E350 Sedan, which he purchased new on January 16, 2015, from Mercedes-Benz of Buckhead in Atlanta, Georgia, along with a Mercedes Pre-Paid Service Plan.

25.     Dr. Patel's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDHF5KBXEA997500.

26.     Dr. Patel purchased the Class Vehicle for his personal, family, and household use.

27.     Dr. Patel expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know, or expect, that mold would develop in his vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent its development. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

28.     Dr. Patel first experienced a noxious, pungent, sour, musty odor caused by the HVAC System in approximately March or April 2015.

29.     Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists.

30.     The strength of the odor intensifies after any periods of rain.

31.     At its very first service, "Service A," Dr. Patel explained the problem of a smell that is quite often "ripe" to his service advisor at Mercedes-Benz of Buckhead. Although Dr. Patel reasonably believed that the repair would be

covered under the warranty and/or his prepaid service plan, the authorized Mercedes dealer claimed that the filter needed replacing at a cost of $185 to Dr. Patel. When Dr. Patel inquired as to why the filter needed replacement so soon, he was advised that the filter required replacement every year. Dr. Patel explained that the vehicle was only purchased and in use since January and shouldn't require a filter that soon. The service advisor told Dr. Patel that the remedy was not covered by his prepaid service or warranty and that the filter would only be replaced in the next service, "Service B."

32.     Prior to this purchase, Dr. Patel had previously purchased and owned Mercedes vehicles but did not experience any odor issues with those vehicles.

33.     Prior to this purchase, Dr. Patel was not advised of the Defect and tendency, known by Mercedes, of his new vehicle to emit noxious odors prior to purchasing it. He relied upon Mercedes's assertions of the capabilities and comfort of his new vehicle via salesmen and brochures and ads. He also reasonably expected that Mercedes would stand behind its products and claims for warranty benefits by a long-time and repeat customer – especially when the problem/defect manifested within a few months of a new vehicle's purchase. Dr. Patel reasonably expected to receive a vehicle with state-of-the-art engineering and a comfortable interior. Advertisements about state-of-the-art engineering and a comfortable interior, recommendations and personal experience with his Mercedes dealer influenced his decision to purchase his vehicle. Had those advertisements or any other Mercedes materials or personnel disclosed to Dr. Patel the nature of the defect in the Class Vehicle's HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System and/or air filtration system, he would not have purchased his Class Vehicle, or would have paid less for it.

34.     For further peace of mind with his new purchase, Dr. Patel purchased an additional Mercedes Pre-Paid Service Plan ("Plan") with his vehicle. He expected peace of mind and protection against surprise billings or expenses. The Plan documents stated "you don't have to worry about any unexpected bills. This frees you from additional workshop costs as unexpected repairs, maintenance or wear parts are already covered, depending on the specific service contract[]. You therefore don't have to worry about workshop bills and your Mercedes remains in top condition. With the service contract you will always receive Mercedes-Benz quality – with the service of our qualified workshop specialists and Mercedes-Benz Genuine Parts."

35.     Because of the foul odors generated by the HVAC System Defect, Dr. Patel's enjoyment and use of his Class Vehicle were and are curtailed. He is forced to leave his windows open to vent his Class Vehicle whenever reasonably possible. He avoids parking in open areas where rain could fall on the vehicle and exacerbate the odors. He unsuccessfully attempted to mitigate the odors by adjusting HVAC settings to try and find an acceptable level that would not release odors. Dr. Patel purchased and installed air fresheners at an estimated cost of $25.00 to attempt to mask the smell. He and his family were forced to endure unpleasant smells in a brand new vehicle almost from the onset of its use.

*Defendant Mercedes-Benz USA, LLC*

36.     Defendant Mercedes-Benz USA, LLC ("MBUSA") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

37.     Prior to July 2015, MBUSA's principal place of business was in Montvale, New Jersey.

38.     MBUSA is a wholly owned subsidiary of Daimler.

39.     At all times relevant herein, MBUSA has been and has acted as an agent of Daimler and subject to Daimler's control.

40.     At all times relevant herein, MBUSA (itself and through its related entities) engaged in the business of marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, throughout the United States.

*Defendant Daimler AG*

41.     Defendant Daimler AG ("Daimler") is a German corporation with its principal place of business in Stuttgart, Germany.

42.     At all times relevant herein, Daimler (itself and through its related entities) engaged in the business of designing and manufacturing the Class Vehicles.

43.     Upon information and belief, Daimler was solely responsible for designing the Class Vehicles, including their defective HVAC Systems, and therefore is an essential party to this action concerning a design defect in the Class Vehicles' HVAC Systems.

44.     Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the design of Class Vehicles, the manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the HVAC System Defect. Daimler has been directly involved in assisting, directing, and controlling MBUSA, and MBUSA's authorized dealers' handling of Class Member complaints regarding the HVAC System Defect.

45.    Daimler has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers and lessees of Class Vehicles.  It established MBUSA as its wholly-owned subsidiary company.  It named MBUSA with its official "Mercedes-Benz" title.  It provided MBUSA with marketing and technical materials avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as nothing less than Daimler's presence in the United States for purposes of selling and leasing "Mercedes-Benz" brand vehicles and providing related services.

46.    Based on the foregoing actions, representations, and omissions, Plaintiffs and Class Members justifiably relied on MBUSA's representations regarding the Class Vehicles that were the responsibility of Daimler in, for example, Daimler's design of the Class Vehicles, and were injured because of their purchase or lease of defective Class Vehicles.

## JURISDICTION

*Subject-matter jurisdiction*

47.    This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law.

48.    Additionally, the elements of subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act are present: the amount in controversy exceeds $5,000,000, and Defendant Daimler is a citizen of a foreign country, and is thus diverse from Plaintiffs and Class Members.

49.    This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367(a).

*Personal jurisdiction: MBUSA*

50.     This Court has personal jurisdiction over MBUSA because MBUSA is authorized to do business in this District, conducts substantial business in the District, has its principal place of business in the District, is at home in the District, and some of the actions giving rise to the complaint took place in the District. Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over MBUSA permissible under traditional notions of fair play and substantial justice.

51.     This Court also has personal jurisdiction over MBUSA under 18 U.S.C. § 1965 because MBUSA is found in, has an agent in, or transacts business in this District.

*Personal jurisdiction: Daimler*

52.     This Court has personal jurisdiction over Daimler because Daimler has continuous and systematic general business contacts in this District.

53.     By headquartering its wholly owned subsidiary MBUSA in this District, and using MBUSA as its channel for marketing, distributing, warranting, selling and leasing the Daimler-designed Class Vehicles in the District and the United States, Daimler itself has deliberately taken affirmative steps to make Daimler-designed vehicles available to consumers in the District and the rest of Georgia, including Plaintiffs and Class Members; created continuing obligations between Daimler and residents of the District; and purposefully availed itself of the benefits and protections of conducting business in the District.

54.     Daimler employees and representatives regularly visit MBUSA, thereby continuously conducting business in this District.

55.     Further, Daimler's wholly owned subsidiary MBUSA is at home in this District, and MBUSA's contacts in this District can be attributed to Daimler.

56.     Plaintiffs' claims here arise out of Daimler's contacts with this District, particularly in that Plaintiffs could not even have purchased/leased their Class Vehicles if not for Daimler's intentional acts of designing the Class Vehicles (including their defective HVAC Systems) and exporting them for sale to customers in this District and the rest of Georgia, including Plaintiffs and Class Members.

57.     These constitute sufficient bases to render the exercise of jurisdiction over Daimler by this Court permissible under traditional notions of fair play and substantial justice.

## VENUE

58.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants, as corporations, are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

59.     Additionally, Defendants transact business within the District, MBUSA has its principal place of business in this District, and some of the events establishing the claims occurred in this District.

## APPLICABLE LAW

60.     Plaintiffs seek damages and equitable relief on behalf of themselves and the Class Members, under federal law as to the federal-law claims, and under Georgia law, or, in the alternative, under New Jersey law as to the state-law claims.

## FACTUAL ALLEGATIONS

61.     Plaintiffs bring this action for themselves and on behalf of the Class Members. Plaintiffs are informed and believe that, because of the HVAC System Defect, the HVAC Systems in the Class Vehicles are predisposed to produce a

moldy odor under normal use conditions that would not cause non-defective HVAC systems to produce a moldy odor, compromising the comfort and enjoyment of Class Vehicle occupants, including Class Members, and requiring Class Members to pay for repeated nonpermanent "solutions" that do not prevent the recurrence of the problem.

