UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| SUNIL AMIN, TRUSHAR PATEL, MANAN BHATT, MARY BLASCO, NICHOLAS BIASE, ROSA GRUE, JOHN DUDASIK, TODD BASLER and GAIL MAHONEY on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and DAIMLER AG,<br><br>        Defendants. | **CONSOLIDATED COMPLAINT - CLASS ACTION FOR:**<br><br>(1)  Breach of Express Warranty<br>(2)  Breach of Express Warranty – Magnuson-Moss Warranty Act<br>(3)  Breach of Implied Warranty<br>(4)  Breach of Implied Warranty – Magnuson-Moss Warranty Act<br>(5)  Violations of Georgia Fair Business Practices Act<br>(6)  Violations of Georgia Uniform Deceptive Trade Practices Act<br>(7)  Breach of Implied Warranty of Merchantability<br>(8)  Violations of California Consumer Legal Remedies Act<br>(9)  Violation of California Unfair Competition Law<br>(10)  Breach of Express Warranty Pursuant to Song-Beverly Consumer Warranty Act<br>(11)  Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act<br>(12)  Violations of New Jersey's Consumer Fraud Act<br>(13)  Violation of New York General Business Law<br>(14)  Violation of New York General Business Law<br>(15)  Violation of the Illinois Consumer Fraud & Deceptive Business Practices Act |

- 1 -

(16)  Violation of Illinois Uniform
Deceptive Trade Practices Act
(17)  Violation of the Missouri
Merchandising Practices Act
(18)  Violation of the Florida Deceptive
& Unfair Trade Practices Act
(19)  Fraud by Concealment
(20)  Unjust Enrichment

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.    Plaintiffs Sunil Amin, Trushar Patel, Manan Bhatt, Mary Blasco, Nicholas Biase, Rosa Grue, John Dudasik, Todd Basler and Gail Mahoney bring this action individually for themselves and on behalf of all persons who purchased or leased in the United States certain vehicles equipped with uniform and uniformly defective HVAC Systems designed, manufactured, distributed, warranted, marketed, and sold or leased by Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG ("Daimler") (collectively, "Mercedes"), as described below.

2.    The vehicles at issue in this action include the 2008-2019 Mercedes C-Class , 2012-2017 Mercedes CLS-Class, 2010-2019 Mercedes E-Class, 2013-2016 Mercedes GL-Class, 2017-2019 Mercedes GLS-Class, 2015-2019 Mercedes GLA-Class, 2012-2015 Mercedes M-Class, 2016-2019 Mercedes GLE-Class,

2010-2015 GLK-Class, and 2016-2019 Mercedes GLC-Class (the "Class Vehicles").

3.     This action is brought to remedy violations of law in connection with Mercedes's design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' heating, ventilation, and air conditioning systems ("HVAC Systems") have a serious design defect that causes the HVAC System to (a) accumulate mold and mildew residue or growth within the HVAC System; (b) emit a moldy or mildewy odor that permeates the vehicle cabin when the HVAC System is activated; and (c) cause the Vehicle's passenger cabin to be unbearable and thus unusable for its intended purpose.

4.     On information and belief, the HVAC Systems are substantially the same, from a mechanical engineering standpoint, in all Class Vehicles, in that the HVAC System in each Class Vehicles is made up of substantially the same components (e.g. evaporator, evaporator housing, ducting, fan, filter, drain lines, etc.), and employs the same general mechanism to deliver ventilation, heating, and cooling to the passenger cabin.

5.     Because of its faulty design, during normal and expected conditions the HVAC System fails to properly evaporate or drain the condensation that accumulates within the system, creating a moist, hospitable environment for the

- 3 -

growth of bacteria, fungus, mold, and spores, which then are blown into the passenger cabin when the HVAC System is in use (the "Defect" or "HVAC System Defect"). The mold-carrying air has a foul, mildewy smell that is highly unpleasant and can cause respiratory problems and aggravate allergies.

6.     The moldy, smelly air emitted by the HVAC System Defect is not a one-time event in the Class Vehicles – Class Members report it occurs every time the HVAC System is turned on, and is especially pervasive in humid weather or after it has rained.

7.     When Plaintiffs and Class Members complain to Mercedes about the HVAC System Defect, Mercedes's only "solutions" are temporary "band aids" such as replacement of the cabin air filter, "flushing the system,"[1] and applying various cleaners, none of which remedies the original defective HVAC System design, and therefore are not permanent fixes for the Defect. What is worse, Mercedes made Class Members pay out of pocket for these nonpermanent "solutions" for the HVAC System Defect even if Class Members' vehicle remained under warranty at the time.

---

[1] "Flushing the system" consists of partially disassembling the dashboard and drilling a hole into the HVAC System and applying a disinfecting solution to the evaporator coil.

1858235.3

8.      The HVAC System Defect inhibits Class Members' proper and comfortable use of their Class Vehicles' HVAC Systems, and requires Class Members to pay for repeated temporary "band aid" services for the HVAC System.

9.      On information and belief, prior to the manufacture and sale of the Class Vehicles, Mercedes knew of the HVAC System Defect through, or as evidenced by, sources such as pre-release design and testing information; arbitration panel decisions; technical service bulletins; service center data; replacement part sales data; early consumer complaints made directly to Mercedes, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done, including testing in response to consumer complaints; aggregate data from Mercedes dealers; and other internal sources unavailable to Plaintiffs without discovery. Yet despite this knowledge, Mercedes failed to disclose and actively concealed the HVAC System Defect from Class Members and the public, and continued to market and advertise the Class Vehicles as "sophisticated," "comfortable," and "state-of-the-art" vehicles, which they are not.

10.     Mercedes knew or should have known that the "solutions" it charged Class Members for to "remedy" the HVAC System Defect – replacing the cabin air

filter, "flushing the system," using cleaners – were not permanent solutions for the Defect.

11.     Mercedes has failed to provide a permanent in-warranty fix for the Defect and failed to reimburse Class Members for the costs of its inadequate and temporary "solutions."

12.     As a result of Mercedes's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the HVAC System Defect, and Mercedes has not provided a permanent remedy for this Defect. Furthermore, Plaintiffs and Class Members incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the HVAC System Defect.

## PARTIES

### *Plaintiff Sunil Amin*

13.     Plaintiff Sunil Amin resides in Atlanta, Georgia.

14.     Mr. Amin owns a 2013 Mercedes C250 Coupe, which he purchased new on November 10, 2012, from RBM of Atlanta North in Alpharetta, Georgia.

15.     Mr. Amin's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDGJ4HB0DF966835.

- 6 -

16.    Mr. Amin purchased the Class Vehicle for his personal, family, and household use.

17.    Mr. Amin expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know, or expect, that mold would develop in his vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

18.    Mr. Amin first experienced a noxious odor caused by the HVAC System in approximately January of 2014.

19.    Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists.

20.    The strength of the odor intensifies after any periods of rain.

21.    Mr. Amin regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Mercedes C250 Sports Coupe in 2012. Although he does not recall the specifics of the many Mercedes advertisements he saw before he purchased his Sports Coupe, he does recall that

state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase his vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Amin that the Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System and/or air filtration system, he would have purchased his Class Vehicle, or would have paid less for it.

22.    On January 29, 2016 Mr. Amin, through counsel, sent Mercedes a letter sent pursuant to the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq*., requesting relief and repair of the defects exhibited in Class Vehicles for Mr. Amin and others similarly situated. Mercedes responded through counsel. It denied the existence of any defect, did not offer to repair Mr. Amin's or anyone else's vehicles, did not offer to compensate out-of-pocket expenses for all those who have incurred them, and did not guarantee to honor warranty claims for the HVAC System Defect going forward.  Instead, it offered only a small sum to resolve Mr. Amin's individual claim alone. Further, Mercedes characterized the problem as "a maintenance issue," presumably implying that all purchasers who have experienced foul odors failed to properly maintain their Class Vehicles. Mr. Amin found this response from Mercedes to be unsatisfactory .

- 8 -

*Plaintiff Trushar Patel*

23.     Plaintiff Trushar Patel resides in Johns Creek, Georgia.

24.     Dr. Patel owns a 2014 Mercedes E350 Sedan, which he purchased new on January 16, 2015, from Mercedes-Benz of Buckhead in Atlanta, Georgia, along with a Mercedes Pre-Paid Service Plan.

25.     Dr. Patel's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDHF5KBXEA997500.

26.     Dr. Patel purchased the Class Vehicle for his personal, family, and household use.

27.     Dr. Patel expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know, or expect, that mold would develop in his vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent its development. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

28.     Dr. Patel first experienced a noxious, pungent, sour, musty odor caused by the HVAC System in approximately March or April 2015.

1858235.3

29.     Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists.

30.     The strength of the odor intensifies after any periods of rain.

31.     At its very first service, "Service A," Dr. Patel explained the problem of a smell that is quite often "ripe" to his service advisor at Mercedes-Benz of Buckhead. Although Dr. Patel reasonably believed that the repair would be covered under the warranty and/or his prepaid service plan, the authorized Mercedes dealer claimed that the filter needed replacing at a cost of $185 to Dr. Patel. When Dr. Patel inquired as to why the filter needed replacement so soon, he was advised that the filter required replacement every year. Dr. Patel explained that the vehicle was only purchased and in use since January and shouldn't require a filter that soon. The service advisor told Dr. Patel that the remedy was not covered by his prepaid service or warranty and that the filter would only be replaced in the next service, "Service B."

32.     Prior to this purchase, Dr. Patel had previously purchased and owned Mercedes vehicles but did not experience any odor issues with those vehicles.

33.     Prior to this purchase, Dr. Patel was not advised of the Defect and tendency, known by Mercedes, of his new vehicle to emit noxious odors prior to

purchasing it. He relied upon Mercedes's assertions of the capabilities and comfort of his new vehicle via salesmen and brochures and ads. He also reasonably expected that Mercedes would stand behind its products and claims for warranty benefits by a long-time and repeat customer – especially when the problem/defect manifested within a few months of a new vehicle's purchase. Dr. Patel reasonably expected to receive a vehicle with state-of-the-art engineering and a comfortable interior. Advertisements about state-of-the-art engineering and a comfortable interior, recommendations and personal experience with his Mercedes dealer influenced his decision to purchase his vehicle. Had those advertisements or any other Mercedes materials or personnel disclosed to Dr. Patel the nature of the defect in the Class Vehicle's HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System and/or air filtration system, he would not have purchased his Class Vehicle, or would have paid less for it.

34.     For further peace of mind with his new purchase, Dr. Patel purchased an additional Mercedes Pre-Paid Service Plan ("Plan") with his vehicle. He expected peace of mind and protection against surprise billings or expenses. The Plan documents stated "you don't have to worry about any unexpected bills. This frees you from additional workshop costs as unexpected repairs, maintenance or wear parts are already covered, depending on the specific service contract[]. You

- 11 -

therefore don't have to worry about workshop bills and your Mercedes remains in top condition. With the service contract you will always receive Mercedes-Benz quality – with the service of our qualified workshop specialists and Mercedes-Benz Genuine Parts."

35.     Because of the foul odors generated by the HVAC System Defect, Dr. Patel's enjoyment and use of his Class Vehicle were and are curtailed. He is forced to leave his windows open to vent his Class Vehicle whenever reasonably possible. He avoids parking in open areas where rain could fall on the vehicle and exacerbate the odors. He unsuccessfully attempted to mitigate the odors by adjusting HVAC settings to try and find an acceptable level that would not release odors. Dr. Patel purchased and installed air fresheners at an estimated cost of $25.00 to attempt to mask the smell. He and his family were forced to endure unpleasant smells in a brand new vehicle almost from the onset of its use.

*Plaintiff Manan Bhatt*

14.     Mr. Bhatt owns a 2010 Mercedes C300W Sports Sedan, which he purchased on August 25, 2013, as a Mercedes Certified Pre-Owned vehicle from Alfano Motorcars, Inc., in San Luis Obispo, California. Mr. Bhatt's Class Vehicle was designed, manufactured, distributed, advertised, marketed, warranted, and certified by Mercedes, and bears the Vehicle Identification No.

WDDGF5EBOAF366596.

15.    Mr. Bhatt purchased his Class Vehicle for his personal, family,

and household use.

16.    Before purchasing the Vehicle, Mr. Bhatt reviewed the Vehicle's

ownership history and reported structural and equipment damage through the

website carfax.com. The report indicated no issues or reported recalls.

17.    Mr. Bhatt purchased a Certified Pre-Owned warranty from

Mercedes for $2295.00. Mr. Bhatt's Vehicle remained under warranty throughout

the relevant period described herein, during which Mercedes refused to

permanently repair or replace his defective HVAC System.

18.    Mr. Bhatt experienced a noxious odor caused by the HVAC

System Defect less than a week after he purchased the Vehicle.

19.    After the incident, Mr. Bhatt notified his selling dealer, Alfano

Motorcars, by phone about the foul moldy smell. The selling dealer suggested that

Mr. Bhatt take the car to a closer Mercedes dealer since Alfano Motorcars is

approximately 200 miles from Mr. Bhatt's residence. Mr. Bhatt called Mercedes-

Benz of South Bay, in Torrance, California, and explained the problem. The dealer

told Mr. Bhatt that any repair of the HVAC System would not be covered by

warranty until the Vehicle was eligible for its first service under warranty, which

was in May 2014, approximately one year later.

20.     From approximately a week after his purchase when the smell

originated, to his first service visit in May 2014, some eight months later, Mr.

Bhatt dealt constantly with foul and unpleasant odors in his newly acquired Class

Vehicle. In an attempt to make the passenger cabin bearable so as to be able to

drive and use his vehicle, Mr. Bhatt would air out the Vehicle prior to driving it by

opening its windows, purchased and sprayed air freshener at a cost of

approximately $20.00 each, into the Vehicle each time he entered it.

21.     In May 2014, Mr. Bhatt took the vehicle to Mercedes-Benz of

South Bay in Torrance, California.

22.     Mr. Bhatt explained the continuing smell to the Mercedes dealer

who proceeded to replace the cabin air filter at a cost of approximately $56.75 plus

labor to Mr. Bhatt. Although Mr. Bhatt reasonably believed that the repair would

be covered under the warranty he purchased, the Mercedes dealer claimed that the

filter needed replacing due to "wear and tear" that exceeded the warranty. Mr.

Bhatt disputed the dealer's claim that he had in any way contributed to or caused

the odor, but the dealer offered Mr. Bhatt no other means of alleviating the foul

odor.

23.     Mr. Bhatt was advised to turn off the HVAC System prior to

1858235.3

Case 1:17-cv-01701-AT    Document 79    Filed 04/08/20    Page 15 of 289

arrival to his destination to try to eradicate the odor, which he did.

24.    The moldy odor disappeared after the service visit but returned in December 2014.

25.    Mr. Bhatt again complained of the smell to Mercedes-Benz of South Bay. The dealer offered Mr. Bhatt two temporary "fixes" for the problem at Mr. Bhatt's expense: (1) replace the air cabin filter again for approximately $58 in parts or (2) perform a complete "flush" of the HVAC System for approximately $360 in parts and labor.

26.    As Mr. Bhatt's parents were visiting the next week, he felt he had no choice but to accept another temporary "fix" and therefore chose to have the cabin air filter replaced at a cost of $57.65 plus tax to him.

27.    In February 2015, Mr. Bhatt lodged an official complaint about the foul moldy smell while he was at Mercedes-Benz of South Bay. A Mercedes representative called Mr. Bhatt to discuss the complaint within two weeks of the date of his last service. The representative explained to Mr. Bhatt that Mercedes cannot provide the replacement cabin air filter for free because, "There is no official recall for this part from Mercedes-Benz manufacturing location. Unfortunately, we cannot provide you with the free parts or labor." However, as a good faith gesture the representative added a complimentary cabin air filter

replacement to Mr. Bhatt's account so that Mr. Bhatt would not be charged for the next replacement when the moldy odor returns. The representative claimed that the warranty did not cover Mr. Bhatt's previous cabin air filter replacements because those replacements were needed due to excessive "wear and tear" caused by Mr. Bhatt.

28.    On or about February 6, 2016, Mr. Bhatt had his cabin filter changed by Mercedes-Benz of South Bay due to severe foul odor which was covered by a "one time good[will] gesture."

29.    Approximately one month after this filter change in Mr. Bhatt's Class Vehicle, the foul odor returned.

30.    To date, Mr. Bhatt has paid approximately $194.47 out of pocket for temporary "fixes" for the HVAC System Defect.

31.    Mr. Bhatt expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know of, or expect, that mold would develop in his Vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to reduce mold growth. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

32.     Mr. Bhatt regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Mercedes C300W Sports Sedan in 2013. Although he does not recall the specifics of the many Mercedes advertisements he saw before he purchased his Class Vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase his Vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Bhatt that the Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System, he would not have purchased his Class Vehicle, or would have paid less for it.

*Plaintiff Mary Blasco*

33.     Plaintiff Mary Blasco resides in Ontario, California.

34.     Mrs. Blasco owns a 2016 Mercedes GLC300, which she purchased new on January 24, 2016, from Mercedes Benz of Ontario in Ontario, California.

35.     Mrs. Blasco's Class Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the

Vehicle Identification No. WDC0G4JB9GF040808.

36.   Mrs. Blasco purchased her Class Vehicle primarily for her personal, family, and household use.

37.   Mrs. Blasco expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that mold would develop in her Vehicle's HVAC System, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had she known these facts, she would not have bought her Class Vehicle or would have paid less for it.

38.   Mrs. Blasco first experienced a noxious odor caused by the HVAC System a few months after its purchase.

39.   Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the Vehicle's climate control system is first engaged and generally persists and is worse in the summer.

40.   The strength of the odor intensifies after usage of the HVAC System.

41.   Mrs. Blasco brought her concerns regarding a strong sour/moldy smell in her Vehicle to her selling dealer's service department in June 2016, and was told that she must pay for a HVAC System service and cleaning. Mrs. Blasco refused to

pay for the service. The dealer conducted a complimentary "one time" cleaning.

42.    The servicing dealer installed air fresheners throughout the interior of the Vehicle in an attempt to abate or mask the odor. Mrs. Blasco would find air fresheners hidden in the interior of the Vehicle after it was serviced.

43.    Despite the cleaning, the odor persisted and Mrs. Blasco's Class Vehicle was brought in to her selling dealer's service department in Spring 2017 with an odor complaint. The dealer advised that there would be a charge for the cleaning, and again, Mrs. Blasco refused. Another complimentary cleaning was conducted. The foul and noxious odor returned shortly thereafter.

44.    Mrs. Blasco regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before she purchased her Mercedes GLC300 in 2016. Although she does not recall the specifics of the many Mercedes advertisements she saw before she purchased her class vehicle, she does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements she saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced her decision to purchase her vehicle. Had those advertisements or any other Mercedes materials disclosed to Mrs. Blasco that the Class Vehicles had defective HVAC Systems, or that she would have to pay for

repairs/replacement of the HVAC System, she would not have purchased her Class

Vehicle, or would have paid less for it.

*Plaintiff Nicholas Biase*

36.     Plaintiff Nicholas Biase resides in Florham Park, New Jersey.

37.     Mr. Biase leased a 2017 Mercedes GLE350, on June 30, 2017, from

Ray Catena Mercedes-Benz of Edison in Edison, New Jersey.

38.     Mr. Biase's Class Vehicle was manufactured, leased, distributed,

advertised, marketed, and warranted by Mercedes, and bears the Vehicle

Identification No. 4JGDA5HB6HA976562.

39.     Mr. Biase leased the Class Vehicle for his personal, family, and

household use.

40.     Mr. Biase expected his Class Vehicle to be of good and merchantable

quality and not defective. He had no reason to know, or expect, that mold would

develop in his vehicle's HVAC System, nor was he aware from any source prior

to purchase of the unexpected, extraordinary, and costly maintenance steps

Mercedes suggests are necessary to prevent the development of mold. Had he

known these facts, he would not have leased his Class Vehicle or would have paid

less for it.

41.     Mr. Biase first experienced a noxious odor caused by the HVAC System approximately six months after it was leased.

42.     Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists and is worse in the summer.

43.     The strength of the odor intensifies after usage of the air conditioner.

44.     Mr. Biase brought his concerns regarding a strong moldy smell in his vehicle to his independent mechanic in, or around late July, 2018, and was told that the problem was mold in his HVAC system.

45.     Mr. Biase brought his concerns regarding a strong moldy/ammonia smell in his vehicle to Ray Catena Mercedes-Benz of Union, on or about July 27, 2018, at which time the dealer confirmed the presence of smell and performed a flush of the HVAC system. The smell returned almost immediately.

46.     Mr. Biase again brought his concerns regarding a strong moldy smell in his vehicle to Ray Catena Mercedes-Benz of Union, on or about August 20, 2018, at which time the dealer performed another flush of the HVAC system. Despite this, the smell has remained.

47.     During all relevant times, Mr. Biase's vehicle has been under warranty.

- 21 -

48.     Mr. Biase regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he leased his Mercedes GLE in 2017. Although he does not recall the specifics of the many Mercedes advertisements he saw before he leased his class vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to lease his vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Biase that the Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System and/or air filtration system, he would not have leased his Class Vehicle, or would have paid less for it.

*Plaintiff Rosa Grue*

49.     Plaintiff Rosa Grue resides in Dix Hills, New York.

50.     Ms. Grue owns a 2016 Mercedes GLE350, which she purchased new on May 21, 2016, from Mercedes-Benz of Huntington in Huntington, New York, along with a Mercedes Pre-Paid Service Plan.

1858235.3

51.    Ms. Grue's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. 4JGDA5HB5GA776965.

52.    Ms. Grue purchased the Class Vehicle for her personal, family, and household use.

53.    Ms. Grue expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that mold would develop in her vehicle's HVAC System, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had she known these facts, she would not have bought her Class Vehicle or would have paid less for it.

54.    Ms. Grue first experienced a noxious odor caused by the HVAC System a year after its purchase.

55.    Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists and is worse in the summer.

56.    The strength of the odor intensifies after usage of the air conditioner.

57.    Ms. Grue brought her concerns regarding a strong moldy smell in her vehicle to Mercedes-Benz of Huntington, on or about June 2017, and was told that the problem was resolved by flushing her HVAC system. Despite this, the smell remained the same.

58.    During all relevant times, Ms. Grue's vehicle has been under warranty.

59.    For further peace-of-mind with her new purchase, Ms. Grue purchased an additional Mercedes Pre-Paid Service Plan with her vehicle. She expected peace of mind and protection against surprise billings or expenses. The Plan documents stated "you don't have to worry about any unexpected bills. This frees you from additional workshop costs as unexpected repairs, maintenance or wear parts are already covered, depending on the specific service contract*. You therefore don't have to worry about workshop bills and your Mercedes remains in top condition. With the service contract you will always receive Mercedes-Benz quality – with the service of our qualified workshop specialists and Mercedes-Benz Genuine Parts."

60.    Ms. Grue regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before she purchased her Mercedes GLE350 in 2016.

1858235.3

Although she does not recall the specifics of the many Mercedes advertisements she saw before she purchased her class vehicle, she does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements she saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase her vehicle. Had those advertisements or any other Mercedes materials disclosed to Ms. Grue that the Class Vehicles had defective HVAC Systems, or that she would have to pay for repairs/replacement of the HVAC System and/or air filtration system, she would not have purchased her Class Vehicle, or would have paid less for it.

*Plaintiff John Dudasik*

61.    Plaintiff John Dudasik resides in Darien, Illinois.

62.    Mr. Dudasik owns a 2013 Mercedes GL450, which he purchased certified preowned on March 30, 2015, from Mercedes-Benz of Hofman Estates in Illinois.

63.    Mr. Dudasik's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. 4JGDF7CE8DA247620.

64.    Mr. Dudasik purchased the Class Vehicle for his personal, family, and household use.

- 25 -

65.     Mr. Dudasik expected his Class Vehicle to be of good and merchantable quality and not defective.  He had no reason to know, or expect, that mold would develop in his Vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold.  Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

66.     Mr. Dudasik first experienced a noxious odor caused by the HVAC System within 30 days after purchase of his Vehicle.

67.     Since that time, the noxious odor has continued unabated.  The HVAC System emits the odor when the Vehicle's climate control system is first engaged in cooling mode, and generally persists.  It is worse in the summer.

68.     The strength of the odor intensifies after using the air conditioner.

69.     Mr. Dudasik brought his concerns regarding his Vehicle's strong sour/moldy smell to Mercedes of Westmont in Westmont, Illinois in 2016, and was told that the Vehicle needed a filter change and ultrasonic cleaning. The dealership informed Mr. Dudasik that the service would be done for free on this one occasion, but that it was part of the yearly maintenance program. Despite the service, the smell returned shortly thereafter.

1858235.3

70.     Mr. Dudasik brought the Class Vehicle back to Mercedes of Westmont approximately 10 months later and complained of the smell.  He was told that the repair would be at his expense.

71.     Mr. Dudasik brought the class vehicle back to Mercedes of Westmont in September 2018 and complained of the smell and the dealer replaced the AC and heater housing unit in the vehicle. Despite this, the smell returned shortly thereafter.

72.     During all relevant times, Mr. Dudasik's Vehicle has been under warranty.

73.     Mr. Dudasik purchased Lysol and air filters at a cost of roughly $30.00 total in order to address the smell, but received only temporary relief from these measures.

74.     Mr. Dudasik regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Mercedes GL450 in 2015. Although he does not recall the specifics of the many Mercedes advertisements he saw before he purchased his Vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw.  Those advertisements about state-of-the-art engineering

and a comfortable interior influenced his decision to purchase his vehicle. Had

those advertisements or any other Mercedes materials disclosed to Mr. Dudasik

that Class Vehicles had defective HVAC Systems, or that he would have to pay

for repairs/replacement of the HVAC System and/or air filtration system, he

would not have purchased his Vehicle or would have paid less for it.

*Plaintiff Todd Basler*

75.     Plaintiff Todd Basler resides in Wildwood, Missouri.

76.     Mr. Basler owns a 2008 Mercedes C300, which he purchased

preowned on March 14, 2011, from West County Honda in Ellisville, Missouri.

77.     Mr. Basler's Class Vehicle was manufactured, sold, distributed,

advertised, marketed, and warranted by Mercedes, and bears the Vehicle

Identification No. WDDGF81X88F144756.

78.     Mr. Basler purchased the Class Vehicle for his personal, family, and

household use.

79.     Mr. Basler expected his Class Vehicle to be of good and

merchantable quality and not defective.  He had no reason to know, or expect, that

mold would develop in his Vehicle's HVAC System, nor was he aware from any

source prior to purchase of the unexpected, extraordinary, and costly maintenance

steps Mercedes suggests are necessary to prevent the development of mold in the

HVAC System.  Had he known these facts, he would not have bought his Class

Vehicle or would have paid less for it.

80.     Mr. Basler first experienced a noxious odor caused by the HVAC

System immediately after he purchased his Vehicle.

81.     Since that time, the noxious odor has continued unabated. The

HVAC System emits the odor when the Vehicle's climate control system is first

engaged and generally persists.  The odor is worse in the summer.

82.     The strength of the odor intensifies after usage of the air conditioner.

83.     Mr. Basler brought his concerns regarding a strong sour/moldy smell

in his vehicle to Tri Star Mercedes in Ellisville, Missouri in June 2011.  He was

told that the Vehicle needed a filter change and ultrasonic cleaning. Despite this,

the smell returned after 30 days.

84.     Mr. Basler brought his Vehicle back to Tri Star Mercedes

approximately six months later and complained of the smell. He was told that the

repair would be at his expense as the Vehicle was now outside of warranty.

85.     During all relevant times, Mr. Basler's vehicle has been under

warranty.

86.     When Mr. Basler brought his Vehicle into Tri Star Mercedes, his

dealer told him that the smell would return and Mercedes did not have a

permanent fix for the defect.  He also suggested Mr. Basler purchase canned

cleaning sprays from AutoZone to regularly address the smell. Mr. Basler

purchased said cans twice at a cost of roughly $40.00 total, sprayed the Vehicle

with the cleaning substance, and received only temporary relief from the noxious,

moldy smell.

87.    Mr. Basler regularly saw advertisements for Mercedes vehicles on

television, in magazines, on billboards, in brochures at the dealership, and on the

Internet during the years before he purchased his Mercedes C300 in 2010.

Although he does not recall the specifics of the many Mercedes advertisements he

saw before he purchased his Class Vehicle, he does recall that state-of-the-art

engineering and a comfortable interior were frequent themes across the

advertisements he saw.  Those advertisements about state-of-the-art engineering

and a comfortable interior influenced his decision to purchase his Vehicle. Had

those advertisements or any other Mercedes materials disclosed to Mr. Basler that

the Class Vehicles had defective HVAC Systems, or that he would have to pay for

repairs/replacement of the HVAC System and/or air filtration system of his

Vehicle, he would not have purchased his Class Vehicle, or would have paid less

for it.

*Plaintiff Gail Mahoney*

- 30 -

88.     Plaintiff Gail Mahoney resides in Cape Coral, Florida.

89.     Ms. Mahoney owns a 2017 Mercedes GLA250, which she purchased new on February 25, 2017, from Mercedes-Benz of Fort Myers in Fort Myers, Florida.

90.     Ms. Mahoney's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDCTG4EB5HJ354106.

91.     Ms. Mahoney purchased the Class Vehicle for her personal, family, and household use.

92.     Ms. Mahoney expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that mold would develop in her vehicle's HVAC System, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had she known these facts, she would not have bought her Class Vehicle or would have paid less for it.

93.     Ms. Mahoney first experienced a noxious odor caused by the HVAC System almost immediately after purchasing it.

- 31 -

1858235.3

94.    Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists and is worse in the summer.

95.    The strength of the odor intensifies after usage of the air conditioner.

96.    Ms. Mahoney brought her concerns regarding a strong noxious odor in her vehicle to Mercedes-Benz of Fort Myers, on or about September 2017, and was told that the problem was resolved by flushing her HVAC system. Despite this, the smell went away and then came back the next day.

97.    Ms. Mahoney brought her concerns regarding a strong noxious odor in her vehicle to Mercedes-Benz of Fort Myers, on or about November 2017, and was told that the problem was resolved by flushing her HVAC system. Despite this, the smell went away and then came back the next day.

98.    Ms. Mahoney brought her concerns regarding a strong noxious odor in her vehicle to Mercedes-Benz of Fort Myers, on or about March 2018, and was told that the problem was resolved by flushing her HVAC system. She was charged $32.95 for parts and labor for this flush. Despite this, the smell went away and then came back the next day.

99.    Ms. Mahoney brought her concerns regarding a strong moldy smell in her vehicle to Mercedes-Benz of Fort Myers, on or about May 2018, and was

told that the foul odor is normal when her HVAC system is first turned on.

100.   During all relevant times, Ms. Mahoney's vehicle has been under warranty.

101.   Ms. Mahoney regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before she purchased her Mercedes GLA250 in 2017. Although she does not recall the specifics of the many Mercedes advertisements she saw before she purchased her class vehicle, she does recall that safety, reliability, premium quality, comfortable interior, and peace of mind bumper-to-bumper warranty coverage were frequent themes across the advertisements she saw. Those advertisements about quality, peace of mind, and a comfortable interior influenced her decision to purchase her vehicle. Had those advertisements or any other Mercedes materials disclosed to Ms. Mahoney that the Class Vehicles had defective HVAC Systems, or that she would have to pay for repairs/replacement of the HVAC System and/or air filtration system, she would not have purchased her Class Vehicle, or would have paid less for it.

*Defendant Mercedes-Benz USA, LLC*

102.   Defendant Mercedes-Benz USA, LLC ("MBUSA") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

103.   Prior to July 2015, MBUSA's principal place of business was in Montvale, New Jersey.

104.   MBUSA is a wholly owned subsidiary of Daimler.

105.   At all times relevant herein, MBUSA has been and has acted as an agent of Daimler and subject to Daimler's control.

106.   At all times relevant herein, MBUSA (itself and through its related entities) engaged in the business of marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, throughout the United States.

*Defendant Daimler AG*

107.   Defendant Daimler AG ("Daimler") is a German corporation with its principal place of business in Stuttgart, Germany.

108.   At all times relevant herein, Daimler (itself and through its related entities) engaged in the business of designing and manufacturing the Class Vehicles.

109.   Upon information and belief, Daimler was solely responsible for designing the Class Vehicles, including their defective HVAC Systems, and therefore is an essential party to this action concerning a design defect in the Class Vehicles' HVAC Systems.

- 34 -

110.   Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the design of Class Vehicles, the manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the HVAC System Defect. Daimler has been directly involved in assisting, directing, and controlling MBUSA, and MBUSA's authorized dealers' handling of Class Member complaints regarding the HVAC System Defect.

111.   Daimler has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers and lessees of Class Vehicles.  It established MBUSA as its wholly-owned subsidiary company.  It named MBUSA with its official "Mercedes-Benz" title.  It provided MBUSA with marketing and technical materials avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as nothing less than Daimler's presence in the United States for purposes of selling and leasing "Mercedes-Benz" brand vehicles and providing related services.

112.   Based on the foregoing actions, representations, and omissions, Plaintiffs and Class Members justifiably relied on MBUSA's representations regarding the Class Vehicles that were the responsibility of Daimler in, for example, Daimler's design of the Class Vehicles, and were injured because of their purchase or lease of defective Class Vehicles.

## JURISDICTION

*Subject-matter jurisdiction*

113.   This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law.

114.   Additionally, the elements of subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act are present: the amount in controversy exceeds $5,000,000, and Defendant Daimler is a citizen of a foreign country, and is thus diverse from Plaintiffs and Class Members.

115.   This is a class action brought on behalf of a nationwide class of all purchasers and lessees of the Class Vehicles in the United States; thus some members of the proposed class are citizens of states different from MBUSA's home state.

116.   This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367(a).

- 36 -

*Personal jurisdiction: MBUSA*

117.   This Court has personal jurisdiction over MBUSA because MBUSA is authorized to do business in this District, conducts substantial business in the District, has its principal place of business in the District, is at home in the District, and some of the actions giving rise to the complaint took place in the District. Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over MBUSA permissible under traditional notions of fair play and substantial justice.

118.   This Court also has personal jurisdiction over MBUSA under 18 U.S.C. § 1965 because MBUSA is found in, has an agent in, or transacts business in this District.

*Personal jurisdiction: Daimler*

119.   This Court has personal jurisdiction over Daimler because Daimler has continuous and systematic general business contacts in this District.

120.   By headquartering its wholly owned subsidiary MBUSA in this District, and using MBUSA as its channel for marketing, distributing, warranting, selling and leasing the Daimler-designed Class Vehicles in the District and the United States, Daimler itself has deliberately taken affirmative steps to make Daimler-designed vehicles available to consumers in the District and the rest of

1858235.3

Georgia, including Plaintiffs and Class Members; created continuing obligations between Daimler and residents of the District; and purposefully availed itself of the benefits and protections of conducting business in the District.

121.  Daimler employees and representatives regularly visit MBUSA, thereby continuously conducting business in this District.

122.  Further, Daimler's wholly owned subsidiary MBUSA is at home in this District, and MBUSA's contacts in this District can be attributed to Daimler.

123.  Plaintiffs' claims here arise out of Daimler's contacts with this District, particularly in that Plaintiffs could not even have purchased/leased their Class Vehicles if not for Daimler's intentional acts of designing the Class Vehicles (including their defective HVAC Systems) and exporting them for sale to customers in this District and the rest of Georgia, including Plaintiffs and Class Members.

124.  These constitute sufficient bases to render the exercise of jurisdiction over Daimler by this Court permissible under traditional notions of fair play and substantial justice.

## **VENUE**

125.  Venue is proper in this District under 28 U.S.C. § 1391 because Defendants, as corporations, are deemed to reside in any judicial district in which

they are subject to personal jurisdiction.

126.   Additionally, Defendants transact business within the District, MBUSA has its principal place of business in this District, and some of the events establishing the claims occurred in this District.

## APPLICABLE LAW

127.   Plaintiffs seek damages and equitable relief on behalf of themselves and the Class Members, under federal law as to the federal-law claims, and under Georgia law, or, in the alternative, for the nationwide class, under each Class Member's respective states' laws which do not materially conflict with Georgia law as to the state-law claims.

## FACTUAL ALLEGATIONS

128.   Plaintiffs bring this action for themselves and on behalf of the Class Members. Plaintiffs are informed and believe that, because of the HVAC System Defect, the HVAC Systems in the Class Vehicles are predisposed to produce a moldy odor under normal use conditions that would not cause non-defective HVAC systems to produce a moldy odor, compromising the comfort and enjoyment of Class Vehicle occupants, including Class Members, and requiring Class Members to pay for repeated nonpermanent "solutions" that do not prevent the recurrence of the problem.

129.   On information and belief, the diagram below illustrates the components and functioning of the HVAC Systems; it is provided for illustrative purposes only:



| 1 | Dust filter | D | Blended air |
|---|---|---|---|
| 3 | Evaporator | M2/5 | Fresh air/recirculated air flaps actuator motor |
| 4 | Heater core | M2/6 | Left blended air flap actuator |
| A | Fresh air or recirculated air | M2/7 | Right blended air flap actuator |
| A32m1 | Blower motor | M2/15 | Left and right foot well flaps actuator |
| B | Cooled air | M2/16 | Left and right defroster flaps actuator |
| C | Heated air | M2/21 | Fresh air flaps actuator |

130.   As a vehicle's HVAC system cools air, condensation forms on a component called an evaporator (labeled "3" in the diagram above). In a non-defective system, this condensation is evaporated through the activation of a fan and airflow over the evaporator.

131.   On information and belief, condensation that builds on the evaporator and elsewhere within the Class Vehicles' HVAC Systems is never properly and

fully evaporated. This residual moisture provides a haven for the growth of mold and mildew as spores enter the system through outside vents.

132.   Based on preliminary investigation and inspection, due to the HVAC System Defect, several mold species, including Aspergillus/Penicillium, Ascospores, and Smut/Periconia/Myxomy, are present in the evaporator of Class Vehicles. These molds are known to secrete mycotoxins such as Patulin, creating and contributing to the foul odors experienced by Plaintiffs and Class Members.

133.   Mycotoxins are toxic to human and animals and known to cause some or all of the following: allergic reactions, infections, cellular damage, DNA damage, interference with RNA synthesis, inflammation, gastroenteritis, and other harmful effects.

134.   Mercedes knew or should have known that having a damp, poorly draining, component that could promote the growth of mold; and could result in or at least promote reactions, diseases, symptoms, or complications in passengers of Class Vehicles, presenting a risk to their health and safety, especially when the growth is in the airway to a tightly sealed and enclosed space containing one or more human beings and animals.