62.     On information and belief, the diagram below illustrates the components and functioning of the HVAC Systems; it is provided for illustrative purposes only:



63.     As a vehicle's HVAC system cools air, condensation forms on a component called an evaporator (labeled "3" in the diagram above). In a non-defective system, this condensation is evaporated through the activation of a fan and airflow over the evaporator.

64.     On information and belief, condensation that builds on the evaporator and elsewhere within the Class Vehicles' HVAC Systems is never properly and

fully evaporated. This residual moisture provides a haven for the growth of mold and mildew as spores enter the system through outside vents.

65.     Based on preliminary investigation and inspection, due to the HVAC System Defect, several mold species, including Aspergillus/Penicillium, Ascospores, and Smut/Periconia/Myxomy, are present in the evaporator of Class Vehicles. These molds are known to secrete mycotoxins such as Patulin, creating and contributing to the foul odors experienced by Plaintiffs and Class Members.

66.     Mycotoxins are toxic to human and animals and known to cause some or all of the following: allergic reactions, infections, cellular damage, DNA damage, interference with RNA synthesis, inflammation, gastroenteritis, and other harmful effects.

67.     Mercedes knew or should have known that having a damp, poorly draining, component that could promote the growth of mold; and could result in or at least promote reactions, diseases, symptoms, or complications in passengers of Class Vehicles, presenting a risk to their health and safety, especially when the growth is in the airway to a tightly sealed and enclosed space containing one or more human beings and animals.

68.     Over time, the mold/mildew/fungus growing in the evaporator can spread, resulting in reduced HVAC System efficiency, while also becoming more difficult to remove and requiring evaporator replacement in some instances.

69.     Moreover, the tightly sealed and enclosed passenger compartment causes concentration levels of toxic smells and chemicals to become much higher than in larger and less tightly sealed spaces.

70.     Replacing the filter is not a permanent fix for the HVAC System Defect because the filter is "upstream" from the evaporator.

71.     "Flushing the system" and the use of various cleaning products are not permanent fixes for the HVAC System Defect because they do not address the fundamental design Defect that allows the growth of odor-causing mold in the first place.

### A.     Mercedes Knew of the HVAC System Defect Prior to Sale or Lease of the Class Vehicles.

72.     On information and belief, prior to the manufacture and sale of the Class Vehicles, Mercedes knew of the HVAC System Defect through, or as evidenced by, sources such as pre-release design and testing information; arbitration panel decisions; technical service bulletins; service center data; replacement part sales data; early consumer complaints made directly to Mercedes, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done, including testing in response to consumer complaints; aggregate data from Mercedes dealers; and other internal sources unavailable to Plaintiffs without discovery.

### B.     Mercedes Was Directly Made Aware of the Defect Via a Successful Consumer Arbitration Action Brought Against It.

73.     Mercedes learned of the HVAC System Defect at least as early as 2008, when a Class Vehicle owner brought – and won – a consumer arbitration action against Mercedes for the Defect.

74.     The following is a synopsis of the Florida Consumer Complaint and Arbitration decision rendered against Mercedes in *Fattah v. Mercedes-Benz USA, Inc.*, 2008-0441/MIA (Fla. NMVAB November 14, 2008):

> The Consumer complained of a foul musty odor coming from the air conditioner vents in her 2007 Mercedes C230. The Consumer testified that the severity of the

odor had reduced; however, the odor still existed. The Manufacturer contended that the alleged defect did not substantially impair the use, value or safety of the vehicle. While not denying the existence of the odor, the Manufacturer asserted that outside elements and humid South Florida temperatures contributed to the odor. The Board rejected the Manufacturer's argument and found that the odor substantially impaired the use, value and safety of the vehicle. Accordingly, the Consumer was awarded a refund.[3]

75.     During the arbitration hearing, Mercedes was represented by counsel, a MBUSA representative out of headquarters (then in Montvale, New Jersey), a MBUSA Technical Specialist for the South Florida region, and the Service Manager at the dealership the consumer had visited complaining about the odor.

76.     Mercedes described the HVAC System Defect during the hearing: "The system works in such a way that it will – the AC is supposed to get rid of all the humidity from the air, ok? And in some cases, you know, where you shut the car off, some water will remain in the evaporator … what happens is it will accumulate there. It will not fully drain." Mercedes went on to say that the water that accumulates is what ultimately leads to the moldy odor.

77.     Under questioning from the Arbitration Board, Mercedes admitted that as long as the consumer keeps the car, she's going to have to keep getting Mercedes's temporary "fix", which one Board member called "a band-aid."

78.     The Board found:

The issue with the vehicle is that it's got a musty smell,

---

[3] Office of the Florida Attorney General, Florida New Motor Vehicle Arbitration Board Quarterly Case Summary for 4th Quarter (October 2008 - December 2008), *available at* http://myfloridalegal.com/webfiles.nsf/WF/MRAY-7SAJZG/$file/Oct-Dec08.pdf.

Mercedes knows about it, they have a technical service bulletin to address it, so apparently they've had enough complaints on this where it rose to the level of having to deal with it.  The way they deal with it is they use the disinfectant to clean, and if you read the TSB, you've got to get in there and make sure you clean the whole evaporator as much as possible …  Mercedes has admitted that, yeah, there is a problem, that this is the best they know how to fix it. … So nothing that they've done has made the smell completely disappear.

…

You know, that's one way to look at it in terms of how strong the odor is.  Another way to look at it is that the cure doesn't work.  And this is going to be with her and the vehicle for as long as she has the vehicle.  That's the way it looks, because she's coming back in and that's why I was questioning him, because I wanted to see if they found the problem and here's the solution to the problem.  There is no real solution.  In other words, they haven't come up with anything to say, I mean, change this and there's not going to be anymore accumulation of water and, in fact, in other models, from what he's saying, they don't have that problem because whatever the engineering is, it prevents it.  And on this model, it's not there.  So, you know, it's sort of like a defect, which they are trying to deal with, and they can't really deal with it in all the cases.

…

there's really not a fix for the vehicle.  And there shouldn't be a smell to the vehicle.  This is a vehicle that, to me, the fact that the smell persists is substantial in itself.  I think that this is a substantial problem that this vehicle has with this smell.  It's not going to go away.  There's nothing you can do that's going to say we're going to eliminate the smell in this car.  It's just not gonna happen.  There's no remedy to get rid of the

smell, period.  We're going to do this and it's going to
fix it.  And I have a problem with that. … it's just a
design problem issue.

79.    Mercedes knew or should have known of the HVAC System Defect
from at least as early as this arbitration hearing in 2008.

### C.    Mercedes Knew of the HVAC System Defect from Its Own Technical Service Bulletins.

80.    Mercedes's knowledge of the HVAC System Defect is also evident in
"Technical Service Bulletins" (TSBs) issued by Mercedes concerning moldy
smells emanating from the HVAC Systems in the Class Vehicles.

81.    On Mar 5, 2007, Mercedes issued a Technical Service Bulletin "T-B-
83.30/91a" instructing its service centers that for "Air Conditioning Musty/Moldy
Odor Complaints: Use MB Contra Sept cleaner."

82.    On June 5, 2009, Mercedes issued Technical Service Bulletin
"LI83.30-P-045340," titled "Air Conditioning Musty/Moldy Odor Complaints,"
which stated that "*Under certain environmental conditions, typically in a hot and
humid climate, the vehicle may emit a musty/moldy odor from the air conditioning
system. This may be more noticeable when starting the vehicle due to a residual
condensation on the evaporator and interior surface of the heater box*." Further,
the TSB indicates Mercedes knows the problem will recur despite the cleaning
procedure recommended in the TSB: "*To reduce the possibility of this condition to
reoccur, advise the owner to operate the blower at a higher speed, especially
during humid conditions. For vehicles with a REST function, it also helps to use
this feature during humid conditions when parking the car.*"

83.    On September 22, 2011, Mercedes issued Technical Service Bulletin
"LI83.00-P-051588" titled "Smell of Mold, Decay or Urine from Ventilation,"

which stated "*A moldy (foul) odor can typically occur for a short time after engine start in all vehicles with air conditioning, is a technically inherent effect which likewise cannot be eliminated by cleaning the evaporator.*"

84.    On June 23, 2016, Mercedes issued Technical Service Bulletin "LI83.30-P-059119" titled "Odor from Air Conditioning," which acknowledges that "*In the first few minutes after an engine start, damp air may be blown out ('laundry smell'). This is due to natural causes, repairs do not remedy the problem.*"

### D.    Mercedes Knew of the HVAC System Defect from Repair Data.

85.    Mercedes also knew or should have known about the HVAC System Defect because of the large number of HVAC System services, repairs, cleaning treatments, and component replacements made during the Class Vehicles' warranty periods.