1858235.3

135.   Over time, the mold/mildew/fungus growing in the evaporator can spread, resulting in reduced HVAC System efficiency, while also becoming more difficult to remove and requiring evaporator replacement in some instances.

136.   Moreover, the tightly sealed and enclosed passenger compartment causes concentration levels of toxic smells and chemicals to become much higher than in larger and less tightly sealed spaces.

137.   Replacing the filter is not a permanent fix for the HVAC System Defect because the filter is "upstream" from the evaporator.

138.   "Flushing the system" and the use of various cleaning products are not permanent fixes for the HVAC System Defect because they do not address the fundamental design Defect that allows the growth of odor-causing mold in the first place.

### A.   Mercedes Knew of the HVAC System Defect Prior to Sale or Lease of the Class Vehicles.

139.   On information and belief, prior to the manufacture and sale of the Class Vehicles, Mercedes knew of the HVAC System Defect through, or as evidenced by, sources such as pre-release design and testing information; arbitration panel decisions; technical service bulletins; service center data; replacement part sales data; early consumer complaints made directly to Mercedes,

collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done, including testing in response to consumer complaints; aggregate data from Mercedes dealers; and other internal sources unavailable to Plaintiffs without discovery.

**B.**   **Mercedes Was Directly Made Aware of the Defect Via a Successful Consumer Arbitration Action Brought Against It.**

140.   Mercedes learned of the HVAC System Defect at least as early as 2008, when a Class Vehicle owner brought – and won – a consumer arbitration action against Mercedes for the Defect.

141.   The following is a synopsis of the Florida Consumer Complaint and Arbitration decision rendered against Mercedes in *Fattah v. Mercedes-Benz USA, Inc.*, 2008-0441/MIA (Fla. NMVAB November 14, 2008):

> The Consumer complained of a foul musty odor coming from the air conditioner vents in her 2007 Mercedes C230. The Consumer testified that the severity of the odor had reduced; however, the odor still existed. The Manufacturer contended that the alleged defect did not substantially impair the use, value or safety of the vehicle. While not denying the existence of the odor, the Manufacturer asserted that outside elements and humid South Florida temperatures contributed to the odor. The Board rejected the Manufacturer's argument and found that the odor substantially impaired the use, value and safety of the vehicle. Accordingly, the Consumer was

- 43 -

awarded a refund.[2]

142.   During the arbitration hearing, Mercedes was represented by counsel, a MBUSA representative out of headquarters (then in Montvale, New Jersey), a MBUSA Technical Specialist for the South Florida region, and the Service Manager at the dealership the consumer had visited complaining about the odor.

143.   Mercedes described the HVAC System Defect during the hearing: "The system works in such a way that it will – the AC is supposed to get rid of all the humidity from the air, ok? And in some cases, you know, where you shut the car off, some water will remain in the evaporator … what happens is it will accumulate there. It will not fully drain." Mercedes went on to say that the water that accumulates is what ultimately leads to the moldy odor.

144.   Under questioning from the Arbitration Board, Mercedes admitted that as long as the consumer keeps the car, she's going to have to keep getting Mercedes's temporary "fix", which one Board member called "a band-aid."

145.   The Board found:

> The issue with the vehicle is that it's got a musty smell, Mercedes knows about it, they have a technical service

---

[2] Office of the Florida Attorney General, Florida New Motor Vehicle Arbitration Board Quarterly Case Summary for 4th Quarter (October 2008 - December 2008), *available at* http://myfloridalegal.com/webfiles.nsf/WF/MRAY-7SAJZG/$file/Oct-Dec08.pdf.

1858235.3

bulletin to address it, so apparently they've had enough complaints on this where it rose to the level of having to deal with it. The way they deal with it is they use the disinfectant to clean, and if you read the TSB, you've got to get in there and make sure you clean the whole evaporator as much as possible … Mercedes has admitted that, yeah, there is a problem, that this is the best they know how to fix it. … So nothing that they've done has made the smell completely disappear.

…

You know, that's one way to look at it in terms of how strong the odor is. Another way to look at it is that the cure doesn't work. And this is going to be with her and the vehicle for as long as she has the vehicle. That's the way it looks, because she's coming back in and that's why I was questioning him, because I wanted to see if they found the problem and here's the solution to the problem. There is no real solution. In other words, they haven't come up with anything to say, I mean, change this and there's not going to be anymore accumulation of water and, in fact, in other models, from what he's saying, they don't have that problem because whatever the engineering is, it prevents it. And on this model, it's not there. So, you know, it's sort of like a defect, which they are trying to deal with, and they can't really deal with it in all the cases.

…

there's really not a fix for the vehicle. And there shouldn't be a smell to the vehicle. This is a vehicle that, to me, the fact that the smell persists is substantial in itself. I think that this is a substantial problem that this vehicle has with this smell. It's not going to go away. There's nothing you can do that's going to say we're going to eliminate the smell in this car. It's just not gonna happen. There's no remedy to get rid of the smell, period. We're going to do this and it's going to

- 45 -

fix it.  And I have a problem with that. … it's just a
design problem issue.

146.   Mercedes knew or should have known of the HVAC System Defect

from at least as early as this arbitration hearing in 2008.

### C.   Mercedes Knew of the HVAC System Defect from Its Own Technical Service Bulletins.

147.   Mercedes's knowledge of the HVAC System Defect is also evident in

"Technical Service Bulletins" (TSBs) issued by Mercedes concerning moldy

smells emanating from the HVAC Systems in the Class Vehicles.

148.   On Mar 5, 2007, Mercedes issued a Technical Service Bulletin "T-B-

83.30/91a" instructing its service centers that for "Air Conditioning Musty/Moldy

Odor Complaints: Use MB Contra Sept cleaner."

149.   On June 5, 2009, Mercedes issued Technical Service Bulletin

"LI83.30-P-045340," titled "Air Conditioning Musty/Moldy Odor Complaints,"

which stated that "*Under certain environmental conditions, typically in a hot and

humid climate, the vehicle may emit a musty/moldy odor from the air conditioning

system. This may be more noticeable when starting the vehicle due to a residual

condensation on the evaporator and interior surface of the heater box*." Further,

the TSB indicates Mercedes knows the problem will recur despite the cleaning

procedure recommended in the TSB: "*To reduce the possibility of this condition to*

1858235.3

*reoccur, advise the owner to operate the blower at a higher speed, especially during humid conditions. For vehicles with a REST function, it also helps to use this feature during humid conditions when parking the car."*

150.   On September 22, 2011, Mercedes issued Technical Service Bulletin "LI83.00-P-051588" titled "Smell of Mold, Decay or Urine from Ventilation," which stated "*A moldy (foul) odor can typically occur for a short time after engine start in all vehicles with air conditioning, is a technically inherent effect which likewise cannot be eliminated by cleaning the evaporator.*"

151.   On June 23, 2016, Mercedes issued Technical Service Bulletin "LI83.30-P-059119" titled "Odor from Air Conditioning," which acknowledges that "*In the first few minutes after an engine start, damp air may be blown out ('laundry smell'). This is due to natural causes, repairs do not remedy the problem.*"

**D.     Mercedes Knew of the HVAC System Defect from Repair Data.**

152.   Mercedes also knew or should have known about the HVAC System Defect because of the large number of HVAC System services, repairs, cleaning treatments, and component replacements made during the Class Vehicles' warranty periods.

153.   Upon information and belief, Mercedes collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs.[3] Complete data on such repairs is exclusively within Mercedes's control and unavailable to Plaintiffs without discovery.

E.   **Mercedes Knew of the HVAC System Defect Based on Its Receipt of Large Numbers of Orders for Replacement Cabin Air Filters.**

154.   Upon information and belief, Mercedes also knew or should have known about the HVAC System Defect because of the higher-than-expected number of replacement cabin air filters ordered from Mercedes, which should have alerted Mercedes that the HVAC System Defect existed and affected a wide range of its vehicles.

155.   Upon information and belief, Mercedes-authorized service centers use replacement parts that they order directly from Mercedes. Therefore Mercedes would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement cabin air filters. The ongoing high sales of replacement cabin air filters and cleaning supplies (e.g., Contra Sept) was (or should have been) known to Mercedes, and alerted Mercedes that its HVAC

---

[3] For example, in the *Fattah* arbitration hearing, Mercedes's counsel testified that Mercedes received a "motor vehicle defect notification" after at least three repairs for the HVAC System odor.

Systems were defective and causing Class Vehicles' HVAC Systems to emit

moldy odors frequently and consistently.

**F.    Mercedes Knew of the HVAC System Defect Gained from Class Member Complaints Made Directly to Mercedes.**

156.    Mercedes also knew or should have known about the HVAC System

Defect because numerous consumer complaints regarding failures of the HVAC

System were made directly to Mercedes. The large number of complaints, and the

consistency of their descriptions of the HVAC System Defect and the related mold

formation and foul, noxious odors that the Defect caused in the Class Vehicles,

alerted or should have alerted Mercedes to this serious defect affecting a wide

range of its vehicles.

157.    The full universe of complaints made directly to Mercedes about the

HVAC System Defect is information presently in the exclusive custody and control

of Mercedes and is not yet available to Plaintiffs prior to discovery. However, upon

information and belief, many Class Vehicle owners complained directly to

Mercedes and Mercedes dealerships about the repeated HVAC System failures

their vehicles experienced. For example, some instances of these direct-to-

1858235.3

Mercedes complaints are described in Class Vehicle owners'/lessees' complaints

logged with NHTSA ODI and posted on online vehicle owner forums:[4]

- "My car smells like mildew and moldy. I have taken it to the dealer about 3 times about this situation. I have respiratory problems and allergies and I can hardly used this car, it stinks and bothers my breathing" Complaint in NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

- Took my 09 C300 in to MB for a moldy smell. Wife just called and said they want $155.00. Car has 24,000 on it. Question shouldn't this be covered under warranty?" Posted on benzworld.org/forums/ in March 2011.

- "I have a 2006 E350 that has developed a noticeable musty/mold smell emitting from the a/c system. Car is under warranty, dealership is just changing parts in hopes of stumbling across the problem. To date they have changed the cabin air filter and done the service bulletin on system clean-out, replaced the condenser …. Anyway, now I notice a distinct mold smell coming from the front, outside area of the car when it's parked in the garage. I have been on my knees crawling all around the car and cannot nail the source. The dealership service writer is useless as I probably could leave a voicemail for the mechanic and probably do better. Car always garaged in Palm Beach area. Any clues? Thanks." Posted on peachparts.com in April 2007.

158.   In a similar action, an owner of a Class Vehicle sent a notice letter to

Mercedes, on August 17, 2015, expressly notifying it of the HVAC System Defect

---

[4] For these and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

in Class Vehicles and requesting relief on behalf of himself and similarly situated individuals. A true and correct copy of said notice letter is attached as Exhibit A.

159.   As the above sampling of complaints shows, Class Vehicle owners have been vocal in complaining directly to Mercedes about the HVAC System Defect, and the number and consistency of their complaints should have alerted Mercedes to the existence of the HVAC System Defect.

### G.   Mercedes Knew of the HVAC System Defect from Class Member Complaints Collected by NHTSA's Office of Defect Investigations.

160.   In addition to complaints made directly to Mercedes, many Class Vehicle owners lodged complaints about the HVAC System Defect with NHTSA's Office of Defect Investigations ("NHTSA ODI"), beginning as early as 2008, and likely earlier.

161.   Federal law requires automakers like Mercedes to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

162.   Thus, automakers should and do monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers ongoing obligation to identify potential defects in their vehicles, including design-

related defects, such as failures of HVAC Systems to filter air and emit air free of mold and odors as intended.

163.   From its monitoring of the NHTSA databases, Mercedes knew or should have known of the many complaints about HVAC System failure logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Mercedes to the HVAC System Defect.

164.   NHTSA's publicly available ODI database contains only complaints made in the past five years on its website; thus complaints made before 2012 are not readily accessible. Mercedes, however, had contemporaneous and on-going access to the NHTSA consumer complaint data and that information cannot be obtained by Plaintiffs without discovery. A sampling of the publicly available complaints lodged with NHTSA ODI to which Plaintiffs have been able to gain access, however, includes those quoted above, as well as the following:

- "Molds and mildew build up in the air condition ducts placing people who are susceptible for infection (people with weak immune system) at risk for fatal infection. The dealer stated that this is a known and common condition for this car because the AC box does not drain the condensed water. This is because the way the car was designed. The dealer recommended turning off the AC for 30 seconds while keeping just the fan on every time before turning off the car to dry up the condensed water on the AC coils, not practical. The dealer has a known service to disinfect the AC system but because of the car design could not guarantee that the condition will not return. There is no warning or any instructions in

the manual regarding this potentially fatal condition for susceptible people." Complaint in NHTSA ODI database, ODI ID No. 1065573, date of incident July 12, 2014.

- "My car smells like mildew and moldy. I have taken it to the dealer about 3 times about this situation. I have respiratory problems and allergies and I can hardly used this car, it stinks and bothers my breathing" Complaint in NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

165.   As the above sampling of complaints makes clear, Class Vehicle owners and lessees have been vocal in complaining to NHTSA ODI about the HVAC System Defect since at least 2008, and Mercedes was, or should have been, aware of and monitoring those complaints, and thus should have known about the HVAC System Defect since at least 2008, if not earlier.

**H.   Mercedes Knew of the HVAC System Defect Based on Class Member Complaints on Public Online Forums.**

166.   In addition to complaints made directly to Mercedes and collected by NHTSA ODI, many Class Vehicle owners posted complaints about the HVAC System Defect on public online vehicle owner forums. The following is a small sampling of such complaints:

- "Took my 09 C300 in to MB for a moldy smell. Wife just called and said they want $155.00. Car has 24,000 on it. Question shouldn't this be covered under warranty?" Posted on benzworld.org/forums/ in March 2011.

- "Definitely a strong odor coming from the HVAC system that makes it a little embarrassing to have others ride along in your

- 53 -

"luxury" automobile. Any advice on how to completely correct this would be appreciated." Posted on www.repairpal.com.

- "Crayon type smell in the HVAC system that is so pungent that the wife can't even stand to be in the car." www.repairpal.com

- "I have noticed a very bad or mushy smell when I start my car with A/C off( after I have shut the car for sometime and the AC was running when i shut the car). This gets better in 10-15 seconds after I turn the AC on. The smell is a very strong smell of moisture with stangnant air.... Does anyone have the same experience? I am worried as it might be a problem with my cabin air filter. My car is only 3000miles on it. Thanks" Posted on mbworld.org/forums/ in March 2012.

- "Whenever i turn the air on, the first 30 seconds it smells really bad, i have to pen the windows till it clears out. I checked all the filters already. Any idea how can i make it smell nice/normal?? thnx alot,Lina." Posted on answers.yahoo.com in 2007.

- "My wife complained that our 2014 S550 also had musty dirty socks smell 7 months after purchase. I confirmed the smell and my wife's multiple friends confirmed the "sour stinking socks smell". I took the car (S550) to the FJ Newport but they say unable to comfirm the smell and told us to pick up the car. They also say that they don't have any known problem with 2014 S550 and further say that the advisor is told to not take the car in the shop unless they can verify the smell. I guess all dealer techs are very insensitive to smells.^^ So we had to pick up the car and bring the car back home. We stopped driving the S550 for a while (weeks) until we are sure of mold free. Because both my wife and I have a certain genetric marker and also have compromised auto immune system and we cannot deal with any mold issue if there exists." Posted on mbworld.org in December 2014.

- "My problem concerns a 2001 C320 with 60,000 miles. The climate control emits a extremely musty sower smell from the air vents when the vehicle is first started with the AC on. I presume

the air ducts are clear of anything that might smell as the smell is absent when in the heat mode. I have wondered if the problem might be related to the AC charging system, receiver/drier, or a condensation drain tube etc. I know little or nothing about my MB AC. Any thoughts or advice are appreciated before I start dismantling & throw parts at it." Posted on www.mbca.org in October 2004.

- "I have a 2006 E350 that has developed a noticeable musty/mold smell emitting from the a/c system. Car is under warranty, dealership is just changing parts in hopes of stumbling across the problem. To date they have changed the cabin air filter and done the service bulletin on system clean-out, replaced the condenser (left out some MAJOR, blue, 12 point bolts found under the mat). All seat bolts are installed and are black in color. Anyway, now I notice a distinct mold smell coming from the front, outside area of the car when it's parked in the garage. I have been on my knees crawling all around the car and cannot nail the source. The dealership service writer is useless as I probably could leave a voicemail for the mechanic and probably do better. Car always garaged in Palm Beach area. Any clues? Thanks." Posted on peachparts.com in April 2007.

- "I am going to start this by copying the information that I sent to the Nevada DMW and to Mercedes corporate as well as the dealership. Mercedes WILL NOT respond to our complaints and neither will the dealership. Here is a background on this terrible car that is a big waste of money! We purchased the vehicle on December 3, 2011. On December 20, 2011, with only 648 miles on the vehicle, the vehicle had to be towed out of our garage due to an issue with the transmission. The transmission gave out. Had to be reassembled. On May 2, 2012, with 4,280 miles on the vehicle, we brought it in because of a terrible moldy, wet smell coming from the air vents. The air filter was removed, replaced and was put into the blowers. The AC system was also revitalized. The smell came back within two days. The dealership did not fix this problem." Posted on forum.edmunds.com in February 2013.

- "Visitor, 2006 Mercedes-Benz C230, 45,000 mi. Smelly mildew hvac." Posted on repairpal.com/mildew-in-heater-box-403.

- "The heating, ventilation and AC (HVAC) heater box is susceptible to mildew buildup. This can result in a musty odor from the HVAC system, most noticeable when the system is first turned on." Posted on repairpal.com/mildew-in-heater-box-403.

- "We just dropped our 2015 ML 350 off at the dealership due to an extreme vinegar emmis[s]ion from the ac. The tech said it will be $330 to clean/flush and replace the filter as this issue is NOT covered under the bumper to bumper war[r]anty. Its a very common problem, apparently, as he gave us his very "rehearsed" answer as to why this happens. (The condensation has nowhere to escape and becomes moldy). He suggested we park it on a slope and that we should turn off the ac 5 mins before we arrive at our destination ! I dont think that we should have to babysit the ac in a luxury car! He also said that ALL luxury cars have this issue. Well, we've owned Audi's, BMW's and Lexus products all with NO ac issues. So I'm calling BS on Mercedes and I believe that they have know about this issue for years and should be including this service cost in the waranty. Plus, from what I've read this will happen often, its not a 1 time fix." Posted on benzworld.org in February 2016.

167.   As shown by this small sampling of complaints from websites such as

www.mbworld.com, www.benzworld.com, www.repairpal.com,

www.answers.yahoo.com, www.mbca.org, www.edmunds.com, and repairpal.com

consumers have been vocal in complaining about the HVAC System Defect and

the damage being caused by the Defect. A multi-billion dollar vehicle design and

manufacturing company such as Mercedes undoubtedly tracks and has tracked

such sites and was aware or should reasonably have been aware of the HVAC System Defect in the Class Vehicles.

168.   In sum, as early as 2008, and likely earlier, Mercedes was aware of the HVAC System Defect, should have been aware of the HVAC System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the HVAC System Defect, based on, among others, the following sources:

a.   Arbitration actions against Mercedes related to the Defect;

b.   Technical Service Bulletins evincing knowledge of moldy smells in/from HVAC Systems issued by Mercedes to its dealerships and service centers;

c.   Detailed data gathered by Mercedes about large number of HVAC System Defect servicings;

d.   Knowledge Mercedes had of the large number of replacement HVAC System component parts and cleaners ordered from Mercedes;

e.   Numerous and consistent vehicle owner complaints made directly to Mercedes about the HVAC System Defect;

f.   Numerous and consistent vehicle owner complaints collected by NHTSA ODI about the HVAC System Defect;

1858235.3

g.    Numerous and consistent vehicle owner complaints made on online vehicle owner forums; and

h.    Mercedes service center employees' familiarity with and knowledge of the HVAC System Defect.

169.   Moreover, the large number and consistency of Class Member complaints describing the HVAC System Defect's propensity to cause a moldy odor to emit from the air-conditioning underscores the fact that Class Members considered the HVAC System Defect to be a material issue to the reasonable consumer.

## **Applicable Warranties**

170.   Mercedes sold Class Vehicles with a "New Vehicle Limited Warranty" which included, among other warranties, protections against DEFECTS:

> Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period. …
>
> This warranty is for 48 months or 50,000 miles, whichever occurs first." …Warranty repairs will be

made at no charge for parts and labor.[5]

171.    Mercedes represents that its Certified Pre-Owned ("CPO") vehicles "are backed by one of the most comprehensive certified pre-owned warranties available." The program includes a warranty for 12 months or up to 100,000 total accumulated vehicles miles. Mercedes represents that its CPO vehicles are factory-backed and the limited warranty provides up to five years or 100,000 total vehicle accumulated miles of coverage.

172.    Both Mercedes's New Vehicle Limited Warranty and its Certified Pre-Owned Limited Warranty and Extended Warranty extend coverage to the climate control system, which includes the HVAC System.

173.    Based on Plaintiffs' experiences and reports from other consumers, Mercedes refuses to cover the nonpermanent "fixes" under warranty, and instead requires Class Members pay out of pocket for these nonpermanent "fixes" for the HVAC System Defect even if Class Members' vehicle remained under warranty at the time.

### **Mercedes's Marketing and Concealment**

174.    Upon information and belief, Mercedes knowingly manufactured and

---

[5] A true and correct copy of the 2013 Service and Warranty Booklet applicable to Plaintiff Amin's vehicle is attached as Exhibit B. A true and correct copy of the Service and Warranty Booklet applicable to Plaintiff Patel's vehicle is attached as Exhibit C. The two booklets appear to be identical in all relevant respects.

1858235.3

sold the Class Vehicles with the HVAC System Defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles' HVAC Systems.

175.    Mercedes directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

176.    Mercedes's marketing material describes the various Class Vehicles as "state-of-the-art," "luxury," "fine craftsmanship," and "the most advanced vehicles on the road." Mercedes slogan for its vehicles is "the best or nothing."

177.    Although Mercedes knew of the HVAC Systems' propensity to pool water and foster the growth of mold and other odor-causing growths, it failed to notify Plaintiffs and Class Members of this prior to their purchase of the vehicle.

178.    Mercedes also touts "a rigorous 27-point service checklist to keep your Mercedes-Benz running effortlessly for the next 10,000," implying that Class Vehicles will require less-frequent maintenance than other vehicles. This 27-point service checklist includes pre-road test checks of the air cleaner/filter and climate control system.

179.    Mercedes marketing materials advertised the vehicles as 'enjoyable' to 'everyone' and 'soothing' and "filters dust and pollen as small as 0.0002" from

the air. It also promoted videos stating its vehicles are "engineering excellence"
and "an automotive masterpiece." Furthermore, it stated, "Soothing. Standard dual-
zone automatic climate control allows the driver and front passenger to enjoy
individualized comfort in any season. The system filters dust and pollen from the
cabin, while a sensor monitors the angle and intensity of sunlight for more even
control of temperature." This led Plaintiffs and Class Members to form a
reasonable belief and expectation that mold/mildew and foul smells would not
emanate from Class Vehicles' HVAC Systems if contained in the air and certainly
caused the reasonable consumer not to expect that the vehicle itself would harbor
and facilitate the growth of organic materials regularly giving rise to foul odors
making the use of Class Vehicles anything but soothing or enjoyable.

180.   Further, Mercedes represents that its Certified Pre-Owned vehicles
must "meet stringent criteria and pass a rigorous inspection." This certification
process involves a 164-point inspection, which includes a test of "Automatic
Climate Control Function, Regulation, Display, Odors." Mercedes promises that
CPO vehicle purchasers "get industry-leading coverage."

181.   According to its consumer brochures, "[t]he Mercedes-Benz Certified
Pre-Owned vehicle offers safety, performance and reliability." Vehicles that have
been Certified Pre-Owned purportedly have passed a thorough certification

inspection. According to its CPO consumer brochure, all Mercedes CPO vehicles undergo a "climate control inspection" during a road test conducted by a Mercedes-Benz technician and "[a]ny noted deficiencies are repaired, replaced or reconditioned" before the vehicle is sold.

182.    In practice, the Class Vehicles are not as comfortable or enjoyable as Mercedes's marketing represents. Mercedes concealed the fact that its so-called "Luxury" Class Vehicles, which supposedly are "the most advanced vehicles on the road," are instead not even comfortable or enjoyable under ordinary conditions because the HVAC Systems repeatedly and consistently emit foul moldy odors into the passenger cabin.

183.    Plaintiffs and Class Members were exposed to Mercedes's long-term, national, multimedia marketing campaign touting the supposed sophistication and comfort of the Class Vehicles, and Class Members justifiably made their decisions to purchase/lease their Class Vehicles based on Mercedes's misleading marketing that concealed the true, defective nature of the Class Vehicles' HVAC Systems.

184.    Further, Mercedes knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, Mercedes has been aware of the HVAC System Defect since at least 2008, and likely earlier, through arbitration actions, technical service bulletins, the high

number of HVAC System servicings and replacement component part sales, and the numerous and consistent complaints about the HVAC System Defect made directly to Mercedes, collected by NHTSA and posted in public online forums.

185.   Despite Mercedes's knowledge of the Defect, Mercedes told Class Members who called its customer service about the HVAC System Defect that Mercedes had never heard of the problem before and that no others had reported issues with their Class Vehicles' HVAC Systems, and made Class Members pay for temporary "band aid" repair measures out-of-pocket.

186.   In sum, Mercedes has actively concealed the existence and nature of the HVAC System Defect from Class Members since at least 2008 despite its knowledge of the existence and pervasiveness of the HVAC System Defect, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles. Specifically, Mercedes has:

a.   Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the HVAC System Defect;

b.   Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' HVAC Systems were defective and not fit for their intended purposes;

- 63 -

c.     Failed to disclose, and actively concealed, the fact that the Class Vehicles' HVAC Systems were defective, despite the fact that Mercedes learned of the HVAC System Defect as early as 2008, and likely even earlier;

d.     Failed to disclose, and actively concealed, the existence and pervasiveness of the HVAC System Defect even when directly asked about it by Class Members during communications with Mercedes, Mercedes Customer Assistance, Mercedes dealerships, and Mercedes service centers;

e.     Actively concealed the HVAC System Defect by forcing Class Members to bear the cost of temporary measures to address the moldy smells, while at the same time performing those services at no (or lower) cost for those who complained vocally and often, and calling these "goodwill" services;

f.     Actively concealed the HVAC System Defect by repeatedly treating the mold and odors with temporary measures such as flushing the system, replacing filters, and using cleansers, while leaving the defective HVAC Systems as they were, so that the HVAC System Defect has never been permanently corrected in Class Members' vehicles, even though Class Members were led to believe that the services had cured the moldy odor problem in their vehicles; and

g.     Actively concealed the HVAC System Defect by knowingly selling and installing replacement cabin air filters and using cleansers in Class

Vehicles, while knowing and concealing that these temporary measures would not prevent the recurrence of mold formation and foul, noxious odors because the HVAC Systems remained defectively designed.

187.    By engaging in the conduct described above, Mercedes has concealed, and continues to conceal, the HVAC System Defect from Class Members. If Class Members had knowledge of the information Mercedes concealed, they would not have bought or leased the Class Vehicles, or would have paid less for them.

## Fraudulent Concealment Allegations

188.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mercedes responsible for disseminating false and misleading marketing materials and information regarding the Class Vehicles. Mercedes necessarily is in possession of or has access to all of this information. Plaintiffs' claims arise out of Mercedes's fraudulent concealment of the HVAC System Defect and the foul moldy air it causes, and its representations about the quality, world-class quality, sophistication, state-of-the-art performance and comfort of the Class Vehicles' HVAC Systems. To the extent that Plaintiffs' claims arise from Mercedes's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege

- 65 -

that at all relevant times, including specifically at the time they purchased or leased

their Class Vehicles, Mercedes knew, or was reckless in not knowing, of the

HVAC System Defect; Mercedes was under a duty to disclose the Defect based

upon its exclusive knowledge of it, its affirmative representations about it, and its

concealment of it; and Mercedes never disclosed the Defect to the Plaintiffs or the

public at any time or place or in any manner.

189.   Plaintiffs make the following specific fraud allegations with as much

specificity as possible although they do not have access to information necessarily

available only to Mercedes:

a.   ***Who***: Mercedes actively concealed the HVAC System Defect

from Plaintiffs and Class Members while simultaneously touting the safety,

comfort, sophistication, and world-class quality of the Class Vehicles, as alleged in

paragraphs 107-120 *supra*. Plaintiffs are unaware of, and therefore unable to

identify, the true names and identities of those specific individuals at Mercedes

responsible for such decisions.

b.   ***What***: Mercedes knew, or was reckless or negligent in not

knowing, that the Class Vehicles contain the HVAC System Defect, as alleged

above in paragraphs 72-102 *supra*. Mercedes concealed the Defect and made

contrary representations about the safety, comfort, sophistication, and world-class

quality, and other attributes of the Class Vehicles, as specified above in paragraphs 107-120 *supra*.

    c.    ***When***: Mercedes concealed material information regarding the Defect at all times and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles, starting no later than 2008, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 107-120 *supra*. Mercedes has not disclosed the truth about the Defect in the Class Vehicles to anyone outside of Mercedes. Mercedes has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles. And when consumers brought their Class Vehicles to Mercedes complaining of the foul moldy odors, Mercedes denied any knowledge of or responsibility for the HVAC System Defect, and in many instances, actually blamed owners/lessees for causing the odor/problem.

    d.    ***Where***: Mercedes concealed material information regarding the true nature of the Defect in every communication it had with Plaintiffs and Class Members and made contrary representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Plaintiffs

1858235.3

are aware of no document, communication, or other place or thing, in which

Mercedes disclosed the truth about the Defect in the Class Vehicles to anyone

outside of Mercedes. Such information is not adequately disclosed in any sales

documents, displays, advertisements, warranties, owner's manual, or on

Mercedes's website.

e.     ***How*:** Mercedes concealed the HVAC System Defect from

Plaintiffs and Class Members and made representations about the world-class

quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles.

Mercedes actively concealed the truth about the existence and nature of the Defect

from Plaintiffs and Class Members at all times, even though it knew about the

Defect and knew that information about the Defect would be important to a

reasonable consumer and Mercedes promised in its marketing materials that Class

Vehicles have qualities that they do not have.

f.     ***Why*:** Mercedes actively concealed material information about

the Defect in Class Vehicles for the purpose of inducing Plaintiffs and Class

Members to purchase or lease Class Vehicles, rather than purchasing or leasing

competitors' vehicles and made representations about the world-class quality,

sophistication, state-of-the-art safety and comfort of the Class Vehicles. Had

Mercedes disclosed the truth, for example in its advertisements or other materials

- 68 -

or communications, Plaintiffs (and reasonable consumers) would have been aware of it, and would not have bought Class Vehicles or would have paid less for them.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

190.   Upon information and belief, Mercedes has known of the HVAC System Defect in the Class Vehicles since at least 2008—indeed, it was aware that the Defect existed in 211-model vehicles produced in 2003-2007 and 203-model vehicles produced in 2001-2007—and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles.  Yet Mercedes has concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the HVAC System Defect, even when directly asked about it by Class Members during communications with Mercedes, Mercedes Customer Care, Mercedes dealerships, and Mercedes service centers. Mercedes continues to conceal the Defect to this day.

191.   Any applicable statute of limitation has been tolled by Mercedes's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### Estoppel

192.   Mercedes was and is under a continuous duty to disclose to Plaintiffs

- 69 -

and Class Members the true character, quality, and nature of the Class Vehicles.
Mercedes actively concealed – and continues to conceal – the true character,
quality, and nature of the Class Vehicles and knowingly made representations
about the quality, world-class quality, sophistication, state-of-the-art safety and
comfort of the Class Vehicles. Plaintiffs and Class Members reasonably relied
upon Mercedes's knowing and affirmative representations and/or active
concealment of these facts. Based on the foregoing, Mercedes is estopped from
relying on any statutes of limitation in defense of this action.

**Discovery Rule**

193.   The causes of action alleged herein did not accrue until Plaintiffs and
Class Members discovered that their Class Vehicles contained the HVAC System
Defect.

194.   However, Plaintiffs and Class Members had no realistic ability to
discern that the Class Vehicles were defective until – at the earliest – after the
HVAC System Defect caused their Vehicles to develop mold and emit foul,
noxious odors. Even then, Plaintiffs and Class Members had no reason to know the
foul moldy odors were caused by a defect in the Class Vehicles because of
Mercedes's active concealment of the HVAC System Defect. Not only did
Mercedes fail to notify Plaintiffs or Class Members about the HVAC System

Defect, Mercedes in fact denied any knowledge of or responsibility for the HVAC System Defect when directly asked about it, and, in many instances, actually blamed the owner/lessee for causing the odor/problem. Thus Plaintiffs and Class Members were not reasonably able to discover the HVAC System Defect until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until, at earliest, they discovered that the HVAC System Defect was causing their Vehicles to form mold and emit foul, noxious odors.

### A.   **Prior Class Action**

195.   Other plaintiffs have filed two class action complaints: one in the Central District of California on May 9, 2016, *Bhatt et al. v. Mercedes-Benz USA, LLC*, No. 2:16-cv-03171-TJH-RAO (C.D. Cal.), and one in the District of New Jersey Newark Division on December 12, 2018, *Biase et al v. Mercedes-Benz USA, LLC*, 2:18-cv-17128-MCA-MAH. The limitations period applicable to some of Plaintiffs' and Class Members' claims was and is tolled from at least the time that the Central District of California case was filed.

### **Notice Letters**

196.   As noted elsewhere in this Complaint, *see* paragraphs 158 *supra* (referring to Exhibit A hereto), 321 *infra* (referring to Exhibit A hereto), and 278

- 71 -

*infra* (referring to Exhibit D hereto), and Exhibit E hereto, letters have been

transmitted to Mercedes notifying it of the allegations raised in this Complaint.

Accordingly, the running of any statute of limitations period or other time limit

applicable to the claims set forth in this Complaint was stopped, and any such

period or limit is subject to tolling.

## CLASS ACTION ALLEGATIONS

197.   Plaintiffs bring this lawsuit as a class action on behalf of themselves

and all other similarly situated individuals pursuant to Federal Rules of Civil

Procedure 23(a) and (b)(3), (b)(2), and/or (c)(4). This action satisfies the

numerosity, commonality, typicality, adequacy, predominance, and superiority

requirements of those provisions.

198.   Plaintiffs bring this class action on behalf of themselves and all other

similarly situated members of the proposed class (the "Class"), defined as follows:

> All residents of the United States and its territories who
> are current and former owners and lessees that purchased
> or leased a Class Vehicle.  A "Class Vehicle" is a
> vehicle of any of the following models/model years:
>
> 2008-2019 Mercedes C-Class,
> 2012-2017 Mercedes CLS-Class,
> 2010-2019 Mercedes E-Class,
> 2013-2016 Mercedes GL-Class,
> 2017-2019 Mercedes GLS-Class,
> 2015-2019 Mercedes GLA-Class,
> 2012-2015 Mercedes M-Class,

- 72 -

2016-2019 Mercedes GLE-Class,
2010-2015 Mercedes GLK-Class, and
2016-2019 Mercedes GLC-Class.

199.   Excluded from the Class are: (1)  Persons who have settled with,

released, or otherwise adjudicated claims on the merits against Daimler AG and/or

MBUSA that are substantially similar to those alleged in this matter; (2) employees

of Daimler AG and MBUSA; (3)the Honorable Terry J. Hatter, Jr., the Honorable

Rozella A. Oliver, the Honorable Amy Totenberg, the Honorable Madeline Cox

Arleo, the Honorable Michael A. Hammer and members of their respective

families; (4) governmental entities; and (5) claims for personal injuries resulting

from the facts alleged herein..

## Numerosity

200.   Although the exact number of Class Members is uncertain and can

only be ascertained through appropriate discovery, the number is great enough

such that joinder is impracticable. The disposition of the claims of these Class

Members in a single action will provide substantial benefits to all parties and to the

Court. Class Members are readily identifiable from information and records in

Mercedes's possession, custody, or control, as well as from records kept by the

Department of Motor Vehicles.

1858235.3

**Typicality**

201.   The claims of the Plaintiffs are typical of the claims of Class Members

in that the Plaintiffs, like all Class Members, purchased or leased a Class Vehicle

designed, manufactured, and distributed by Mercedes. The Plaintiffs, like all Class

Members, have been damaged by Mercedes's misconduct in that they have

purchased a vehicle they would not have purchased, or for which they would have

paid less, and incurred or will incur the cost of service relating to and caused by the

HVAC System Defect. Furthermore, the factual bases of Mercedes's misconduct

are common to the Plaintiffs and all Class Members and represent a common

thread of misconduct resulting in injury to the Plaintiffs and all Class Members.

**Adequate Representation**

202.   Plaintiffs will fairly and adequately represent and protect the interests

of the Class Members. Plaintiffs have retained counsel with substantial experience

in prosecuting consumer class actions, including actions involving defective

automotive vehicles.

203.   Plaintiffs and their counsel are committed to vigorously prosecuting

this action on behalf of the Class, and have the financial resources to do so. Neither

Plaintiffs nor their counsel has interests adverse to those of the Class.

## Predominance of Common Issues

204.   There are numerous questions of law and fact common to Plaintiffs and Class Members, the answers to which will advance resolution of the litigation as to all Class Members, and which predominate over any individual question. These common legal and factual issues include:

A.   whether the HVAC System in the Class Vehicles is defective;

B.   whether Mercedes knew or should have known about the HVAC System Defect, and, if so, how long Mercedes knew or should have known of the Defect;

C.   whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

D.   whether Mercedes had and/or has a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members;

E.   whether Mercedes omitted and failed to disclose material facts about the Class Vehicles;

F.   whether Mercedes's concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing Class Vehicles;

- 75 -

G.      whether Mercedes represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have,

H.      whether Mercedes represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another,;

I.      whether Mercedes advertised the Class Vehicles with the intent not to sell them as advertised,;

J.      whether Mercedes's affirmative misrepresentations about the true defective nature of the Class Vehicles were likely to create confusion or misunderstanding, and therefore fraudulent,

K.      whether Mercedes's affirmative misrepresentations about the true defective nature of the Class Vehicles were and are deceptive.

L.      whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

M.      whether Plaintiffs and the other Class Members are entitled to a declaratory judgment stating that the HVAC Systems in Class Vehicles are defective and/or not merchantable;

N.      whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

O.      whether Mercedes should be declared financially responsible for notifying Class Members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the HVAC System Defect in the Class Vehicles; and

P.      whether Mercedes is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, service, repair, or replace the defective HVAC Systems.