86.    Upon information and belief, Mercedes collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs.[4] Complete data on such repairs is exclusively within Mercedes's control and unavailable to Plaintiffs without discovery.

### E.    Mercedes Knew of the HVAC System Defect Based on Its Receipt of Large Numbers of Orders for Replacement Cabin Air Filters.

87.    Upon information and belief, Mercedes also knew or should have known about the HVAC System Defect because of the higher-than-expected

---

[4] For example, in the *Fattah* arbitration hearing, Mercedes's counsel testified that Mercedes received a "motor vehicle defect notification" after at least three repairs for the HVAC System odor.

number of replacement cabin air filters ordered from Mercedes, which should have alerted Mercedes that the HVAC System Defect existed and affected a wide range of its vehicles.

88.     Upon information and belief, Mercedes-authorized service centers use replacement parts that they order directly from Mercedes. Therefore Mercedes would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement cabin air filters. The ongoing high sales of replacement cabin air filters and cleaning supplies (e.g., Contra Sept) was (or should have been) known to Mercedes, and alerted Mercedes that its HVAC Systems were defective and causing Class Vehicles' HVAC Systems to emit moldy odors frequently and consistently.

### F.     Mercedes Knew of the HVAC System Defect Gained from Class Member Complaints Made Directly to Mercedes.

89.     Mercedes also knew or should have known about the HVAC System Defect because numerous consumer complaints regarding failures of the HVAC System were made directly to Mercedes. The large number of complaints, and the consistency of their descriptions of the HVAC System Defect and the related mold formation and foul, noxious odors that the Defect caused in the Class Vehicles, alerted or should have alerted Mercedes to this serious defect affecting a wide range of its vehicles.

90.     The full universe of complaints made directly to Mercedes about the HVAC System Defect is information presently in the exclusive custody and control of Mercedes and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Mercedes and Mercedes dealerships about the repeated HVAC System failures

their vehicles experienced. For example, some instances of these direct-to-Mercedes complaints are described in Class Vehicle owners'/lessees' complaints logged with NHTSA ODI and posted on online vehicle owner forums:[5]

- "My car smells like mildew and moldy. I have taken it to the dealer about 3 times about this situation. I have respiratory problems and allergies and I can hardly used this car, it stinks and bothers my breathing" Complaint in NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

- Took my 09 C300 in to MB for a moldy smell. Wife just called and said they want $155.00. Car has 24,000 on it. Question shouldn't this be covered under warranty?" Posted on benzworld.org/forums/ in March 2011.

- "I have a 2006 E350 that has developed a noticeable musty/mold smell emitting from the a/c system. Car is under warranty, dealership is just changing parts in hopes of stumbling across the problem. To date they have changed the cabin air filter and done the service bulletin on system clean-out, replaced the condenser …. Anyway, now I notice a distinct mold smell coming from the front, outside area of the car when it's parked in the garage. I have been on my knees crawling all around the car and cannot nail the source. The dealership service writer is useless as I probably could leave a voicemail for the mechanic and probably do better. Car always garaged in Palm Beach area. Any clues? Thanks." Posted on peachparts.com in April 2007.

91.     In a similar action, an owner of a Class Vehicle sent a notice letter to Mercedes, on August 17, 2015, expressly notifying it of the HVAC System Defect in Class Vehicles and requesting relief on behalf of himself and similarly situated individuals. A true and correct copy of said notice letter is attached as Exhibit A.

---

[5] For these and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

92.     As the above sampling of complaints shows, Class Vehicle owners have been vocal in complaining directly to Mercedes about the HVAC System Defect, and the number and consistency of their complaints should have alerted Mercedes to the existence of the HVAC System Defect.

### G.     Mercedes Knew of the HVAC System Defect from Class Member Complaints Collected by NHTSA's Office of Defect Investigations.

93.     In addition to complaints made directly to Mercedes, many Class Vehicle owners lodged complaints about the HVAC System Defect with NHTSA's Office of Defect Investigations ("NHTSA ODI"), beginning as early as 2008, and likely earlier.

94.     Federal law requires automakers like Mercedes to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

95.     Thus, automakers should and do monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers ongoing obligation to identify potential defects in their vehicles, including design-related defects, such as failures of HVAC Systems to filter air and emit air free of mold and odors as intended.

96.     From its monitoring of the NHTSA databases, Mercedes knew or should have known of the many complaints about HVAC System failure logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Mercedes to the HVAC System Defect.

97.    NHTSA's publicly available ODI database contains only complaints made in the past five years on its website; thus complaints made before 2012 are not readily accessible. Mercedes, however, had contemporaneous and on-going access to the NHTSA consumer complaint data and that information cannot be obtained by Plaintiffs without discovery. A sampling of the publicly available complaints lodged with NHTSA ODI to which Plaintiffs have been able to gain access, however, includes those quoted above, as well as the following:

- "Molds and mildew build up in the air condition ducts placing people who are susceptible for infection (people with weak immune system) at risk for fatal infection. The dealer stated that this is a known and common condition for this car because the AC box does not drain the condensed water. This is because the way the car was designed. The dealer recommended turning off the AC for 30 seconds while keeping just the fan on every time before turning off the car to dry up the condensed water on the AC coils, not practical. The dealer has a known service to disinfect the AC system but because of the car design could not guarantee that the condition will not return. There is no warning or any instructions in the manual regarding this potentially fatal condition for susceptible people." Complaint in NHTSA ODI database, ODI ID No. 1065573, date of incident July 12, 2014.

- "My car smells like mildew and moldy. I have taken it to the dealer about 3 times about this situation. I have respiratory problems and allergies and I can hardly used this car, it stinks and bothers my breathing" Complaint in NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

98.    As the above sampling of complaints makes clear, Class Vehicle owners and lessees have been vocal in complaining to NHTSA ODI about the HVAC System Defect since at least 2008, and Mercedes was, or should have been, aware of and monitoring those complaints, and thus should have known about the HVAC System Defect since at least 2008, if not earlier.

### H.   Mercedes Knew of the HVAC System Defect Based on Class Member Complaints on Public Online Forums.

99.    In addition to complaints made directly to Mercedes and collected by NHTSA ODI, many Class Vehicle owners posted complaints about the HVAC System Defect on public online vehicle owner forums. The following is a small sampling of such complaints:

- "Took my 09 C300 in to MB for a moldy smell. Wife just called and said they want $155.00. Car has 24,000 on it. Question shouldn't this be covered under warranty?" Posted on benzworld.org/forums/ in March 2011.

- "Definitely a strong odor coming from the HVAC system that makes it a little embarrassing to have others ride along in your "luxury" automobile. Any advice on how to completely correct this would be appreciated." Posted on www.repairpal.com.

- "Crayon type smell in the HVAC system that is so pungent that the wife can't even stand to be in the car." www.repairpal.com

- "I have noticed a very bad or mushy smell when I start my car with A/C off( after I have shut the car for sometime and the AC was running when i shut the car). This gets better in 10-15 seconds after I turn the AC on. The smell is a very strong smell of moisture with stangnant air.... Does anyone have the same experience? I am worried as it might be a problem with my cabin air filter. My car is only 3000miles on it. Thanks" Posted on mbworld.org/forums/ in March 2012.

- "Whenever i turn the air on, the first 30 seconds it smells really bad, i have to pen the windows till it clears out. I checked all the filters already. Any idea how can i make it smell nice/normal?? thnx alot,Lina." Posted on answers.yahoo.com in 2007.

- "My wife complained that our 2014 S550 also had musty dirty socks smell 7 months after purchase. I confirmed the smell and my wife's multiple friends confirmed the "sour stinking socks smell". I took the car (S550) to the FJ Newport but they say unable to comfirm the smell and told us to pick up the car. They also say that they don't have any known problem with 2014 S550 and further say that the advisor is told to not take the car in the shop unless

they can verify the smell. I guess all dealer techs are very insensitive to smells.^^ So we had to pick up the car and bring the car back home. We stopped driving the S550 for a while (weeks) until we are sure of mold free. Because both my wife and I have a certain genetric marker and also have compromised auto immune system and we cannot deal with any mold issue if there exists." Posted on mbworld.org in December 2014.

- "My problem concerns a 2001 C320 with 60,000 miles. The climate control emits a extremely musty sower smell from the air vents when the vehicle is first started with the AC on. I presume the air ducts are clear of anything that might smell as the smell is absent when in the heat mode. I have wondered if the problem might be related to the AC charging system, receiver/drier, or a condensation drain tube etc. I know little or nothing about my MB AC. Any thoughts or advice are appreciated before I start dismantling & throw parts at it." Posted on www.mbca.org in October 2004.