## **Superiority**

205.   Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Mercedes's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

206.   Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Mercedes's misconduct. Absent a class action, Class Members

will continue to incur damages, and Mercedes's misconduct will continue without remedy.

207.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty
### (this cause of action against MBUSA only)

208.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

209.   MBUSA is and was at all relevant times a "merchant" with respect to motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2-104(1), and "sellers" of motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2-103(1)(d); and, with respect to leases, is and was at all relevant times a "lessor" of motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2A-103(1)(p).

210.   The Class Vehicles are and were at all relevant times "goods" within the meaning of, inter alia, O.C.G.A. §§ 11-2-105 and 11-9-102(a)(45).

211.   Plaintiffs and Class Members bought or leased Class Vehicles manufactured, marketed to them, and intended to be purchased by consumers such as them, by Mercedes.

212.   MBUSA expressly warranted the Class Vehicles against defects including the HVAC System Defect, as described above, within the meaning of, inter alia, O.C.G.A § 11-2-313(1).

213.   MBUSA's express warranties formed a basis of the bargain that was reached when Class Members purchased or leased their Class Vehicles.

214.   As described above, the HVAC System in the Class Vehicles is defective.  The HVAC System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiff and Class Members.

215.   MBUSA knew of the HVAC System Defect, and that this Defect poses serious safety risks to consumers like Plaintiffs and Class Members, when it expressly warranted against the Defect, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class Vehicles had the Defect, and induced Plaintiffs and Class Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

216.   Specifically, Class Vehicles were sold to Plaintiffs and Class Members with a new vehicle 48-month and 50,000-mile express warranty.[6]

217.   Plaintiffs and Class Members were either in privity with MBUSA as original purchasers or lessees, or otherwise afforded the benefits of the express warranty as subsequent purchasers because the warranty itself states: "...warrants to the original and each subsequent owner..." See Exhibit B, page 11.

218.   Pursuant to Page 11 of the 2013 Service and Warranty Booklet, MBUSA warranted to the original and each subsequent owner that they "will make any repairs or replacements necessary, to correct defects in materials and workmanship arising under the warranty period."

219.   MBUSA breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the HVAC System Defect.

220.   MBUSA is obligated, under the terms of its express warranties, to make repair and/or replacements to permanently correct the HVAC System Defect for Plaintiffs and Class Members.

---

[6] A true and correct copy of the 2013 Service and Warranty Booklet applicable to Plaintiff Amin's vehicle is attached as Exhibit B. A true and correct copy of the Service and Warranty Booklet applicable to Plaintiff Patel's vehicle is attached as Exhibit C. The two booklets appear to be identical in all relevant respects.

1858235.3

221.   As more fully detailed above, MBUSA was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources.

222.   The Class Vehicles were under this express warranty when they exhibited the HVAC System Defect.

223.   Plaintiffs gave MBUSA a reasonable opportunity to cure its failures with respect to its warranties, and MBUSA failed to do so free of charge or at all.

224.   MBUSA breached its express warranties by failing to permanently repair the Class Vehicles and by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it expressly warranted when it sold the Class Vehicles to Plaintiff and Class Members.

225.   Affording MBUSA a reasonable opportunity to cure its breach of written warranties was unnecessary and futile here. When Plaintiffs and other Class Members provided such notice and sought relief under the warranty, MBUSA refused to do so and charged them for temporary, inadequate "fixes."

226.   To the extent any express warranties do not by their terms cover the defects alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the

warranties fail of their essential purpose and, accordingly, recovery by Plaintiffs and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

227.   Any attempt by MBUSA to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unconscionable as a matter of law because the relevant purchase/lease transactions were tainted by MBUSA's concealment of material facts. Thus any such effort by MBUSA to disclaim, or otherwise limit, its liability for the HVAC System Defect is null and void.

228.   As a direct and proximate result of MBUSA's breach of express warranties, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs and the costs of needed present and future repairs, in an amount to be determined at trial, and are entitled to the relief requested *infra*.

## SECOND CAUSE OF ACTION
### Breach of Express Warranty – Magnuson-Moss Warranty Act
### (this cause of action against MBUSA only)

229.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

1858235.3

230.   The Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

231.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

232.   MBUSA is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

233.   MBUSA provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

234.   MBUSA breached the Express Warranty by refusing to honor the express warranty to replace or repair, free of charge, any defective vehicle component, including defects within the climate control system, which contains the HVAC System.

235.   At the time Class Vehicles were sold, MBUSA knew of the defects they possessed and offered an Express Warranty with no intention of honoring said warranty with respect to the known defects.

236.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or

1858235.3

because the warrantor imposed an unreasonable duty upon the consumer as a

condition of securing remedy, then the consumer shall be entitled to recover

reasonable incidental expenses which are so incurred in any action against the

warrantor."

237.   At no time has MBUSA offered a permanent or adequate repair or

replacement of the HVAC System that would permanently prevent the moldy odor

from recurring. Despite repeated demands by Plaintiffs and Class Members that

MBUSA pay the labor costs and incidental expenses associated with permanently

repairing or replacing the HVAC System, and with the temporary measures

MBUSA has offered instead, MBUSA has refused to do so. MBUSA's refusal to

provide an adequate repair or replacement and to pay for its installation violates 15

U.S.C. § 2304(d)(1).

238.   MBUSA was afforded a reasonable opportunity to cure its breach of

the Express Warranty, but failed to do so.

239.   As a direct and proximate result of MBUSA's breach of its express

written warranties, Plaintiffs and Class Members have been damaged in an amount

to be proven at trial.

### THIRD CAUSE OF ACTION
### Breach of Implied Warranty
### (this cause of action against MBUSA only)

240.   Plaintiffs incorporate by reference each allegation set forth in the

- 84 -

preceding paragraphs.

241.   When it sold its Class Vehicles, MBUSA extended an implied

warranty to Class Members that the subject vehicles were merchantable and fit for

the ordinary purpose for which such goods were sold.

242.   Persons who purchased a vehicle from MBUSA are entitled to the

benefit of their bargain: a vehicle with a nondefective HVAC System that does not

emit moldy air.

243.   MBUSA breached this implied warranty in that its Class Vehicles are

(1) not fit for ordinary use, and (2) not of a merchantable quality.

244.   Had the fact that the HVAC System Defect existed been disclosed at

the time of sale, the Class Vehicles could not have been sold, or could not have

been sold at the same price.

245.   As a direct and proximate result of MBUSA's breach of the implied

warranty of merchantability, Plaintiffs and Class Members have been damaged in

an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### Breach of Implied Warranty – Magnuson-Moss Warranty Act
### (this cause of action against MBUSA only)

246.   Plaintiffs incorporate by reference each allegation set forth in the

preceding paragraphs.

247.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

248.   Defendant MBUSA is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

249.   Defendant MBUSA is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

250.   The subject Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

251.   MBUSA extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Vehicles and its Class Vehicles' HVAC Systems.

252.   MBUSA breached this implied warranty by selling its Class Vehicles with defective HVAC Systems that were neither merchantable nor fit for their intended purpose.

253.   MBUSA extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in the subject Class Vehicles' HVAC Systems.

254.   MBUSA breached this implied warranty by selling Class Vehicles that were neither merchantable nor fit for their intended purpose.

1858235.3

255.   As a direct and proximate result of MBUSA's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Violations of Georgia Fair Business Practices Act**
**(O.C.G.A. § 10-1-390, *et seq*.)**

256.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

257.   MBUSA and Daimler are each a "person" as defined by the Georgia Fair Business Practices Act ("Georgia FBPA"). O.C.G.A. § 10-1-392(a)(24).

258.   Plaintiffs and Class Members are "consumers" within the meaning of the Georgia FBPA. O.C.G.A. § 10-1-392(a)(6).

259.   The purchase or lease of Class Vehicles by Plaintiffs and Class Members constituted "consumer transactions" as defined by the Georgia FBPA. O.C.G.A. § 10-1-392(a)(10).

260.   The Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, O.C.G.A. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another,"

- 87 -

and "[a]dvertising goods or services with intent not to sell them as advertised," *id*.

§§ 10-1-393(b)(5), (7) & (9).

261.   By failing to disclose the defective nature of the Class Vehicles to

Plaintiffs and Class Members, Mercedes violated the Georgia FBPA, because

Mercedes represented that the Class Vehicles had characteristics and benefits that

they do not have, and represented that the Class Vehicles were of a particular

standard, quality, or grade (i.e. state-of-the-art, comfortable, etc.) when they were

of another. *See* O.C.G.A. §§ 10-1-393(b)(5) & (7).

262.   Mercedes advertised the Class Vehicles (as state-of-the-art,

comfortable, etc.) with the intent not to sell them as advertised, in violation of

§ 10-1-393(b)(9).

263.   Mercedes's unfair and deceptive acts or practices occurred repeatedly

in Mercedes's course of trade or business, were material, were capable of

deceiving a substantial portion of the purchasing public, and as a result, caused

economic harm to owners and purchasers of the Class Vehicles.

264.   Mercedes knew, by 2008 at the latest, and certainly before the sale or

lease of the Class Vehicles, that the Class Vehicles' HVAC Systems suffered from

an inherent design defect, would exhibit problems such as mold growth and the

emission of foul and noxious odors, and were not suitable for their intended use.

265.   By 2008 at the latest, Mercedes had exclusive knowledge of material facts concerning the existence of the HVAC System Defect in its Class Vehicles. Furthermore, Mercedes actively concealed this Defect from consumers by denying the existence of the Defect to Class Members who contacted Mercedes about the moldy smell, and failing to offer Class Members a permanent solution to the HVAC System Defect.

266.   Mercedes was under a duty to Plaintiffs and Class Members to disclose the defective nature of the HVAC Systems, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the HVAC System Defect, because:

267.   Mercedes was in a superior position to know the true state of facts about the HVAC System Defect in the Class Vehicles;

268.   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the HVAC System Defect until, at the earliest, the first instance of moldy smell occurring in their Vehicles; and

269.   Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

- 89 -

270.   Mercedes knew or should have known that its conduct violated the Georgia FBPA.

271.   In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true cause and remedy of the noxious foul odor, Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

272.   The facts Mercedes concealed from Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the HVAC System Defect to be an undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and Class Members known that the Class Vehicles had the HVAC System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for them.

273.   Plaintiffs and Class Members, like all objectively reasonable consumers, did not expect the HVAC System in their vehicles to cause the growth of mold and mildew within the HVAC System, or emit moldy and noxious odors through the HVAC System vents.

274.   As a result of Mercedes's misconduct, Plaintiffs and Class Members have been harmed and suffered actual damages including in that the Class Vehicles repeatedly manifest mold growth and emit foul smells due to the HVAC System Defect, causing inconvenience, creating an uncomfortable environment for Vehicle occupants, and causing Plaintiffs and Class Members to spend money to repeatedly repair or temporarily fix the recurring odors caused by the Defect.

275.   As a direct and proximate result of Mercedes's unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages in that they have experienced and may continue to experience their Class Vehicles' HVAC Systems growing mold and emitting noxious odors, for which there is no permanent fix, and for which they must pay out of pocket.

276.   Mercedes's violations present a continuing risk to Plaintiffs and to the general public. Mercedes's unlawful acts and practices complained of herein affect the public interest.

277.   Plaintiffs and Class Members are entitled to equitable relief.

278.   Mercedes received proper notice of its alleged violations of the Georgia FBPA pursuant to O.C.G.A. § 10-1-399(b), via a letter sent to MBUSA and its registered service agent on January 29, 2016. The notice letter is attached hereto as Exhibit D. Through counsel, Mercedes denied the existence of any

1858235.3

defect, did not offer to repair Mr. Amin or anyone else's vehicles, did not offer to

compensate out-of-pocket expenses for all those who have incurred them, and did

not guarantee to honor warranty claims for this defect going forward.  Instead, it

offered only a small sum to resolve Mr. Amin's individual claim alone. Further,

Mercedes characterized the  problem as "a maintenance issue," presumably

implying that all purchasers who have experienced foul odors failed to properly

maintain their Class Vehicles. Mr. Amin found this response from Mercedes to be

unsatisfactory.

279.   Thus, pursuant to O.C.G.A. § 10-1-399, Plaintiffs seek, in addition to

equitable relief, actual and statutory damages,  attorneys' fees and expenses, treble

damages, and punitive damages as permitted under the Georgia FBPA and

applicable law.

## SIXTH CAUSE OF ACTION
### Violations of Georgia's Uniform Deceptive Trade Practices Act
### (O.C.G.A. § 10-1-370, *et seq.*)

280.   Plaintiffs incorporate by reference each allegation set forth in the

preceding paragraphs.

281.   Mercedes, Plaintiffs, and Class Members are "persons" within the

meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia

UDTPA"). O.C.G.A. § 10-1-371(5).

282.   The Georgia UDTPA prohibits "deceptive trade practices" which include the "misrepresentation of standard, quality, or grade of goods and services," "engaging in any other conduct which similar creates a likelihood of confusion or misunderstanding," and "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised." O.C.G.A. § 10-1-372.

283.   By failing to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members, Mercedes engaged in deceptive trade practices in violation of the Georgia UDTPA, because Mercedes represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade (i.e. state-of-the-art, comfortable, etc.) when they were of another. *See* O.C.G.A. §§ 10-1-372(5), (7), (9).

284.   Mercedes advertised the Class Vehicles (as state-of-the-art, comfortable, etc.) with the intent not to sell them as advertised, in violation of O.C.G.A. § 10-1-372(12).

285.   Mercedes's unfair and deceptive acts or practices occurred repeatedly in Mercedes's course of trade or business, were material, were capable of

deceiving a substantial portion of the purchasing public, and as a result, caused economic harm on owners and purchasers of the Class Vehicles.

286.   Mercedes knew, by 2008 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' HVAC Systems suffered from an inherent design defect, would exhibit problems such as mold growth and the emission of foul and noxious odors, and were not suitable for their intended use.

287.   By 2008 at the latest, Mercedes had exclusive knowledge of material facts concerning the existence of the HVAC System Defects in its Class Vehicles. Furthermore, Mercedes actively concealed these defects from consumers by denying the existence of the defects to Class Members who contacted Mercedes about the moldy smell, and failing to offer Class Members a permanent solution to the HVAC System Defect.

288.   Mercedes was under a duty to Plaintiffs and Class Members to disclose the defective nature of the HVAC Systems, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the HVAC System Defect, because, inter alia:

A.    Mercedes was in a superior position to know the true state of facts about the HVAC System Defect in the Class Vehicles;

1858235.3

B.     Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the HVAC System Defect until, at the earliest, the first instance of moldy smells occurring; and

C.     Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

289.   Despite possessing information to the contrary, Mercedes failed to disclose and actively concealed the Defect while continuing to market the Class Vehicles as comfortable, world-class, and reliable. The deception made reasonable consumers believe that Class Vehicles were of high quality and designed and made by a company that stood behind its vehicles once they were on the road.

290.   Mercedes knew or should have known that its conduct violated the Georgia UDTPA.

291.   In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true cause and remedy of the noxious foul odor, Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

292.   The facts Mercedes concealed from Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be

important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the HVAC System Defect to be an undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and Class Members known that the Class Vehicles had the HVAC System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for them.

293.   Plaintiffs, like all objectively reasonable consumers, did not expect the HVAC System in their vehicles to cause the growth of mold and mildew within the HVAC System, or emit moldy and noxious odors through the HVAC System vents.

294.   As a result of Mercedes's misconduct, Plaintiffs and Class Members have been harmed and suffered actual damages in that the Class Vehicles repeatedly manifest mold growth and emit foul smells due to the HVAC System Defect, causing inconvenience, creating an uncomfortable and unsafe environment for vehicle occupants, and causing Class Members to spend money to repeatedly repair or temporarily fix the recurring odors caused by the Defect.

295.   As a direct and proximate result of Mercedes's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages in that they have experienced and may continue to

experience their Class Vehicles' HVAC Systems growing mold and emitting noxious odors, for which there is no permanent fix and for which they must pay out of pocket.

296.   Mercedes's violations present a continuing risk to Plaintiffs and to the general public. Mercedes's unlawful acts and practices complained of herein affect the public interest.

297.   As a direct and proximate result of Mercedes's violations of the Georgia UDTPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

298.   Plaintiffs seek an order enjoining Mercedes's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA and applicable law.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

299.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

300.   Georgia law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." O.C.G.A. § 11-2-314.

1858235.3

301.   Mercedes is a merchant with respect to the goods which it sold to Plaintiffs and Class Members.

302.   The goods that Mercedes provided to Plaintiffs and Class Members were unmerchantable at the time they were sold. Specifically, the Class Vehicles contained HVAC Systems emitting foul odors rendering them not fit for ordinary use as automobiles, not able to pass without objection, not of fair average quality and not conforming with promises and affirmations made.

303.   Mercedes's failure to provide merchantable vehicles was a breach of the implied warranty of merchantability, and Plaintiff and the other Class Members were damaged in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**(Violation of California's Consumer Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1750,** *et seq.***)**

304.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

305.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members. § 1761(c).

306.   Mercedes is a "person" as defined by the CLRA. Cal. Civ. Code. Plaintiffs and Class Members are "consumers" within the meaning of the CLRA. Cal. Civ. Code § 1761(d).

1858235.3

307.   The purchases and leases of Class Vehicles and the warranties by Plaintiffs and Class Members constitute "transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

308.   The Class Vehicles and the warranties constitute "goods" or "services" as defined by the CLRA. Cal. Civ. Code §1761(a) and (b).

309.   Plaintiffs and Class Members purchased or leased the Class Vehicles and the warranties primarily for personal, family, and household purposes as meant by the CLRA. Cal. Civ. Code § 1761(d).

310.   Mercedes's misrepresentations, active concealment, failures to disclose, and omissions regarding the Class Vehicles and the warranties violated the CLRA in the following ways:

a.     Mercedes misrepresented that the Class Vehicles and the warranties had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b.     Mercedes misrepresented that the Class Vehicles and the warranties were of a particular standard, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

c.     Mercedes advertised the Class Vehicles and the warranties with an intent not to sell/lease them as advertised (Cal. Civ. Code § 1770(a)(9));

d.     Mercedes misrepresented that the Class Vehicles and the warranties conferred or involved rights, remedies, or obligations that they did not 26 (Cal. Civ. Code § 1770(a)(14)); and

e.     Mercedes misrepresented that the Class Vehicles and the warranties were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

311.   Mercedes's unfair and deceptive acts or practices occurred repeatedly in Mercedes's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to purchasers and lessees of the Class Vehicles.

312.   Mercedes knew, by 2008 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' HVAC System suffered from an inherent defect, were defectively designed or manufactured, would exhibit problems such as mold growth and the emission of foul and noxious odors, and were not suitable for their intended use.

313.   By 2008 at the latest, Mercedes had exclusive knowledge of material facts concerning the existence of the HVAC System Defect in its Class Vehicles. Furthermore, Mercedes actively concealed the Defect from consumers by denying the existence of the Defect to Class Members who contacted Mercedes about the

moldy smell, failing to cover temporary "fixes" under warranty, and failing to offer Class Members a permanent solution to the HVAC System Defect.

314.   Mercedes was under a duty to Plaintiffs and Class Members to disclose the defective nature of the HVAC Systems, as well as the associated costs that would have to be repeatedly expended in order to temporarily address the moldy smell caused by the HVAC System Defect, because:

a.   Mercedes was in a superior position to know the true state of facts about the HVAC System Defect in the Class Vehicles;

b.   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the HVAC System Defect until, at the earliest, the manifestation of the Defect; and

c.   Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

315.   In failing to disclose the defective nature of the Class Vehicles, Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

316.   The facts concealed or not disclosed by Mercedes to Plaintiffs and Class Members are material in that a reasonable consumer would have considered

them to be important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the HVAC System Defect to be an undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and other Class Members known that the Class Vehicles had the HVAC System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for it.

317. Plaintiffs and Class Members are reasonable consumers who did not expect their Class Vehicles to contain a defective HVAC System. It is reasonable and objective consumer expectation for consumers to expect the HVAC System not to foster the growth of mold and mildew within the System or emit moldy and noxious odors through the HVAC System vents.

318. As a result of Mercedes's misconduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles contain defective HVAC Systems and repeatedly manifest mold growth and emit foul smells due to the HVAC System Defect, causing inconvenience, creating an uncomfortable and unhealthy environment for vehicle occupants, and causing Class Members to spend money, even when the Vehicle was still under warranty, to repeatedly but temporarily address the recurring odors caused by the Defect.

319.   As a direct and proximate result of Mercedes's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages in that they have a Vehicle with a defective HVAC System and they have experienced and may continue to experience their Class Vehicles' HVAC Systems growing mold and emitting noxious odors, for which there is no permanent fix.

320.   Plaintiffs and the Class are entitled to equitable relief.

321.   Mercedes received proper notice of its alleged violations of the CLRA pursuant to Cal. Civ. Code § 1782(a), via a letter sent to Mercedes and its registered service agent on August 17, 2015, on behalf of Plaintiff Manan Bhatt and all others similarly situated. Mercedes failed to provide the appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter. The notice letter is attached hereto as Exhibit A.

322.   Thus, pursuant to Cal. Civ. Code §§ 1780(a), 1780(e), and 1782(a), Plaintiffs seek, in addition to equitable relief, actual damages, restitution, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## NINTH CAUSE OF ACTION
### (Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*)

323.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

324.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Mercedes engaged in conduct that violated each of this statute's three prongs.

325.   Mercedes committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, et seq., by systematically breaching its warranty obligations and by violating the CLRA and the Song-Beverly Consumer Warranty Act as alleged above and below.

326.   Mercedes committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., because the acts and practices described herein, including but not limited to Mercedes's failure to provide a permanent remedy to fix the HVAC System Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members. Mercedes's acts and practices were additionally unfair because the harm to Plaintiffs and Class Members is substantial and is not outweighed by any countervailing benefits to consumers or competition. Further, Mercedes's acts and practices were unfair in that they were contrary to legislatively declared or public policy.

1858235.3

327.   Mercedes committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when it concealed the existence and nature of the HVAC System Defect, while representing in its marketing, advertising, and other broadly disseminated representations that the Class Vehicles were "comfortable," "state of the art," and designed and manufactured to be the "most advanced vehicles on the road" when, in fact, they are not. Mercedes's representations and active concealment of the Defect are likely to mislead the public with regard to the true defective nature of the Class Vehicles.

328.   Mercedes's unfair or deceptive acts or practices occurred repeatedly in the course of Mercedes's trade or business, and were likely to mislead a substantial portion of the purchasing public.

329.   Plaintiffs relied on Mercedes's material misrepresentations and nondisclosures, and would not have purchased/leased, or would have paid less for, the Class Vehicles had they known the truth.

330.   As a direct and proximate result of Mercedes's unfair, unlawful, and deceptive practices, Plaintiffs have lost money.

331.   Plaintiffs and Class Members seek an order enjoining Mercedes from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

1858235.3

**TENTH CAUSE OF ACTION**
**(Breach of Express Warranty Pursuant to Song-Beverly Consumer Warranty Act)**

332.   The Class Vehicles are "consumer goods" under Cal. Civ. Code § 1791(a).

333.   Mercedes is and was at all relevant times a "manufacturer" and seller of the Class Vehicles under Cal. Civ. Code § 1791(j); and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles under Cal. Civ. Code § 1791(i).

334.   Plaintiffs and Class Members bought or leased Class Vehicles designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Mercedes.

335.   Mercedes expressly warranted the Class Vehicles against defects including the HVAC System Defect, as described above, within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.  As described above, the HVAC System in the Class Vehicles is defective. The HVAC System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiffs and Class Members.  Mercedes knew of the HVAC System Defect when it expressly warranted the Class Vehicles, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class

Vehicles had the Defect, and induced Plaintiffs and Class Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

336. Mercedes is obligated, under the terms of its express warranties and pursuant to Cal. Civ. Code §§ 1793.2 and 1795.4, to repair and/or replace the defective HVAC System at no cost to Plaintiffs and Class Members.

337. Mercedes breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the HVAC System Defect.

338. Mercedes breached its express warranties by failing to repair the Class Vehicles under warranty and by failing to provide to Plaintiffs or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Vehicles to Plaintiffs and Class Members.

339. As more fully detailed above, Mercedes was provided with appropriate notice and has been on notice of the Defect and of its breach of its express written warranties from various sources, including Plaintiffs.

340. Plaintiffs have given Mercedes a reasonable opportunity to cure its failures with respect to its warranties, and Mercedes has failed to do so.

341. Affording Mercedes any further opportunity to cure their breach of written warranties is unnecessary and futile here.

342.   Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because Mercedes has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

343.   Accordingly, recovery by the Class Members is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

344.   Any attempt by Mercedes to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unenforceable and void pursuant to Cal. Civ. Code § 1790.1.

345.   As a direct and proximate result of Mercedes's breach of its express warranties, Plaintiffs and Class Members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

346.   Pursuant to Cal. Civ. Code § 1794 and 1795.4, Plaintiffs and Class Members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

## ELEVENTH CAUSE OF ACTION
### (Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)

347.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

348.   Mercedes's Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

349.   Mercedes is a "manufacturer" within the meaning of Cal. Civ. 11Code § 1791(j).

350.   Plaintiffs and Class Members who purchased or leased their Class Vehicles within the State of California are "buyers" and "lessees" within the meaning of Cal. Civ. Code §§ 1791(b) and (h).

351.   Mercedes impliedly warranted to Plaintiffs and Class Members that its Vehicles were "merchantable" within the meaning of Cal. Civ. Code   §§ 1791.1(a) and 1792.

352.   Mercedes impliedly warranted to Plaintiffs and Class Members that it would repair or replace any defective products, including the defective HVAC System that produces the moldy odor.

353.   The propensity of the HVAC System Defect to create a noxious and foul moldy odor renders the Class Vehicles to not be of the quality that a buyer or lessee would reasonably expect, and therefore not merchantable.

354.   The Class Vehicles do not conform to the promises or affirmations of fact made by Mercedes in its promotional materials and vehicle owner manuals in

that the HVAC System Defect creates an environment in the Class Vehicles' cabin that is neither "comfortable" nor the product of "state-of-the-art engineering."

355.   In violation of Cal. Civ. Code § 1791.1(a), Mercedes breached its implied warranty by selling/leasing Class Vehicles that were defective and refusing to permanently replace and/or repair the defective HVAC Systems.

356.   The HVAC System Defect has deprived Plaintiffs and Class Members of the benefit of their bargain, and have caused the Class Vehicles to depreciate in value.

357.   Any attempt by Mercedes to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unenforceable and void pursuant to Cal. Civ. Code §§ 1790.1, 1792.3, and 1793.

358.   As a result of Mercedes's breach of its implied warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial and are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §§ 1794 and 1795.4.

**TWELFTH CAUSE OF ACTION**
**Violations of New Jersey's Consumer Fraud Act**
**(N.J. Stat. Ann. § 56:8-1, *et seq.*)**

359.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

360.   Plaintiffs, Class Members, MBUSA, and Daimler are "persons" within the meaning of the NJCFA.

361.   Plaintiffs and Class Members are "consumers" within the meaning of the NJCFA.

362.   At all relevant times material hereto, Mercedes conducted trade and commerce in New Jersey and elsewhere within the meaning of the NJCFA.

363.   The NJCFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

364.   Mercedes has engaged in unlawful, deceptive practices in the sale of the defective HVAC System in the Class Vehicles as alleged in more detail elsewhere herein, including: (1) selling the HVAC System despite knowing it would fail and/or malfunction and that Mercedes was unable or unwilling to remedy the failure; and (2) failing to disclose and/or concealing this known defect.

365.   Mercedes knew of the HVAC System Defect prior to the sale/lease of the Class Vehicles, and likely as early as 2008, through sources such as those identified in paragraph 126 *supra*.

366.   Mercedes knowingly and intentionally omitted and failed to disclose material facts to Plaintiffs and Class Members with respect to the HVAC System

- 111 -

Defect, including the fact that, with normal use, the HVAC System would fail and/or malfunction as described elsewhere herein, for example in paragraphs 160-173 *supra*, and/or denying and/or misleading them as to the true cause and remedy of the noxious foul odor.

367.   Mercedes intended to deceive Plaintiffs and Class Members and intended that Plaintiffs and Class Members rely on Mercedes's misrepresentation, omissions, and acts of concealment, so that Plaintiffs and Class Members would purchase or lease the HVAC System and Class Vehicles at a substantial out-of-pocket cost to them.

368.   Plaintiffs and Class Members, like all objectively reasonable consumers, did not expect the HVAC System in their vehicles to cause the growth of mold and mildew within the HVAC System, or emit moldy and noxious odors through the HVAC System vents.

369.   Mercedes had a duty to disclose the HVAC System Defect to Plaintiffs and Class Members, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the HVAC System Defect, because:

a.   Mercedes was in a superior position to know the true state of facts about the HVAC System Defect in the Class Vehicles;

b.     Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the HVAC System Defect until, at the earliest, the first instance of moldy smell occurring in their Vehicles; and

c.     Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

370.   Had Mercedes disclosed all material information regarding the HVAC System to Plaintiffs and Class Members, they would not have purchased or leased the HVAC System and/or their Class Vehicles or would have paid less for them.

371.   Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

372.   Plaintiffs provided any notice that could possibly have been required, as detailed more fully above, *see* paragraph 182, and Mercedes has long been on

notice of the Defect and of its violation of the New Jersey Consumer Fraud Act from various sources.

373.   The foregoing acts, omissions, and practices directly, foreseeably, and proximately caused Plaintiffs and Class Members to suffer ascertainable losses in the form of, inter alia, money spent to purchase the HVAC System and/or their Class Vehicles, as well as diminution in the value of their Class Vehicles as a result of having a defective HVAC System, and they are entitled to recover such damages, together with appropriate penalties, including but not limited to treble damages, attorney's fees, and costs of suit.

## THIRTEENTH CAUSE OF ACTION
### Violation of the New York General Business Law
### N.Y. Gen. Bus. Law § 349

374.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

375.   Plaintiffs and Class Members are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

376.   Defendants are "persons," "firms," "corporations," or "associations" within the meaning of N.Y. Gen. Bus. Law § 349.

377.   The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

1858235.3

Mercedes' conduct directed toward consumers, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

378.   Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

379.   In the course of their business, Mercedes failed to disclose and actively concealed the problems, dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

380.   Mercedes also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective HVAC Systems installed in them.

381.   Mercedes has known of the HVAC Defect since at least 2008.  Prior to installing the Defective HVAC Systems in Class Vehicles, Mercedes knew or should have known of the HVAC Defect, because of complaints made directly and indirectly to them. Mercedes failed to disclose and actively concealed the problems, dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them.

382.   By failing to disclose and by actively concealing the HVAC Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety and quality, Mercedes engaged in unfair or deceptive business practices in violation of the New York GBL.  Mercedes deliberately withheld the information about the propensity of the Defective HVAC Systems to grow mold, require frequent flushes, and emit noxious odors, in order to ensure that consumers would purchase the Class Vehicles, in order to ensure that consumers would purchase the Class Vehicles.

383.   In the course of Mercedes' business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues, quality issues, and serious defect discussed above. Mercedes compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective HVAC Systems installed in them were safe, reliable, and of high quality, state-of-the-art, and by claiming to be reputable manufacturers that value safety and quality.

384.   Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective HVAC Systems

1858235.3

installed in them, the quality of Mercedes' brands, and the true value of the Class Vehicles.

385. Mercedes intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective HVAC Systems installed in them with an intent to mislead Plaintiffs and Class Members.

386. Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them. Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of. And Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

387. Mercedes knew or should have known that their conduct violated the New York GBL.

388. As alleged above, Mercedes made material statements about the safety, quality, and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them that were either false or misleading. Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "sophisticated" and "comfortable", despite their knowledge of the HVAC Defect or their failure to reasonably investigate it.

389.   To protect their profits and to avoid remediation costs and public relations problems, Mercedes concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them and their consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving defective vehicles.

390.   Mercedes owed Plaintiffs a duty to disclose the true quality, safety and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them because Mercedes:

     a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

     b.   Intentionally concealed the foregoing from Plaintiffs; and/or

     c.   Made incomplete representations about the quality, safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

391.   Because Mercedes fraudulently concealed the HVAC Defect in Class Vehicles, resulting in negative publicity once the HVAC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In addition, the presence of noxious malodor requiring flushes in the Class Vehicles makes them

less valuable and attractive to potential purchasers in the used market, thereby further diminishing Class Vehicles' value.  In light of the stigma attached to Class Vehicles by Mercedes' conduct, the odors and frequent flushes needed by Class Vehicles, they are now worth significantly less than they otherwise would be.

392.   Mercedes' failure to disclose and active concealment of the problems and risks posed by the Defective HVAC System in Class Vehicles were material to Plaintiffs and Class Members.  A vehicle made by a reputable manufacturer of quality and safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of poor-quality unsafe vehicles that conceals defects rather than promptly remedies them.

393.   Plaintiffs and Class Members suffered ascertainable loss caused by Mercedes' misrepresentations and their failure to disclose material information. Had they been aware of the HVAC Defect that existed in the Class Vehicles, and Mercedes' complete disregard for quality and performance, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of Mercedes' misconduct.

394.   Mercedes' violations present a continuing risk to Plaintiffs as well as to the general public.  Mercedes' unlawful acts and practices complained of herein

affect the public interest.

395.   As a direct and proximate result of Mercedes' violations of the New York GBL, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

396.   Plaintiffs and Class Members seek punitive damages against Mercedes because Mercedes' conduct was egregious.  Mercedes misrepresented the quality, safety and reliability of millions of Class Vehicles and/or the Defective HVAC Systems installed in them, concealed the HVAC Defect in millions of them, deceived Plaintiffs and Class Members on the defect and remedies, and concealed material facts that only Mercedes knew, all to avoid the expense and public relations problems of correcting the flaw in millions of Class Vehicles. Mercedes' egregious conduct warrants punitive damages.

397.   Because Mercedes' willful and knowing conduct caused injury to the Plaintiffs and Class Members, Plaintiffs and Class Members seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Mercedes' deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

1858235.3

## FOURTEENTH CAUSE OF ACTION
### Violation of the New York General Business Law
### N.Y. Gen. Bus. Law § 350

398.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint

399.   Mercedes was and is engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

400.   N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

401.   Mercedes caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Mercedes, to be untrue and misleading to consumers and Class Members.

402.   Mercedes has violated § 350 because the misrepresentations and omissions regarding the HVAC Defect, and Mercedes' failure to disclose and

active concealing of the problems, dangers and risks posed by the Class Vehicles, as set forth above, were material and likely to deceive a reasonable consumer.

403.   Class Members have suffered an injury, including the loss of money or property, as a result of Mercedes' false advertising.  In purchasing or leasing Class Vehicles with the Defective HVAC Systems installed in them, Plaintiffs and Class Members relied on the misrepresentations and/or omissions of Mercedes with respect to the quality, safety and reliability of the Class Vehicles.  Mercedes' representations were false and/or misleading because the concealed the HVAC Defect and quality issues seriously undermine the value of the Class Vehicles. Had Plaintiffs and Class Members known this, they would not have purchased or leased their vehicles and/or paid as much for them.

404.   Pursuant to N.Y. Gen. Bus. Law § 350e, Class Members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each Class Member. Because Mercedes' conduct was committed willfully and knowingly, Class Members are entitled to recover three times actual damages, up to $10,000, for each Class Member.

1858235.3

405.   Class Members also seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law § 350.

## FIFTEENTH CAUSE OF ACTION
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.***

406.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

407.   Defendants are "persons" as that term is defined in 815 ILCS 505/1(c).

408.   Plaintiffs and Class Members are "consumers" as that term is defined in 815 ILCS 505/1(e).

409.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

- 123 -

410.    Mercedes participated in misleading, false, or deceptive acts that violated the Illinois CFA.  By failing to disclose and actively concealing the dangers and risks posed by the Defective HVAC Systems, Mercedes engaged in deceptive business practices prohibited by the Illinois CFA.

411.    In the course of their business, Mercedes failed to disclose and actively concealed the problems, and risks posed by the Defective HVAC Systems installed in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

412.    Mercedes also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective HVAC Systems installed in them.

413.    Mercedes has known of the HVAC Defect since at least 2008.  Prior to installing the Defective HVAC Systems in their vehicles, Mercedes knew or should have known of the HVAC Defect, because of complaints made directly and indirectly to them.  Defendants failed to disclose and actively concealed the problems and risks posed by the Defective HVAC Systems in Class Vehicles

- 124 -

414.   By failing to disclose and by actively concealing the HVAC Defect in the Class Vehicles, by marketing them as sophisticated and comfortable, and by presenting themselves as reputable manufacturers that value safety and quality, Mercedes engaged in unfair or deceptive business practices in violation of the Illinois CFA.  Mercedes deliberately withheld the information about the propensity of the Defective HVAC to grow mold, require frequent flushes, and emit noxious odors, in order to ensure that consumers would purchase the Class Vehicles.

415.   In the course of Mercedes' business, it willfully failed to disclose and actively concealed the problems plaguing HVAC Defect discussed above. Mercedes compounded the deception by repeatedly asserting that the Class Vehicles and/or the Mercedes HVAC Systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety and quality.

416.   Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, performance and reliability of Class Vehicles and/or the Defective HVAC

Systems installed in them, the quality of Mercedes' brands, and the true value of the Class Vehicles.

417.   Mercedes intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective HVAC Systems installed in them with an intent to mislead Plaintiffs and Class Members.

418.   Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

419.   Mercedes knew or should have known that its conduct violated the Illinois CFA.

420.   As alleged above, Mercedes made material statements about the quality and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them that were either false or misleading.  Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "sophisticated" and "comfortable", despite their knowledge of the HVAC Defect or their failure to reasonably investigate it.

- 126 -

1858235.3

421.   To protect their profits and to avoid repair and warranty costs, Mercedes concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving defective vehicles.

422.   Mercedes owed Plaintiffs a duty to disclose the true quality and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them because Mercedes:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the quality and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

423.   Because Mercedes fraudulently concealed the HVAC Defect in Class Vehicles, resulting in negative publicity once the HVAC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In addition, the presence of noxious malodor requiring cleanings/treatments in the Class Vehicles makes them less valuable and attractive to potential purchasers in the used market,

- 127 -

thereby further diminishing Class Vehicles' value. In light of the stigma attached to Class Vehicles by Mercedes' conduct, the odors and frequent flushes needed by Class Vehicles, they are now worth significantly less than they otherwise would be.

424. Mercedes' failure to disclose and active concealment of the problems with the Defective HVAC System in Class Vehicles were material to Plaintiffs and Class Members. A vehicle made by a reputable manufacturer of quality and safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of low-quality and unsafe vehicles that conceals defects rather than promptly remedies them.