- "I have a 2006 E350 that has developed a noticeable musty/mold smell emitting from the a/c system. Car is under warranty, dealership is just changing parts in hopes of stumbling across the problem. To date they have changed the cabin air filter and done the service bulletin on system clean-out, replaced the condenser (left out some MAJOR, blue, 12 point bolts found under the mat). All seat bolts are installed and are black in color. Anyway, now I notice a distinct mold smell coming from the front, outside area of the car when it's parked in the garage. I have been on my knees crawling all around the car and cannot nail the source. The dealership service writer is useless as I probably could leave a voicemail for the mechanic and probably do better. Car always garaged in Palm Beach area. Any clues? Thanks." Posted on peachparts.com in April 2007.

- "I am going to start this by copying the information that I sent to the Nevada DMW and to Mercedes corporate as well as the dealership. Mercedes WILL NOT respond to our complaints and neither will the dealership. Here is a background on this terrible car that is a big waste of money! We purchased the vehicle on December 3, 2011. On December 20, 2011, with only 648 miles on the vehicle, the vehicle had to be towed out of our garage due to an issue with the transmission. The transmission gave out. Had to be reassembled. On May 2, 2012, with 4,280 miles on the vehicle, we brought it in because of a terrible moldy, wet smell coming from

the air vents. The air filter was removed, replaced and was put into the blowers. The AC system was also revitalized. The smell came back within two days. The dealership did not fix this problem." Posted on forum.edmunds.com in February 2013.

- "Visitor, 2006 Mercedes-Benz C230, 45,000 mi. Smelly mildew hvac." Posted on repairpal.com/mildew-in-heater-box-403.

- "The heating, ventilation and AC (HVAC) heater box is susceptible to mildew buildup. This can result in a musty odor from the HVAC system, most noticeable when the system is first turned on." Posted on repairpal.com/mildew-in-heater-box-403.

- "We just dropped our 2015 ML 350 off at the dealership due to an extreme vinegar emmis[s]ion from the ac. The tech said it will be $330 to clean/flush and replace the filter as this issue is NOT covered under the bumper to bumper war[r]anty. Its a very common problem, apparently, as he gave us his very "rehearsed" answer as to why this happens. (The condensation has nowhere to escape and becomes moldy). He suggested we park it on a slope and that we should turn off the ac 5 mins before we arrive at our destination ! I dont think that we should have to babysit the ac in a luxury car! He also said that ALL luxury cars have this issue. Well, we've owned Audi's, BMW's and Lexus products all with NO ac issues. So I'm calling BS on Mercedes and I believe that they have know about this issue for years and should be including this service cost in the waranty. Plus, from what I've read this will happen often, its not a 1 time fix." Posted on benzworld.org in February 2016.

100.   As shown by this small sampling of complaints from websites such as www.mbworld.com, www.benzworld.com, www.repairpal.com, www.answers.yahoo.com, www.mbca.org, www.edmunds.com, and repairpal.com consumers have been vocal in complaining about the HVAC System Defect and the damage being caused by the Defect. A multi-billion dollar vehicle design and manufacturing company such as Mercedes undoubtedly tracks and has tracked such sites and was aware or should reasonably have been aware of the HVAC System Defect in the Class Vehicles.

101.   In sum, as early as 2008, and likely earlier, Mercedes was aware of the HVAC System Defect, should have been aware of the HVAC System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the HVAC System Defect, based on, among others, the following sources:

a.     Arbitration actions against Mercedes related to the Defect;

b.     Technical Service Bulletins evincing knowledge of moldy smells in/from HVAC Systems issued by Mercedes to its dealerships and service centers;

c.     Detailed data gathered by Mercedes about large number of HVAC System Defect servicings;

d.     Knowledge Mercedes had of the large number of replacement HVAC System component parts and cleaners ordered from Mercedes;

e.     Numerous and consistent vehicle owner complaints made directly to Mercedes about the HVAC System Defect;

f.     Numerous and consistent vehicle owner complaints collected by NHTSA ODI about the HVAC System Defect;

g.     Numerous and consistent vehicle owner complaints made on online vehicle owner forums; and

h.     Mercedes service center employees' familiarity with and knowledge of the HVAC System Defect.

102.   Moreover, the large number and consistency of Class Member complaints describing the HVAC System Defect's propensity to cause a moldy odor to emit from the air-conditioning underscores the fact that Class Members considered the HVAC System Defect to be a material issue to the reasonable consumer.

**Applicable Warranties**

103.    Mercedes sold Class Vehicles with a "New Vehicle Limited Warranty" which included, among other warranties, protections against DEFECTS:

> Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period. …

> This warranty is for 48 months or 50,000 miles, whichever occurs first." …Warranty repairs will be made at no charge for parts and labor.[6]

104.    Mercedes represents that its Certified Pre-Owned ("CPO") vehicles "are backed by one of the most comprehensive certified pre-owned warranties available." The program includes a warranty for 12 months or up to 100,000 total accumulated vehicles miles. Mercedes represents that its CPO vehicles are factory-backed and the limited warranty provides up to five years or 100,000 total vehicle accumulated miles of coverage.

105.    Both Mercedes's New Vehicle Limited Warranty and its Certified Pre-Owned Limited Warranty and Extended Warranty extend coverage to the climate control system, which includes the HVAC System.

106.    Based on Plaintiffs' experiences and reports from other consumers, Mercedes refuses to cover the nonpermanent "fixes" under warranty, and instead

---

[6] A true and correct copy of the 2013 Service and Warranty Booklet applicable to Plaintiff Amin's vehicle is attached as Exhibit B. A true and correct copy of the Service and Warranty Booklet applicable to Plaintiff Patel's vehicle is attached as Exhibit C. The two booklets appear to be identical in all relevant respects.

requires Class Members pay out of pocket for these nonpermanent "fixes" for the
HVAC System Defect even if Class Members' vehicle remained under warranty at
the time.

### Mercedes's Marketing and Concealment

107.   Upon information and belief, Mercedes knowingly manufactured and
sold the Class Vehicles with the HVAC System Defect, while willfully concealing
the true inferior quality and sub-standard performance of the Class Vehicles'
HVAC Systems.

108.   Mercedes directly markets the Class Vehicles to consumers via
extensive nationwide, multimedia advertising campaigns on television, the
Internet, billboards, print publications, mailings, and through other mass media.

109.   Mercedes's marketing material describes the various Class Vehicles
as "state-of-the-art," "luxury," "fine craftsmanship," and "the most advanced
vehicles on the road." Mercedes slogan for its vehicles is "the best or nothing."

110.   Although Mercedes knew of the HVAC Systems' propensity to pool
water and foster the growth of mold and other odor-causing growths, it failed to
notify Plaintiffs and Class Members of this prior to their purchase of the vehicle.

111.   Mercedes also touts "a rigorous 27-point service checklist to keep
your Mercedes-Benz running effortlessly for the next 10,000," implying that Class
Vehicles will require less-frequent maintenance than other vehicles. This 27-point
service checklist includes pre-road test checks of the air cleaner/filter and climate
control system.

112.   Mercedes marketing materials advertised the vehicles as 'enjoyable'
to 'everyone' and 'soothing' and "filters dust and pollen as small as 0.0002" from
the air. It also promoted videos stating its vehicles are "engineering excellence"

and "an automotive masterpiece." Furthermore, it stated, "Soothing. Standard dual-zone automatic climate control allows the driver and front passenger to enjoy individualized comfort in any season. The system filters dust and pollen from the cabin, while a sensor monitors the angle and intensity of sunlight for more even control of temperature." This led Plaintiffs and Class Members to form a reasonable belief and expectation that mold/mildew and foul smells would not emanate from Class Vehicles' HVAC Systems if contained in the air and certainly caused the reasonable consumer not to expect that the vehicle itself would harbor and facilitate the growth of organic materials regularly giving rise to foul odors making the use of Class Vehicles anything but soothing or enjoyable.

113.   Further, Mercedes represents that its Certified Pre-Owned vehicles must "meet stringent criteria and pass a rigorous inspection." This certification process involves a 164-point inspection, which includes a test of "Automatic Climate Control Function, Regulation, Display, Odors." Mercedes promises that CPO vehicle purchasers "get industry-leading coverage."