425. Plaintiffs and Class Members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information. Had they been aware of the HVAC Defect that existed in the Class Vehicles, and Mercedes' complete disregard for quality and performance, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of Mercedes' misconduct.

1858235.3

426.    Mercedes' violations present a continuing risk to Plaintiffs as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

427.    As a direct and proximate result of Mercedes' violations of the Illinois CFA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

428.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs and Class Members seek monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or were grossly negligent.

429.    Plaintiffs also seek an order enjoining Mercedes' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

### SIXTEENTH CAUSE OF ACTION
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510/1, *et seq.*

430.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

431.    Illinois's Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), 815 ILCS 510/2, prohibits deceptive trade practices, including among others, "(2)

- 129 -

caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …; (7) represent[ing] that goods or services are of a particular standard, quality, or grade … if they are of another; … (9) advertis[ing] goods or services with intent not to sell them as advertised; … [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

432.   Defendants are "persons" as defined in 815 ILCS 510/1(5).

433.   In the course of Defendants' business, Mercedes failed to disclose and actively concealed the HVAC Defect in the Class Vehicles as described above. Accordingly, Mercedes engaged in deceptive trade practices as defined in 815 ILCS 510/2, including representing that the Class Vehicles and/or the Defective HVAC Systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and otherwise engaging in conduct likely to deceive.

1858235.3

434.   Mercedes intended for Plaintiffs and Class Members to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged hereinabove.

435.   Mercedes' actions as set forth below and above occurred in the conduct of trade or commerce.

436.   Mercedes' conduct proximately caused injuries to Plaintiffs and Class Members.

437.   Plaintiffs and Class Members were injured as a result of Defendants' conduct in that Plaintiffs and Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

438.   Plaintiffs seek an order enjoining Mercedes' deceptive practices, attorneys' fees, and any other just and proper relief available under the Illinois UDTPA per 815 ILCS 510/3.

### SEVENTEENTH CAUSE OF ACTION
### Violation of the Missouri Merchandising Practices Act
### Mo. Rev. Stat. §§ 407.010 *et seq.*

439.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

- 131 -

1858235.3

440.   Plaintiffs and Defendants are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

441.   Mercedes engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

442.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise."  Mo. Rev. Stat. § 407.020.

443.   In the course of its business, Mercedes failed to disclose and actively concealed the HVAC Defect in Class Vehicles as described herein.  By failing to disclose the HVAC Defect or facts about the foul odors described herein known to them or that were available to Mercedes upon reasonable inquiry, Mercedes deprived consumers of all material facts about the safety, use, and functionality of their vehicle.  By failing to release material facts about the HVAC Defect, Mercedes curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers. 15 Mo. Code of Serv. Reg. § 60-9.110.  Moreover, Mercedes has otherwise engaged in activities with a tendency or capacity to deceive.  Mercedes

- 132 -

also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective HVAC Systems installed in them.

444.   Mercedes has known of the HVAC Defect in Class Vehicles since at least 2008. Prior to installing the Defective HVAC System in Class Vehicles, Mercedes knew or should have known of the HVAC Defect, because of the various complaints made directly and indirectly to Mercedes as described herein, and Mercedes designed and/or manufactured Class Vehicles.  Mercedes failed to disclose and actively concealed the problems posed by the Class Vehicles and/or the Defective HVAC Systems installed in them.

445.   By failing to disclose and by actively concealing the HVAC Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting itself as reputable manufacturers that value safety and/or quality, Mercedes engaged in unfair or deceptive business practices in violation of the Missouri MPA.  Mercedes deliberately withheld the information about the propensity of the Defective HVAC System to grow mold, require frequent flushes,

and emit noxious odors, in order to ensure that consumers would purchase the Class Vehicles.

446.   In the course of Mercedes' business, it willfully failed to disclose and actively concealed the various issues caused by and lack of available fix for the serious defect discussed above. Mercedes compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective HVAC Systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value quality and/or safety. Further, Mercedes failed to disclose and actively concealed that it was aware of the odor issue posed by the Defective HVAC System.

447.   Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, comfort, and reliability of Class Vehicles and/or the Defective HVAC Systems installed in them, the quality of Mercedes' brands, and the true value of the Class Vehicles.

448.   Mercedes' intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective HVAC Systems installed in

them with an intent to mislead Plaintiffs and Class Members, including without limitation by failing to disclose the HVAC Defect in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Mercedes about the safety, quality or reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to 15 Mo. Code of Serv. Reg. §60-9.090.

449.   Because Mercedes knew or believed that its statements regarding safety and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them were not in accord with the facts and/or had no reasonable basis for such statements in light of their knowledge of the HVAC Defect, Mercedes engaged in fraudulent misrepresentations pursuant to 15 Mo. Code of Serv. Reg.60-9.100.

450.   Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes often charged for repairs which

1858235.3

it knew or should have known to be temporary fixes that did not remedy the defect. Such acts are unfair practices in violation of 15 Mo. Code of Serv. Reg. 60-8.020.

451.   Mercedes knew or should have known that its conduct violated the Missouri MPA.

452.   As alleged above, Mercedes made material statements about the safety, quality, and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them that were either false or misleading.  Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe," "the best or nothing," "comfortable," "state-of-the-art," and "sophisticated", despite their knowledge of the HVAC Defect or their failure to reasonably investigate it.

453.   To protect their profits and to avoid warranty and cleanings/treatment costs, remediation costs, and public relations problems, Mercedes concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving defective vehicles.

454.    Mercedes owed Plaintiffs a duty to disclose the true safety, quality, and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them because Mercedes:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from Plaintiffs; and/or

c.    Made incomplete representations about the safety, quality, and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

455.    Because Mercedes fraudulently concealed the HVAC Defect in Class Vehicles, resulting in negative publicity once the HVAC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In addition, the presence of noxious malodor requiring cleanings/treatments in the Class Vehicles makes them less valuable and attractive to potential purchasers in the used market, thereby further diminishing Class Vehicles' value.  In light of the stigma attached to Class Vehicles by Mercedes' conduct, the odors and frequent flushes needed by Class Vehicles, they are now worth significantly less than they otherwise would be.

456.   Mercedes' failure to disclose and active concealment of the problems and risks posed by the Defective HVAC Systems in Class Vehicles were material to Plaintiffs and Class Members.  A vehicle made by a reputable manufacturer of safe, quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe, poor quality vehicles that conceals defects rather than promptly remedies them.

457.   Plaintiffs and Class Members suffered ascertainable loss caused by Mercedes' misrepresentations and their failure to disclose material information.  Had they been aware of the HVAC Defect that existed in the Class Vehicles, and that they would have to pay for frequent flushes, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of Mercedes' misconduct.

458.   Mercedes' violations present a continuing risk to Plaintiffs, to Class Members, as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

459.   As a direct and proximate result of Mercedes' violations of the Missouri MPA, Plaintiffs and the Class Members have suffered injury-in-fact and/or actual damage.

1858235.3

460.    Mercedes is liable to Plaintiffs and Class Members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Mercedes' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## EIGHTEENTH CAUSE OF ACTION
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201, *et seq.***

461.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

462.    Plaintiffs are "consumers" within the meaning of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

463.    Mercedes is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

464.    FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).  Mercedes participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

465.    In the course of their business, Mercedes failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the

- 139 -

Defective HVAC System installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

466.   Mercedes also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective HVAC System installed in them.

467.   Mercedes has known knew of the HVAC System Defect prior to the sale/lease of the Class Vehicles, and likely as early as 2008, through sources such as those identified in paragraph 126 *supra*. Mercedes failed to disclose and actively concealed facts such as that the HVAC Systems installed in Class Vehicles would fail and/or malfunction as described herein, and denied and/or misled as to the tendency of the Class Vehicles to develop noxious foul odors and cause of and remedy of the noxious foul odor caused by the Defective HVAC Systems installed in them.

468.   By failing to disclose and by actively concealing the HVAC System Defect in the Class Vehicles and/or the Defective HVAC System installed in them, by marketing them as more fully detailed above, *see* paragraphs 160-173 *supra*, Mercedes engaged in unfair or deceptive business practices in violation of the

FDUTPA. Mercedes deliberately withheld the information about the propensity of HVAC Systems to grow mold, require frequent flushes, and emit noxious odors, in order to ensure that consumers would purchase the Class Vehicles, in order to ensure that consumers would purchase the Class Vehicles.

469.   In the course of Mercedes' business, it willfully failed to disclose and actively concealed the HVAC System Defects discussed above. Mercedes compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective HVAC Systems installed in them were not defective, were not prone to mold growth and forming noxious odors, did not have odors, charging for "fixes" which were in fact temporary band-aids, denying and/or deflecting claims for fixes, and/or that filter changes were all that were needed to maintain the HVAC System and by claiming to be reputable manufacturers that value quality, reliability and comfort.

470.   Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true quality, reliability and comfort of Class Vehicles and/or the Defective HVAC

1858235.3

Systems installed in them, the quality of Mercedes' brands, and the true value of the Class Vehicles.

471.   Mercedes intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective HVAC Systems installed in them with an intent to mislead Plaintiffs and Class Members.

472.   Mercedes knew or should have known that its conduct violated the FDUTPA.

473.   As alleged above, Mercedes made material statements about the quality, reliability and comfort of the Class Vehicles and/or the Defective HVAC Systems installed in them that were either false or misleading.  Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "state-of-the-art" and "the best or nothing," despite its knowledge of the HVAC System Defect or their failure to reasonably investigate it.

474.   To protect its profits and to avoid remediation costs and public relations problems, Mercedes concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them and their symptoms and consequences, and allowed unsuspecting new and used car

purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving defective smelly vehicles.

475.   Mercedes owed Plaintiffs a duty to disclose the true safety, performance and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them because Mercedes:

      a.     Possessed exclusive knowledge of the HVAC System Defect;

      b.     Intentionally concealed the foregoing from Plaintiffs; and/or

      c.     Made incomplete representations about the safety, performance and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

476.   Because Mercedes fraudulently concealed the HVAC Defect in Class Vehicles, resulting in negative publicity once the HVAC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In addition, the presence of noxious malodor requiring cleanings/treatments in the Class Vehicles makes them less valuable and attractive to potential purchasers in the used market, thereby further diminishing Class Vehicles' value.  In light of the stigma attached to Class Vehicles by Mercedes' conduct, the odors and frequent flushes needed by Class Vehicles, they are now worth significantly less than they otherwise would be.

1858235.3

477.   Mercedes' failure to disclose and active concealment of the problems posed by the Defective HVAC System in Class Vehicles were material to Plaintiffs and Class Members.  A vehicle made by a reputable manufacturer of safe, non-foul smelling vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of noxious odor emanating vehicles that conceals defects rather than promptly remedies them.

478.   Plaintiffs and Class Members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the HVAC System Defect that existed in the Class Vehicles, and Mercedes' complete disregard for safety, performance and comfort, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of Mercedes' misconduct.

479.   Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

480.   Plaintiffs and Class Members risk irreparable injury as a result of Mercedes' acts and omissions in violation of the FDUTPA, and these violations present a continuing risk to Plaintiffs, Class Members, as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

481.   As a direct and proximate result of Mercedes' violations of the FDUTPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

482.   Plaintiffs and Class Members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

483.   Plaintiffs also seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

## NINTEENTH CAUSE OF ACTION
### Fraud by Concealment

484.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

485.   Mercedes concealed and suppressed material facts concerning the quality of the Class Vehicles.

- 145 -

486.   Mercedes concealed and suppressed material facts concerning the quality of the HVAC Systems in the Class Vehicles.

487.   Mercedes concealed and suppressed material facts concerning the serious HVAC System Defect causing Class Vehicles' HVAC Systems to emit strong foul odors. Upon information and belief, the Defect lies in the evaporator and evaporator box deep within the dashboards of the Class Vehicles. Mercedes knew that Plaintiffs and Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing or leasing the vehicles. Mercedes furthered and relied upon this lack of disclosure to further promote payments for temporary measures to abate (but not eliminate) the moldy smells, and in some cases accused Plaintiffs and Class Members of causing the problem – all the while concealing the true nature of the Defect from Plaintiffs and Class Members. Mercedes further denied the very existence the Defect and the propensity of foul odors when Plaintiffs and Class Members complained of the Defect.

488.   Mercedes concealed and suppressed material facts that point to the nature of the Defect being a faulty evaporator design, a $400 to $800 or more part requiring extensive labor and parts to replace and instead pushed "fixes" consisting of filter changes and cleanings which are temporary at best.

- 146 -

489.   Mercedes committed the foregoing acts and omissions in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Mercedes vehicles, that the Class Vehicles were world class, comfortable, warranted and reliable vehicles and concealed the information in order to prevent harm to Mercedes and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in the decision to purchase or lease the Class Vehicles.

490.   Mercedes had a duty to disclose the Defect in the Class Vehicles because they were known and/or accessible only to Mercedes; Mercedes had superior knowledge and access to the facts; and Mercedes knew the facts were not known to, or reasonably discoverable, by Plaintiffs and Class Members. Mercedes also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, comfort, and usability. Even when faced with complaints regarding the

Defect, Mercedes misled and concealed the true cause of the symptoms complained of. As a result, Class Members were misled as to the true condition of the Class Vehicles once at purchase/lease and again when the moldy smell was complained of to Mercedes. The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose it was purchased, are material concerns to a consumer.

491.   Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, avoid recalls that would hurt the brand's image and cost money, and did so at the expense of Plaintiffs and Class Members.

492.   On information and belief, Mercedes has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class Members and conceal material information regarding the Defect that exists in the Class Vehicles.

493.   Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did had they known of the concealed and/or suppressed facts, i.e., they would not have purchased or leased Class Vehicles, or would have paid less for them. Plaintiffs and Class Members' actions were

justified. Mercedes was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

494.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class Members sustained damage because they negotiated and paid value for the Class Vehicles not considerate of the Defect that Mercedes failed to disclose and paid for temporary measures and replacement parts to attempt to remedy the Defect. Had they been aware of the concealed Defect that existed in the Class Vehicles, Plaintiffs would have paid less for their vehicles or would not have purchased or leased them at all.

495.   Accordingly, Mercedes is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

496.   Mercedes's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and Class Members' rights and well-being to enrich Mercedes. Mercedes's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## TWENTIETH CAUSE OF ACTION
### Unjust Enrichment

497.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

498.   Mercedes has been unjustly enriched by the Plaintiffs and Class Members through Plaintiffs' and Class Members' purchasing and/or leasing Class Vehicles from Mercedes and purchasing replacement parts and service from Mercedes that Plaintiffs and Class Members would not have purchased but for the HVAC System Defect and Mercedes's concealment of the same.

499.   Plaintiffs and Class Members unknowingly conferred a benefit on Mercedes of which Mercedes had knowledge, since Mercedes was aware of the defective nature of its Class Vehicles' HVAC Systems and the resultant moldy odor problems, but failed to disclose this knowledge and misled Plaintiffs and the Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.

500.   The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Mercedes to retain the benefit of revenue that it unfairly obtained from Plaintiffs and Class Members. This revenue include the premium price Plaintiffs and the Class paid for the Class Vehicles and the cost of the parts and service bought from Mercedes used to temporarily alleviate the moldy odor emitted by the HVAC Systems.

501.    Plaintiffs and the other members of the Class, having been damaged by Mercedes's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Mercedes to their detriment.

## RELIEF REQUESTED

502.    Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Mercedes, as follows:

a.      an order certifying the proposed Class and/or any appropriate subclasses, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

b.      a declaration that the HVAC Systems in Class Vehicles have a Defect that results in the emission of a moldy smell into the Vehicle's cabin, and that this Defect requires disclosure;

c.      a declaration that Mercedes must, at its own expense, notify owners and lessees of Class Vehicles of the Defect;

d.      a declaration that any limitation on the Class Vehicles' warranty that would avoid responsibility for the Defect is void;

e.      an order enjoining Mercedes to reassess all prior warranty claims related to smells in vehicle cabins;

- 151 -

f.      an ordering enjoining Mercedes, upon a Class Member's request, to pay the cost of inspection to determine whether the Defect is manifest, with any coverage disputes adjudicated by a special master.

g.      an order enjoining Mercedes from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and to permanently repair the Class Vehicles so that they no longer possess the HVAC System Defect;

h.      an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

i.      an order requiring Mercedes to disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten revenue it received from the sale or lease of the Class Vehicles, or make full restitution thereof to Plaintiffs and Class Members;

j.      an award of attorneys' fees and costs, as allowed by law;

k.      an award of pre-judgment and post-judgment interest, as provided by law;

l.      leave to amend this Complaint to conform to the evidence produced at trial; and

- 152 -

m.      such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

503.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a

trial by jury of any and all issues in this action so triable of right.

Dated: December 20, 2019          Respectfully submitted,

By:_____
          Ketan A. Patel

Ketan A. Patel (State Bar Number 121099)
kp@personalinjury-ga.com
CORPUS LAW PATEL, LLC
P.O. Box 724713
Atlanta, Georgia 31139
Telephone: (678) 597-8020
Facsimile: (678) 826-4700

Jonathan D. Selbin (admitted *pro hac vice*) jselbin@lchb.com
Annika K. Martin (admitted *pro hac vice*) akmartin@lchb.com
Sean A. Petterson spetterson@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

*Attorneys for Plaintiffs and the Proposed
Class*

- 154 -

# EXHIBIT A

**Lieff
Cabraser
Heimann &
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

August 17, 2015

Jonathan D. Selbin
Partner
jselbin@lchb.com

## BY CERTIFIED MAIL RETURN RECEIPT REQUESTED

Marco DeSanto                         Gail E. Slaughter
General Counsel and Secretary         Associate General Counsel
One Mercedes Drive                    One Mercedes Drive
Montvale, NJ 07645                    Montvale, NJ 07645

RE:     Mercedes-Benz Moldy HVAC Units

Dear: Mr. DeSanto and Ms. Slaughter:

We write on behalf of Manan Bhatt, owner of a 2010 Mercedes-Benz C300W Sports Sedan. From early on in his ownership of the vehicle, Mr. Bhatt has experienced occurrences of moldy odors emanating from, his vehicle's heating, ventilation, and air conditioning ("HVAC") system. Mr. Bhatt took his vehicle to Mercedes-Benz of South Bay in Torrance, California to have this repaired, but was told that this issue is not covered under warranty, and that he would need to pay approximately $160 to have the problem fixed by having the cabin air filter replaced. When the moldy odor returned several months later, Mr. Bhatt was charged $56 for another temporary repair. Mr. Bhatt's vehicle was and is still under warranty.

We have since learned of numerous individuals who have experienced the same problem. One of these individuals owns a 2011 Mercedes-Benz C300 and was charged $184 for a temporary fix of the problem. Another owns a 2011 Mercedes-Benz E350 and was also charged $184 to temporarily fix the problem. Another owns a 2008 Mercedes-Benz C300 and was charged $200 to temporarily fix the problem. Each of these vehicles was and is under warranty. Each of these fixes was impermanent in that they did not repair the underlying defect causing the moldy odors.

Further investigation has confirmed that this problem is wide-spread amongst Mercedes-Benz vehicle owners. Specifically, there have been numerous complaints about occurrences of mold in the HVAC units of C Class, E Class, M Class, GLK Class, GL Class, CLA Class, and SL Class vehicles, many of which were under warranty at the time the mold first occurred.

Because of this, we write on behalf of Mr. Bhatt and others similarly situated to notify you that we believe that Mercedes-Benz USA has breached express and/or implied warranties, committed fraud, unjustly enriched itself, and engaged in unfair and deceptive acts and other unlawful practices in connection with its manufacturing, advertising, marketing, and/or sale of Mercedes-Benz vehicles containing an HVAC system.

August 17, 2015
Page 2

Mr. Bhatt alleges that Mercedes-Benz USA knew of the tendency of its vehicles to develop mold and willfully concealed this defect from consumers. Furthermore, Mercedes-Benz breached express and implied warranties by failing to disclose the defect and charging vehicle owners to repair the defect. In addition to constituting common law fraud and breach of warranties, these acts and practices also violate the California Song-Beverly Consumer Warranty Act, Cal. Civil Code § 1791, *et. seq.*,

On behalf of Mr. Bhatt and others similarly situated, we hereby demand that within thirty (30) days of receiving this letter, Mercedes-Benz agree to (1) inform us what actions, if any, Mercedes-Benz has taken to repair, fix, or rectify this issue in affected vehicles, (2) cease the deceptive practices described above, (3) correct, repair, replace, or otherwise fix the defective HVAC systems in Mr. Bhatt and other's affected vehicles at no cost, (4) compensate Mr. Bhatt and all others harmed by these practices by reimbursing those individuals who paid for repairs out of pocket, and (5) repair this problem under warranty going forward. If Mercedes-Benz refuses to provide the demanded relief within 30 days, we will file a class action to seek from Mercedes-Benz compensatory and punitive damages, restitution, and any appropriate injunctive/equitable relief.

If you would like to discuss resolving these violations on a class-wide basis without the need for litigation, I invite you to contact me at any time. You can reach me at (212) 355-9500 ext. 6604, or jselbin@lchb.com. I look forward to hearing from you.

Very truly yours,

Jonathan D. Selbin

JDS/JJT

1255744.1

# EXHIBIT B



# Service and Warranty Information 2013

C- Class, CL- Class, CLS- Class, E- Class, G- Class, GL- Class, GLK- Class, M- Class, S- Class, SL- Class, SLK- Class, SLS- Class



## QUICK REFERENCE TO WARRANTY COVERAGE

(Complete warranty coverage starts on (▷ Page 11)

| | |
|---|---|
| **BASIC WARRANTY** | 4 Years/50,000 Miles |
| **TIRES, WHEEL ALIGNMENT AND BALANCING, BRAKE DISCS AND PADS, GLASS, WIPER BLADES AND INSERTS** | 1 Year/12,000 Miles |
| **EMISSION PERFORMANCE/CONTROL** (Federal) | 2 Years/24,000 Miles |
| **EMISSION PERFORMANCE/CONTROL** (Federal) | 8 Years/80,000 Miles (Limited Coverage - please refer to text) |
| **EMISSION PERFORMANCE** (California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington) | 3 Years/50,000 Miles |
| **EMISSION CONTROL** (California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington) | 7 Years/70,000 Miles (Limited Coverage - please refer to text) |
| **EMISSION PERFORMANCE** Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (Oregon, Pennsylvania and Washington) | 3 Years/50,000 Miles |
| **EMISSION CONTROL** Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (Oregon, Pennsylvania and Washington) | 7 Years/70,000 Miles (Limited Coverage - please refer to text) |
| **EMISSION PERFORMANCE/CONTROL** Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont) | 15 Years/150,000 Miles (Limited Coverage - please refer to text) |
| **EMISSION PERFORMANCE/CONTROL** High Voltage Battery - E400 HYBRID and S400 HYBRID Only (California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont) | 10 Years/150,000 Miles |

**Years in Service**          1  2  3  4  5  6  7  8  9  10  11  12  13  14  15

**Service and Warranty**

*Dear Mercedes-Benz Owner:*

*As an authorized Mercedes-Benz Center, we are dedicated to providing you with unparalleled Commitment to Excellence in Sales and Service.*

*We will always do everything possible to live up to this commitment.*

_____

Authorized Mercedes-Benz Center's Signature and Stamp

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 162 of 289

**Service and Warranty**

Name:_____

Address:_____

City, State, ZIP Code:_____

Sales Department Hours:_____

Telephone:_____ Fax:_____ E-mail:_____

Service Department Hours:_____

Telephone:_____ Fax:_____ E-mail:_____

Parts Department Hours:_____

Telephone:_____ Fax:_____ E-mail:_____

Additional Customer Assistance/Services:_____

**Service and Warranty**

Model:

Serial Number:

VIN:

Owner:

Address:

City/State/ZIP:

European Delivery ☐                     Domestic Delivery ☐

Delivery/Warranty:          Mo. _____ Day _____ Yr. _____

Selling authorized Mercedes-Benz Center Code:

LIMITED WARRANTY TERMS: The first to occur of 4 Years or 50,000 miles from date of delivery or when put into service. (See details starting on (▷ Page 11) of this booklet.)

OTHER:

_____
Owner's Signature

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 164 of 289

**Service and Warranty**

NEW VEHICLE
PRE-DELIVERY
INSPECTION
PERFORMED

Month _____ Day _____ Year _____

_____
Service Manager's Signature

Delivery and Owner Instructions

Owner instructed in operation of vehicle per Mercedes-Benz
New Vehicle Delivery Program                                    ☐

Service and Warranty Information Booklet, Operator Manuals
and Maintenance Booklet reviewed with owner                    ☐

Owner introduced to Service Department Staff                   ☐

Owner instructed on:   Maintenance Schedule                    ☐
                       Tire Rotation                           ☐
                       mbrace                                  ☐
                       Roadside Assistance                     ☐

_____
Mercedes-Benz Sales Representative's Signature

**Service and Warranty**

To the Owner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

New Vehicle Limited Warranty  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Emission Control System Maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Emission Systems Warranty (Federal) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Emission Performance Warranty (Federal) . . . . . . . . . . . . . . . . . . . . . . . . . 21

Warranted Emission Related Components – Gasoline or Flexible Fuel Engine . . . . . . 26

Warranted Emission Related Components – BlueTEC Diesel Engine with DEF . . . . . . 28

Emission Control System Warranty
(CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA) . . . . . . . . . . . . . . . . . . . . . . 30

Notice of Address Change or Pre-Owned Vehicle Purchase  . . . . . . . . . . . . Centerfold

Defect Warranty Coverage – Gasoline or Flexible Fuel Engine
(CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA) . . . . . . . . . . . . . . . . . . . . . . 38

Defect Warranty Coverage – BlueTEC Diesel Engine with DEF
(CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA) . . . . . . . . . . . . . . . . . . . . . . 42

Defect Warranty Coverage – PZEV, E400 HYBRID and
S400 HYBRID (OR, PA and WA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Emission Control System Warranty PZEV, E400 HYBRID and S400 HYBRID
(CA, CT, MA, MD, ME, NJ, NY, RI and VT ) . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Warranty Emission Related Components PZEV, E400 HYBRID and S400 HYBRID . . . 52

Warranty Enforcement Laws (Lemon Laws) . . . . . . . . . . . . . . . . . . . . . . . . . 54

Important Notice for CA Retail Buyers and Lessees of Mercedes-Benz Vehicles . . . . 57

Questions, Loss of Warranty Booklet, Address Change . . . . . . . . . . . . . . . . . . . 58

To Purchasers of Pre-Owned Mercedes-Benz Vehicles  . . . . . . . . . . . . . . . . . . . 59

Case 1:17-cv-01701-AT    Document 79    Filed 04/08/20    Page 166 of 289

**Service and Warranty**

### General

The subsequent pages of this Service and Warranty Information booklet describe some service requirements and the warranties you receive as a Mercedes-Benz owner.

Your vehicle is covered under the terms of these "Warranties" and your authorized Mercedes-Benz Center will exchange or repair any defective parts in accordance with the terms of such warranties within stated limits.

Please keep this booklet together with the Operator's Manual, Maintenance Booklet and other documents concerning your vehicle so that future owners will have access to this literature if you should sell the vehicle.

See (▷ Page 60) for a list of models covered in this edition.

### Replacement Parts for Your Mercedes-Benz

Genuine Mercedes-Benz parts, exchange units and factory approved accessories are the recommended replacement parts for your Mercedes-Benz vehicle and are available through your authorized Mercedes-Benz Center.

These parts meet the same exacting quality control standards as the original equipment on your vehicle and comply with all applicable Federal and State safety regulations.

Consult your authorized Mercedes-Benz Center for warranty and other details. Also ask your Center about exchange parts under the Mercedes-Benz Exchange Program. These parts cost less than new parts but carry the same warranty terms.

**Service and Warranty**

*As a MERCEDES-BENZ OWNER you deserve service unparalleled in the industry.*

*To meet your service needs, your authorized Mercedes-Benz Center employs a specially factory trained staff using the latest diagnostic and service techniques. Whether it is a small adjustment or major service, your authorized Mercedes-Benz Center will work to accommodate you quickly and efficiently.*

*Finally, should you ever experience an emergency repair situation, our 24-Hour Roadside Assistance Program is only a toll free call away. (1-800-FOR-MERCedes)*

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 168 of 289

**Service and Warranty**

***T H A N K   Y O U . . . for the confidence you have placed in us.***
***We will always do everything possible***
***to continue to earn your trust and goodwill.***

Service and Warranty

```
Business Card

of

Mercedes-Benz Sales Representative

(Insert here)
```

```
Business Card

of

Service Manager

(Insert here)
```

**Items Which Are Covered:**

DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.

ANY AUTHORIZED MERCEDES-BENZ CENTER: Any authorized Mercedes-Benz Center of the owner's choice will perform warranty repairs or replacements. The vehicle should be delivered to an authorized Mercedes-Benz Center during normal service hours. A reasonable time should be allowed after taking the vehicle to an authorized Mercedes-Benz Center for performance of the repair.

WARRANTY PERIOD: This warranty is for 48 months or 50,000 miles, whichever occurs first.

WARRANTY STARTS: The warranty period starts on the date the vehicle is delivered to the first retail purchaser or put in service as an authorized Mercedes-Benz Center demonstrator or Mercedes-Benz USA, LLC (MBUSA) or Mercedes-Benz U.S. International, Inc. (MBUSI) or Mercedes-Benz Research & Development North America, Inc. (MBRDNA) company vehicle.

WHEEL ALIGNMENT AND BALANCING: Wheel alignment and wheel balancing as a result of a manufacturing defect are covered during the first 12 months or 12,000 miles, whichever occurs first, and will be performed by any authorized Mercedes-Benz Center. (▷ Page 14)

TIRES: The tires supplied on your vehicle are covered against defects in material or workmanship for the period of 12 months and/or 12,000 miles from date of delivery or when the vehicle was put in service. Should the tire become unserviceable for either of the above reasons, the tire will be replaced free of charge, including mounting and balancing, provided 1.6 mm of tread depth remains over the entire tread surface. (▷ Page 14)

The tire manufacturer's warranty coverage may extend beyond the Mercedes-Benz coverage. See tire manufacturer's warranty booklet in the owner's literature package or consult with the tire manufacturer's dealer for specific details.

Tire rotations, if applicable to your vehicle's tire configuration, are a required maintenance service. Not performing tire rotations may void the Mercedes-Benz tire warranty coverage.

**Service and Warranty**

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 172 of 289

**Service and Warranty**

**Items Which Are Covered: (cont'd)**

BRAKE PADS AND DISCS: Brake pads anddiscs are covered against defects in material or workmanship for 12 months or 12,000 miles, whichever occurs first. (▷ Page 14)

GLASS:  Glass is warranted against stress cracks for 12 months or 12,000 miles, whichever occurs first. (▷ Page 15)

WIPER BLADES AND INSERTS:  Wiper blades and wiper blade inserts are covered against defects in material or workmanship for 12 months or 12,000 miles, whichever occurs first. (▷ Page 14)

NO CHARGE: Warranty repairs will be made at no charge for parts and labor.

WARRANTY AVAILABLE: This warranty is applicable only in the United States and Puerto Rico. If you take your vehicle to Canada temporarily, such as on vacation, warranty service may be requested from any authorized Mercedes-Benz Center.

In all other countries defects in material and workmanship will be handled in accordance with the terms and limitations of a Limited Warranty of 24 months with unlimited miles.

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 173 of 289

Service and Warranty

This warranty gives you specific legal rights and you may also have other rights which vary from state to state.

EXCEPT FOR THE EMISSION SYSTEMS WARRANTIES, THIS IS THE ONLY WARRANTY GIVEN WITH THE PURCHASE OF A MERCEDES-BENZ VEHICLE. THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED TO THE FIRST TO OCCUR OF 48 MONTHS OR 50,000 MILES FROM THE DATE OF INITIAL OPERATION OR ITS RETAIL DELIVERY, WHICHEVER EVENT SHALL FIRST OCCUR. DAIMLER AG, MERCEDES-BENZ USA, LLC, MERCEDES-BENZ U.S. INTERNATIONAL, INC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH VEHICLE. NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR INDIRECT OR CONSEQUENTIAL DAMAGE SUCH AS DAMAGE OR INJURY TO PERSON OR PROPERTY OR LOSS OF REVENUE WHICH MIGHT BE PAID, INCURRED OR SUSTAINED BY REASON OF THE FAILURE OF ANY PART OR ASSEMBLY WHICH MAY BE REPAIRED OR REPLACED IN ACCORDANCE WITH THE TERMS OF THIS WARRANTY.

Some states do not allow the exclusion or limitation of incidental or consequential damages or limitation on how long an implied warranty lasts, so the above limitation may not apply to you.

Case 1:17-cv-01701-AT3   Document 78   Filed 04/08/20   Page 174 of 289

**Service and Warranty**

## Items Which Are Not Covered:

TIRE DAMAGE: Damage to the tires such as punctures, cuts, snags, bruises, impact damage and breaks resulting from pothole impact, curb impact or from other objects, are not covered. Damage from incorrect inflation, excessive axle load, high speed spinning (when stuck in ice, mud or snow), tire chains, racing or competitive driving events, incorrect mounting or demounting, improper puncture repair, misuse, negligence, alteration and misapplication, are not covered. Rapid or irregular tread wear due to lack of tire rotation according to the recommended intervals specified in your vehicle's maintenance booklet or incorrect wheel alignment or tire balance is not covered. Tread wear out is also not covered.

WHEEL ALIGNMENT:  Adjustments for road crown issues are not covered.

BRAKE PADS AND DISCS: Replacement due to normal wear or as part of regular maintenance is not covered.

WIPER BLADES AND INSERTS: Damaged or worn wiper blades and wiper blade inserts are not covered.

DAMAGE DUE TO ACCIDENTS, MISUSE OR NEGLIGENCE: Accidents or damage from objects striking the vehicle. Misuse of the vehicle such as driving over curbs, overloading, improper operation, storage or transport (Proper use is described in the Operator's Manual).

DAMAGE DUE TO LACK OF MAINTE-NANCE: Lack of proper maintenance as described in the Maintenance Booklet. Use of service parts or fluids, such as paper oil filters or improper engine oil, which are non-approved by MBUSA, will cause engine damage not covered by the warranty.

NORMAL MAINTENANCE IS OWNER'S RESPONSIBILTY:  Cleaning and polishing, lubrication and filters, engine tune-up, replacing worn wiper blades, wiper rubber inserts, brake pads and discs, and clutch discs and pressure plates are some of the normal maintenance services required and are not covered by this warranty. See Maintenance Booklet for details.

Damage caused by the use of improper filters (including oil filters), engine oils, fluids, cleaners, polishes, or waxes is not covered. Original equipment remote control key batteries are covered for the first 90 days from the vehicle warranty start date.

Service and Warranty

**Items Which Are Not Covered: (cont'd)**

DAMAGE DUE TO ALTERATIONS: Altera-
tions by changing or adding to the vehicle
can adversely affect its performance, reli-
ability and longevity and are not covered
by this warranty.

DAMAGE CAUSED BY REPAIR PARTS:
Malfunctions caused by the use of other
than   Genuine Mercedes-Benz parts and
accessories and damages or malfunctions
resulting from poor fuel quality or from
blending additional fuel additives other
than those expressly approved for use in
exceptional circumstances (see vehicle
operator's manual) by MBUSA are not
covered.

DAMAGE CAUSED BY IMPROPER BODY
REPAIRS: Damage or malfunctions caused
by body repairs not performed in accord-
ance with Mercedes-Benz specified repair
procedures or otherwise improperly per-
formed are not covered by this warranty.

ALTERED ODOMETER: No warranty cover-
age shall apply to any vehicle on which the
odometer has been altered and the actual
mileage cannot be determined.

DAMAGE FROM THE ENVIRONMENT:
Parts made from cloth or leather (uphol-
stery, convertible tops, trim items), wood,
paint or chrome which have been affected
by airborne fallout, such as chemical and
tree sap, or by road salt, hail, windstorm
or other environmental factors are not
covered by this warranty.

DAMAGE TO GLASS: Glass breakage or
scratches are not covered unless positive
physical proof of a manufacturing defect
can be established.

EXTRA EXPENSES: This warranty does not
cover payment for loss of use of the vehi-
cle during warranty repairs nor lodging
bills, substitute transportation rentals, or
other travel costs, telephone calls, loss of
pay, or  other economic loss or conse-
quential damages.

CHANGES IN DESIGN: The manufacturer
has reserved the right to make any chang-
es in design or to make additions to, or
upon its products without incurring any
obligations to install the same equipment
on motor vehicles previously built.

RACING OR COMPETITIVE EVENTS:
Your limited warranties do not cover the
costs of repairing damage or conditions
caused by racing, nor do they cover the re-
pair of any defects that are found as the
result of participating in a racing event.

Case 1:17-cv-01701-AT  Document 79  Filed 04/08/20  Page 176 of 289

**Service and Warranty**

### General

Our intention is to repair under warranty, without charge to you, anything that goes wrong with your vehicle during the warranty period which is our fault. All we ask is that you properly maintain and care for the vehicle and that you have warranty repairs performed by an authorized Mercedes-Benz Center.

Please note the difference between "defects" and "damage" as used in the warranty. Defects are covered since we, the distributor are responsible. Conversely, we have no control over damage caused by such things as, but not limited to collision, misuse, and lack of or improper maintenance. Therefore, damage for whatever reason is not covered by the warranty.

**It is the owner's responsibility to maintain the vehicle according to the Maintenance Schedule provided. All maintenance services must be accomplished to keep your warranty coverage valid. When requesting service or repair work under warranty, the owner must present to the authorized Mercedes-Benz Center evidence that the periodic servicing requirements have been accomplished. Receipts covering completion of required servicing should be retained in the event a question arises concerning maintenance.**

**These receipts should be transferred to each subsequent owner of the vehicle. For your convenience, the Maintenance Booklet has been designed to incorporate the signature of your authorized Mercedes-Benz Center upon completion of the required maintenance services.**

**This signature is evidence of completion of the maintenance services and should be kept together with other receipts, repair orders and invoices.**

**If the owner has a warranty claim and can show through receipted invoices that the vehicle has received the required servicing, the authorized Mercedes-Benz Center will perform the warranty work without charging for parts and labor. It is the responsibility of the owner to prove and the authorized Mercedes-Benz Center to judge whether the required maintenance service has been performed.**

MBUSA's obligation is limited to the authorization to exchange or repair at its option such parts which are acknowledged by it to be defective. In case of defective assemblies, factory rebuilt units can be used in exchange instead of their repair. The replaced defective parts or assemblies shall become the property of MBUSA. Warranty repairs do not constitute an extension of the original warranty period for the vehicle or a part thereof.