114.   According to its consumer brochures, "[t]he Mercedes-Benz Certified Pre-Owned vehicle offers safety, performance and reliability." Vehicles that have been Certified Pre-Owned purportedly have passed a thorough certification inspection. According to its CPO consumer brochure, all Mercedes CPO vehicles undergo a "climate control inspection" during a road test conducted by a Mercedes-Benz technician and "[a]ny noted deficiencies are repaired, replaced or reconditioned" before the vehicle is sold.

115.   In practice, the Class Vehicles are not as comfortable or enjoyable as Mercedes's marketing represents. Mercedes concealed the fact that its so-called "Luxury" Class Vehicles, which supposedly are "the most advanced vehicles on

the road," are instead not even comfortable or enjoyable under ordinary conditions because the HVAC Systems repeatedly and consistently emit foul moldy odors into the passenger cabin.

116.   Plaintiffs and Class Members were exposed to Mercedes's long-term, national, multimedia marketing campaign touting the supposed sophistication and comfort of the Class Vehicles, and Class Members justifiably made their decisions to purchase/lease their Class Vehicles based on Mercedes's misleading marketing that concealed the true, defective nature of the Class Vehicles' HVAC Systems.

117.   Further, Mercedes knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, Mercedes has been aware of the HVAC System Defect since at least 2008, and likely earlier, through arbitration actions, technical service bulletins, the high number of HVAC System servicings and replacement component part sales, and the numerous and consistent complaints about the HVAC System Defect made directly to Mercedes, collected by NHTSA and posted in public online forums.

118.   Despite Mercedes's knowledge of the Defect, Mercedes told Class Members who called its customer service about the HVAC System Defect that Mercedes had never heard of the problem before and that no others had reported issues with their Class Vehicles' HVAC Systems, and made Class Members pay for temporary "band aid" repair measures out-of-pocket.

119.   In sum, Mercedes has actively concealed the existence and nature of the HVAC System Defect from Class Members since at least 2008 despite its knowledge of the existence and pervasiveness of the HVAC System Defect, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles. Specifically, Mercedes has:

a.      Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the HVAC System Defect;

b.      Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' HVAC Systems were defective and not fit for their intended purposes;

c.      Failed to disclose, and actively concealed, the fact that the Class Vehicles' HVAC Systems were defective, despite the fact that Mercedes learned of the HVAC System Defect as early as 2008, and likely even earlier;

d.      Failed to disclose, and actively concealed, the existence and pervasiveness of the HVAC System Defect even when directly asked about it by Class Members during communications with Mercedes, Mercedes Customer Assistance, Mercedes dealerships, and Mercedes service centers;

e.      Actively concealed the HVAC System Defect by forcing Class Members to bear the cost of temporary measures to address the moldy smells, while at the same time performing those services at no (or lower) cost for those who complained vocally and often, and calling these "goodwill" services;

f.      Actively concealed the HVAC System Defect by repeatedly treating the mold and odors with temporary measures such as flushing the system, replacing filters, and using cleansers, while leaving the defective HVAC Systems as they were, so that the HVAC System Defect has never been permanently corrected in Class Members' vehicles, even though Class Members were led to believe that the services had cured the moldy odor problem in their vehicles; and

g.      Actively concealed the HVAC System Defect by knowingly selling and installing replacement cabin air filters and using cleansers in Class

Vehicles, while knowing and concealing that these temporary measures would not prevent the recurrence of mold formation and foul, noxious odors because the HVAC Systems remained defectively designed.

120.    By engaging in the conduct described above, Mercedes has concealed, and continues to conceal, the HVAC System Defect from Class Members. If Class Members had knowledge of the information Mercedes concealed, they would not have bought or leased the Class Vehicles, or would have paid less for them.

<u>**Fraudulent Concealment Allegations**</u>

121.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mercedes responsible for disseminating false and misleading marketing materials and information regarding the Class Vehicles. Mercedes necessarily is in possession of or has access to all of this information. Plaintiffs' claims arise out of Mercedes's fraudulent concealment of the HVAC System Defect and the foul moldy air it causes, and its representations about the quality, world-class quality, sophistication, state-of-the-art performance and comfort of the Class Vehicles' HVAC Systems. To the extent that Plaintiffs' claims arise from Mercedes's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they purchased or leased their Class Vehicles, Mercedes knew, or was reckless in not knowing, of the HVAC System Defect; Mercedes was under a duty to disclose the Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it; and Mercedes never disclosed the Defect to the Plaintiffs or the public at any time or place or in any manner.

122.   Plaintiffs make the following specific fraud allegations with as much specificity as possible although they do not have access to information necessarily available only to Mercedes:

A.   **Who**: Mercedes actively concealed the HVAC System Defect from Plaintiffs and Class Members while simultaneously touting the safety, comfort, sophistication, and world-class quality of the Class Vehicles, as alleged in paragraphs 107-120 *supra*. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mercedes responsible for such decisions.

B.   **What**: Mercedes knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the HVAC System Defect, as alleged above in paragraphs 72-102 *supra*. Mercedes concealed the Defect and made contrary representations about the safety, comfort, sophistication, and world-class quality, and other attributes of the Class Vehicles, as specified above in paragraphs 107-120 *supra*.

C.   **When**: Mercedes concealed material information regarding the Defect at all times and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles, starting no later than 2008, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 107-120 *supra*. Mercedes has not disclosed the truth about the Defect in the Class Vehicles to anyone outside of Mercedes. Mercedes has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles. And when consumers brought their Class Vehicles to Mercedes complaining of the foul

moldy odors, Mercedes denied any knowledge of or responsibility for the HVAC System Defect, and in many instances, actually blamed owners/lessees for causing the odor/problem.

   D. ***Where***: Mercedes concealed material information regarding the true nature of the Defect in every communication it had with Plaintiffs and Class Members and made contrary representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Mercedes disclosed the truth about the Defect in the Class Vehicles to anyone outside of Mercedes. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Mercedes's website.

   E. ***How***: Mercedes concealed the HVAC System Defect from Plaintiffs and Class Members and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Mercedes actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer and Mercedes promised in its marketing materials that Class Vehicles have qualities that they do not have.

   F. ***Why***: Mercedes actively concealed material information about the Defect in Class Vehicles for the purpose of inducing Plaintiffs and Class Members to purchase or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Had

Mercedes disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs (and reasonable consumers) would have been aware of it, and would not have bought Class Vehicles or would have paid less for them.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

123.   Upon information and belief, Mercedes has known of the HVAC System Defect in the Class Vehicles since at least 2008, and has concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the HVAC System Defect, even when directly asked about it by Plaintiffs and Class Members during communications with Mercedes, Mercedes Customer Assistance, Mercedes dealerships, and Mercedes service centers. Mercedes continues to conceal the Defect to this day.

124.   Any applicable statute of limitation has been tolled by Mercedes's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### Estoppel

125.   Mercedes was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Vehicles. Mercedes actively concealed – and continues to conceal – the true character, quality, and nature of the Class Vehicles and knowingly made representations about the quality, world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Plaintiffs and Class Members reasonably relied upon Mercedes's knowing and affirmative representations and/or active

concealment of these facts. Based on the foregoing, Mercedes is estopped from relying on any statutes of limitation in defense of this action.

<b><u>Discovery Rule</u></b>

126.   The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Class Vehicles contained the HVAC System Defect.

127.   However, Plaintiffs and Class Members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – after the HVAC System Defect caused their Vehicles to develop mold and emit foul, noxious odors. Even then, Plaintiffs and Class Members had no reason to know the foul moldy odors were caused by a defect in the Class Vehicles because of Mercedes's active concealment of the HVAC System Defect. Not only did Mercedes fail to notify Plaintiffs or Class Members about the HVAC System Defect, Mercedes in fact denied any knowledge of or responsibility for the HVAC System Defect when directly asked about it, and, in many instances, actually blamed the owner/lessee for causing the odor/problem. Thus Plaintiffs and Class Members were not reasonably able to discover the HVAC System Defect until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until, at earliest, they discovered that the HVAC System Defect was causing their Vehicles to form mold and emit foul, noxious odors.

<b><u>Prior Class Action</u></b>

128.   Plaintiffs Amin and Patel, along with several other plaintiffs, previously filed a class action complaint in the Central District of California on May 9, 2016. *Manan Bhatt, et al. v Mercedes-Benz USA, LLC*, No. 2:16-cv-03171-

TJH-RAO (C.D. Cal.). Plaintiffs Amin and Patel's individual claims were dismissed without prejudice on procedural grounds on March 9, 2017. The limitations period applicable to Plaintiffs' claims was tolled during the time their claims were pending before the Central District of California.