Case 1:17-cv-01701-AT Document 79 Filed 04/08/20 Page 177 of 289

**Service and Warranty**

### Insurance Write-Off; or Repaired or Replaced Parts

Any vehicle which has been damaged to such an extent that the owner, insurer, financing institution or leasing company determined the vehicle to be a "total loss", "write off" or equivalent, is not covered by this warranty. This includes but is not limited to vehicles issued a "salvage", "scrap", "dismantled" or similar title under any state's law.

Any parts repaired or replaced under an insurance claim or required as a result of events which are not covered under this warranty (see "Items Which Are Not Covered", (▷ Page 14), for example, damages due to accidents, misuse, or negligence, and in either case, any subsequent consequential damage to the vehicle are not covered by this warranty.

### Paint and Other Appearance Items

Defects in paint, trim or other appearance items are normally taken care of during our new vehicle preparation or by the authorized Mercedes-Benz Center during new vehicle inspection. We suggest that if you find any paint or appearance problems that you advise your authorized Mercedes-Benz Center as soon as possible since deterioration due to use and exposure is not covered by the warranty.

**The instructions in your Operator's Manual regarding the care of paint, upholstery, trim items and convertible tops, as applicable, must be followed explicitly to maintain your warranty coverage**.

### Body Repair Information

Due to the materials and assembly procedures used in the production of Mercedes-Benz vehicles, it is strongly recommended that any paint work/body repairs be performed using Genuine Mercedes-Benz parts by repair facilities which have been certified by Mercedes-Benz USA as having the tools, equipment and training necessary to perform such repairs. Mercedes-Benz USA has certified a network of body repair facilities which are qualified to perform both cosmetic and structural repairs to your vehicle.

While the vehicle owner may elect to have repairs (collision damage/paint repair work) performed by any automobile body repair establishment or individual, damage or malfunction caused by body repairs not performed in accordance with Mercedes-Benz specified repair procedures are not covered by the Mercedes-Benz New Vehicle Limited Warranty.

Should your vehicle need paint work/body repair or if you have any questions please contact your authorized Mercedes-Benz Center or call 1-800-FOR-MERCedes.

### Customer Repair Orders

Your servicing authorized Mercedes-Benz Center will give you a copy of the Repair Order on all warranty repairs performed. Please keep this copy with your vehicle records.

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 178 of 289

**Service and Warranty**

### General

The law requires your vehicle to conform to exhaust emission standards. To provide the best vehicle performance and lowest vehicle emissions, you are responsible to see that all recommended maintenance procedures detailed in the Maintenance Booklet are performed at the specified times and mileages. The emission control warranty does not cover failures due solely to owner abuse or lack of proper maintenance.

More frequent maintenance may be needed for vehicles under severe operating conditions such as dusty areas, very short trip driving or trailer towing.

While maintenance service can be performed by any qualified service outlet, we recommend that all maintenance services be performed by your authorized Mercedes-Benz Center who is equipped with the tools, instruments, and literature necessary for correct and systematic performance of these services. Although warranty obligations are not dependent upon the use of any particular brand of replacement parts and you may elect to use non-Genuine Mercedes-Benz parts for replacement purposes, we recommend the use of Genuine Mercedes-Benz parts for service and repairs, since they have been made according to the manufacturer's specifications. It is also important to use only fuels and lubricants meeting factory specifications, since the emission systems warranty does not cover repair or replacement of parts necessitated by failure of such items.

For detailed information concerning emission control system maintenance, please refer to your Maintenance Booklet. If you should desire further information concerning tune-up specifications or emission control system maintenance jobs, we recommend obtaining maintenance-related literature. Such literature is available from either your authorized Mercedes-Benz Center or directly from Mercedes-Benz USA, LLC.

## General

In accordance with the requirements of the Federal Clean Air Act as amended, Mercedes-Benz USA, LLC warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that:

(1) the vehicle was designed, built and equipped so as to conform, at the time of sale to the original owner, with the then applicable regulations issued by the Federal Environmental Protection Agency under authority of the Federal Clean Air Act as amended; and

(2) the vehicle is free from defects in materials and workmanship at the time of sale which would cause it not to conform with those regulations within a period of two years or 24,000 miles from the date of initial operation of the vehicle, whichever occurs first; and

(3) is free from defects in material and workmanship in specific emission related parts as specified in the lists shown on (▷ Pages 26, 28, 52) which would cause them not to conform with those requirements for a period of 8 years or 80,000 miles, whichever occurs first.

## This Warranty Does Not Apply To:

1. The repair or replacement of warranted parts which are scheduled to be replaced prior to 80,000 miles. These parts are no longer covered once they have been replaced at the first required replacement interval during a regular maintenance service.

2. Any vehicle on which the odometer mileage has been altered and the vehicle's actual mileage cannot be readily determined.

3. Loss of time, inconvenience, loss of the use of the vehicle or similar incidental or consequential damages.

**Service and Warranty**

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 180 of 289

**Service and Warranty**

This warranty will be performed by any authorized Mercedes-Benz Center of the owner's choice - repairing, replacing or adjusting at the authorized Mercedes-Benz Center's discretion, upon delivery of the vehicle to the authorized Mercedes-Benz Center's place of business without charge for parts and labor (including diagnosis), using Genuine Mercedes-Benz parts to assure compliance with applicable regulations. Parts replaced under this warranty become the property of the warrantor.

This warranty is available on a vehicle purchased in the United States or in any U.S. possession governed by U.S. law.

In all other countries, defective parts will be repaired or replaced free of charge only in accordance with the terms and limitations of the warranty for new Mercedes-Benz vehicles in effect at the time in such countries.

WITH RESPECT TO EMISSION SYSTEMS, THIS WARRANTY AND THE EMISSIONS PERFORMANCE WARRANTY ARE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR. DAIMLER AG, MERCEDES-BENZ USA, LLC, MERCEDES-BENZ U.S. INTERNATIONAL, INC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE SELLING AUTHORIZED  MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH EMISSION SYSTEMS.

See (▷ Pages 26, 28, 52) for components covered by this warranty.

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 181 of 289

## General

You may present a claim under this warranty immediately after your vehicle has failed an EPA approved emission short test if, as a result of that failure, you are required by law to repair the vehicle to avoid the imposition of a penalty or sanction. You do not need to suffer the loss of the right to use the vehicle, pay a fine, or incur repair expenses before bringing this claim. Your warranty claim may be presented to any authorized Mercedes-Benz Center of your choice in the USA or its territories.

The authorized Mercedes-Benz Center will honor or deny your claim within a reasonable time not to exceed 30 days, from the time at which your vehicle is initially presented for repair or within any time period specified by local, State or Federal Law, whichever is shorter, except when a delay is caused by events not attributable to MBUSA or your authorized Mercedes-Benz Center. You will be notified in writing by your authorized Mercedes-Benz Center of the reason for any denial of your claim.

Your authorized Mercedes-Benz Center is required by law to honor your claim if such notice of denial is not received by you within said time period.

You may obtain further information concerning the emission performance warranty or report violations of the terms of the Emission Performance Warranty by contacting the Director, Field Operation and Support Division (EN-397F), Environmental Protection Agency, 401 "M" Street, SW., Washington, D.C. 20460.

**Service and Warranty**

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 182 of 289

**Service and Warranty**

**NOTE: The Emission Performance Warranty is required by Federal Law, and is effective only to the extent required by that law. To the extent the underlying law is suspended or amended, this Warranty is automatically altered in the same manner, without further notice.**

Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that:

a.  if the vehicle is maintained and operated in accordance with MBUSA's written instructions for required maintenance and use, and

b.  if the vehicle fails to conform at any time during 8 years or 80,000 miles, whichever first occurs, to the applicable emission standards as ascertained by an EPA-approved emission short test, and

c.  if such non-conformity results or will result in the vehicle owner having to bear any penalty or other sanction (including the denial of the right to use the vehicle) under local, State or Federal law, then any authorized Mercedes-Benz Center during the first 24 months or 24,000 miles will make any repairs or replacements necessary to specified systems/components to correct the non-conformity or so that the vehicle will pass the smog check test at no charge for parts and labor (including diagnosis).

For the remainder of the 8 years or 80,000 miles the authorized Mercedes-Benz Center will correct only those deficiencies directly related to the specified components in the attached list which have been installed in or on the vehicle for the sole or primary purpose of reducing vehicle emissions and that were not in general use prior to Model Year 1968.

Service and Warranty

Parts replaced under this warranty become the property of the warrantor. The warranty period starts on the date the vehicle is delivered to the first retail purchaser or put into service as an authorized Mercedes-Benz Center demonstrator or MBUSI, MBUSA or MBRDNA company vehicle.

The emission control system of your new Mercedes-Benz vehicle was designed, built and tested using Genuine Mercedes-Benz parts and the vehicle is certified as being in conformity with Federal emission control regulations and requirements. Accordingly, it is recommended that any replacement parts used for maintenance, repair or replacement of emission related components be Genuine Mercedes-Benz Parts, including Remanufactured Parts.

The owner may elect to have maintenance, replacement or repair of the emission control devices and systems performed by any automotive repair establishment or individual, and may elect to use other than Genuine Mercedes-Benz Parts, including Remanufactured Parts for such maintenance, replacement or repair without invalidating this warranty; the cost of such service or parts, however, will not be covered under the warranty except in the case of an emergency.

Use of replacement parts which are not of equivalent quality and design may impair the effectiveness of the emission control systems.

If other than Genuine Mercedes-Benz Parts, including Remanufactured Parts are being used for maintenance, replacement or repair of components affecting emission control, the owner should obtain assurances that such parts are warranted by their manufacturer to be equivalent to Genuine Mercedes-Benz parts in performance and durability.

MBUSA, however, assumes no liability under this warranty with respect to parts other than Genuine Mercedes-Benz Parts, including Remanufactured Parts except for consequential damage to a non-Mercedes-Benz warranted part caused by a failure of a Mercedes-Benz part. However, the use of non-Mercedes-Benz replacement parts does not invalidate the warranty on other components unless non-Mercedes-Benz parts cause damage to warranted parts.

Case 1:17-cv-01701-AT  Document 79  Filed 04/08/20  Page 184 of 289

**Service and Warranty**

**MBUSA may deny an emission performance warranty claim if the failure of a part is the result of:**

a. non-compliance with the written instructions for required maintenance and use. These written instructions, including time and mileage intervals at which maintenance is to be performed may be found in the Maintenance Booklet and Operator's Manual provided with your vehicle. You are advised to perform all recommended maintenance or repairs on your new Mercedes-Benz vehicle. MBUSA may deny a warranty claim if your failure to perform the required maintenance resulted in the failure of the warranted part in question. Receipts and service records covering the performance of regular maintenance should be retained in the event questions arise concerning maintenance. The receipts and service records should be transferred to each subsequent owner of this vehicle.

b. vehicle abuse or maintenance performed in such a manner that an emission component was improperly installed or adjusted substantially outside the manufacturer's specifications or which resulted in removing or rendering inoperative any component affecting the vehicle's emissions.

c. using non-EPA certified replacement parts in the maintenance or repair of the vehicle which ultimately proved to be defective in material or workmanship or not equivalent from an emission standpoint to the original equipment part and the owner is unable to prove otherwise.

Mercedes-Benz USA, LLC may deny an emission related warranty claim if it can establish that the failure or the malfunction of an emission control system part results directly from the use of:

• Gasoline engines
non-premium low octane gasoline with an anti-knock index of below 91

or

• Diesel engines
diesel fuel other than S 15 ULTRA-LOW SULFUR HIGHWAY DIESEL FUEL (15 ppm SULFUR MAXIMUM)

**This Warranty Does Not Cover:**

a. Malfunctions in any part caused by any of the following: misuse, improper adjustments, modification, alteration, tampering, disconnection, improper or inadequate maintenance, or use of leaded gasoline for catalyst equipped vehicles.

b. Damage resulting from accident, acts of nature or other events beyond the control of MBUSA.

c. The repair or replacement of warranted parts which are scheduled for replacement prior to 80,000 miles once these have been replaced at the first replacement interval as part of regular maintenance service.

d. Loss of time, inconvenience, loss of use of the vehicle, or other incidental or consequential damages.

e. Any vehicle on which the odometer mileage has been altered so that the vehicle's actual mileage cannot be determined.

This warranty is available on a vehicle purchased in the United States or in any U.S. possession governed by U.S. law.

In all other countries, defective parts will be repaired or replaced free of charge only in accordance with the terms and limitations of the warranty for new Mercedes-Benz vehicles in effect at the time in such countries.

EXCEPT FOR THE EMISSION CONTROL WARRANTY, THIS WARRANTY AND THE LIMITED WARRANTY FOR NEW MERCEDES-BENZ VEHICLES ARE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATION, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR. DAIMLER AG, MERCEDES-BENZ USA, LLC, MERCEDES-BENZ U.S. INTERNATIONAL, INC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE SELLING AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH EMISSION SYSTEMS.

The lists shown on (▷ Pages 26, 28, 52) set forth the emission related components which may be covered by the emissions performance warranty.

Case 1:17-cv-01701-AT Document 79 Filed 04/08/20 Page 186 of 289

**Service and Warranty**

## MY 2013 - Gasoline or Flexible Fuel Engine

**I. Air Induction System**

Air Cleaner Housing
Camshaft Adjuster
Charge Air Cooler
Deceleration Air Switching Valve
Intake Manifold
Tumble Flap Switching Valve
Turbocharger (with Integrated Exhaust
   Manifold)
Variable Intake System Switching Valve

**II. Fuel Metering System**

Fuel Filter (with Integrated Pressure Regu-
   lator)
Fuel Injector
Fuel Management System
Fuel Pressure Regulator
Fuel Pressure Sensor
Fuel System Control Module
High Pressure Pump
Injection Valve
Throttle

**III. Ignition System**

Ignition Coil
Ignition Module
Spark Plug

**IV. Fuel Evaporative Control**

EVAP Canister
EVAP Canister Purge Valve
Fuel Fill Neck
Fuel Filler Cap
Fuel Tank (with Integrated Vent Valve)
Fuel Tank Pressure Sensor
Fuel Tank Vent Valve

**V. Secondary Air Injection System**

Air Pump
Air Combination Valve
Air Switching Valve
Air Vacuum Check Valve
Electro-Pneumatic Transducer (Frequency
   Valve)

**VI. Exhaust**

Exhaust Manifold
Three-Way-Catalyst*

**MY 2013 - Gasoline or Flexible Fuel Engine**

### VII. Engine Emissions Control Systems/Sensors

Accelerator Pedal Module
Camshaft Position Sensor
Crankshaft Position Sensor
Engine Control Module*
Engine Coolant Temperature Sensor
Engine Thermostat
Ethanol Sensor
Fuel Temperature/High Pressure Sensor
Intake Air Temperature Sensor
Intake Manifold Pressure Sensor
Knock Sensor
Mass Air Flow Sensor
$O_2$ Sensor
Shifting Drum
Transmission Control Module
Vehicle Speed Sensor (Front Wheels)
Vehicle Speed Sensor (Rear Wheels)

### VIII. On-Board Diagnostics

Instrument Cluster (Malfunction Indicator Lamp)*

**Service and Warranty**

* These items are warranted for 8 years/80,000 miles (whichever occurs first).
All other items are warranted for (a) or (b):

(a) 3 years/50,000 miles (whichever occurs first) for new vehicles which are first sold by an authorized Mercedes-Benz Center in CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA.

(b) 2 years/24,000 miles (whichever occurs first) for new vehicles which are first sold by an authorized Mercedes-Benz Center in all other states.

Please reference the previous pages for additional emission warranty coverage.

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 188 of 289

**Service and Warranty**

## MY 2013 - BlueTEC Diesel Engine with DEF

### I. Air Induction System

Air Cleaner Housing
Charge Air Cooler
Charge Air Distribution Line
Electric Intake Air Throttle (with Throttle
   Valve Step Motor)
Intake Port Shutoff
Turbocharger

### II. Fuel Metering System

Fuel Filter
Fuel Injector
Fuel Pressure Regulator
Fuel Pump (Electric)
Fuel Rail
Fuel Rail Pressure Sensor
High Pressure Pump

### III. Ignition System

Glow Plug
Glow Time Control Module

### IV. Exhaust Gas Recirculation System

EGR Cooler
EGR Line
EGR Valve

### V. Positive Crankcase Ventilation

Crankcase Ventilation Valve/Line

### VI. Fuel Evaporative Control

Fuel Fill Neck (without Expansion Tank)
Fuel Tank (with Integrated Vent Valve and
   Fill Neck)
Fuel Tank Vent Valve

### VII. Exhaust/Diesel Exhaust Fluid (DEF) System

DEF Delivery Pump (with Pressure Sensor)
DEF Injection Valve
DEF Line
DEF Tank (with Temperature Sensor and
   Fluid Level Gauge)
Diesel Oxidation Catalyst (and/or Diesel
   Particulate Filter)*
Exhaust Manifold
Selective Catalytic Reduction Catalyst*

**MY 2013 - BlueTEC Diesel Engine with DEF**

## VIII. Engine Emissions Control Systems/Sensors

Accelerator Pedal Module
Camshaft Position Sensor
Charge Air Pressure Sensor
Charge Air Temperature Sensor
Crankshaft Position Sensor
DEF Control Module
Engine Control Module*
Engine Coolant Temperature Sensor
Exhaust Back Pressure Sensor
Exhaust Differential Pressure Sensor
Exhaust Gas Temperature Sensor
Fuel Temperature Sensor
Heated Cooling Water Thermostat
Manifold Air Pressure Sensor
Mass Air Flow Sensor (with Integrated Intake Air Temperature Sensor)
$NO_X$ Sensor
$O_2$ Sensor
Particulate Matter Sensor
Transmission Control Module
Vehicle Speed Sensor (Front Wheels)
Vehicle Speed Sensor (Rear Wheels)

## IX. On-Board Diagnostics

Instrument Cluster (Malfunction Indicator Lamp)*

**Service and Warranty**

* These items are warranted for 8 years/80,000 miles (whichever occurs first).

All other items are warranted for (a) or (b):

(a) 3 years/50,000 miles (whichever occurs first) for new vehicles which are first sold by an authorized Mercedes-Benz Center in CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA.

(b) 2 years/24,000 miles (whichever occurs first) for new vehicles which are first sold by an authorized Mercedes-Benz Center in all other states.

Please reference the previous pages for additional emission warranty coverage.

Case 1:17-cv-01701-AT  Document 79  Filed 04/08/20  Page 190 of 289

## CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA

**Service and Warranty**

**Your Warranty Rights and Obligations:**

The California Air Resources Board and Mercedes-Benz USA, LLC are pleased to explain the emission control system warranty on your Mercedes-Benz vehicle. In California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington, new motor vehicles must be designed, built and equipped to meet these states' stringent anti-smog standards. MBUSA must warrant the emission control system on your Mercedes-Benz vehicle for the periods of time listed below provided there has been no abuse, neglect or improper maintenance of your vehicle.

Your emission control system may include such parts as the fuel injection system, ignition system, catalytic converter and engine computers. Also included may be hoses, belts, connectors and other emission related assemblies.

Where a warrantable condition exists, MBUSA will repair your Mercedes-Benz vehicle at no cost to you including diagnosis, parts and labor.

**Manufacturer's Warranty Coverage:**

For 3 years or 50,000 miles, whichever first occurs:

1. If your Mercedes-Benz vehicle fails a Smog Check Inspection, all necessary repairs and adjustments will be made by MBUSA to ensure that your vehicle passes the inspection. This is your emission control system PERFORMANCE WARRANTY.

2. If any emission related part on your MB vehicle is defective, the part will be repaired or replaced by MBUSA. This is your short-term emission control system DEFECTS WARRANTY.

For 7 years or 70,000 miles, whichever first occurs:

1. If an emission related part listed in this warranty booklet specially noted with coverage for 7 years or 70,000 miles is defective, the part will be repaired or replaced by MBUSA. This is your long-term emission control system DEFECTS WARRANTY.

Case 1:17-cv-01701-ATS Document 79 Filed 04/08/20 Page 191 of 289

**CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA**

**Owner's Warranty Responsibilities:**

As the vehicle owner, you are responsible for the performance of the required maintenance listed in your Maintenance Booklet. MBUSA recommends that you retain all receipts covering maintenance on your vehicle, but MBUSA cannot deny emission control system warranty solely for the lack of receipts or for your failure to ensure the performance of all required maintenance.

You are responsible for presenting your Mercedes-Benz vehicle to an authorized Mercedes-Benz Center as soon as a problem exists. The warranty repairs should be completed in a reasonable amount of time, not to exceed 30 days.

As the vehicle owner, you should also be aware that MBUSA may deny you warranty coverage if your vehicle or a part has failed due to abuse, neglect, improper maintenance or unapproved modifications.

Service and Warranty

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 192 of 289

**Service and Warranty**

## CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA

If you have any questions regarding your warranty rights and responsibilities, you should contact:

Mercedes-Benz USA, LLC
Customer Assistance Center
One Mercedes Drive
Montvale, NJ 07645-0350
1-800-FOR-MERCedes, or

State of California
Air Resources Board
Mobile Source Operations Division
P.O. Box 8001
El Monte, CA 91731-2990

State of Connecticut
Department of Environmental Protection
79 Elm Street
Hartford, CT 06106-5127

State of Maine
Department of Environmental Protection
17 State House Station Augusta,
Maine 04333

State of Maryland
Department of the Environment
Air & Radiation Management
Administration Mobile Sources Control
Program
1800 Washington Blvd.
Baltimore, MD 21230

Commonwealth of Massachusetts
Department of Environmental Protection
Division of Air Quality Control
One Winter Street, Boston, MA 02108

State of New Jersey
New Jersey Department of Environmental
Protection, 401 East State Street
Trenton, New Jersey 08625

State of Oregon
Department of Environmental Quality
811 S.W. Sixth Avenue
Portland, OR 97204

Commonwealth of Pennsylvania
Department of Environmental Protection
Bureau of Air Quality
Rachel Carson State Office Building
12th Floor, P.O. Box 8468
Harrisburg, PA 17105-8468

State of Rhode Island
Department of Environmental Manage-
ment, 235 Promenade Street
Providence, Rhode Island 02908

State of Vermont
Agency of Natural Resources
Department of Environmental Conserva-
tion, Air Pollution Control Division
Building 3 South, 103 Main Street, Water-
bury, VT 05671-0402

State of Washington
Washington State Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

### CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA

**General**

Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a 2013 Mercedes-Benz vehicle which is first sold by an authorized Mercedes-Benz Center in California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington that:

(1) such vehicle is free from defects in material and workmanship which would cause it to fail to conform with requirements of the California Air Resources Board (CARB) or to fail to pass a smog check test for a period of use of 3 years or 50,000 miles, whichever first occurs; and

(2) if any part which affects any regulated emission from your vehicle is defective during 3 years or 50,000 miles, whichever first occurs, the part will be repaired or replaced; and

(3) is free from defects in material and workmanship in specific emission related parts as specified in the attached list which would cause them not to conform with those requirements for a period of use of 7 years or 70,000 miles, whichever first occurs.

MBUSA further warrants that:

a. if the vehicle is maintained and operated in accordance with MBUSA's written instructions for required maintenance and use, and

b. if a part is defective during 3 years or 50,000 miles, whichever first occurs, which causes the vehicle not to conform to the applicable CARB requirement or to fail a smog check test, or

c. if an emission-related part covered by the 7 year or 70,000 mile, whichever first occurs, warranty term is defective during the warranty period,

then any authorized Mercedes-Benz Center of the owner's choice will make any adjustments, repairs or replacements (including diagnosis) necessary to correct the defect or so that the vehicle will pass the smog check test at no charge for parts, labor or diagnosis.

If your vehicle is between 3 to 8 years old and has been driven less than 80,000 miles, then your vehicle may be eligible for additional coverage under the Federal Emissions Warranty.

**Service and Warranty**

## CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA

These warranty provisions shall begin on the date the vehicle is delivered to the first retail purchaser or, if the vehicle is first placed in service as a retail demonstrator or MBUSI, MBUSA or MBRDNA company vehicle prior to sale at retail, on the date the vehicle is first placed in such service.

The emission control system of your new Mercedes-Benz vehicle was designed, built and tested using Genuine Mercedes-Benz parts and the vehicle is certified as being in conformity with Federal, California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington emission control regulations and requirements. Accordingly, it is recommended that any replacement parts used for maintenance, repair or replacement of emission related components be Genuine Mercedes-Benz Parts, including Remanufactured Parts.

The owner may elect to have maintenance, replacement or repair of the emission control devices and systems performed by any automotive repair establishment or individual, and may elect to use other than Genuine Mercedes-Benz Parts, including Remanufactured Parts for such maintenance, replacement or repair without invalidating this warranty; the cost of such service or parts, however, will not be covered under the warranty except in the case of an emergency.

Use of replacement parts which are not of equivalent quality and design may impair the effectiveness of the emission control systems. If other than Genuine Mercedes-Benz Parts, including Remanufactured Parts are being used for maintenance, replacement or repair of components affecting emission control, the owner should obtain assurances that such parts are warranted by their manufacturer to be equivalent to Genuine Mercedes-Benz parts in performance and durability.

MBUSA, however, assumes no liability under this warranty with respect to parts other than Genuine Mercedes-Benz Parts, including Remanufactured Parts except for consequential damage to a non-Mercedes-Benz warranted part caused by a failure of a Mercedes-Benz part. However, the use of non-Mercedes-Benz replacement parts does not invalidate the warranty on other components unless non-Mercedes-Benz parts cause damage to warranted parts.

**CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA**

Repairs covered by this warranty will be performed by any authorized Mercedes-Benz Center at its place of business with no charge for parts or labor (including diagnosis), using Genuine Mercedes-Benz Parts, including Remanufactured Parts for any part covered by this warranty.

In the case of an emergency, when and where an authorized Mercedes-Benz Center is not available, repairs may be performed at any available service establishment or by the owner using any replacement part. The non-availability of a replacement part for warranty repair or a repair not completed within 30 days constitutes an emergency.

MBUSA will reimburse the owner for such repairs (including labor and diagnosis) that are covered under this warranty. Such reimbursement shall not exceed MBUSA suggested retail prices for warranted parts replaced and labor charges based on  MBUSA recommended time allowances for warranty repairs at a geographically appropriate hourly labor rate. Replaced parts and paid invoices must be presented at an authorized Mercedes-Benz Center as a condition of reimbursement for emergency repairs not performed at an authorized Mercedes-Benz Center. Parts replaced under this warranty become the property of the warrantor.

The enclosed list sets forth some of the emission related components covered by the emission control system defects warranty. You are advised to perform all recommended maintenance or repairs on your new Mercedes-Benz vehicle. MBUSA will not deny an emissions system warranty claim solely because you have no record of maintenance; however, you are responsible for the performance of the required maintenance. MBUSA may deny a warranty claim if your failure to perform the required maintenance resulted in the failure of a warranted part. Receipts and service records covering the performance of regular maintenance should be retained in the event questions arise concerning maintenance. The receipts and service records should be transferred to each subsequent owner of this vehicle.

Case 1:17-cv-01701-AT Document 79 Filed 04/08/20 Page 196 of 289

**Service and Warranty**

## CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA

Mercedes-Benz USA, LLC may deny an emission related claim if it can establish that the failure or the malfunction of an emission control system part results directly from the use of non-premium low octane fuel in the engine (i.e. fuel with an anti-knock index of below 91 as displayed on the fuel pump).

**What is not covered by the Emission Warranty**

**This warranty does not cover:**

1. The repair or replacement of any "warranted part" otherwise eligible for warranty coverage shall be excluded from such warranty coverage if the vehicle or engine manufacturer demonstrates that the vehicle or engine has been abused, neglected or improperly maintained, and that such abuse, neglect, or improper maintenance was the direct cause of the need for the repair or replacement of the part.

2. Malfunctions in any part caused by any of the following: improper adjustments except for those done by an authorized Mercedes-Benz Center during warranty service work, modification, alteration, tampering, disconnection, or use of leaded gasoline (for catalyst equipped vehicles).

3. Damage resulting from accident, acts of nature or other events beyond the control of MBUSA.

4. The repair or replacement of warranted parts which are scheduled to be replaced prior to 50,000 miles once these have been replaced at the first replacement interval during a regular maintenance service.

5. Incidental or consequential damages such as loss of time, inconvenience, or loss of use of the vehicle.

6. Any vehicle on which the odometer mileage has been altered so that the vehicle's actual mileage cannot be determined.

## CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA

This warranty is applicable to new vehicles which are first sold by an authorized Mercedes-Benz Center in the States of California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington. In all other states or countries, defective parts will be repaired or replaced in accordance with the terms and limitations of the warranty applicable to new Mercedes-Benz vehicles in effect at the time in such states or countries.

You may present a claim under the performance warranty immediately after your vehicle has failed a smog check test. You do not need to suffer the loss of the right to use the vehicle, pay a fine, or incur repair expenses before bringing this claim. After the 3 year/50,000 mile performance warranty period has passed, a smog check test failure due to a defect in a part which is warranted for 7 years/70,000 miles, is covered.

Your warranty claim may be presented to any authorized Mercedes-Benz Center of your choice. The authorized Mercedes-Benz Center will honor or deny your claim within a reasonable time not to exceed 30 days, from the time at which your vehicle is initially presented for repair. Exceptions are when you, the owner, request a delay, or a delay is caused by events not attributable to MBUSA or your authorized Mercedes-Benz Center.

You will be notified in writing by your authorized Mercedes-Benz Center of the reasons for any denial of your claim.

Your authorized Mercedes-Benz Center is required by law to honor your claim if such notice of denial is not received by you within said time period.

**WITH RESPECT TO EMISSION SYSTEMS, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR. DAIMLERAG, MERCEDES-BENZ U.S. INTERNATIONAL, INC., MERCEDES-BENZ USA, LLC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH EMISSION SYSTEMS.**

Service and Warranty

Service and Warranty

## MY2013 - Gasoline or Flexible Fuel Engine
## (CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA)

| Parts Description | C250 | C300 4M | C350 | C63 AMG | C250 Coupe | C350 Coupe | C350 4M Coupe | C63 AMG Coupe | E350 | E350 4M | E550 4M | E63 AMG | E350 4M Wagon | E63 AMG Wagon |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Air Pump | • | | | • | • | | | • | | | | | | |
| Charge Air Cooler | • | | | | • | | | | | | | • | • | • |
| Engine Control Module* | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| EVAP Canister | | | | | | | | | | | | | | |
| Exhaust Manifold | | • | • | • | | • | • | | | | | | • | |
| Fuel Fill Neck | | | | | | | | | | | | | | |
| Fuel Filter (with Integrated Pressure Regulator) | | | | • | | | | • | | | | | | |
| Fuel Injector | | • | • | | | • | • | | • | • | • | | • | • |
| Fuel Management System | | • | • | | | • | • | | • | • | • | | • | • |
| Fuel Tank (with Integrated Vent Valve) | • | • | • | • | • | • | • | • | • | | | | | • |
| High Pressure Pump | • | • | • | | • | • | • | | • | • | • | | • | • |
| Ignition Module | | | | | | | | | | | | | | |
| Injection Valve | | | | | | | | | | | | | | |
| Instrument Cluster (MIL)* | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| Intake Manifold | • | | | | • | • | | • | | | | • | • | • |
| Knock Sensor | | | | | | | | | | | | • | • | • |
| Three-Way-Catalyst* | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| Throttle | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| Transmission Control Module | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| Turbocharger (with Integrated Exhaust Manifold) | • | | | | • | | | | | | | • | • | |

* These items are warranted for 8 years / 80,000 miles (whichever occurs first).

**Service and Warranty**

## MY2013 - Gasoline or Flexible Fuel Engine
### (CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA)

| Parts Description | E350 Coupe | E350 4M Coupe | E550 Coupe | E350 Cabriolet | E550 Cabriolet | CLS550 | CLS550 4M | CLS63 AMG | S550 | S550 4M | S600 | S63 AMG | S65 AMG | CL550 4M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Air Pump | | | | | | | | | | | ● | | ● | |
| Charge Air Cooler | | | ● | | ● | ● | ● | ● | | | | ● | | ● |
| Engine Control Module* | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| EVAP Canister | | | | | | | | | ● | ● | ● | ● | ● | ● |
| Exhaust Manifold | ● | ● | | ● | | | | | | | | | ● | |
| Fuel Fill Neck | | | | | | | | | | | | | | |
| Fuel Filter (with Integrated Pressure Regulator) | | | | | | | | | | | | | | |
| Fuel Injector | ● | ● | | ● | ● | ● | ● | | | | | ● | | ● |
| Fuel Management System | ● | ● | ● | ● | ● | ● | ● | ● | | | | ● | | ● |
| Fuel Tank (with Integrated Vent Valve) | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | | ● | | ● |
| High Pressure Pump | ● | ● | ● | ● | ● | ● | ● | ● | | | | ● | | ● |
| Ignition Module | | | | | | | | | | | ● | | ● | |
| Injection Valve | | | | | | | | | | | ● | | ● | |
| Instrument Cluster (MIL)* | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Intake Manifold | | | ● | | ● | ● | ● | ● | | | | ● | | ● |
| Knock Sensor | | | ● | | | | | | | | | | ● | |
| Three-Way-Catalyst* | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Throttle | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Transmission Control Module | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Turbocharger (with Integrated Exhaust Manifold) | | | ● | | ● | ● | ● | ● | | | | ● | | ● |

* These items are warranted for 8 years / 80,000 miles (whichever occurs first).

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 200 of 289

**Service and Warranty**

## MY2013 – Gasoline or Flexible Fuel Engine
## (CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA)

| Parts Description | CL600 | CL63 AMG | CL65 AMG | SLK250 | SLK350 | SLK55 AMG | SL550 | SL63 AMG | SL65 AMG | SLS AMG (GT) Coupe | SLS AMG (GT) Roadster | SLS AMG (Black Series) Coupe | GLK350 | GLK350 4M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Air Pump | • | | | | | | | | • | • | • | • | | |
| Charge Air Cooler | • | • | • | • | | | • | • | • | | | | | |
| Engine Control Module* | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| EVAP Canister | • | • | • | | | | | | | | | | | |
| Exhaust Manifold | • | | • | | | • | • | | • | | | | • | • |
| Fuel Fill Neck | | | | | | | | | | | | | | |
| Fuel Filter (with Integrated Pressure Regulator) | | | | | | | | | | | | | | |
| Fuel Injector | | • | | | | | • | • | | | | | • | • |
| Fuel Management System | | • | | | | • | • | • | | | | | | |
| Fuel Tank (with Integrated Vent Valve) | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| High Pressure Pump | | • | | | • | • | • | • | | | | | • | • |
| Ignition Module | • | | • | | | | | | | | | | | |
| Injection Valve | • | | • | | | | | | • | | | | | |
| Instrument Cluster (MIL)* | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| Intake Manifold | • | • | • | | • | | • | • | • | • | • | • | | |
| Knock Sensor | | • | | | | | • | • | | | | | | |
| Three-Way-Catalyst* | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| Throttle | • | • | • | • | • | • | • | • | • | | | | | |
| Transmission Control Module | • | • | • | • | • | • | • | • | • | • | • | • | • | • |
| Turbocharger (with Integrated Exhaust Manifold) | • | • | • | • | | | • | • | • | | | | | |

* These items are warranted for 8 years / 80,000 miles (whichever occurs first).

**MY2013 - Gasoline or Flexible Fuel Engine
(CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA)**

| Parts Description | Models | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | ML350 | ML350 4M | ML550 4M | ML63 AMG | GL450 4M | GL550 4M | GL63 AMG | G550 | G63 AMG |
| Air Pump | | | | | | | | ● | |
| Charge Air Cooler | | | ● | ● | ● | ● | ● | | ● |
| Engine Control Module* | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| EVAP Canister | | | | | | | | | |
| Exhaust Manifold | ● | ● | | | | | ● | | |
| Fuel Fill Neck | | | ● | ● | ● | ● | ● | ● | |
| Fuel Filter (with Integrated Pressure Regulator) | | | | | | | | | |
| Fuel Injector | ● | ● | ● | ● | | | | | ● |
| Fuel Management System | ● | ● | ● | ● | | | | | ● |
| Fuel Tank (with Integrated Vent Valve) | ● | ● | ● | ● | ● | ● | ● | ● | |
| High Pressure Pump | ● | ● | ● | ● | ● | ● | ● | | ● |
| Ignition Module | | | | | | | | | |
| Injection Valve | | | | | | | | | |
| Instrument Cluster (MIL)* | | ● | ● | ● | ● | ● | ● | ● | ● |
| Intake Manifold | | | ● | ● | ● | ● | ● | ● | ● |
| Knock Sensor | | | | | | | | | |
| Three-Way-Catalyst* | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Throttle | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Transmission Control Module | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Turbocharger (with Integrated Exhaust Manifold) | | | ● | ● | ● | ● | ● | | ● |

* These items are warranted for 8 years / 80,000 miles (whichever occurs first).

Service and Warranty

**Service and Warranty**

## MY2013 - BlueTEC Diesel Engine with DEF
## (CA, CT, MA, MD, ME, NJ, OR, PA, RI, VT and WA)

| Parts Description | Models | | | | |
|---|---|---|---|---|---|
| | E350 BlueTEC | S350 4M BlueTEC | GLK250 4M BlueTEC | ML350 4M BlueTEC | GL350 4M BlueTEC |
| Charge Air Cooler | ● | ● | | ● | ● |
| Charge Air Distribution Line | ● | ● | ● | ● | ● |
| DEF Delivery Pump (with Pressure Sensor) | ● | ● | ● | ● | ● |
| DEF Tank (with Temperature Sensor and Fluid Level Gauge) | ● | ● | ● | ● | ● |
| Diesel Oxidation Catalyst (and/or Diesel Particulate Filter)* | ● | ● | ● | ● | ● |
| EGR Cooler | ● | ● | ● | ● | ● |
| EGR Valve | ● | | ● | | |
| Electric Intake Air Throttle (with Throttle Valve Step Motor) | ● | ● | ● | ● | ● |
| Engine Control Module* | ● | ● | ● | ● | ● |
| Exhaust Manifold | ● | ● | ● | ● | ● |
| Fuel Fill Neck (without Expansion Tank) | ● | ● | | ● | ● |
| Fuel Injector | ● | ● | ● | ● | ● |
| Fuel Pump (Electric) | ● | ● | ● | ● | ● |
| Fuel Rail | ● | ● | ● | ● | ● |
| Fuel Tank (with Integrated Vent Valve and Fill Neck) | ● | ● | ● | ● | ● |
| High Pressure Pump | ● | ● | ● | ● | ● |
| Instrument Cluster (Malfunction Indicator Lamp)* | ● | ● | ● | ● | ● |
| Intake Port Shutoff | ● | ● | ● | ● | ● |
| NOx Sensor | | ● | ● | ● | ● |
| Selective Catalytic Reduction Catalyst* | ● | ● | ● | ● | ● |
| Transmission Control Module | ● | ● | ● | ● | ● |
| Turbocharger | ● | ● | ● | ● | ● |

\* These items are warranted for 8 years / 80,000 miles (whichever occurs first).