## Notice Letters

129.   As noted elsewhere in this Complaint, *see* paragraphs 91 *supra* (referring to Exhibit A hereto) and 211 *infra* (referring to Exhibit D hereto), letters have been transmitted to Mercedes notifying it of the allegations raised in this Complaint. Accordingly, the running of any statute of limitations period or other time limit applicable to the claims set forth in this Complaint was stopped, and any such period or limit is subject to tolling.

## CLASS ACTION ALLEGATIONS

130.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated individuals pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), (b)(2), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

131.   Plaintiffs bring this class action on behalf of themselves and all other similarly situated members of the proposed class (the "Class"), defined as follows:

> All residents of Georgia who purchased or leased a Class Vehicle with the HVAC System. A "Class Vehicle" is a vehicle of any of the following models/model years:
> 2004-2012 Mercedes A-Class,
> 2001-2017 Mercedes C-Class,
> 2000-2014 Mercedes CL-Class,
> 2013-2017 Mercedes CLA-Class,
> 2003-2009 Mercedes CLK-Class,

2004-2017 Mercedes CLS-Class,
2003-2016 Mercedes E-Class,
2007-2017 Mercedes GL-Class,
2010-2016 Mercedes GLK-Class,
2006-2016 Mercedes M-Class,
2017 Mercedes GLE-Class,
2006-2015 Mercedes R-Class,
1999-2017 Mercedes S-Class,
2003-2012 Mercedes SL-Class,
2004-2016 Mercedes SLK-Class, or
2002-2013 Maybach 57 and 62.

132. Excluded from the Class are: (1) Mercedes, any entity or division in which Mercedes has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) claims for personal injuries resulting from the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

## Numerosity

133. Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Mercedes's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

**Typicality**

134.   The claims of the Plaintiffs are typical of the claims of Class Members in that the Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Mercedes. The Plaintiffs, like all Class Members, have been damaged by Mercedes's misconduct in that they have purchased a vehicle they would not have purchased, or for which they would have paid less, and incurred or will incur the cost of service relating to and caused by the HVAC System Defect. Furthermore, the factual bases of Mercedes's misconduct are common to the Plaintiffs and all Class Members and represent a common thread of misconduct resulting in injury to the Plaintiffs and all Class Members.

**Adequate Representation**

135.   Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective automotive vehicles.

136.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to those of the Class.

**Predominance of Common Issues**

137.   There are numerous questions of law and fact common to Plaintiffs and Class Members, the answers to which will advance resolution of the litigation as to all Class Members, and which predominate over any individual question. These common legal and factual issues include:

A.   whether the HVAC System in the Class Vehicles is defective;

B.      whether Mercedes knew or should have known about the HVAC System Defect, and, if so, how long Mercedes knew or should have known of the Defect;

C.      whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

D.      whether Mercedes had and/or has a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members;

E.      whether Mercedes omitted and failed to disclose material facts about the Class Vehicles;

F.      whether Mercedes's concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing Class Vehicles;

G.      whether Mercedes represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have, in violation of Georgia's Fair Business Practices Act ("Georgia FBPA");

H.      whether Mercedes represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another, in violation of the Georgia FBPA;

I.      whether Mercedes advertised the Class Vehicles with the intent not to sell them as advertised, in violation of the Georgia FBPA;

J.      whether Mercedes's affirmative misrepresentations about the true defective nature of the Class Vehicles were likely to create confusion or

misunderstanding, and therefore fraudulent, within the meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

     K.    whether Mercedes's affirmative misrepresentations about the true defective nature of the Class Vehicles were and are deceptive within the meaning of the Georgia UDTPA.

     L.    whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

     M.    whether Plaintiffs and the other Class Members are entitled to a declaratory judgment stating that the HVAC Systems in Class Vehicles are defective and/or not merchantable;

     N.    whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

     O.    whether Mercedes should be declared financially responsible for notifying Class Members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the HVAC System Defect in the Class Vehicles; and

     P.    whether Mercedes is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, service, repair, or replace the defective HVAC Systems.

<u>**Superiority**</u>

138.   Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Mercedes's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

139.   Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Mercedes's misconduct. Absent a class action, Class Members will continue to incur damages, and Mercedes's misconduct will continue without remedy.

140.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**(this cause of action against MBUSA only)**

141.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

142.   MBUSA is and was at all relevant times a "merchant" with respect to motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2-104(1), and "sellers" of motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2-103(1)(d); and, with respect to leases, is and was at all relevant times a "lessor" of motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2A-103(1)(p).

143.   The Class Vehicles are and were at all relevant times "goods" within the meaning of, inter alia, O.C.G.A. §§ 11-2-105 and 11-9-102(a)(45).

144.   Plaintiffs and Class Members bought or leased Class Vehicles manufactured, marketed to them, and intended to be purchased by consumers such as them, by Mercedes.

145.   MBUSA expressly warranted the Class Vehicles against defects including the HVAC System Defect, as described above, within the meaning of, inter alia, O.C.G.A § 11-2-313(1).

146.   MBUSA's express warranties formed a basis of the bargain that was reached when Class Members purchased or leased their Class Vehicles.

147.   As described above, the HVAC System in the Class Vehicles is defective.  The HVAC System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiff and Class Members.

148.   MBUSA knew of the HVAC System Defect, and that this Defect poses serious safety risks to consumers like Plaintiffs and Class Members, when it expressly warranted against the Defect, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class Vehicles had the Defect, and induced Plaintiffs and Class Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

149.   Specifically, Class Vehicles were sold to Plaintiffs and Class Members with a new vehicle 48-month and 50,000-mile express warranty.[7]

150.   Plaintiffs and Class Members were either in privity with MBUSA as original purchasers or lessees, or otherwise afforded the benefits of the express

---

[7] A true and correct copy of the 2013 Service and Warranty Booklet applicable to Plaintiff Amin's vehicle is attached as Exhibit B. A true and correct copy of the Service and Warranty Booklet applicable to Plaintiff Patel's vehicle is attached as Exhibit C. The two booklets appear to be identical in all relevant respects.

warranty as subsequent purchasers because the warranty itself states: "...warrants to the original and each subsequent owner..." See Exhibit B, page 11.

151.   Pursuant to Page 11 of the 2013 Service and Warranty Booklet, MBUSA warranted to the original and each subsequent owner that they "will make any repairs or replacements necessary, to correct defects in materials and workmanship arising under the warranty period."

152.   MBUSA breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the HVAC System Defect.

153.   MBUSA is obligated, under the terms of its express warranties, to make repair and/or replacements to permanently correct the HVAC System Defect for Plaintiffs and Class Members.

154.    As more fully detailed above, MBUSA was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources.

155.   The Class Vehicles were under this express warranty when they exhibited the HVAC System Defect.

156.   Plaintiffs gave MBUSA a reasonable opportunity to cure its failures with respect to its warranties, and MBUSA failed to do so free of charge or at all.

157.   MBUSA breached its express warranties by failing to permanently repair the Class Vehicles and by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it expressly warranted when it sold the Class Vehicles to Plaintiff and Class Members.

158.   Affording MBUSA a reasonable opportunity to cure its breach of written warranties was unnecessary and futile here. When Plaintiffs and other

Class Members provided such notice and sought relief under the warranty, MBUSA refused to do so and charged them for temporary, inadequate "fixes."

159.   To the extent any express warranties do not by their terms cover the defects alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranties fail of their essential purpose and, accordingly, recovery by Plaintiffs and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

160.   Any attempt by MBUSA to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unconscionable as a matter of law because the relevant purchase/lease transactions were tainted by MBUSA's concealment of material facts. Thus any such effort by MBUSA to disclaim, or otherwise limit, its liability for the HVAC System Defect is null and void.

161.   As a direct and proximate result of MBUSA's breach of express warranties, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs and the costs of needed present and future repairs, in an amount to be determined at trial, and are entitled to the relief requested *infra*.

### SECOND CAUSE OF ACTION
### Breach of Express Warranty – Magnuson-Moss Warranty Act
### (this cause of action against MBUSA only)

162.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

163.   The Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

164.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

165.   MBUSA is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

166.   MBUSA provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

167.   MBUSA breached the Express Warranty by refusing to honor the express warranty to replace or repair, free of charge, any defective vehicle component, including defects within the climate control system, which contains the HVAC System.

168.   At the time Class Vehicles were sold, MBUSA knew of the defects they possessed and offered an Express Warranty with no intention of honoring said warranty with respect to the known defects.