Case 1:17-cv-01701-AT   Document 79   Filed 04/03/20   Page 203 of 289

**MY2013 - Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (OR, PA and WA)**

| Parts Description | Models | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | C300 4M | C350 | E400 HYBRID | E350 | E350 4M | E350 Coupe | E350 4M Coupe | S400 HYBRID | GLK350 | GLK350 4M |
| Air Pump | | | | | | | | ● | | |
| Battery Pack Control Module | | | ● | | | | | ● | | |
| Brake Pedal Module | | | ● | | | | | ● | | |
| Direct Ozone Reduction Radiator | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Direct Ozone Reduction Temperature Sensor | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Engine Control Module* | ● | ● | ● | ● | ● | ● | ● | | ● | ● |
| Exhaust Manifold | ● | ● | ● | ● | ● | ● | ● | | ● | ● |
| Fuel Injector | ● | ● | | ● | ● | ● | ● | | ● | ● |
| Fuel Management System | ● | ● | | ● | ● | ● | ● | | ● | ● |
| Fuel Tank (with integrated Vent Valve) | ● | ● | ● | ● | ● | ● | ● | | | |
| High Pressure Pump | ● | ● | ● | ● | ● | ● | ● | | ● | ● |
| High Voltage Battery | | | ● | | | | | ● | | |
| Instrument Cluster (Malfunction Indicator Lamp)* | ● | ● | ● | ● | ● | ● | ● | | ● | ● |
| Intake Manifold | | | ● | | | | | ● | | |
| Three-Way-Catalyst* | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Throttle | ● | ● | ● | ● | ● | ● | ● | | ● | ● |
| Transmission Control Module | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |

* These items are warranted for 8 years / 80,000 miles (whichever occurs first).

Service and Warranty

Case 1:17-cv-01701-AT  Document 79  Filed 04/08/20  Page 204 of 289

**Service and Warranty**

## Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

### Your Warranty Rights and Obligations:

The California Air Resources Board and Mercedes-Benz USA, LLC are pleased to explain the emission control system warranty on your Mercedes-Benz Partial Zero-Emission Vehicle (PZEV), E400 HYBRID and S400 HYBRID. In California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont, new motor vehicles must be designed, built and equipped to meet these states' stringent anti-smog standards. MBUSA must warrant the emission control system on your Mercedes-Benz vehicle for the periods of time listed below provided there has been no abuse, neglect or improper maintenance of your vehicle.

Your emission control system may include such parts as the fuel injection system, ignition system, catalytic converter and engine computers. Also included may be hoses, belts, connectors and other emission related assemblies.

Where a warrantable condition exists, MBUSA will repair your Mercedes-Benz vehicle at no cost to you including diagnosis, parts and labor.

### Identifying Partial Zero-Emission Vehicles (PZEV)

Being able to identify whether your vehicle meets the California Air Resources Board (CARB) Super Ultra-Low-Emission-Vehicle (SULEV) PZEV emission standard is an important part of understanding your emission warranty rights. To identify a vehicle that meets the PZEV emission standard please refer to the text description on the Vehicle Emission Control Information (VECI) label located in the engine compartment.

Please note the location of the VECI label will vary depending on model. Refer to your vehicle Operator's Manual for further information on identification labels and their locations.

Case 1:17-cv-01701-AT Document 79 Filed 04/08/20 Page 205 of 289

**Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)**

**Manufacturer's Warranty Coverage:**

For 15 years or 150,000 miles, whichever first occurs:

1. If your Mercedes-Benz vehicle fails a Smog Check Inspection, all necessary repairs and adjustments will be made by MBUSA to ensure that your vehicle passes the inspection. This is your emission control system PERFORMANCE WARRANTY.

2. If any emission related part on your Mercedes-Benz vehicle is defective, the part will be repaired or replaced by MBUSA. This is your emission control system DEFECTS WARRANTY.

**Owner's Warranty Responsibilities:**

As the vehicle owner, you are responsible for the performance of the required maintenance listed in your Maintenance Booklet. MBUSA recommends that you retain all receipts covering maintenance on your vehicle, but MBUSA cannot deny emission control system warranty solely for the lack of receipts or for your failure to ensure the performance of all required maintenance.

You are responsible for presenting your Mercedes-Benz vehicle to an authorized Mercedes-Benz Center as soon as a problem exists. The warranty repairs should be completed in a reasonable amount of time, not to exceed 30 days.

As the vehicle owner, you should also be aware that MBUSA may deny you warranty coverage if your vehicle or a part has failed due to abuse, neglect, improper maintenance or unapproved modifications.

**Service and Warranty**

**Service and Warranty**

## Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

If you have any questions regarding your warranty rights and responsibilities, you should contact:

Mercedes-Benz USA, LLC
Customer Assistance Center
One Mercedes Drive
Montvale, NJ 07645-0350
1-800-FOR-MERCedes, or

State of California
Air Resources Board
Mobile Source Operations Division
P.O. Box 8001
El Monte, CA 91731-2990

State of Connecticut
Department of Environmental Protection
79 Elm Street
Hartford, CT 06106-5127

State of Maine
Department of Environmental Protection
17 State House Station Augusta,
Maine 04333

State of Maryland
Department of the Environment
Air & Radiation Management
Administration
Mobile Sources Control Program
1800 Washington Blvd.

Baltimore, MD 21230
Commonwealth of Massachusetts
Department of Environmental Protection
Division of Air Quality Control
One Winter Street, Boston, MA 02108

State of New Jersey
New Jersey Department of Environmental
Protection, 401 East State Street
Trenton, New Jersey 08625

State of New York
Department of Environmental
Conservation
625 Broadway, Albany, NY 12233

State of Rhode Island
Department of Environmental Management, 235 Promenade Street
Providence, Rhode Island 02908

State of Vermont
Agency of Natural Resources
Department of Environmental Conservation, Air Pollution Control Division
Building 3 South, 103 Main Street, Waterbury, VT 05671-0402

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 207 of 289

## Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

**Service and Warranty**

### General

Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a 2012 Mercedes-Benz Partial Zero-Emission Vehicle (PZEV), E400 HYBRID and S400 HYBRID which is first sold by an authorized Mercedes-Benz Center in California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island or Vermont that:

(1) such vehicle is free from defects in material and workmanship which would cause it to fail to conform with requirements of the California Air Resources Board (CARB) or to fail to pass a smog check test for a period of use of 15 years or 150,000 miles, whichever first occurs; and

(2) if any part which affects any regulated emission from your vehicle is defective during 15 years or 150,000 miles, whichever first occurs, the part will be repaired or replaced; and

MBUSA further warrants that:

a. if the vehicle is maintained and operated in accordance with MBUSA's written instructions for required maintenance and use, and

b. if a part is defective during 15 years or 150,000 miles, whichever first occurs, which causes the vehicle not to conform to the applicable CARB requirement or to fail a smog check test,

then any authorized Mercedes-Benz Center of the owner's choice will make any adjustments, repairs or replacements (including diagnosis) necessary to correct the defect or so that the vehicle will pass the smog check test at no charge for parts, labor or diagnosis.

**Service and Warranty**

## Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

These warranty provisions shall begin on the date the vehicle is delivered to the first retail purchaser or, if the vehicle is first placed in service as a retail demonstrator or MBUSA or MBSC company vehicle prior to sale at retail, on the date the vehicle is first placed in such service.

The emission control system of your new Mercedes-Benz vehicle was designed, built and tested using Genuine Mercedes-Benz parts and the vehicle is certified as being in conformity with Federal, California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont emission control regulations and requirements. Accordingly, it is recommended that any replacement parts used for maintenance, repair or replacement of emission related components be Genuine Mercedes-Benz Parts, including Remanufactured Parts.

The owner may elect to have maintenance, replacement or repair of the emission control devices and systems performed by any automotive repair establishment or individual, and may elect to use other than Genuine Mercedes-Benz Parts, including Remanufactured Parts for such maintenance, replacement or repair without invalidating this warranty; the cost of such service or parts, however, will not be covered under the warranty except in the case of an emergency.

Use of replacement parts which are not of equivalent quality and design may impair the effectiveness of the emission control systems. If other than Genuine Mercedes-Benz Parts, including Remanufactured Parts are being used for maintenance, replacement or repair of components affecting emission control, the owner should obtain assurances that such parts are warranted by their manufacturer to be equivalent to Genuine Mercedes-Benz parts in performance and durability.

MBUSA, however, assumes no liability under this warranty with respect to parts other than Genuine Mercedes-Benz Parts, including Remanufactured Parts except for consequential damage to a non-Mercedes-Benz warranted part caused by a failure of a Mercedes-Benz part. However, the use of non-Mercedes-Benz replacement parts does not invalidate the warranty on other components unless non-Mercedes-Benz parts cause damage to warranted parts.

Service and Warranty

## Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

Repairs covered by this warranty will be performed by any authorized Mercedes-Benz Center at its place of business with no charge for parts or labor (including diagnosis), using Genuine Mercedes-Benz Parts, including Remanufactured Parts for any part covered by this warranty.

In the case of an emergency, when and where an authorized Mercedes-Benz Center is not available, repairs may be performed at any available service establishment or by the owner using any replacement part. The non-availability of a replacement part for warranty repair or a repair not completed within 30 days constitutes an emergency.

MBUSA will reimburse the owner for such repairs (including labor and diagnosis) that are covered under this warranty. Such reimbursement shall not exceed MBUSA suggested retail prices for warranted parts replaced and labor charges based on  MBUSA recommended time allowances for warranty repairs at a geographically appropriate hourly labor rate. Replaced parts and paid invoices must be presented at an authorized Mercedes-Benz Center as a condition of reimbursement for emergency repairs not performed at an authorized Mercedes-Benz Center. Parts replaced under this warranty become the property of the warrantor.

The enclosed list sets forth some of the emission related components covered by the emission control system defects warranty. You are advised to perform all recommended maintenance or repairs on your new Mercedes-Benz vehicle. MBUSA will not deny an emissions system warranty claim solely because you have no record of maintenance; however, you are responsible for the performance of the required maintenance. MBUSA may deny a warranty claim if your failure to perform the required maintenance resulted in the failure of a warranted part. Receipts and service records covering the performance of regular maintenance should be retained in the event questions arise concerning maintenance. The receipts and service records should be transferred to each subsequent owner of this vehicle.

Mercedes-Benz USA, LLC may deny an emission related claim if it can establish that the failure or the malfunction of an emission control system part results directly from the use of non-premium low octane fuel in the engine (i.e. fuel with an anti-knock index of below 91 as displayed on the fuel pump).

**Service and Warranty**

## Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

### What is not covered by the Emission Warranty

**This warranty does not cover:**

1. The repair or replacement of any "warranted part" otherwise eligible for warranty coverage shall be excluded from such warranty coverage if the vehicle or engine manufacturer demonstrates that the vehicle or engine has been abused, neglected or improperly maintained, and that such abuse, neglect, or improper maintenance was the direct cause of the need for the repair or replacement of the part.

2. Malfunctions in any part caused by any of the following: improper adjustments except for those done by an authorized Mercedes-Benz Center during warranty service work, modification, alteration, tampering, disconnection, or use of leaded gasoline (for catalyst equipped vehicles).

3. Damage resulting from accident, acts of nature or other events beyond the control of MBUSA.

4. The repair or replacement of warranted parts which are scheduled to be replaced prior to 150,000 miles once these have been replaced at the first replacement interval during a regular maintenance service.

5. Incidental or consequential damages such as loss of time, inconvenience, or loss of use of the vehicle.

6. Any vehicle on which the odometer mileage has been altered so that the vehicle's actual mileage cannot be determined.

## Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

This warranty is applicable to new vehicles which are first sold by an authorized Mercedes-Benz Center in the States of California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont. In all other states or countries, defective parts will be repaired or replaced in accordance with the terms and limitations of the warranty applicable to new Mercedes-Benz vehicles in effect at the time in such states or countries.

You do not need to suffer the loss of the right to use the vehicle, pay a fine, or incur repair expenses before bringing this claim.

Your warranty claim may be presented to any authorized Mercedes-Benz Center of your choice. The authorized Mercedes-Benz Center will honor or deny your claim within a reasonable time not to exceed 30 days, from the time at which your vehicle is initially presented for repair. Exceptions are when you, the owner, request a delay, or a delay is caused by events not attributable to MBUSA or your authorized Mercedes-Benz Center.

You will be notified in writing by your authorized Mercedes-Benz Center of the reasons for any denial of your claim.

Your authorized Mercedes-Benz Center is required by law to honor your claim if such notice of denial is not received by you within said time period.

WITH RESPECT TO EMISSION SYSTEMS, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR. DAIMLERAG, MERCEDES-BENZ U.S. INTERNATIONAL, INC., MERCEDES-BENZ USA, LLC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH EMISSION SYSTEMS.

The warranty coverage for the High Voltage Battery of a E400 HYBRID and S400 HYBRID vehicle is 10 years or 150,000 miles, whichever occurs first (▷ Page 52).

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 212 of 289

**Service and Warranty**

## MY 2013 - Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only

### I. Air Induction System

Air Cleaner Housing
Camshaft Adjuster
Direct Ozone Reduction Radiator
Intake Manifold
Tumble Flap Switching Valve
Variable Intake System Switching Valve

### II. Fuel Metering System

Fuel Filter (with Integrated Pressure Regulator)
Fuel Injector
Fuel Management System
Fuel Pressure Regulator
Fuel Pressure Sensor
Fuel System Control Module
High Pressure Pump
Injection Valve
Throttle

### III. Ignition System

Ignition Coil
Spark Plug

### IV. Fuel Evaporative Control

EVAP Canister
EVAP Canister Purge Valve
Fuel Fill Neck
Fuel Filler Cap
Fuel Tank (with Integrated Vent Valve)
Fuel Tank Leak Diagnostic Module
Fuel Tank Pressure Sensor

### V. Secondary Air Injection System

Air Combination Valve
Air Pump
Air Vacuum Check Valve

### VI. Exhaust

Exhaust Manifold
Three-Way-Catalyst*

### VII. Engine Emissions Control Systems/Sensors

Accelerator Pedal Module
Camshaft Position Sensor
Crankshaft Position Sensor
Engine Control Module*
Engine Coolant Temperature Sensor
Engine Thermostat
Fuel Temperature/High Pressure Sensor
Intake Air Temperature Sensor
Intake Manifold Pressure Sensor
Knock Sensor
Mass Air Flow Sensor
$O_2$ Sensor
Transmission Control Module
Vehicle Speed Sensor (Front Wheels)
Vehicle Speed Sensor (Rear Wheels)

## MY 2013 - Partial Zero-Emission Vehicles (PZEV), E400 HYBRID and S400 HYBRID Only

### VIII. On-Board Diagnostics

Direct Ozone Reduction Temperature
  Sensor
Instrument Cluster (Malfunction Indicator
  Lamp)*

### IX. Hybrid System

Battery Pack Control Module
Brake Pedal Module
High Voltage Battery**

For new vehicles which are first sold by an authorized Mercedes-Benz Center in states other than CA, CT, MA, MD, ME, NJ, NY, OR, PA, RI, VT and WA:

  * These items are warranted for 8 years / 80,000 miles (whichever occurs first) and all other items are warranted for 2 years / 24,000 miles (whichever occurs first).

For new vehicles which are first sold by an authorized Mercedes-Benz Center in OR, PA and WA:

  * These items are warranted for 8 years / 80,000 miles (whichever occurs first) and all other items are warranted for 3 years / 50,000 miles (whichever occurs first).

For new vehicles which are first sold by an authorized Mercedes-Benz Center in CA, CT, MA, MD, ME, NJ, NY, RI, and VT:

  ** This item is warranted for 10 years / 150,000 miles (whichever occurs first) and all other items are warranted for 15 years / 150,000 miles (whichever occurs first).

Service and Warranty

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 214 of 289

**Service and Warranty**

Laws in many states and federal law permit owners and/or lessees to obtain a replacement vehicle or a refund of the purchase or lease price under certain circumstances. The provisions of these laws vary from state to state and vary from the federal law. To the extent allowed or not prohibited by applicable law, Mercedes-Benz USA, LLC requires that you first provide us with direct written notification of any alleged unrepaired defect or malfunction, or any other dissatisfaction you have experienced with your vehicle so that we have the opportunity to cure the problem or dissatisfaction ourselves. Giving MBUSA itself this direct notice and opportunity to cure enables us to supplement prior efforts by our authorized Mercedes-Benz Center so any ongoing problem can be resolved or the dissatisfaction addressed by us. In states that have not enacted Lemon Laws, we also require, without constituting any liability beyond the Mercedes-Benz new vehicle warranty, that you give us direct written notice of any service difficulty you have experienced. Written notifications, either required under an applicable Lemon Law or other written notifications should be sent to us, not one of our authorized Mercedes-Benz Center, at Mercedes-Benz USA, LLC, Customer Assistance Center, One Mercedes Drive, Montvale, New Jersey, 07645-0350.

# NEW JERSEY LEMON LAW DISCLOSURE

**IMPORTANT: IF THIS VEHICLE HAS A DEFECT THAT SUBSTANTIALLY IMPAIRS ITS USE, VALUE OR SAFETY, OR THAT IS LIKELY TO CAUSE DEATH OR SERIOUS BODILY INJURY IF DRIVEN, AND WAS PURCHASED, LEASED OR REGISTERED IN NEW JERSEY, YOU MAY BE ENTITLED UNDER NEW JERSEY'S LEMON LAW TO A REFUND OF THE PURCHASE PRICE OR YOUR LEASE PAYMENTS.**

**Here is a summary of your rights:**

1. **To qualify for relief under the New Jersey Lemon Law, you must give the manufacturer or its dealer the opportunity to repair or correct the defect in the vehicle within the Lemon Law's term of protection, which is the first 24,000 miles of operation or two years after the vehicle's original date of delivery, whichever is earlier.**
2. **If the manufacturer or its dealer is unable to repair or correct a defect within a reasonable time, you may be entitled to return the vehicle and receive a full refund, minus a reasonable allowance for vehicle use.**
3. **It is presumed that the manufacturer or its dealer is unable to repair or correct the defect if substantially the same defect continues to exist after the manufacturer has received written notice of the defect by certified mail, return receipt requested, and has had a final opportunity to correct the defect or condition within 10 calendar days after receipt of notice. This notice must be received by the manufacturer with the term of protection and may be given only after (i) the manufacturer or its dealer has had two or more attempts to correct the defect, (ii) the manufacturer or its dealer has had at least one attempt to correct the defect if the defect is one that is likely to cause death or serious bodily injury if the vehicle is driven; or (iii) the vehicle has been out of service for repair for a cumulative total of 20 or more calendar days, or in the case of a motorhome, 45 days or more.**
4. **If substantially the same defect continues to exist after the manufacturer has had the final opportunity to repair or correct the defect, you may file an application for relief under New Jersey's Lemon Law.**

**FOR COMPLETE INFORMATION REGARDING YOUR RIGHTS AND REMEDIES UNDER THE RELEVANT LAW, INCLUDING THE MANUFACTURER'S ADRESS TO GIVE NOTICE OF THE DEFECT, CONTACT THE NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF CONSUMER AFFAIRS, LEMON LAW UNIT, AT POST OFFICE BOX 45026, NEWARK, NEW JERSEY 07101, TEL. NO. (973) 504-6226.**

Service and Warranty

**Service and Warranty**

# NEW JERSEY LEMON LAW DISCLOSURE

IMPORTANTE: SI ESTE VEHICULO TIENE UN DEFECTO QUE SUBSTANCIALMENTE AFECTA SU USO, VALOR O SEGURIDAD,O QUE PUEDE CAUSAR MUERTE O SERIO DAÑO CORPORAL SI SE MANEJA, Y FUE COMPRADO, ARRENDADO O REGISTRADO EN NUEVA JERSEY, USTED PUEDE TENER EL DERECHO BAJO LA LEY DE LIMÓN DEL ESTADO DE NUEVA JERSEY A UN REEMBOLSO DEL PRECIO DE COMPRA O A LOS PAGOS DE SU ARRENDAMIENTO.

  Aqui le damos un sumario de sus derechos:

1. Para calificar por compensación bajo la Ley de Limon de Nueva Jersey, usted debe darle al fabricante o a su concesionario la oportunidad de reparar o corregir el defecto del vehículo dentro del término de protección bajo la Ley de Limón, que son las 24,000 millas primeras de operación o dos años después de la fecha original de la entrega del vehículo o lo que suceda primero.
2. Si el fabricante o su concesionario no puede arreglar o corregir el defecto dentro do un tiempo razonable, usted puede tener el derecho de devolver el vehículo y recibir un reembolso completo, menos un descuento por el uso del vehículo.
3. Si se supone que el fabricante o su concesionario no puede reparar o corregir el defecto y si substancialmente el mismo defecto continúa existiendo después que el fabricante ha recibido un aviso del defecto, mandado por correo certificado con recibo de returno, y ha tenido una oportunidad final para corregir el defecto o condición dentro de los 10 dias naturales después de recibir el aviso. Este aviso tiene que ser recibido por el fabricante dentro del término de protección y solo se puede dar después que (i) el fabricante o su concesionario ha intentado dos o más veces de corregir el defecto; (ii) el fabricante o su concesionario ha intentado por lo menos una vez de corregir el defecto si el defecto es uno que puede causar la muerte o serio daño corporal si el vehículo se maneja; o (iii) el vehículo ha estado fuera de servicio por reparos por una acumulación total de 20 dias naturales o más, o en el caso de una casa rodante motorizada (motorhome) de 45 dias o más.
4. Si substancialmente el mismo defecto continua existiendo después que el fabricante ha tenido la ultima oportunidad de reparar o corregir el defecto, usted puede presentar una solicitud para compensación bajo la Ley de Limón de Nueva Jersey.

PARA INFORMACION COMPLETA ACERCA DE SUS DERECHOS Y RECURSOS BAJO ESTA LEY, INCLUYENDO LA DIRECCIÓN DEL FABRICANTE PARA NOTIFICARLE EL DEFECTO, PÓNGASE EN CONTACTO CON: NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF CONSUMER AFFAIRS, LEMON LAW UNIT, POST OFFICE BOX 45026, NEWARK, NEW JERSEY 07101, NÚMERO DE TELÉFONO (973) 504-6226.

Case 1:17-cv-01701-AT Document 79 Filed 04/08/20 Page 217 of 289

**Service and Warranty**

Under California law you may be entitled to a replacement of your vehicle or a refund of the purchase price or lease price, if Mercedes-Benz USA, LLC and/or its authorized repair or service facilities fail to fix one or more substantial defects or malfunctions in the vehicle that are covered by its express warranty after a reasonable number of re-pair attempts. During the period of 18 months from original delivery of the vehicle or the accumulation of 18 000 miles on the odometer of the vehicle, whichever first oc-curs, a reasonable number of repair attempts is presumed for a retail buyer or lessee if one or more of the following occurs: (1) the same substantial defect or malfunction results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, that defect or malfunction has been subject to repair two or more times, and you have directly notified Mercedes-Benz USA, LLC in writing of the need for its repair, (2) the same  substantial defect or malfunction of a less serious nature than category (1) has been subject to repair four or more times and you have directly notified us in writing of the need for its repair, or (3) the vehicle is out of service by reason of repair of the same or different substantial defects or malfunctions for a cumulative total of more than 30 calendar days. Written direct notification should be sent to us, not an authorized Mercedes-Benz Center, at Mercedes-Benz USA, LLC, Customer Assistance Center, One Mercedes Drive, Montvale, NJ 07645-0350.

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 218 of 289

**Service and Warranty**

### If You Have Questions Regarding Warranty or Service

The satisfaction and goodwill of Mercedes-Benz owners is of primary concern to authorized Mercedes-Benz Centers and MBUSA. In the event a warranty or service matter is not handled to your satisfaction, the following steps are suggested:

**FIRST -**

Discuss the problem with your authorized Mercedes-Benz Center management. Talk to the Service Manager, then if you still have questions, discuss them with the authorized Mercedes-Benz Center's owner.

**THEN -**

Request Clarification - If unanswered questions remain, contact Mercedes-Benz USA, LLC, Customer Assistance Center, One Mercedes Drive, Montvale, New Jersey 07645-0350. 1-800-FOR-MERCedes.

When you contact Mercedes-Benz USA, LLC please be sure to include the MODEL, and VEHICLE IDENTIFICATION NUMBER (VIN) of your vehicle. This is important to assure fast, efficient handling of your inquiry.

### If You Have Lost the Service and Warranty Information Booklet

Should you lose your Service and Warranty Information booklet, have your local authorized Mercedes-Benz Center arrange for a replacement.

### If You Have Changed Your Address

Should your address change, please do not fail to notify us by using the "Notice of Address Change" coupon also contained in the centerfold of this booklet, or you may call 1-800-FOR-MERCedes to provide the information.

### SPECIAL ADJUSTMENT PROGRAMS

**Sometimes Mercedes-Benz USA, LLC offers a special adjustment program to pay for all or part of the cost of certain repairs beyond the terms of the warranty. Check with your Authorized Mercedes-Benz Center to determine whether any adjustment program is applicable to your automobile.**

**Service and Warranty**

If you have purchased a pre-owned Mercedes-Benz vehicle before the expiration of its original warranty, you are entitled to any unexpired portion of the warranty provided you establish your ownership and the purchase date of the vehicle. Please mail the coupon contained in the centerfold of this booklet to the address shown, or you may call 1-800-FOR-MERCedes to provide the information.

Such notification is likewise necessary for your own safety after expiration of the original warranty.

The "National Traffic & Motor Vehicle Safety Act of 1966" requires Mercedes-Benz USA, LLC to be in a position to contact Mercedes-Benz owners when a correction of a product defect becomes necessary.

**Service and Warranty**

## Internet

For further information you can find us on
the Mercedes-Benz web-site
www.mbusa.com

## Service and Literature

Reprinting, translation and copying, even
of excerpts, are not permitted without our
prior authorization in writing.

Press time June, 2012

Printed in U. S. A.

## Models

C250, C300 4M, C350, C63 AMG,
C250 Coupe, C350 Coupe,
C350 4M Coupe, C63 AMG Coupe,
E400 HYBRID, E350 BlueTEC, E350,
E350 4M, E550 4M, E63 AMG,
E350 4M Wagon, E63 AMG Wagon,
E350 Coupe, E350 4M Coupe,
E550 Coupe, E350 Cabriolet,
E550 Cabriolet, CLS550, CLS550 4M,
CLS63 AMG, S400 HYBRID,
S350 4M BlueTEC, S550, S550 4M,
S600, S63 AMG, S65 AMG, CL550 4M,
CL600, CL63 AMG, CL65 AMG, SLK250,
SLK350, SLK55 AMG, SL550, SL63 AMG,
SL65 AMG, SLS AMG (GT) Coupe,
SLS AMG (GT) Roadster, SLS AMG (Black
Series) Coupe, GLK250 4M BlueTEC,
GLK350, GLK350 4M,
ML350 4M BlueTEC, ML 350, ML350 4M,
ML550 4M, ML63 AMG,
GL350 4M BlueTEC, GL450 4M,
GL550 4M, GL63 AMG, G550, G63 AMG

Order No. 4515-2132-13 Edition B 2013,    © 2012 Mercedes-Benz USA, LLC,   A Daimler Company

# EXHIBIT C



# Service and Warranty Information 2014

CLS-Class, E-Class



# QUICK REFERENCE TO WARRANTY COVERAGE

(Complete warranty coverage starts on ($\triangleright$ Page 11))

| | |
|---|---|
| **BASIC WARRANTY** | 4 Years/50,000 Miles |
| **TIRES, WHEEL ALIGNMENT AND BALAN-CING, BRAKE DISCS AND PADS, GLASS, WIPER BLADES AND INSERTS** | 1 Year/12,000 Miles |
| **EMISSION PERFORMANCE/CONTROL** (Federal) | 2 Years/24,000 Miles |
| **EMISSION PERFORMANCE/CONTROL** (Federal) | 8 Years/80,000 Miles (Limited Coverage - please refer to text) |
| **EMISSION PERFORMANCE** (California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington) | 3 Years/50,000 Miles |
| **EMISSION CONTROL** (California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington) | 7 Years/70,000 Miles (Limited Coverage - please refer to text) |
| **EMISSION PERFORMANCE** Partial Zero-Emission Vehicles (PZEV), E400 HYBRID Only (Delaware, Oregon, Pennsylvania and Washington) | 3 Years/50,000 Miles |
| **EMISSION CONTROL** Partial Zero-Emission Vehicles (PZEV), E400 HYBRID Only (Delaware, Oregon, Pennsylvania and Washington) | 7 Years/70,000 Miles (Limited Coverage - please refer to text) |
| **EMISSION PERFORMANCE/CONTROL** Partial Zero-Emission Vehicles (PZEV), E400 HYBRID Only (California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont) | 15 Years/150,000 Miles (Limited Coverage - please refer to text) |
| **EMISSION PERFORMANCE/CONTROL** High Voltage Battery - E400 HYBRID Only (California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont) | 10 Years/150,000 Miles |

**Years in Service**      1  2  3  4  5  6  7  8  9  10  11  12  13  14  15

**Service and Warranty**

*Dear Mercedes-Benz Owner:*

*As an authorized Mercedes-Benz Center, we are dedicated to providing you with unparalleled Commitment to Excellence in Sales and Service.*

*We will always do everything possible to live up to this commitment.*

Authorized Mercedes-Benz Center's Signature and Stamp

**Service and Warranty**

Name: _____

Address: _____

City, State, ZIP Code:_____

Sales Department Hours: _____

Telephone: _____ Fax: _____ E-mail: _____

Service Department Hours:_____

Telephone: _____ Fax: _____ E-mail: _____

Parts Department Hours: _____

Telephone: _____ Fax: _____ E-mail: _____

Additional Customer Assistance/Services: _____

Model: _____

Serial Number:  _____

VIN:  _____

Owner:_____

Address:  _____

City, State, ZIP Code:_____


European Delivery  ☐                    Domestic Delivery  ☐


Delivery/Warranty:                    Mo. _____ Day _____ Yr. _____


Selling authorized Mercedes-Benz Center Code: _____


LIMITED WARRANTY TERMS: The first to occur of 4 Years or 50,000 miles from date of delivery or when put into service. (See details starting on (▷ Page 11) of this booklet.)


OTHER:  _____


_____
Owner's Signature

**Service and Warranty**

NEW VEHICLE
PRE-DELIVERY
INSPECTION
PERFORMED

Month _____ Day _____ Year _____

_____
Service Manager's Signature

Delivery and Owner Instructions

Owner instructed in operation of vehicle per Mercedes-Benz      ☐
New Vehicle Delivery Program

Service and Warranty Information Booklet, Operator Manuals      ☐
and Maintenance Booklet reviewed with owner

Owner introduced to Service Department Staff                   ☐

Owner instructed on:          Maintenance Schedule             ☐
                              Tire Rotation                    ☐
                              mbrace                           ☐
                              Roadside Assistance              ☐

_____
Mercedes-Benz Sales Representative's Signature

Contents   5

**Service and Warranty**

To the Owner ............................................................................................... 6

New Vehicle Limited Warranty .................................................................. 11

Emission Control System Maintenance .................................................... 20

Emission Systems Warranty (Federal) ..................................................... 21

Emission Performance Warranty (Federal) .............................................. 23

Notice of Address Change or Pre-Owned Vehicle Purchase ........................ Centerfold

Warranted Emission Related Components – Gasoline or Flexible Fuel Engine .......... 28

Emission Control System Warranty
(CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA) ............................. 30

Defect Warranty Coverage – Gasoline or Flexible Fuel Engine
(CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA) ............................. 38

Defect Warranty Coverage – PZEV and E400 HYBRID (DE, OR, PA and WA) .............. 39

Emission Control System Warranty PZEV and E400 HYBRID
(CA, CT, MA, MD, ME, NJ, NY, RI and VT) ................................................. 40

Warranty Emission Related Components PZEV and E400 HYBRID ........................... 49

Warranty Enforcement Laws (Lemon Laws) .............................................. 50

Important Notice for CA Retail Buyers and Lessees of Mercedes-Benz Vehicles ...... 53

Questions, Loss of Warranty Booklet, Address Change ............................ 54

To Purchasers of Pre-Owned Mercedes-Benz Vehicles .............................. 55

**Service and Warranty**

### General

The subsequent pages of this Service and Warranty Information booklet describe some service requirements and the warranties you receive as a Mercedes-Benz owner.

Your vehicle is covered under the terms of these "Warranties" and your authorized Mercedes-Benz Center will exchange or repair any defective parts in accordance with the terms of such warranties within stated limits.

Please keep this booklet together with the Operator's Manual, Maintenance Booklet and other documents concerning your vehicle so that future owners will have access to this literature if you should sell the vehicle.

See (▷ Page 56) for a list of models covered in this edition.

### Replacement Parts for Your Mercedes-Benz

Genuine Mercedes-Benz parts, exchange units and factory approved accessories are the recommended replacement parts for your Mercedes-Benz vehicle and are available through your authorized Mercedes-Benz Center.

These parts meet the same exacting quality control standards as the original equipment on your vehicle and comply with all applicable Federal and State safety regulations.

Consult your authorized Mercedes-Benz Center for warranty and other details. Also ask your Center about exchange parts under the Mercedes-Benz Exchange Program. These parts cost less than new parts but carry the same warranty terms.

*Service and Warranty*

*As a MERCEDES-BENZ OWNER you deserve service unparalleled in the industry.*

*To meet your service needs, your authorized Mercedes-Benz Center employs factory trained staff using the latest diagnostic and service techniques. Whether it is a small adjustment or major service, your authorized Mercedes-Benz Center will work to accommodate you quickly and efficiently.*

*Finally, should you ever experience an emergency repair situation, our 24-Hour Roadside Assistance Program is only a toll free call away. (1-800-FOR-MERCedes)*

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 232 of 289

**Service and Warranty**

*T H A N K   Y O U . . . for the confidence you have placed in us.*
*We will always do everything possible*
*to continue to earn your trust and goodwill.*

Business Card
of
Mercedes-Benz Sales Representative
(Insert here)

Business Card
of
Service Manager
(Insert here)

**Service and Warranty**

**Service and Warranty**

**Items Which Are Covered:**

DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.

ANY AUTHORIZED MERCEDES-BENZ CENTER: Any authorized Mercedes-Benz Center of the owner's choice will perform warranty repairs or replacements. The vehicle should be delivered to an authorized Mercedes-Benz Center during normal service hours. A reasonable time should be allowed after taking the vehicle to an authorized Mercedes-Benz Center for performance of the repair.

WARRANTY PERIOD: This warranty is for 48 months or 50,000 miles, whichever occurs first.

WARRANTY STARTS: The warranty period starts on the date the vehicle is delivered to the first retail purchaser or put in service as an authorized Mercedes-Benz Center demonstrator or MBUSA or Mercedes-Benz U.S. International, Inc. (MBUSI) or Mercedes-Benz Research & Development North America, Inc. (MBRDNA) company vehicle.

WHEEL ALIGNMENT AND BALANCING: Wheel alignment and wheel balancing as a result of a manufacturing defect are covered during the first 12 months or 12,000 miles, whichever occurs first, and will be performed by any authorized Mercedes-Benz Center. (▷ Page 15)

TIRES: The tires supplied on your vehicle are covered against defects in material or workmanship for the period of 12 months and/or 12,000 miles from date of delivery or when the vehicle was put in service. Should the tire become unserviceable for either of the above reasons, the tire will be replaced free of charge, including mounting and balancing, provided 1.6 mm of tread depth remains over the entire tread surface. (▷ Page 15)

The tire manufacturer's warranty coverage may extend beyond the Mercedes-Benz coverage. See tire manufacturer's warranty booklet in the owner's literature package or consult with the tire manufacturer's dealer for specific details.

Tire rotations, if applicable to your vehicle's tire configuration, are a required maintenance service. Not performing tire rotations may void the Mercedes-Benz tire warranty coverage.

**Service and Warranty**

**Items Which Are Covered: (cont'd)**

BRAKE PADS AND DISCS: Brake pads and discs are covered against defects in material or workmanship for 12 months or 12,000 miles, whichever occurs first. (▷ Page 15)

GLASS: Glass is warranted against stress cracks for 12 months or 12,000 miles, whichever occurs first. (▷ Page 16)

WIPER BLADES AND INSERTS: Wiper blades and wiper blade inserts are covered against defects in material or workmanship for 12 months or 12,000 miles, whichever occurs first. (▷ Page 15)

NO CHARGE: Warranty repairs will be made at no charge for parts and labor.

WARRANTY AVAILABLE: This warranty is applicable only in the United States and Puerto Rico. If you take your vehicle to Canada temporarily, such as on vacation, warranty service may be requested from any authorized Mercedes-Benz Center.

In all other countries defects in material and workmanship will be handled in accordance with the terms and limitations of a Limited Warranty of 24 months with unlimited miles.

This warranty gives you specific legal rights and you may also have other rights which vary from state to state.

EXCEPT FOR THE EMISSION SYSTEMS WARRANTIES, THIS IS THE ONLY WARRANTY GIVEN WITH THE PURCHASE OF A MERCEDES-BENZ VEHICLE. THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED TO THE FIRST TO OCCUR OF 48 MONTHS OR 50,000 MILES FROM THE DATE OF INITIAL OPERATION OR ITS RETAIL DELIVERY, WHICHEVER EVENT SHALL FIRST OCCUR. DAIMLER AG, MERCEDES-BENZ USA, LLC, MERCEDES-BENZ U.S. INTERNATIONAL, INC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH VEHICLE. NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR INDIRECT OR CONSEQUENTIAL DAMAGE SUCH AS DAMAGE OR INJURY TO PERSON OR PROPERTY OR LOSS OF REVENUE WHICH MIGHT BE PAID, INCURRED OR SUSTAINED BY REASON OF THE FAILURE OF ANY PART OR ASSEMBLY WHICH MAY BE REPAIRED OR REPLACED IN ACCORDANCE WITH THE TERMS OF THIS WARRANTY.

Some states do not allow the exclusion or limitation of incidental or consequential damages or limitation on how long an implied warranty lasts, so the above limitation may not apply to you.