169.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

170.   At no time has MBUSA offered a permanent or adequate repair or replacement of the HVAC System that would permanently prevent the moldy odor

from recurring. Despite repeated demands by Plaintiffs and Class Members that MBUSA pay the labor costs and incidental expenses associated with permanently repairing or replacing the HVAC System, and with the temporary measures MBUSA has offered instead, MBUSA has refused to do so. MBUSA's refusal to provide an adequate repair or replacement and to pay for its installation violates 15 U.S.C. § 2304(d)(1).

171.   MBUSA was afforded a reasonable opportunity to cure its breach of the Express Warranty, but failed to do so.

172.   As a direct and proximate result of MBUSA's breach of its express written warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Breach of Implied Warranty
### (this cause of action against MBUSA only)

173.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

174.   When it sold its Class Vehicles, MBUSA extended an implied warranty to Class Members that the subject vehicles were merchantable and fit for the ordinary purpose for which such goods were sold.

175.   Persons who purchased a vehicle from MBUSA are entitled to the benefit of their bargain: a vehicle with a nondefective HVAC System that does not emit moldy air.

176.   MBUSA breached this implied warranty in that its Class Vehicles are (1) not fit for ordinary use, and (2) not of a merchantable quality.

177.   Had the fact that the HVAC System Defect existed been disclosed at the time of sale, the Class Vehicles could not have been sold, or could not have been sold at the same price.

178.   As a direct and proximate result of MBUSA's breach of the implied warranty of merchantability, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty – Magnuson-Moss Warranty Act**
**(this cause of action against MBUSA only)**

179.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

180.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

181.   Defendant MBUSA is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

182.   Defendant MBUSA is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

183.   The subject Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

184.   MBUSA extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Vehicles and its Class Vehicles' HVAC Systems.

185.   MBUSA breached this implied warranty by selling its Class Vehicles with defective HVAC Systems that were neither merchantable nor fit for their intended purpose.

186.   MBUSA extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in the subject Class Vehicles' HVAC Systems.

187.   MBUSA breached this implied warranty by selling Class Vehicles that were neither merchantable nor fit for their intended purpose.

188.   As a direct and proximate result of MBUSA's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### Violations of Georgia Fair Business Practices Act
### (O.C.G.A. § 10-1-390, *et seq.*)

189.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

190.   MBUSA and Daimler are each a "person" as defined by the Georgia Fair Business Practices Act ("Georgia FBPA"). O.C.G.A. § 10-1-392(a)(24).

191.   Plaintiffs and Class Members are "consumers" within the meaning of the Georgia FBPA. O.C.G.A. § 10-1-392(a)(6).

192.   The purchase or lease of Class Vehicles by Plaintiffs and Class Members constituted "consumer transactions" as defined by the Georgia FBPA. O.C.G.A. § 10-1-392(a)(10).

193.   The Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, O.C.G.A. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," "[r]epresenting that goods or

services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," *id*. §§ 10-1-393(b)(5), (7) & (9).

194.   By failing to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members, Mercedes violated the Georgia FBPA, because Mercedes represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade (i.e. state-of-the-art, comfortable, etc.) when they were of another. *See* O.C.G.A. §§ 10-1-393(b)(5) & (7).

195.   Mercedes advertised the Class Vehicles (as state-of-the-art, comfortable, etc.) with the intent not to sell them as advertised, in violation of § 10-1-393(b)(9).

196.   Mercedes's unfair and deceptive acts or practices occurred repeatedly in Mercedes's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to owners and purchasers of the Class Vehicles.

197.   Mercedes knew, by 2008 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' HVAC Systems suffered from an inherent design defect, would exhibit problems such as mold growth and the emission of foul and noxious odors, and were not suitable for their intended use.

198.   By 2008 at the latest, Mercedes had exclusive knowledge of material facts concerning the existence of the HVAC System Defect in its Class Vehicles. Furthermore, Mercedes actively concealed this Defect from consumers by denying the existence of the Defect to Class Members who contacted Mercedes about the

moldy smell, and failing to offer Class Members a permanent solution to the HVAC System Defect.

199.  Mercedes was under a duty to Plaintiffs and Class Members to disclose the defective nature of the HVAC Systems, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the HVAC System Defect, because:

200.  Mercedes was in a superior position to know the true state of facts about the HVAC System Defect in the Class Vehicles;

201.  Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the HVAC System Defect until, at the earliest, the first instance of moldy smell occurring in their Vehicles; and

202.  Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

203.  Mercedes knew or should have known that its conduct violated the Georgia FBPA.

204.  In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true cause and remedy of the noxious foul odor, Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

205.  The facts Mercedes concealed from Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the HVAC System Defect to be an

undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and Class Members known that the Class Vehicles had the HVAC System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for them.

206.   Plaintiffs and Class Members, like all objectively reasonable consumers, did not expect the HVAC System in their vehicles to cause the growth of mold and mildew within the HVAC System, or emit moldy and noxious odors through the HVAC System vents.

207.   As a result of Mercedes's misconduct, Plaintiffs and Class Members have been harmed and suffered actual damages including in that the Class Vehicles repeatedly manifest mold growth and emit foul smells due to the HVAC System Defect, causing inconvenience, creating an uncomfortable environment for Vehicle occupants, and causing Plaintiffs and Class Members to spend money to repeatedly repair or temporarily fix the recurring odors caused by the Defect.

208.   As a direct and proximate result of Mercedes's unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages in that they have experienced and may continue to experience their Class Vehicles' HVAC Systems growing mold and emitting noxious odors, for which there is no permanent fix, and for which they must pay out of pocket.

209.   Mercedes's violations present a continuing risk to Plaintiffs and to the general public. Mercedes's unlawful acts and practices complained of herein affect the public interest.

210.   Plaintiffs and Class Members are entitled to equitable relief.

211.   Mercedes received proper notice of its alleged violations of the Georgia FBPA pursuant to O.C.G.A. § 10-1-399(b), via a letter sent to MBUSA

and its registered service agent on January 29, 2016. The notice letter is attached hereto as Exhibit D. Through counsel, Mercedes denied the existence of any defect, did not offer to repair Mr. Amin or anyone else's vehicles, did not offer to compensate out-of-pocket expenses for all those who have incurred them, and did not guarantee to honor warranty claims for this defect going forward.  Instead, it offered only a small sum to resolve Mr. Amin's individual claim alone. Further, Mercedes characterized the  problem as "a maintenance issue," presumably implying that all purchasers who have experienced foul odors failed to properly maintain their Class Vehicles. Mr. Amin found this response from Mercedes to be unsatisfactory.

212.   Thus, pursuant to O.C.G.A. § 10-1-399, Plaintiffs seek, in addition to equitable relief, actual and statutory damages,  attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA and applicable law.

## SIXTH CAUSE OF ACTION
### Violations of Georgia's Uniform Deceptive Trade Practices Act
### (O.C.G.A. § 10-1-370, *et seq.*)

213.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

214.   Mercedes, Plaintiffs, and Class Members are "persons" within the meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA"). O.C.G.A. § 10-1-371(5).

215.   The Georgia UDTPA prohibits "deceptive trade practices" which include the "misrepresentation of standard, quality, or grade of goods and services," "engaging in any other conduct which similar creates a likelihood of

confusion or misunderstanding," and "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised." O.C.G.A. § 10-1-372.

216.   By failing to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members, Mercedes engaged in deceptive trade practices in violation of the Georgia UDTPA, because Mercedes represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade (i.e. state-of-the-art, comfortable, etc.) when they were of another. *See* O.C.G.A. §§ 10-1-372(5), (7), (9).

217.   Mercedes advertised the Class Vehicles (as state-of-the-art, comfortable, etc.) with the intent not to sell them as advertised, in violation of O.C.G.A. § 10-1-372(12).

218.   Mercedes's unfair and deceptive acts or practices occurred repeatedly in Mercedes's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm on owners and purchasers of the Class Vehicles.

219.   Mercedes knew, by 2008 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' HVAC Systems suffered from an inherent design defect, would exhibit problems such as mold growth and the emission of foul and noxious odors, and were not suitable for their intended use.

220.   By 2008 at the latest, Mercedes had exclusive knowledge of material facts concerning the existence of the HVAC System Defects in its Class Vehicles. Furthermore, Mercedes actively concealed these defects from consumers by

denying the existence of the defects to Class Members who contacted Mercedes about the moldy smell, and failing to offer Class Members a permanent solution to the HVAC System Defect.

221.   Mercedes was under a duty to Plaintiffs and Class Members to disclose the defective nature of the HVAC Systems, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the HVAC System Defect, because, inter alia:

A.   Mercedes was in a superior position to know the true state of facts about the HVAC System Defect in the Class Vehicles;

B.   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the HVAC System Defect until, at the earliest, the first instance of moldy smells occurring; and

C.   Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

222.   Despite possessing information to the contrary, Mercedes failed to disclose and actively concealed the Defect while continuing to market the Class Vehicles as comfortable, world-class, and reliable. The deception made reasonable consumers believe that Class Vehicles were of high quality and designed and made by a company that stood behind its vehicles once they were on the road.