Case 1:17-cv-01701-AT    Document 79    Filed 04/08/20    Page 238 of 289

**Service and Warranty**

### CALIFORNIA SUPPLEMENT

EXCEPT FOR THE EMISSIONS SYSTEMS WARRANTIES, THIS IS THE ONLY EXPRESS WARRANTY PROVIDED IN CONNECTION WITH THE PURCHASE OF A MERCEDES-BENZ VEHICLE.  THE STATE OF CALIFORNIA ALSO PROVIDES AN IMPLIED WARRANTY OF MERCHANTABILITY, AND WHERE APPLICABLE, AN IMPLIED WARRANTY OF FITNESS.  THE DURATION OF THESE IMPLIED WARRAN-TIES, HOWEVER, SHALL BE LIMITED TO ONE (1) YEAR FROM THE DATE OF THE ORIGINAL RETAIL SALE.  OTHER THAN THE EXPRESS WARRANTIES CONTAINED IN THIS BOOKLET AND THE IMPLIED WARRANTY OF MERCHANTABILITY, AND WHERE APPLICABLE, THE IMPLIED WARRANTY OF FITNESS,  AS LIMITED IN DURATION ABOVE, MERCEDES-BENZ DISCLAIMS ANY AND ALL OTHER IMPLIED WARRANTIES.  NEITHER DAIMLER AG, MERCEDES-BENZ USA, LLC, MERCEDES-BENZ U.S. INTERNATIONAL, INC., MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC., NOR ANY MERCEDES-BENZ AUTHORIZED SALES OR SERVICE CENTER CAN ASSUME OR AUTHORIZE ANY PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH A MERCEDES-BENZ VE-HICLE.  NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR INDIRECT OR CONSEQUENTIAL DAMAGE SUCH AS DAMAGE OR INJURY TO PERSONS OR PROPERTY OR LOSS OF REVENUE WHICH MIGHT BE PAID, INCURRED, OR SUSTAINED BY REASON OF THE FAILURE OF ANY PART OR ASSEMBLY WHICH MAY BE REPAIRED OR REPLACED IN ACCORDANCE WITH THE TERMS OF THIS WARRANTY.

**Service and Warranty**

**Items Which Are Not Covered:**

TIRE AND RIM DAMAGE: Damage to the tires such as punctures, cuts, snags, bruises, impact damage and breaks resulting from pothole impact, curb impact, or from other objects/road hazards is not covered. Damage from incorrect inflation, excessive axle load, high speed spinning (when stuck in ice, mud or snow), tire chains, racing or competitive driving events, incorrect mounting or demounting, improper puncture repair, misuse, negligence, alteration and misapplication is not covered. Rapid or irregular tire tread wear due to lack of tire rotation according to the recommended intervals specified in your vehicle's maintenance booklet or incorrect wheel alignment or tire balance is not covered. Tire tread wear is also not covered.

Damage to the rims resulting from pothole impact, curb impact, or from other objects/road hazards is not covered.

WHEEL ALIGNMENT: Adjustments for road crown issues are not covered.

BRAKE PADS AND DISCS: Replacement due to normal wear or as part of regular maintenance is not covered.

WIPER BLADES AND INSERTS: Damaged or worn wiper blades and wiper blade inserts are not covered.

DAMAGE DUE TO ACCIDENTS, MISUSE OR NEGLIGENCE: Accidents or damage from objects striking the vehicle. Misuse of the vehicle such as driving into or over potholes, curbs, or other objects/road hazards; overloading, improper operation, storage or transport (Proper use is described in the Operator's Manual).

DAMAGE DUE TO LACK OF MAINTENANCE: Lack of proper maintenance as described in the Maintenance Booklet. Use of service parts or fluids, such as paper oil filters or improper engine oil, which are non-approved by MBUSA, will cause engine damage not covered by the warranty.

NORMAL MAINTENANCE IS OWNER'S RESPONSIBILITY: Cleaning and polishing, lubrication and filters, engine tune-up, replacing worn wiper blades, wiper rubber inserts, brake pads and discs, and clutch discs and pressure plates are some of the normal maintenance services required and are not covered by this warranty. See Maintenance Booklet for details.

Damage caused by the use of improper filters (including oil filters), engine oils, fluids, cleaners, polishes, or waxes is not covered. Original equipment remote control key batteries are covered for the first 90 days from the vehicle warranty start date.

**Service and Warranty**

**Items Which Are Not Covered: (cont'd)**

DAMAGE DUE TO ALTERATIONS: Alterations by changing or adding to the vehicle can adversely affect its performance, reliability and longevity and are not covered by this warranty.

DAMAGE CAUSED BY REPAIR PARTS AND MISFUELING: MBUSA strongly warns against the introduction of fuels with an anti-knock index less than 91 octane or ethanol blends greater than E10 in non flex-fuel capable gasoline engine equipped vehicles, and in vehicles equipped with a diesel engine, strongly warns against the introduction of biodiesel blends greater than B5. Malfunctions caused by the use of other than Genuine Mercedes-Benz parts and accessories and damages or malfunctions resulting from incorrect fuel usage, poor fuel quality (including biodiesel blends not meeting ASTM D6751 or EN590 quality standards) or from blending additional fuel additives other than those expressly approved for use in exceptional circumstances (see vehicle operator's manual) by MBUSA are not covered.

DAMAGE CAUSED BY IMPROPER BODY REPAIRS: Damage or malfunctions caused by body repairs not performed in accordance with Mercedes-Benz specified repair procedures or otherwise improperly performed are not covered by this warranty.

ALTERED ODOMETER: No warranty coverage shall apply to any vehicle on which the odometer has been altered and the actual mileage cannot be determined.

DAMAGE FROM THE ENVIRONMENT: Parts made from cloth or leather (upholstery, convertible tops, trim items), wood, paint or chrome which have been affected by airborne fallout, such as chemical and tree sap, or by road salt, hail, windstorm or other environmental factors are not covered by this warranty.

DAMAGE TO GLASS: Glass breakage or scratches are not covered unless positive physical proof of a manufacturing defect can be established.

**Items Which Are Not Covered: (cont'd)**

EXTRA EXPENSES: This warranty does not cover payment for loss of use of the vehicle during warranty repairs nor lodging bills, substitute transportation rentals, or other travel costs, telephone calls, loss of pay, or other economic loss or consequential damages.

CHANGES IN DESIGN: The manufacturer has reserved the right to make any changes in design or to make additions to, or upon its products without incurring any obligations to install the same equipment on motor vehicles previously built.

RACING OR COMPETITIVE EVENTS: Your limited warranties do not cover the costs of repairing damage or conditions caused by racing, nor do they cover the repair of any defects that are found as the result of participating in a racing event.

DAMAGE TO INTERIOR SURFACES: Damage to finished interior surfaces such as upholstery, wood, leather, suede, plastic, chrome, glass, rug, and paint caused by external influence, misuse, or negligence is not covered. Some examples include, but are not limited to, spills, chafe marks, scratches, and impressions from heavy objects or clamping force (such as a strap or mounting device). Damage from the use of third party accessories such as steering wheel locks or vent-mounted air fresheners is also not covered.

Service and Warranty

Case 1:17-cv-01701-ATE Document 79 Filed 04/08/20 Page 242 of 289

**Service and Warranty**

## General

Our intention is to repair under warranty, without charge to you, anything that goes wrong with your vehicle during the warranty period which is our fault. All we ask is that you properly maintain and care for the vehicle and that you have warranty repairs performed by an authorized Mercedes-Benz Center.

Please note the difference between "defects" and "damage" as used in the warranty. Defects are covered since we, the distributor, are responsible. Conversely, we have no control over damage caused by such things as, but not limited to collision, misuse, and lack of or improper maintenance. Therefore, damage for whatever reason is not covered by the warranty.

**It is the owner's responsibility to maintain the vehicle according to the Maintenance Schedule provided. All maintenance services must be accomplished to keep your warranty coverage valid. When requesting service or repair work under warranty, the owner must present to the authorized Mercedes-Benz Center evidence that the periodic servicing requirements have been accomplished. Receipts covering completion of required servicing should be retained in the event a question arises concerning maintenance.**

**These receipts should be transferred to each subsequent owner of the vehicle. For your convenience, the Maintenance Booklet has been designed to incorporate the signature of your authorized Mercedes-Benz Center upon completion of the required maintenance services.**

**This signature is evidence of completion of the maintenance services and should be kept together with other receipts, repair orders and invoices.**

**If the owner has a warranty claim and can show through receipted invoices that the vehicle has received the required servicing, the authorized Mercedes-Benz Center will perform the warranty work without charging for parts and labor. It is the responsibility of the owner to prove and the authorized Mercedes-Benz Center to judge whether the required maintenance service has been performed.**

MBUSA's obligation is limited to the authorization to exchange or repair at its option such parts which are acknowledged by it to be defective. In case of defective assemblies, factory rebuilt units can be used in exchange instead of their repair. The replaced defective parts or assemblies shall become the property of MBUSA. Warranty repairs do not constitute an extension of the original warranty period for the vehicle or a part thereof.

**Insurance Write-Off; or Repaired or Replaced Parts**

Any vehicle which has been damaged to such an extent that the owner, insurer, financing institution or leasing company determined the vehicle to be a "total loss", "write off" or equivalent, is not covered by this warranty. This includes but is not limited to vehicles issued a "salvage", "scrap", "dismantled" or similar title under any state's law.

Any parts repaired or replaced under an insurance claim or required as a result of events which are not covered under this warranty (see "Items Which Are Not Covered", (▷ Page 15)), for example, damages due to accidents, misuse, or negligence, and in either case, any subsequent consequential damage to the vehicle are not covered by this warranty.

**Paint and Other Appearance Items**

Defects in paint, trim or other appearance items are normally taken care of during our new vehicle preparation or by the authorized Mercedes-Benz Center during new vehicle inspection. We suggest that if you find any paint or appearance problems that you advise your authorized Mercedes-Benz Center as soon as possible since deterioration due to use and exposure is not covered by the warranty.

**The instructions in your Operator's Manual regarding the care of paint, upholstery, trim items and convertible tops, as applicable, must be followed explicitly to maintain your warranty coverage.**

**Body Repair Information**

Due to the materials and assembly procedures used in the production of Mercedes-Benz vehicles, it is strongly recommended that any paint work/body repairs be performed using Genuine Mercedes-Benz parts by repair facilities which have been certified by MBUSA as having the tools, equipment and training necessary to perform such repairs. MBUSA has certified a network of body repair facilities which are qualified to perform both cosmetic and structural repairs to your vehicle.

While the vehicle owner may elect to have repairs (collision damage/paint repair work) performed by any automobile body repair establishment or individual, damage or malfunction caused by body repairs not performed in accordance with Mercedes-Benz specified repair procedures are not covered by the Mercedes-Benz New Vehicle Limited Warranty.

Should your vehicle need paint work/body repair or if you have any questions please contact your authorized Mercedes-Benz Center or call 1-800-FOR-MERCedes.

**Customer Repair Orders**

Your servicing authorized Mercedes-Benz Center will give you a copy of the Repair Order on all warranty repairs performed. Please keep this copy with your vehicle records.

Service and Warranty

**Service and Warranty**

## General

The law requires your vehicle to con-
form to exhaust emission standards. To
provide the best vehicle performance
and lowest vehicle emissions, you are
responsible to see that all recommended
maintenance procedures detailed in the
Maintenance Booklet are performed at
the specified times and mileages. The
emission control warranty does not
cover failures due solely to owner abuse
or lack of proper maintenance.

More frequent maintenance may be
needed for vehicles under severe operat-
ing conditions such as dusty areas, very
short trip driving or trailer towing.

While maintenance service can be
performed by any qualified service
outlet, we recommend that all mainte-
nance services be performed by your
authorized Mercedes-Benz Center who
is equipped with the tools, instruments,
and literature necessary for correct
and systematic performance of these
services. Although warranty obligations
are not dependent upon the use of any
particular brand of replacement parts
and you may elect to use non-Genuine
Mercedes-Benz parts for replacement
purposes, we recommend the use of
Genuine Mercedes-Benz parts for ser-
vice and repairs, since they have been
made according to the manufacturer's
specifications. It is also important to use
only fuels and lubricants meeting fac-
tory specifications, since the emission
systems warranty does not cover repair
or replacement of parts necessitated by
failure of such items.

For detailed information concerning
emission control system maintenance,
please refer to your Maintenance Book-
let. If you should desire further informa-
tion concerning tune-up specifications
or emission control system maintenance
jobs, we recommend obtaining mainte-
nance related literature. Such literature
is available from either your authorized
Mercedes-Benz Center or directly from
MBUSA.

**Service and Warranty**

## General

In accordance with the requirements of the Federal Clean Air Act as amended, MBUSA warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that:

(1) the vehicle was designed, built and equipped so as to conform, at the time of sale to the original owner, with the then applicable regulations issued by the Federal Environmental Protection Agency under authority of the Federal Clean Air Act as amended; and

(2) the vehicle is free from defects in materials and workmanship at the time of sale which would cause it not to conform with those regulations within a period of two years or 24,000 miles from the date of initial operation of the vehicle, whichever occurs first; and

(3) is free from defects in material and workmanship in specific emission related parts as specified in the lists shown on (▷ Pages 28, 49) which would cause them not to conform with those requirements for a period of 8 years or 80,000 miles, whichever occurs first.

## This Warranty Does Not Apply To:

1. The repair or replacement of warranted parts which are scheduled to be replaced prior to 80,000 miles. These parts are no longer covered once they have been replaced at the first required replacement interval during a regular maintenance service.

2. Any vehicle on which the odometer mileage has been altered and the vehicle's actual mileage cannot be readily determined.

3. Loss of time, inconvenience, loss of the use of the vehicle or similar incidental or consequential damages.

**Service and Warranty**

This warranty will be performed by any authorized Mercedes-Benz Center of the owner's choice - repairing, replacing or adjusting at the authorized Mercedes-Benz Center's discretion, upon delivery of the vehicle to the authorized Mercedes-Benz Center's place of business without charge for parts and labor (including diagnosis), using Genuine Mercedes-Benz parts to assure compliance with applicable regulations. Parts replaced under this warranty become the property of the warrantor.

This warranty is available on a vehicle purchased in the United States or in any U.S. possession governed by U.S. law.

In all other countries, defective parts will be repaired or replaced free of charge only in accordance with the terms and limitations of the warranty for new Mercedes-Benz vehicles in effect at the time in such countries.

WITH RESPECT TO EMISSION SYSTEMS, THIS WARRANTY AND THE EMISSIONS PERFORMANCE WARRANTY ARE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR. DAIMLER AG, MERCEDES-BENZ USA, LLC, MERCEDES-BENZ U.S. INTERNATIONAL, INC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE SELLING AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH EMISSION SYSTEMS.

See (▷ Pages 28, 49) for components covered by this warranty.

**General**

You may present a claim under this warranty immediately after your vehicle has failed an EPA approved emission short test if, as a result of that failure, you are required by law to repair the vehicle to avoid the imposition of a penalty or sanction. You do not need to suffer the loss of the right to use the vehicle, pay a fine, or incur repair expenses before bringing this claim. Your warranty claim may be presented to any authorized Mercedes-Benz Center of your choice in the USA or its territories.

The authorized Mercedes-Benz Center will honor or deny your claim within a reasonable time not to exceed 30 days, from the time at which your vehicle is initially presented for repair or within any time period specified by local, State or Federal Law, whichever is shorter, except when a delay is caused by events not attributable to MBUSA or your authorized Mercedes-Benz Center. You will be notified in writing by your authorized Mercedes-Benz Center of the reason for any denial of your claim.

Your authorized Mercedes-Benz Center is required by law to honor your claim if such notice of denial is not received by you within said time period.

You may obtain further information concerning the emission performance warranty or report violations of the terms of the Emission Performance Warranty by contacting the Director, Field Operation and Support Division (EN-397F), Environmental Protection Agency, 401 "M" Street, SW., Washington, D.C. 20460.

**Service and Warranty**

**Service and Warranty**

**NOTE: The Emission Performance Warranty is required by Federal Law, and is effective only to the extent required by that law. To the extent the underlying law is suspended or amended, this Warranty is automatically altered in the same manner, without further notice.**

MBUSA warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that:

a. if the vehicle is maintained and operated in accordance with MBUSA's written instructions for required maintenance and use, and

b. if the vehicle fails to conform at any time during 8 years or 80,000 miles, whichever first occurs, to the applicable emission standards as ascertained by an EPA-approved emission short test, and

c. if such non-conformity results or will result in the vehicle owner having to bear any penalty or other sanction (including the denial of the right to use the vehicle) under local, State or Federal law, then any authorized Mercedes-Benz Center during the first 24 months or 24,000 miles will make any repairs or replacements necessary to specified systems/components to correct the non-conformity or so that the vehicle will pass the smog check test at no charge for parts and labor (including diagnosis).

For the remainder of the 8 years or 80,000 miles the authorized Mercedes-Benz Center will correct only those deficiencies directly related to the specified components in the attached list which have been installed in or on the vehicle for the sole or primary purpose of reducing vehicle emissions and that were not in general use prior to Model Year 1968.

Parts replaced under this warranty become the property of the warrantor. The warranty period starts on the date the vehicle is delivered to the first retail purchaser or put into service as an authorized Mercedes-Benz Center demonstrator or MBUSI, MBUSA or MBRDNA company vehicle.

The emission control system of your new Mercedes-Benz vehicle was designed, built and tested using Genuine Mercedes-Benz parts and the vehicle is certified as being in conformity with Federal emission control regulations and requirements. Accordingly, it is recommended that any replacement parts used for maintenance, repair or replacement of emission related components be Genuine Mercedes-Benz Parts, including Remanufactured Parts.

The owner may elect to have maintenance, replacement or repair of the emission control devices and systems performed by any automotive repair establishment or individual, and may elect to use other than Genuine Mercedes-Benz Parts, including Remanufactured Parts for such maintenance, replacement or repair without invalidating this warranty; the cost of such service or parts, however, will not be covered under the warranty except in the case of an emergency.

Use of replacement parts which are not of equivalent quality and design may impair the effectiveness of the emission control systems.

If other than Genuine Mercedes-Benz Parts, including Remanufactured Parts are being used for maintenance, replacement or repair of components affecting emission control, the owner should obtain assurances that such parts are warranted by their manufacturer to be equivalent to Genuine Mercedes-Benz parts in performance and durability.

MBUSA, however, assumes no liability under this warranty with respect to parts other than Genuine Mercedes-Benz Parts, including Remanufactured Parts except for consequential damage to a non-Mercedes-Benz warranted part caused by a failure of a Mercedes-Benz part. However, the use of non-Mercedes-Benz replacement parts does not invalidate the warranty on other components unless non- Mercedes-Benz parts cause damage to warranted parts.

**Service and Warranty**

**Service and Warranty**

**MBUSA may deny an emission performance warranty claim if the failure of a part is the result of:**

a. non-compliance with the written instructions for required maintenance and use. These written instructions, including time and mileage intervals at which maintenance is to be performed may be found in the Maintenance Booklet and Operator's Manual provided with your vehicle. You are advised to perform all recommended maintenance or repairs on your new Mercedes-Benz vehicle. MBUSA may deny a warranty claim if your failure to perform the required maintenance resulted in the failure of the warranted part in question. Receipts and service records covering the performance of regular maintenance should be retained in the event questions arise concerning maintenance. The receipts and service records should be transferred to each subsequent owner of this vehicle.

b. vehicle abuse or maintenance performed in such a manner that an emission component was improperly installed or adjusted substantially outside the manufacturer's specifications or which resulted in removing or rendering inoperative any component affecting the vehicle's emissions.

c. using non-EPA certified replacement parts in the maintenance or repair of the vehicle which ultimately proved to be defective in material or workmanship or not equivalent from an emission standpoint to the original equipment part and the owner is unable to prove otherwise.

MBUSA strongly warns against the introduction of fuels with an anti-knock index less than 91 octane or ethanol blends greater than E10 in non flex-fuel capable gasoline engine equipped vehicles, and in vehicles equipped with a diesel engine, strongly warns against the introduction of biodiesel blends greater than B5 and/or not meeting ASTM D6751 or EN590 quality standards. MBUSA may deny an emission related warranty claim if it can establish that the failure or the malfunction of an emission control system part results directly from the use of:

• Gasoline engines
non-premium low octane gasoline with an anti-knock index of below 91 or ethanol blends greater than E10 for non flex-fuel vehicles,

or

• Diesel engines
diesel fuel other than S15 ULTRA-LOW SULFUR HIGHWAY DIESEL FUEL (15 ppm SULFUR MAXIMUM) and diesel fuel containing biodiesel in blends greater than B5.

**This Warranty Does Not Cover:**

a. Malfunctions in any part caused by any of the following: misuse, improper adjustments, modification, alteration, tampering, disconnection, improper or inadequate maintenance, or use of leaded gasoline for catalyst equipped vehicles.

b. Damage resulting from accident, acts of nature or other events beyond the control of MBUSA.

c. The repair or replacement of war-ranted parts which are scheduled for replacement prior to 80,000 miles once these have been replaced at the first replacement interval as part of regular maintenance service.

d. Loss of time, inconvenience, loss of use of the vehicle, or other incidental or consequential damages.

e. Any vehicle on which the odometer mileage has been altered so that the vehicle's actual mileage cannot be determined.

This warranty is available on a vehicle purchased in the United States or in any U.S. possession governed by U.S. law.

In all other countries, defective parts will be repaired or replaced free of charge only in accordance with the terms and limitations of the warranty for new Mercedes-Benz vehicles in effect at the time in such countries.

EXCEPT FOR THE EMISSION CONTROL WARRANTY, THIS WARRANTY AND THE LIMITED WARRANTY FOR NEW MERCEDES-BENZ VEHICLES ARE EXPRESSLY IN LIEU OF ALL OTHER WAR-RANTIES AND REPRESENTATION, EX-PRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR. DAIM-LER AG, MERCEDES-BENZ USA, LLC, MERCEDES-BENZ U.S. INTERNATIONAL, INC, MERCEDES-BENZ RESEARCH & DE-VELOPMENT NORTH AMERICA, INC. OR THE SELLING AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO AS-SUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH EMISSION SYSTEMS.

The lists shown on  (▷ Pages 28, 49) set forth the emission related components which may be covered by the emissions performance warranty.

Service and Warranty

**Service and Warranty**

**MY 2014 - Gasoline or Flexible Fuel Engine**

### I. Air Induction System

Air Cleaner Housing
Camshaft Adjuster
Charge Air Cooler
Deceleration Air Switching Valve
Intake Manifold
Tumble Flap Switching Valve
Turbocharger (with Integrated Exhaust
   Manifold)
Variable Intake System Switching Valve

### II. Fuel Metering System

Fuel Filter (with Integrated Pressure
   Regulator)
Fuel Injector
Fuel Management System
Fuel Pressure Regulator
Fuel Pressure Sensor
Fuel System Control Module
High Pressure Pump
Injection Valve
Throttle

### III. Ignition System

Ignition Coil
Ignition Module
Spark Plug

### IV. Fuel Evaporative Control

EVAP Canister
EVAP Canister Purge Valve
Fuel Fill Neck
Fuel Filler Cap
Fuel Tank (with Integrated Vent Valve
   and/or Fill Neck)
Fuel Tank Pressure Sensor
Fuel Tank Vent Valve

### V. Secondary Air Injection System

Air Pump
Air Combination Valve
Air Switching Valve
Air Vacuum Check Valve
Electro-Pneumatic Transducer (Frequen-
   cy Valve)

### VI. Exhaust

Exhaust Manifold
Three-Way-Catalyst*

**MY 2014 - Gasoline or Flexible Fuel Engine**

**VII. Engine Emissions Control
  Systems/Sensors**
Camshaft Position Sensor
Crankshaft Position Sensor
Engine Control Module*
Engine Coolant Temperature Sensor
Engine Thermostat
Ethanol Sensor
Fuel Temperature/High Pressure Sensor
Intake Air Temperature Sensor
Intake Manifold Pressure Sensor
Knock Sensor
Mass Air Flow Sensor
$O_2$ Sensor
Shifting Drum
Transmission Control Module
Vehicle Speed Sensor (Front Wheels)
Vehicle Speed Sensor (Rear Wheels)

**VIII. On-Board Diagnostics**
Instrument Cluster (Malfunction Indicator Lamp)*

**Service and Warranty**

* These items are warranted for 8 years/80,000 miles (whichever occurs first).

All other items are warranted for (a) or (b):

(a) 3 years/50,000 miles (whichever occurs first) for new vehicles which are first sold by an authorized Mercedes-Benz Center in CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA.

(b) 2 years/24,000 miles (whichever occurs first) for new vehicles which are first sold by an authorized Mercedes-Benz Center in all other states.

Please reference the previous pages for additional emission warranty coverage.

**CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA**

**Service and Warranty**

**Your Warranty Rights and Obligations:**

The California Air Resources Board and MBUSA are pleased to explain the emission control system warranty on your Mercedes-Benz vehicle. In California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington, new motor vehicles must be designed, built and equipped to meet these states' stringent anti-smog standards. MBUSA must warrant the emission control system on your Mercedes-Benz vehicle for the periods of time listed below provided there has been no abuse, neglect or improper maintenance of your vehicle.

Your emission control system may include such parts as the fuel injection system, ignition system, catalytic converter and engine computers. Also included may be hoses, belts, connectors and other emission related assemblies.

Where a warrantable condition exists, MBUSA will repair your Mercedes-Benz vehicle at no cost to you including diagnosis, parts and labor.

**Manufacturer's Warranty Coverage:**

For 3 years or 50,000 miles, whichever first occurs:

1. If your Mercedes-Benz vehicle fails a Smog Check Inspection, all necessary repairs and adjustments will be made by MBUSA to ensure that your vehicle passes the inspection. This is your emission control system PERFORMANCE WARRANTY.

2. If any emission related part on your MB vehicle is defective, the part will be repaired or replaced by MBUSA. This is your short-term emission control system DEFECTS WARRANTY.

For 7 years or 70,000 miles, whichever first occurs:

1. If an emission related part listed in this warranty booklet specially noted with coverage for 7 years or 70,000 miles is defective, the part will be repaired or replaced by MBUSA. This is your long-term emission control system DEFECTS WARRANTY.

**CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA**

**Owner's Warranty Responsibilities:**

As the vehicle owner, you are responsible for the performance of the required maintenance listed in your Maintenance Booklet. MBUSA recommends that you retain all receipts covering maintenance on your vehicle, but MBUSA cannot deny emission control system warranty solely for the lack of receipts or for your failure to ensure the performance of all required maintenance.

You are responsible for presenting your Mercedes-Benz vehicle to an authorized Mercedes-Benz Center as soon as a problem exists. The warranty repairs should be completed in a reasonable amount of time, not to exceed 30 days.

As the vehicle owner, you should also be aware that MBUSA may deny you warranty coverage if your vehicle or a part has failed due to abuse, neglect, improper maintenance or unapproved modifications

**Service and Warranty**

**Service and Warranty**

## CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA

If you have any questions regarding your warranty rights and responsibilities, you should contact:

Mercedes-Benz USA, LLC
Customer Assistance Center
One Mercedes Drive
Montvale, NJ 07645-0350
1-800-FOR-MERCedes, or

State of California
Air Resources Board
Mobile Source Operations Division
P.O. Box 8001
El Monte, CA 91731-2990

State of Connecticut
Department of Environmental Protection
79 Elm Street
Hartford, CT 06106-5127

Delaware Department of Natural Resources and Environmental Control
Division of Air Quality
156 South State Street
Dover, DE 19901

State of Maine
Department of Environmental Protection
17 State House Station Augusta,
ME 04333

State of Maryland
Department of the Environment
Air & Radiation Management
Administration Mobile Sources Control Program
1800 Washington Blvd.
Baltimore, MD 21230

Commonwealth of Massachusetts
Department of Environmental Protection
Division of Air Quality Control
One Winter Street, Boston, MA 02108

State of New Jersey
New Jersey Department of Environmental Protection, 401 East State Street
Trenton, NJ 08625

State of Oregon
Department of Environmental Quality
811 S.W. Sixth Avenue
Portland, OR 97204

Commonwealth of Pennsylvania
Department of Environmental Protection
Bureau of Air Quality
Rachel Carson State Office Building
12th Floor, P.O. Box 8468
Harrisburg, PA 17105-8468

State of Rhode Island
Department of Environmental Management, 235 Promenade Street
Providence, RI 02908

State of Vermont
Agency of Natural Resources
Department of Environmental Conservation, Air Pollution Control Division
Building 3 South, 103 Main Street, Waterbury, VT 05671-0402

State of Washington
Washington State Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

**CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA**

**General**

MBUSA warrants to the original and each subsequent owner of a 2014 Mercedes-Benz vehicle which is first sold by an authorized Mercedes-Benz Center in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington that:

(1) such vehicle is free from defects in material and workmanship which would cause it to fail to conform with requirements of the California Air Resources Board (CARB) or to fail to pass a smog check test for a period of use of 3 years or 50,000 miles, whichever first occurs; and

(2) if any part which affects any regulated emission from your vehicle is defective during 3 years or 50,000 miles, whichever first occurs, the part will be repaired or replaced; and

(3) is free from defects in material and workmanship in specific emission related parts as specified in the attached list which would cause them not to conform with those requirements for a period of use of 7 years or 70,000 miles, whichever first occurs.

MBUSA further warrants that:

a. if the vehicle is maintained and operated in accordance with MBUSA's written instructions for required maintenance and use, and

b. if a part is defective during 3 years or 50,000 miles, whichever first occurs, which causes the vehicle not to conform to the applicable CARB requirement or to fail a smog check test, or

c. if an emission-related part covered by the 7 year or 70,000 mile, whichever first occurs, warranty term is defective during the warranty period,

then any authorized Mercedes-Benz Center of the owner's choice will make any adjustments, repairs or replacements (including diagnosis) necessary to correct the defect or so that the vehicle will pass the smog check test at no charge for parts, labor or diagnosis.

If your vehicle is between 3 to 8 years old and has been driven less than 80,000 miles, then your vehicle may be eligible for additional coverage under the Federal Emissions Warranty.

**Service and Warranty**

**Service and Warranty**

## CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA

These warranty provisions shall begin on the date the vehicle is delivered to the first retail purchaser or, if the vehicle is first placed in service as a retail demonstrator or MBUSI, MBUSA or MBRDNA company vehicle prior to sale at retail, on the date the vehicle is first placed in such service.

The emission control system of your new Mercedes-Benz vehicle was designed, built and tested using Genuine Mercedes-Benz parts and the vehicle is certified as being in conformity with Federal, California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington emission control regulations and requirements. Accordingly, it is recommended that any replacement parts used for maintenance, repair or replacement of emission related components be Genuine Mercedes-Benz Parts, including Remanufactured Parts.

The owner may elect to have maintenance, replacement or repair of the emission control devices and systems performed by any automotive repair establishment or individual, and may elect to use other than Genuine Mercedes-Benz Parts, including Remanufactured Parts for such maintenance, replacement or repair without invalidating this warranty; the cost of such service or parts, however, will not be covered under the warranty except in the case of an emergency.

Use of replacement parts which are not of equivalent quality and design may impair the effectiveness of the emission control systems. If other than Genuine Mercedes-Benz Parts, including Remanufactured Parts are being used for maintenance, replacement or repair of components affecting emission control, the owner should obtain assurances that such parts are warranted by their manufacturer to be equivalent to Genuine Mercedes-Benz parts in performance and durability.

MBUSA, however, assumes no liability under this warranty with respect to parts other than Genuine Mercedes-Benz Parts, including Remanufactured Parts except for consequential damage to a non-Mercedes-Benz warranted part caused by a failure of a Mercedes-Benz part. However, the use of non-Mercedes-Benz replacement parts does not invalidate the warranty on other components unless non- Mercedes-Benz parts cause damage to warranted parts.

**CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA**

Repairs covered by this warranty will be performed by any authorized Mercedes-Benz Center at its place of business with no charge for parts or labor (including diagnosis), using Genuine Mercedes-Benz Parts, including Remanufactured Parts for any part covered by this warranty.

In the case of an emergency, when and where an authorized Mercedes-Benz Center is not available, repairs may be performed at any available service establishment or by the owner using any replacement part. The non-availability of a replacement part for warranty repair or a repair not completed within 30 days constitutes an emergency.

MBUSA will reimburse the owner for such repairs (including labor and diagnosis) that are covered under this warranty. Such reimbursement shall not exceed MBUSA suggested retail prices for warranted parts replaced and labor charges based on MBUSA recommended time allowances for warranty repairs at a geographically appropriate hourly labor rate. Replaced parts and paid invoices must be presented at an authorized Mercedes-Benz Center as a condition of reimbursement for emergency repairs not performed at an authorized Mercedes-Benz Center. Parts replaced under this warranty become the property of the warrantor.

The enclosed list sets forth some of the emission related components covered by the emission control system defects warranty. You are advised to perform all recommended maintenance or repairs on your new Mercedes-Benz vehicle. MBUSA will not deny an emissions system warranty claim solely because you have no record of maintenance; however, you are responsible for the performance of the required maintenance. MBUSA may deny a warranty claim if your failure to perform the required maintenance resulted in the failure of a warranted part. Receipts and service records covering the performance of regular maintenance should be retained in the event questions arise concerning maintenance. The receipts and service records should be transferred to each subsequent owner of this vehicle.

**Service and Warranty**

Case 1:17-cv-01701-ATV    Document 79    Filed 04/08/20    Page 260 of 289

**Service and Warranty**

## CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA

MBUSA strongly warns against the intro-duction of fuels with an anti-knock index less than 91 octane or ethanol blends greater than E10 in non flex-fuel capable gasoline engine equipped vehicles, and in vehicles equipped with a diesel engine, strongly warns against the intro-duction of biodiesel blends greater than B5 and/or not meeting ASTM D6751 or EN590 quality standards.  MBUSA may deny an emission related warranty claim if it can establish that the failure or the malfunction of an emission control sys-tem part results directly from the use of:

• Gasoline engines
non-premium low octane gasoline with an anti-knock index of below 91 or ethanol blends greater than E10 for non flex-fuel vehicles,

or

• Diesel engines
diesel fuel other than S15 ULTRA-LOW SULFUR HIGHWAY DIESEL FUEL (15 ppm SULFUR MAXIMUM)  and diesel fuel containing biodiesel in blends greater than B5.

**What is not covered by the Emission Warranty**

**This warranty does not cover:**

1. The repair or replacement of any "warranted part" otherwise eligible for warranty coverage shall be ex-cluded from such warranty coverage if the vehicle or engine manufacturer demonstrates that the vehicle or engine has been abused, neglected or improperly maintained, and that such abuse, neglect, or improper mainte-nance was the direct cause of the need for the repair or replacement of the part.

2. Malfunctions in any part caused by any of the following: improper adjust-ments except for those done by an authorized Mercedes-Benz Center during warranty service work, modifi-cation, alteration, tampering, discon-nection, or use of leaded gasoline (for catalyst equipped vehicles).

3. Damage resulting from accident, acts of nature or other events beyond the control of MBUSA.

4. The repair or replacement of warrant-ed parts which are scheduled to be replaced prior to 50,000 miles once these have been replaced at the first replacement interval during a regular maintenance service.

5. Incidental or consequential damages such as loss of time, inconvenience, or loss of use of the vehicle.

6. Any vehicle on which the odometer mileage has been altered so that the vehicle's actual mileage cannot be determined.

## CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA

This warranty is applicable to new vehicles which are first sold by an authorized Mercedes-Benz Center in the States of California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont and Washington. In all other states or countries, defective parts will be repaired or replaced in accordance with the terms and limitations of the warranty applicable to new Mercedes-Benz vehicles in effect at the time in such states or countries.

You may present a claim under the performance warranty immediately after your vehicle has failed a smog check test. You do not need to suffer the loss of the right to use the vehicle, pay a fine, or incur repair expenses before bringing this claim. After the 3 year/50,000 mile performance warranty period has passed, a smog check test failure due to a defect in a part which is warranted for 7 years/70,000 miles, is covered.

Your warranty claim may be presented to any authorized Mercedes-Benz Center of your choice. The authorized Mercedes-Benz Center will honor or deny your claim within a reasonable time not to exceed 30 days, from the time at which your vehicle is initially presented for repair. Exceptions are when you, the owner, request a delay, or a delay is caused by events not attributable to MBUSA or your authorized Mercedes-Benz Center.

You will be notified in writing by your authorized Mercedes-Benz Center of the reasons for any denial of your claim.

Your authorized Mercedes-Benz Center is required by law to honor your claim if such notice of denial is not received by you within said time period.

WITH RESPECT TO EMISSION SYSTEMS, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR. DAIMLER AG, MERCEDES-BENZ U.S. INTERNATIONAL, INC., MERCEDES-BENZ USA, LLC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH EMISSION SYSTEMS.

**Service and Warranty**

## MY 2014 – Gasoline or Flexible Fuel Engine (CA, CT, DE, MA, MD, ME, NJ, OR, PA, RI, VT and WA)

| Part Description | Models | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | E350 | E350 4M | E550 4M | E350 4M Wagon | E350 Coupe | E350 4M Coupe | E550 Coupe | E350 Cabriolet | E550 Cabriolet | CLS550 | CLS550 4M |
| Charge Air Cooler | | | ● | | | | ● | | ● | ● | ● |
| Engine Control Module* | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Exhaust Manifold | ● | ● | | ● | ● | ● | | ● | | | |
| Fuel Injector | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Fuel Management System | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Fuel Tank (with Integrated Vent Valve and/or Fill Neck) | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| High Pressure Pump | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Instrument Cluster (Malfunction Indicator Lamp)* | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Intake Manifold | | | ● | | | | ● | | ● | ● | ● |
| Knock Sensor | | | ● | | | | ● | | ● | ● | ● |
| Three-Way-Catalyst* | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Throttle | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Transmission Control Module | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Turbocharger (with Integrated Exhaust Manifold) | | | ● | | | | ● | | ● | ● | ● |

* These items are warranted for 8 years / 80,000 miles (whichever occurs first).

## MY 2014 – Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only (DE, OR, PA and WA)

| Part Description | Models | | | | |
|---|---|---|---|---|---|
| | E400 HYBRID | E350 | E350 4M | E350 Coupe | E350 4M Coupe |
| Battery Pack Control Module | ● | | | | |
| Brake Pedal Module | ● | | | | |
| Direct Ozone Reduction Radiator | ● | ● | ● | ● | ● |
| Direct Ozone Reduction Temperature Sensor | ● | ● | ● | ● | ● |
| Engine Control Module* | ● | ● | ● | ● | ● |
| Exhaust Manifold | ● | ● | ● | ● | ● |
| Fuel Fill Neck | ● | ● | ● | ● | ● |
| Fuel Injector | ● | ● | ● | ● | ● |
| Fuel Management System | ● | ● | ● | ● | ● |
| Fuel Tank (with integrated Vent Valve and/or Fill Neck) | ● | ● | ● | ● | ● |
| Fuel Tank Leak Diagnostic Module | ● | | | | |
| High Pressure Pump | ● | ● | ● | ● | ● |
| High Voltage Battery | ● | | | | |
| Instrument Cluster (Malfunction Indicator Lamp)* | ● | ● | ● | ● | ● |
| Intake Manifold | ● | | | | |
| Three-Way-Catalyst* | ● | ● | ● | ● | ● |
| Throttle | ● | ● | ● | ● | ● |
| Transmission Control Module | ● | ● | ● | ● | ● |

**Service and Warranty**

\* These items are warranted for 8 years / 80,000 miles (whichever occurs first).