223.   Mercedes knew or should have known that its conduct violated the Georgia UDTPA.

224.   In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true cause and remedy of the noxious foul odor,

Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

225.   The facts Mercedes concealed from Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the HVAC System Defect to be an undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and Class Members known that the Class Vehicles had the HVAC System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for them.

226.   Plaintiffs, like all objectively reasonable consumers, did not expect the HVAC System in their vehicles to cause the growth of mold and mildew within the HVAC System, or emit moldy and noxious odors through the HVAC System vents.

227.   As a result of Mercedes's misconduct, Plaintiffs and Class Members have been harmed and suffered actual damages in that the Class Vehicles repeatedly manifest mold growth and emit foul smells due to the HVAC System Defect, causing inconvenience, creating an uncomfortable and unsafe environment for vehicle occupants, and causing Class Members to spend money to repeatedly repair or temporarily fix the recurring odors caused by the Defect.

228.   As a direct and proximate result of Mercedes's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages in that they have experienced and may continue to experience their Class Vehicles' HVAC Systems growing mold and emitting

noxious odors, for which there is no permanent fix and for which they must pay out of pocket.

229.   Mercedes's violations present a continuing risk to Plaintiffs and to the general public. Mercedes's unlawful acts and practices complained of herein affect the public interest.

230.   As a direct and proximate result of Mercedes's violations of the Georgia UDTPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

231.   Plaintiffs seek an order enjoining Mercedes's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA and applicable law.

**SEVENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**

232.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

233.   Georgia law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." O.C.G.A. § 11-2-314.

234.   Mercedes is a merchant with respect to the goods which it sold to Plaintiffs and Class Members.

235.   The goods that Mercedes provided to Plaintiffs and Class Members were unmerchantable at the time they were sold. Specifically, the Class Vehicles contained HVAC Systems emitting foul odors rendering them not fit for ordinary use as automobiles, not able to pass without objection, not of fair average quality and not conforming with promises and affirmations made.

236.   Mercedes's failure to provide merchantable vehicles was a breach of the implied warranty of merchantability, and Plaintiff and the other Class Members were damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Fraud by Concealment

237.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

238.   Mercedes concealed and suppressed material facts concerning the quality of the Class Vehicles.

239.   Mercedes concealed and suppressed material facts concerning the quality of the HVAC Systems in the Class Vehicles.

240.   Mercedes concealed and suppressed material facts concerning the serious HVAC System Defect causing Class Vehicles' HVAC Systems to emit strong foul odors. Upon information and belief, the Defect lies in the evaporator and evaporator box deep within the dashboards of the Class Vehicles. Mercedes knew that Plaintiffs and Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing or leasing the vehicles. Mercedes furthered and relied upon this lack of disclosure to further promote payments for temporary measures to abate (but not eliminate) the moldy smells, and in some cases accused Plaintiffs and Class Members of causing the problem – all the while concealing the true nature of the Defect from Plaintiffs and Class Members. Mercedes further denied the very existence the Defect and the propensity of foul odors when Plaintiffs and Class Members complained of the Defect.

241.   Mercedes concealed and suppressed material facts that point to the nature of the Defect being a faulty evaporator design, a $400 to $800 or more part

requiring extensive labor and parts to replace and instead pushed "fixes" consisting of filter changes and cleanings which are temporary at best.

242.   Mercedes committed the foregoing acts and omissions in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Mercedes vehicles, that the Class Vehicles were world class, comfortable, warranted and reliable vehicles and concealed the information in order to prevent harm to Mercedes and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in the decision to purchase or lease the Class Vehicles.

243.   Mercedes had a duty to disclose the Defect in the Class Vehicles because they were known and/or accessible only to Mercedes; Mercedes had superior knowledge and access to the facts; and Mercedes knew the facts were not known to, or reasonably discoverable, by Plaintiffs and Class Members. Mercedes also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, comfort, and usability. Even when faced with complaints regarding the Defect, Mercedes misled and concealed the true cause of the symptoms complained of. As a result, Class Members were misled as to the true condition of the Class Vehicles once at purchase/lease and again when the moldy smell was complained of to Mercedes. The omitted and concealed facts were material

because they directly impact the value, appeal, and usability of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose it was purchased, are material concerns to a consumer.

244.   Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, avoid recalls that would hurt the brand's image and cost money, and did so at the expense of Plaintiffs and Class Members.

245.   On information and belief, Mercedes has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class Members and conceal material information regarding the Defect that exists in the Class Vehicles.

246.   Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did had they known of the concealed and/or suppressed facts, i.e., they would not have purchased or leased Class Vehicles, or would have paid less for them. Plaintiffs and Class Members' actions were justified. Mercedes was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

247.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class Members sustained damage because they negotiated and paid value for the Class Vehicles not considerate of the Defect that Mercedes failed to disclose and paid for temporary measures and replacement parts to attempt to remedy the Defect. Had they been aware of the concealed Defect that existed in the Class Vehicles, Plaintiffs would have paid less for their vehicles or would not have purchased or leased them at all.

248.   Accordingly, Mercedes is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

249.   Mercedes's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and Class Members' rights and well-being to enrich Mercedes. Mercedes's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## NINTH CAUSE OF ACTION
### Unjust Enrichment

250.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

251.   Mercedes has been unjustly enriched by the Plaintiffs and Class Members through Plaintiffs' and Class Members' purchasing and/or leasing Class Vehicles from Mercedes and purchasing replacement parts and service from Mercedes that Plaintiffs and Class Members would not have purchased but for the HVAC System Defect and Mercedes's concealment of the same.

252.   Plaintiffs and Class Members unknowingly conferred a benefit on Mercedes of which Mercedes had knowledge, since Mercedes was aware of the defective nature of its Class Vehicles' HVAC Systems and the resultant moldy odor problems, but failed to disclose this knowledge and misled Plaintiffs and the Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.

253.   The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Mercedes to retain the benefit of revenue that it unfairly obtained from Plaintiffs and Class Members. This revenue include the

premium price Plaintiffs and the Class paid for the Class Vehicles and the cost of the parts and service bought from Mercedes used to temporarily alleviate the moldy odor emitted by the HVAC Systems.

254.   Plaintiffs and the other members of the Class, having been damaged by Mercedes's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Mercedes to their detriment.

## RELIEF REQUESTED

255.   Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Mercedes, as follows:

A.   an order certifying the proposed Class and/or any appropriate subclasses, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

B.   a declaration that the HVAC Systems in Class Vehicles have a Defect that results in the emission of a moldy smell into the Vehicle's cabin, and that this Defect requires disclosure;

C.   a declaration that Mercedes must, at its own expense, notify owners and lessees of Class Vehicles of the Defect;

D.   a declaration that any limitation on the Class Vehicles' warranty that would avoid responsibility for the Defect is void;

E.   an order enjoining Mercedes to reassess all prior warranty claims related to smells in vehicle cabins;

F.   an ordering enjoining Mercedes, upon a Class Member's request, to pay the cost of inspection to determine whether the Defect is manifest, with any coverage disputes adjudicated by a special master.

G.      an order enjoining Mercedes from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and to permanently repair the Class Vehicles so that they no longer possess the HVAC System Defect;

H.      an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

I.      an order requiring Mercedes to disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten revenue it received from the sale or lease of the Class Vehicles, or make full restitution thereof to Plaintiffs and Class Members;

J.      an award of attorneys' fees and costs, as allowed by law;

K.      an award of pre-judgment and post-judgment interest, as provided by law;

L.      leave to amend this Complaint to conform to the evidence produced at trial; and

M.      such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

256.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: May 11, 2017                    Respectfully submitted,

By:_____
                                       Ketan A. Patel

Ketan A. Patel (State Bar Number 121099)
kp@personalinjury-ga.com
CORPUS LAW PATEL, LLC
PO BOX 1022
Tyrone, Georgia 30290
Telephone:   (678) 597-8020
Facsimile:   (678) 826-4700


Jonathan D. Selbin (*pro hac vice*
forthcoming)
jselbin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:   (415) 956-1000
Facsimile:   (415) 956-1008

Annika K. Martin (*pro hac vice*
forthcoming)
akmartin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:   (212) 355-9500
Facsimile:   (212) 355-9592

*Attorneys for Plaintiffs and the Proposed
Class*

1345130.11