**Service and Warranty**

**Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)**

### Your Warranty Rights and Obligations:

The California Air Resources Board and MBUSA are pleased to explain the emission control system warranty on your Mercedes-Benz Partial Zero- Emission Vehicle (PZEV) and E400 HYBRID. In California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont, new motor vehicles must be designed, built and equipped to meet these states' stringent anti-smog standards. MBUSA must warrant the emission control system on your Mercedes-Benz vehicle for the periods of time listed below provided there has been no abuse, neglect or improper maintenance of your vehicle.

Your emission control system may include such parts as the fuel injection system, ignition system, catalytic converter and engine computers. Also included may be hoses, belts, connectors and other emission related assemblies.

Where a warrantable condition exists, MBUSA will repair your Mercedes-Benz vehicle at no cost to you including diagnosis, parts and labor.

### Identifying Partial Zero-Emission Vehicles (PZEV)

Being able to identify whether your vehicle meets the California Air Resources Board (CARB) Super Ultra-Low-Emission-Vehicle (SULEV) PZEV emission standard is an important part of understanding your emission warranty rights. To identify a vehicle that meets the PZEV emission standard please refer to the text description on the Vehicle Emission Control Information (VECI) label located in the engine compartment.

Please note the location of the VECI label will vary depending on model. Refer to your vehicle Operator's Manual for further information on identification labels and their locations.

**Service and Warranty**

**Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only
(CA, CT, MA, MD, ME, NJ, NY, RI and VT)**

**Manufacturer's Warranty Coverage:**

For 15 years or 150,000 miles, which-
ever first occurs:

1. If your Mercedes-Benz vehicle fails a
   Smog Check Inspection, all necessary
   repairs and adjustments will be made
   by MBUSA to ensure that your vehicle
   passes the inspection. This is your
   emission control system PERFOR-
   MANCE WARRANTY.

2. If any emission related part on your
   Mercedes-Benz vehicle is defective,
   the part will be repaired or replaced
   by MBUSA. This is your emission con-
   trol system DEFECTS WARRANTY.

**Owner's Warranty Responsibilities:**

As the vehicle owner, you are respon-
sible for the performance of the required
maintenance listed in your Maintenance
Booklet. MBUSA recommends that you
retain all receipts covering maintenance
on your vehicle, but MBUSA cannot
deny emission control system warranty
solely for the lack of receipts or for your
failure to ensure the performance of all
required maintenance.

You are responsible for presenting your
Mercedes-Benz vehicle to an authorized
Mercedes-Benz Center as soon as a
problem exists. The warranty repairs
should be completed in a reasonable
amount of time, not to exceed 30 days.

As the vehicle owner, you should also
be aware that MBUSA may deny you
warranty coverage if your vehicle or a
part has failed due to abuse, neglect,
improper maintenance or unapproved
modifications.

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 266 of 289

**Service and Warranty**

**Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only
(CA, CT, MA, MD, ME, NJ, NY, RI and VT)**

If you have any questions regarding your warranty rights and responsibilities, you should contact:

Mercedes-Benz USA, LLC
Customer Assistance Center
One Mercedes Drive
Montvale, NJ 07645-0350
1-800-FOR-MERCedes, or

State of California
Air Resources Board
Mobile Source Operations Division
P.O. Box 8001
El Monte, CA 91731-2990

State of Connecticut
Department of Environmental Protection
79 Elm Street
Hartford, CT 06106-5127

State of Maine
Department of Environmental Protection
17 State House Station Augusta,
ME 04333

State of Maryland
Department of the Environment
Air & Radiation Management
Administration
Mobile Sources Control Program
1800 Washington Blvd.
Baltimore, MD 21230

Commonwealth of Massachusetts
Department of Environmental Protection
Division of Air Quality Control
One Winter Street, Boston, MA 02108

State of New Jersey
New Jersey Department of Environmental
Protection, 401 East State Street
Trenton, NJ 08625

State of New York
Department of Environmental
Conservation
625 Broadway, Albany, NY 12233

State of Rhode Island
Department of Environmental Management, 235 Promenade Street
Providence, RI 02908

State of Vermont
Agency of Natural Resources
Department of Environmental Conservation, Air Pollution Control Division
Building 3 South, 103 Main Street, Waterbury, VT 05671-0402

## Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

### General

MBUSA warrants to the original and each subsequent owner of a 2014 Mercedes-Benz Partial Zero-Emission Vehicle (PZEV) and E400 HYBRID which is first sold by an authorized Mercedes-Benz Center in California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island or Vermont that:

(1) such vehicle is free from defects in material and workmanship which would cause it to fail to conform with requirements of the California Air Resources Board (CARB) or to fail to pass a smog check test for a period of use of 15 years or 150,000 miles, whichever first occurs; and

(2) if any part which affects any regulated emission from your vehicle is defective during 15 years or 150,000 miles, whichever first occurs, the part will be repaired or replaced; and

MBUSA further warrants that:

a. if the vehicle is maintained and operated in accordance with MBUSA's written instructions for required maintenance and use, and

b. if a part is defective during 15 years or 150,000 miles, whichever first occurs, which causes the vehicle not to conform to the applicable CARB requirement or to fail a smog check test,

then any authorized Mercedes-Benz Center of the owner's choice will make any adjustments, repairs or replacements (including diagnosis) necessary to correct the defect or so that the vehicle will pass the smog check test at no charge for parts, labor or diagnosis.

Case 1:17-cv-01701-ATA Document 79 Filed 04/08/20 Page 268 of 289

**Service and Warranty**

## Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)

These warranty provisions shall begin on the date the vehicle is delivered to the first retail purchaser or, if the vehicle is first placed in service as a retail demonstrator or MBUSA, MBRDNA or MBUSI company vehicle prior to sale at retail, on the date the vehicle is first placed in such service.

The emission control system of your new Mercedes-Benz vehicle was designed, built and tested using Genuine Mercedes-Benz parts and the vehicle is certified as being in conformity with Federal, California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont emission control regulations and requirements. Accordingly, it is recommended that any replacement parts used for maintenance, repair or replacement of emission related components be Genuine Mercedes-Benz Parts, including Remanufactured Parts.

The owner may elect to have maintenance, replacement or repair of the emission control devices and systems performed by any automotive repair establishment or individual, and may elect to use other than Genuine Mercedes-Benz Parts, including Remanufactured Parts for such maintenance, replacement or repair without invalidating this warranty; the cost of such service or parts, however, will not be covered under the warranty except in the case of an emergency.

Use of replacement parts which are not of equivalent quality and design may impair the effectiveness of the emission control systems. If other than Genuine Mercedes-Benz Parts, including Remanufactured Parts are being used for maintenance, replacement or repair of components affecting emission control, the owner should obtain assurances that such parts are warranted by their manufacturer to be equivalent to Genuine Mercedes-Benz parts in performance and durability.

MBUSA, however, assumes no liability under this warranty with respect to parts other than Genuine Mercedes-Benz Parts, including Remanufactured Parts except for consequential damage to a non-Mercedes-Benz warranted part caused by a failure of a Mercedes-Benz part. However, the use of non-Mercedes-Benz replacement parts does not invalidate the warranty on other components unless non- Mercedes-Benz parts cause damage to warranted parts.

**Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)**

Repairs covered by this warranty will be performed by any authorized Mercedes-Benz Center at its place of business with no charge for parts or labor (including diagnosis), using Genuine Mercedes-Benz Parts, including Remanufactured Parts for any part covered by this warranty.

In the case of an emergency, when and where an authorized Mercedes-Benz Center is not available, repairs may be performed at any available service establishment or by the owner using any replacement part. The non-availability of a replacement part for warranty repair or a repair not completed within 30 days constitutes an emergency.

MBUSA will reimburse the owner for such repairs (including labor and diagnosis) that are covered under this warranty. Such reimbursement shall not exceed MBUSA suggested retail prices for warranted parts replaced and labor charges based on MBUSA recommended time allowances for warranty repairs at a geographically appropriate hourly labor rate. Replaced parts and paid invoices must be presented at an authorized Mercedes-Benz Center as a condition of reimbursement for emergency repairs not performed at an authorized Mercedes-Benz Center. Parts replaced under this warranty become the property of the warrantor.

The enclosed list sets forth some of the emission related components covered by the emission control system defects warranty. You are advised to perform all recommended maintenance or repairs on your new Mercedes-Benz vehicle. MBUSA will not deny an emissions system warranty claim solely because you have no record of maintenance; however, you are responsible for the performance of the required maintenance. MBUSA may deny a warranty claim if your failure to perform the required maintenance resulted in the failure of a warranted part. Receipts and service records covering the performance of regular maintenance should be retained in the event questions arise concerning maintenance. The receipts and service records should be transferred to each subsequent owner of this vehicle.

**Service and Warranty**

**Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)**

MBUSA strongly warns against the introduction of fuels with an anti-knock index less than 91 octane or ethanol blends greater than E10 in non flex-fuel capable gasoline engine equipped vehicles, and in diesel engine equipped vehicles, strongly warns against the introduction of biodiesel blends greater than B5 and/or not meeting ASTM D6751 or EN590 quality standards. MBUSA may deny an emission related warranty claim if it can establish that the failure or the malfunction of an emission control system part results directly from the use of:

• Gasoline engines
non-premium low octane gasoline with an anti-knock index of below 91 or ethanol blends greater than E10 for non flex-fuel vehicles,

or

• Diesel engines
diesel fuel other than S15 ULTRA-LOW SULFUR HIGHWAY DIESEL FUEL (15 ppm SULFUR MAXIMUM)  and diesel fuel containing biodiesel in blends greater than B5.

**Service and Warranty**

**Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)**

**What is not covered by the Emission Warranty**

**This warranty does not cover:**

1. The repair or replacement of any "warranted part" otherwise eligible for warranty coverage shall be excluded from such warranty coverage if the vehicle or engine manufacturer demonstrates that the vehicle or engine has been abused, neglected or improperly maintained, and that such abuse, neglect, or improper maintenance was the direct cause of the need for the repair or replacement of the part.

2. Malfunctions in any part caused by any of the following: improper adjustments except for those done by an authorized Mercedes-Benz Center during warranty service work, modification, alteration, tampering, disconnection, or use of leaded gasoline (for catalyst equipped vehicles).

3. Damage resulting from accident, acts of nature or other events beyond the control of MBUSA.

4. The repair or replacement of warranted parts which are scheduled to be replaced prior to 150,000 miles once these have been replaced at the first replacement interval during a regular maintenance service.

5. Incidental or consequential damages such as loss of time, inconvenience, or loss of use of the vehicle.

6. Any vehicle on which the odometer mileage has been altered so that the vehicle's actual mileage cannot be determined.

**Service and Warranty**

**Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only (CA, CT, MA, MD, ME, NJ, NY, RI and VT)**

This warranty is applicable to new vehicles which are first sold by an authorized Mercedes-Benz Center in the States of California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont. In all other states or countries, defective parts will be repaired or replaced in accordance with the terms and limitations of the warranty applicable to new Mercedes-Benz vehicles in effect at the time in such states or countries.

You do not need to suffer the loss of the right to use the vehicle, pay a fine, or incur repair expenses before bringing this claim.

Your warranty claim may be presented to any authorized Mercedes-Benz Center of your choice. The authorized Mercedes-Benz Center will honor or deny your claim within a reasonable time not to exceed 30 days, from the time at which your vehicle is initially presented for repair. Exceptions are when you, the owner, request a delay, or a delay is caused by events not attributable to MBUSA or your authorized Mercedes-Benz Center.

You will be notified in writing by your authorized Mercedes-Benz Center of the reasons for any denial of your claim.

Your authorized Mercedes-Benz Center is required by law to honor your claim if such notice of denial is not received by you within said time period.

WITH RESPECT TO EMISSION SYSTEMS, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR. DAIMLER AG, MERCEDES-BENZ U.S. INTERNATIONAL, INC., MERCEDES-BENZ USA, LLC, MERCEDES-BENZ RESEARCH & DEVELOPMENT NORTH AMERICA, INC. OR THE AUTHORIZED MERCEDES-BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH EMISSION SYSTEMS.

The warranty coverage for the High Voltage Battery of a E400 HYBRID vehicle is 10 years or 150,000 miles, whichever occurs first (▷ Page 49).

**MY 2014 - Partial Zero-Emission Vehicles (PZEV) and E400 HYBRID Only**

**I. Air Induction System**
Air Cleaner Housing
Camshaft Adjuster
Direct Ozone Reduction Radiator
Intake Manifold

**II. Fuel Metering System**
Fuel Filter (with Integrated Pressure
   Regulator)
Fuel Injector
Fuel Management System
Fuel Pressure Sensor
Fuel System Control Module
High Pressure Pump
Throttle

**III. Ignition System**
Ignition Coil
Spark Plug

**IV. Fuel Evaporative Control**
EVAP Canister
EVAP Canister Purge Valve
Fuel Fill Neck
Fuel Filler Cap
Fuel Tank (with Integrated Vent Valve
   and/or Fill Neck)
Fuel Tank Leak Diagnostic Module
Fuel Tank Pressure Sensor

**V. Exhaust**
Exhaust Manifold
Three-Way-Catalyst*

**VI. Engine Emissions Control
   Systems/Sensors**
Camshaft Position Sensor
Crankshaft Position Sensor
Engine Control Module*
Engine Coolant Temperature Sensor
Engine Thermostat
Fuel Temperature/High Pressure Sensor
Intake Air Temperature Sensor
Intake Manifold Pressure Sensor
Knock Sensor
$O_2$ Sensor
Transmission Control Module
Vehicle Speed Sensor (Front Wheels)
Vehicle Speed Sensor (Rear Wheels)

**VII. On-Board Diagnostics**
Direct Ozone Reduction Temperature
   Sensor
Instrument Cluster (Malfunction Indica-
   tor Lamp)*

**VIII. Hybrid System**
Battery Pack Control Module
Brake Pedal Module
High Voltage Battery**

**Service and Warranty**

For new vehicles which are first sold by an authorized Mercedes-Benz Center in states other than
   CA, CT, DE, MA, MD, ME, NJ, NY, OR, PA, RI, VT and WA:
* These items are warranted for 8 years / 80,000 miles (whichever occurs first) and all other items are
   warranted for 2 years / 24,000 miles (whichever occurs first).
For new vehicles which are first sold by an authorized Mercedes-Benz Center in DE, OR, PA and WA:
* These items are warranted for 8 years / 80,000 miles (whichever occurs first) and all other items are
   warranted for 3 years / 50,000 miles (whichever occurs first).
For new vehicles which are first sold by an authorized Mercedes-Benz Center in
   CA, CT, MA, MD, ME, NJ, NY, RI and VT:
** This item is warranted for 10 years / 150,000 miles (whichever occurs first) and all other items are
   warranted for 15 years / 150,000 miles (whichever occurs first).

**Service and Warranty**

Laws in many states and federal law permit owners and/or lessees to obtain a replacement vehicle or a refund of the purchase or lease price under certain circumstances. The provisions of these laws vary from state to state and vary from the federal law. To the extent allowed or not prohibited by applicable law, MBUSA requires that you first provide us with direct written notification of any alleged unrepaired defect or malfunction, or any other dissatisfaction you have experienced with your vehicle so that we have the opportunity to cure the problem or dissatisfaction ourselves. Giving MBUSA itself this direct notice and opportunity to cure enables us to supplement prior efforts by our authorized Mercedes-Benz Center so any ongoing problem can be resolved or the dissatisfaction addressed by us. In states that have not enacted Lemon Laws, we also require, without constituting any liability beyond the Mercedes-Benz new vehicle warranty, that you give us direct written notice of any service difficulty you have experienced. Written notifications, either required under an applicable Lemon Law or other written notifications should be sent to us, not one of our authorized Mercedes-Benz Center, at Mercedes-Benz USA, LLC, Customer Assistance Center, One Mercedes Drive, Montvale, New Jersey, 07645-0350.

# NEW JERSEY LEMON LAW DISCLOSURE

**IMPORTANT: IF THIS VEHICLE HAS A DEFECT THAT SUBSTANTIALLY IMPAIRS ITS USE, VALUE OR SAFETY, OR THAT IS LIKELY TO CAUSE DEATH OR SERIOUS BODILY INJURY IF DRIVEN, AND WAS PURCHASED, LEASED OR REGISTERED IN NEW JERSEY, YOU MAY BE ENTITLED UNDER NEW JERSEY'S LEMON LAW TO A REFUND OF THE PURCHASE PRICE OR YOUR LEASE PAYMENTS.**

**Here is a summary of your rights:**

**1. To qualify for relief under the New Jersey Lemon Law, you must give the manufacturer or its dealer the opportunity to repair or correct the defect in the vehicle within the Lemon Law's term of protection, which is the first 24,000 miles of operation or two years after the vehicle's original date of delivery, whichever is earlier.**

**2. If the manufacturer or its dealer is unable to repair or correct a defect within a reasonable time, you may be entitled to return the vehicle and receive a full refund, minus a reasonable allowance for vehicle use.**

**3. It is presumed that the manufacturer or its dealer is unable to repair or correct the defect if substantially the same defect continues to exist after the manufacturer has received written notice of the defect by certified mail, return receipt requested, and has had a final opportunity to correct the defect or condition within 10 calendar days after receipt of notice. This notice must be received by the manufacturer with the term of protection and may be given only after (i) the manufacturer or its dealer has had two or more attempts to correct the defect, (ii) the manufacturer or its dealer has had at least one attempt to correct the defect if the defect is one that is likely to cause death or serious bodily injury if the vehicle is driven; or (iii) the vehicle has been out of service for repair for a cumulative total of 20 or more calendar days, or in the case of a motorhome, 45 days or more.**

**4. If substantially the same defect continues to exist after the manufacturer has had the final opportunity to repair or correct the defect, you may file an application for relief under New Jersey's Lemon Law.**

**FOR COMPLETE INFORMATION REGARDING YOUR RIGHTS AND REMEDIES UNDER THE RELEVANT LAW, INCLUDING THE MANUFACTURER'S ADRESS TO GIVE NOTICE OF THE DEFECT, CONTACT THE NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF CONSUMER AFFAIRS, LEMON LAW UNIT, AT POST OFFICE BOX 45026, NEWARK, NEW JERSEY 07101, TEL. NO. (973) 504‑ 6226.**

Service and Warranty

Case 1:17-cv-01701-ATS   Document 79   Filed 04/08/20   Page 276 of 289

**Service and Warranty**

# NEW JERSEY LEMON LAW DISCLOSURE

**IMPORTANTE: SI ESTE VEHICULO TIENE UN DEFECTO QUE SUBSTANCIALMENTE AFECTA SU USO, VALOR O SEGURIDAD,O QUE PUEDE CAUSAR MUERTE O SERIO DAÑO CORPORAL SI SE MANEJA, Y FUE COMPRADO, ARRENDADO O REGISTRADO EN NUEVA JERSEY, USTED PUEDE TENER EL DERECHO BAJO LA LEY DE LIMÓN DEL ESTADO DE NUEVA JERSEY A UN REEMBOLSO DEL PRECIO DE COMPRA O A LOS PAGOS DE SU ARRENDAMIENTO.**

**Aqui le damos un sumario de sus derechos:**

**1. Para calificar por compensación bajo la Ley de Limon de Nueva Jersey, usted debe darle al fabricante o a su concesionario la oportunidad de reparar o corregir el defecto del vehículo dentro del término de protección bajo la Ley de Limón, que son las 24,000 millas primeras de operación o dos años después de la fecha original de la entrega del vehículo o lo que suceda primero.**

**2. Si el fabricante o su concesionario no puede arreglar o corregir el defecto dentro do un tiempo razonable, usted puede tener el derecho de devolver el vehículo y recibir un reembolso completo, menos un descuento por el uso del vehículo.**

**3. Si se supone que el fabricante o su concesionario no puede reparar o corregir el defecto y si substancialmente el mismo defecto continúa existiendo después que el fabricante ha recibido un aviso del defecto, mandado por correo certificado con recibo de returno, y ha tenido una oportunidad final para corregir el defecto o condición dentro de los 10 dias naturales después de recibir el aviso. Este aviso tiene que ser recibido por el fabricante dentro del término de protección y solo se puede dar después que (i) el fabricante o su concesionario ha intentado dos o más veces de corregir el defecto; (ii) el fabricante o su concesionario ha intentado por lo menos una vez de corregir el defecto si el defecto es uno que puede causar la muerte o serio daño corporal si el vehículo se maneja; o (iii) el vehículo ha estado fuera de servicio por reparos por una acumulación total de 20 dias naturales o más, o en el caso de una casa rodante motorizada (motorhome) de 45 dias o más.**

**4. Si substancialmente el mismo defecto continua existiendo después que el fabricante ha tenido la ultima oportunidad de reparar o corregir el defecto, usted puede presentar una solicitud para compensación bajo la Ley de Limón de Nueva Jersey.**

**PARA INFORMACION COMPLETA ACERCA DE SUS DERECHOS Y RECURSOS BAJO ESTA LEY, INCLUYENDO LA DIRECCIÓN DEL FABRICANTE PARA NOTIFICARLE EL DEFECTO, PÓNGASE EN CONTACTO CON: NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF CONSUMER AFFAIRS, LEMON LAW UNIT, POST OFFICE BOX 45026, NEWARK, NEW JERSEY 07101, NÚMERO DE TELÉFONO (973) 504-6226.**

Under California law you may be entitled to a replacement of your vehicle or a re-fund of the purchase price or lease price, if MBUSA and/or its authorized repair or service facilities fail to fix one or more substantial defects or malfunctions in the vehicle that are covered by its express warranty after a reasonable number of repair attempts. During the period of 18 months from original delivery of the vehicle or the accumulation of 18 000 miles on the odometer of the vehicle, whichever first occurs, a reasonable number of repair attempts is presumed for a retail buyer or lessee if one or more of the following occurs: (1) the same sub-stantial defect or malfunction results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, that defect or malfunction has been subject to repair two or more times, and you have directly notified MBUSA in writing of the need for its repair, (2) the same substantial defect or malfunction of a less serious nature than category (1) has been subject to repair four or more times and you have directly notified us in writing of the need for its repair, or (3) the vehicle is out of service by reason of repair of the same or different substan-tial defects or malfunctions for a cumulative total of more than 30 calendar days. Written direct notification should be sent to us, not an authorized Mercedes-Benz Center, at Mercedes-Benz USA, LLC, Customer Assistance Center, One Mercedes Drive, Montvale, NJ 07645-0350.

Case 1:17-cv-01701-AT   Document 79   Filed 04/08/20   Page 278 of 289

### If You Have Questions Regarding Warranty or Service

The satisfaction and goodwill of Mercedes-Benz owners is of primary concern to authorized Mercedes-Benz Centers and MBUSA. In the event a warranty or service matter is not handled to your satisfaction, the following steps are suggested:

### FIRST -

Discuss the problem with your authorized Mercedes-Benz Center management. Talk to the Service Manager, then if you still have questions, discuss them with the authorized Mercedes-Benz Center's owner.

### THEN -

Request Clarification - If unanswered questions remain, contact Mercedes-Benz USA, LLC, Customer Assistance Center, One Mercedes Drive, Montvale, New Jersey 07645-0350. 1-800-FOR-MERCedes.

When you contact MBUSA please be sure to include the MODEL, and VEHICLE IDENTIFICATION NUMBER (VIN) of your vehicle. This is important to assure fast, efficient handling of your inquiry.

### If You Have Lost the Service and Warranty Information Booklet

Should you lose your Service and Warranty Information booklet, have your local authorized Mercedes-Benz Center arrange for a replacement.

### If You Have Changed Your Address

Should your address change, please do not fail to notify us by using the "Notice of Address Change" coupon also contained in the centerfold of this booklet, or you may call 1-800-FOR-MERCedes to provide the information.

**Service and Warranty**

If you have purchased a pre-owned Mercedes-Benz vehicle before the expiration of its original warranty, you are entitled to any unexpired portion of the warranty provided you establish your ownership and the purchase date of the vehicle. Please mail the coupon contained in the centerfold of this booklet to the address shown, or you may call 1-800-FOR-MERCedes to provide the information.

Such notification is likewise necessary for your own safety after expiration of the original warranty.

The "National Traffic & Motor Vehicle Safety Act of 1966" requires MBUSA to be in a position to contact Mercedes-Benz owners when a correction of a product defect becomes necessary.

**Service and Warranty**

## Internet

For further information you can find us
on the Mercedes-Benz web-site
www.mbusa.com

## Service and Literature

Reprinting, translation and copying, even
of excerpts, are not permitted without
our prior authorization in writing.

Press time Febuary, 2013

Printed in U. S. A.

## Models

E400 HYBRID, E350, E350 4M,
E550 4M, E350 4M Wagon, E350 Coupe,
E350 4M Coupe, E550 Coupe,
E350 Cabriolet, E550 Cabriolet, CLS550,
CLS550 4M



Order no. 6515 8566 13  Part no. 212 584 86 00 Edition A 2014, © 2013 Mercedes- Benz USA, LLC, A Daimler Company

# EXHIBIT D

**Lieff**
**Cabraser**
**Heimann&**
**Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

January 29, 2016

Annika K. Martin
Partner
akmartin@lchb.com

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Marco DeSanto
General Counsel and Secretary
303 Perimeter Center North
Suite 202
Dunwoody, GA 30346

RE:    Mercedes-Benz Moldy HVAC Units

Dear Mr. DeSanto:

We write on behalf of Mr. Sunil Amin, owner of a 2013 Mercedes-Benz C250 Coupe RWD that he purchased on November 10, 2012. Since approximately January of 2014, Mr. Amin has experienced occurrences of moldy odors emanating from, his vehicle's heating, ventilation, and air conditioning ("HVAC") system. Mr. Amin has noticed that the odors generally worsen during periods of rain and when the air conditioner is used. Mr. Amin's vehicle was and is under its original factory warranty. Mr. Amin conducted extensive research and had seen Mercedes-Benz marketing prior to purchasing this vehicle. Following same, he reasonably expected to receive an enjoyable and comfortable vehicle, but rather came to experience fouls smells to the extent that they curtailed his enjoyment and use of the vehicle.

We have learned of numerous individuals who have experienced the same problem. One of these individuals owns a 2011 Mercedes-Benz C300 and was charged $184 for a temporary fix of the problem. Another owns a 2010 Another Mercedes—Benz C300W Sports Sedan and was charged $56 for a temporary repair. Another owns a 2011 Mercedes-Benz E350 and was also charged $184 to temporarily fix the problem. Another owns a 2008 Mercedes-Benz C300 and was charged $200 to temporarily fix the problem. Each of these vehicles was and is under warranty. Each of these fixes was impermanent in that they did not repair the underlying defect causing the moldy odors.

Further investigation has confirmed that this problem is wide-spread amongst Mercedes-Benz vehicle owners. Specifically, there have been numerous complaints about occurrences of mold in the HVAC units of C Class, E Class, M Class, GLK Class, GL Class, CLA

San Francisco          New York          Nashville          Seattle          www.lieffcabraser.com

Marco DeSanto
January 29, 2016
Page 2

Class, and SL Class vehicles, many of which were under warranty at the time the mold first occurred.

Because of this, we write on behalf of Mr. Amin and others similarly situated to notify you that we believe that Mercedes-Benz USA has breached express and/or implied warranties, committed fraud, unjustly enriched itself, and engaged in unfair and deceptive acts and other unlawful practices in connection with its manufacturing, advertising, marketing, and/or sale of Mercedes-Benz vehicles containing an HVAC system.

Mr. Amin alleges that Mercedes-Benz USA knew of the tendency of its vehicles to develop mold and willfully concealed this defect from consumers. Furthermore, Mercedes-Benz breached express and implied warranties by failing to disclose the defect and charging vehicle owners to repair the defect. In addition to constituting common law fraud and breach of warranties, these acts and practices also violate the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et. seq.*

On behalf of Mr. Amin and others similarly situated, we hereby demand that within thirty (30) days of receiving this letter, Mercedes-Benz agree to (1) inform us what actions, if any, Mercedes-Benz has taken to repair, fix, or rectify this issue in affected vehicles, (2) cease the deceptive practices described above, (3) correct, repair, replace, or otherwise fix the defective HVAC systems in Mr. Amin and other's affected vehicles at no cost, (4) compensate Mr. Amin and all others harmed by these practices by reimbursing those individuals who paid for repairs out of pocket, and (5) repair this problem under warranty going forward. If Mercedes-Benz refuses to provide the demanded relief within 30 days, we will file a class action to seek from Mercedes-Benz compensatory and punitive damages, restitution, and any appropriate injunctive/equitable relief. The class action will be filed on behalf of Mr. Amin and Mr. Manan Bhatt, on whose behalf you received a demand letter from us dated August 19, 2015.

If you would like to discuss resolving these violations on a class-wide basis without the need for litigation, I invite you to contact me at any time. You can reach me at (212) 355-9500 ext. 6640, or akmartin@lchb.com. I look forward to hearing from you.

Very truly yours,

Annika K. Martin

cc:      Ketan Patel, Corpus Law

AKM:wp
1290339.1

# EXHIBIT E

**Lieff**
**Cabraser**
**Heimann&**
**Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t 212.355.9500
f 212.355.9592

October 4, 2018

Annika K. Martin
Partner
akmartin@lchb.com

**VIA EMAIL AND U.S. MAIL**

Renata Jungo Brüngger, Attorney-at-Law,          Thomas Laubert, Attorney-at-Law
Member of the Board of Management,               Vice President and General Counsel
Head of Integrity & Legal Affairs

Daimler AG
Mercedesstrasse 137
70546 Stuttgart, Germany (Deutschland)
dialog@daimler.com

Re:    Mercedes-Benz Moldy HVAC Systems

Dear Counsel:

We represent Mr. Nicholas Biase, Mr. Todd Basler, Mr. John Dudasik, Ms. Rosa Grue, and Ms. Tara Fields, owners and/or lessees of Mercedes-Benz vehicles. We write on behalf of these individuals and others similarly situated to notify you that Daimler AG, Mercedes-Benz USA, LLC and their associated entities (collectively "Mercedes") have breached express and/or implied warranties, committed fraud, and engaged in unfair and deceptive acts and other unlawful practices in connection with its manufacturing, advertising, marketing, and/or sale of Mercedes vehicles containing defective heating, ventilation, and air conditioning ("HVAC") systems. These acts and practices violate laws including N.J. Stat. Ann. §§ 56:8-1, *et seq.*, Fla. Stat. §§ 501.201 *et seq.*, 815 Ill. Comp. Stat. 510 *et seq.*, Mo. Rev. Stat. §§ 407.010, N.Y. Gen. Bus. Law § 349 *et seq.*, and other state and local laws effective in all United States jurisdictions.

Mr. Biase leased a 2017 Mercedes GLE350, on June 30, 2017, from Ray Catena Mercedes-Benz of Edison in Edison, New Jersey. From about six months after he began leasing his vehicle, Mr. Biase has experienced occurrences of moldy odors emanating from his vehicle's HVAC system. Mr. Biase took his vehicle to his mechanic in or around July 2018 to have this issue repaired, and was told that the problem was mold in the HVAC system. Mr. Biase brought his concerns regarding a strong moldy/ammonia smell in his vehicle to Ray Catena Mercedes-Benz of Union, New Jersey, on or about July 27, 2018, at which time the dealer confirmed the presence of smell and performed a flush of the HVAC system. The smell returned almost immediately. Mr. Biase again brought his concerns regarding a strong moldy smell in his vehicle to Ray Catena Mercedes-Benz of Union, on or about August 20, 2018, at which time the dealer performed another flush of the HVAC system. Despite this, the smell has remained.

October 4, 2018
Page 2

Mr. Todd Basler purchased a preowned 2008 Mercedes C300 on March 14, 2011, from West County Honda in Ellisville, Missouri. Immediately after his purchase of the vehicle, Mr. Basler noticed a noxious odor caused by the HVAC System. Mr. Basler brought his concerns regarding the strong sour/moldy smell in his vehicle to Tri Star Mercedes in Ellisville, Missouri in June 2011 and was informed that the filter would have to be changed and ultrasonic cleaning would need to be done. Despite this, the smell returned after 30 days. Approximately six months later, Mr. Basler returned to Tri Star Mercedes and complained of the smell in his vehicle again. This time he was told that the repair would be at his own expense now that his vehicle was outside of warranty. Mr. Basler's dealer informed him that there was no permanent fix for the odor and that he should purchase canned cleaning sprays from Auto Zone to regularly address the smell because it would continue to return. He has purchased these cans twice at a cost of roughly $40.00 total but they have only provided temporary relief from the smell.

Mr. John Dudasik purchased a certified preowned 2013 Mercedes GL450 on March 30, 2015, from Mercedes-Benz of Hoffman Estates in Illinois. Mr. Dudasik first noticed a noxious odor caused by his HVAC System within 30 days of purchasing his vehicle. In 2016 Mr. Dudasik brought his concerns regarding the foul odor in his vehicle to Mercedes of Westmont in Westmont, Illinois where the dealer changed the filter and performed ultrasonic cleaning for free. Despite that, the foul smell returned shortly after. Mr. Dudasik went back to Mercedes of Westmont approximately 10 months later and complained of the smell again but was told that any repair attempt would now be at his expense. In May 2018, Mr. Dudasik returned to Mercedes of Westmont and advised the dealer of a Technical Service Bulletin (TSB) regarding the issue. Even after the dealer performed the TSB, cleaning the evaporator and plugging body openings, the smell returned in Mr. Dudasik's vehicle. His HVAC System was replaced.

Ms. Rosa Grue purchased a 2016 Mercedes GLE350 on May 21, 2016, from Mercedes-Benz of Huntington in Huntington, New York, along with a Mercedes Pre-Paid Service Plan. Ms. Grue first experienced a noxious odor coming from her HVAC System a year after purchasing the vehicle. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists. The strength of the odor intensifies after usage of the air conditioner and tends to be worse in the summer.

Ms. Tara Fields purchased a certified preowned 2013 Mercedes C250 in or around April 2015, from Mercedes-Benz of South Orlando in Orlando, Florida. Ms. Fields first noticed a noxious, moldy odor coming from the HVAC System of her vehicle in or around November 2016. When Ms. Fields brought her concerns regarding the strong moldy smell in her vehicle to Mercedes-Benz of South Orlando in or around March or April 2017, she was told that it was a filter problem and she had her filter replaced. Still, the smell has persisted. Ms. Fields has spent roughly $50.00 to purchase air fresheners, fragrances and incense to address the smell but those items have only provided temporary relief from the moldy odor.

We have learned of numerous individuals who have experienced the same problem with a vehicle under warranty, as well as outside of the warranty period. In each case, if any fix was

October 4, 2018
Page 3

provided, it was impermanent in that it did not repair the underlying defect causing the moldy odors. Some of these individuals are the lead plaintiffs named in the complaints in the following cases:

*Bhatt v. Mercedes-Benz USA, LLC*, No. 2:16-cv-03171 (C.D. Cal. filed May 9, 2016)
*Amin v. Mercedes-Benz USA, LLC*, No. 1:17-cv-01701 (N.D. Ga. filed May 11, 2017)

Investigation has confirmed that this problem is widespread amongst Mercedes-Benz vehicle owners and lessees. Specifically, although this issue may spread even beyond those vehicles identified here, to the best of our knowledge there have been numerous complaints about occurrences of mold in the HVAC units of the following vehicles and model years, with many such vehicles being under warranty at the time the issue first occurred:

| | |
|---|---|
| 2001-2018 | Mercedes C-Class, |
| 2000-2014 | Mercedes CL-Class, |
| 2013-2018 | Mercedes CLA-Class, |
| 2003-2009 | Mercedes CLK-Class, |
| 2004-2018 | Mercedes CLS-Class, |
| 2003-2016 | Mercedes E-Class, |
| 2007-2016 | Mercedes GL-Class, |
| 2017-2018 | Mercedes GLS-Class, |
| 2010-2015 | Mercedes GLK-Class, |
| 2006-2016 | Mercedes M-Class, |
| 2017-2018 | Mercedes GLE-Class, |
| 2006-2015 | Mercedes R-Class, |
| 1999-2018 | Mercedes S-Class, |
| 2003-2012 | Mercedes SL-Class, |
| 2004-2016 | Mercedes SLK-Class, and |
| 2002-2013 | Maybach 57 and 62. |
| 2016- 2018 | GLC Class |

The aforementioned individuals allege that Mercedes knew of the tendency of its vehicles to develop mold and willfully concealed this defect from consumers. Furthermore, Mercedes breached express and implied warranties by failing to disclose the defect and charging vehicle owners and lessees to repair the defect. In addition to constituting common law fraud and breach of warranties, these and related acts and practices violate the laws cited above and other similar state consumer protection statutes.

Based on the foregoing facts, we write on behalf of the aforementioned individuals and others similarly situated to notify you that we believe that Daimler AG, Mercedes-Benz USA, LLC and associated entities have breached express and/or implied warranties, committed fraud, unjustly enriched themselves, and engaged in unfair and deceptive acts and other unlawful practices in connection with its manufacturing, advertising, marketing, and/or sale/lease of vehicles containing an HVAC system.

October 4, 2018
Page 4


     On behalf of the aforementioned individuals and others similarly situated, we hereby demand that within thirty (30) days of receiving this letter, Mercedes agree to (1) inform us what actions, if any, Mercedes has taken to repair, fix, or rectify this issue in affected vehicles, (2) cease the deceptive practices described above, (3) correct, repair, replace, or otherwise fix the defective HVAC systems in the aforementioned individuals' and others' affected vehicles at no cost, (4) compensate the aforementioned individuals and all others harmed by these practices by reimbursing those individuals who paid for repairs out of pocket, and (5) repair this problem free of charge for all owners/lessees going forward. If Mercedes refuses to provide the demanded relief within 30 days, we will file a class action to seek from Mercedes remedies including compensatory and punitive damages, restitution, and any appropriate injunctive/equitable relief.

     If you would like to discuss resolving these violations on a class-wide basis without the need for litigation, I invite you to contact me at any time. You can reach me at (212) 355-9500 ext. 6640, or akmartin@lchb.com. I look forward to hearing from you.

Very truly yours,

Annika K. Martin

CC:    Jonathan Selbin, Esq.;
       Ketan Patel, Esq.
       John Spragens, Esq.
       Eric Knapp, Esq.

1628574.1