UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| SUNIL AMIN, TRUSHAR PATEL, MANAN BHATT, MARY BLASCO, NICHOLAS BIASE, ROSA GRUE, JOHN DUDASIK, TODD BASLER, and GAIL MAHONEY, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>MERCEDES-BENZ USA, LLC, and DAIMLER AG,<br><br>       Defendants. | Case No. 1:17-cv-01701-AT<br><br><br><br>The Honorable Amy Totenberg |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................1

II. BACKGROUND AND PROCEDURAL HISTORY ....................................3

    A.  Overview of the Litigation ..........................................................3

    B.  The Settlement Provides Outstanding Benefits for the Class. ..............5

III. LEGAL STANDARD ...........................................................................6

IV. ARGUMENT.......................................................................................8

    A.  The Settlement Establishes a Constructive Common Fund. ................8

    B.  Class Counsel's Fee is Reasonable Under the Percentage
        Method..................................................................................10

    C.  Class Counsel's Fee Request is Reasonable Under the *Johnson*
        and *Camden I* Factors............................................................13

        1.  The Time and Labor Involved ................................15

        2.  The Novelty and Difficulty of the Questions............................15

        3.  The Skill Requisite to Perform the Legal Services
            Properly and the Experience, Reputation, and Ability of
            the Lawyers ..............................................................17

        4.  The Customary Fee ................................................18

        5.  Whether the Fee is Fixed or Contingent ...................................18

        6.  The Amount Involved and the Results Obtained.......................18

        7.  Awards in Similar Cases.........................................................19

        8.  The Risks Undertaken by Class Counsel and the
            Economics Involved in Prosecuting a Class Action ................20

    D.  Class Counsel's Fee Request is Reasonable Under a Lodestar
        Cross-Check. ..........................................................................20

    E.  Class Counsel's Expenses are Reasonable and Appropriate. .............22

    F.  The Requested Service Awards Are Appropriate. ...............................24

V.  CONCLUSION...................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allapattah Servs., Inc. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006)................................................24

*Behrens v. Wometco Enters, Inc.*,
118 F.R.D. 534 (S.D. Fla. 1998) .......................................................18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..........................................................................7

*Brown Jordan Int'l, Inc. v. Carmicle*,
No. 0:14-CV-60629, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017) .................23

*Cabot E. Broward 2 LLC v. Cabot*,
No. 16-61218-CIV, 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) ......................10

*Camden I Condominium Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991).................................................... passim

*Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC*,
275 F. Supp. 3d 1350 (N.D. Ga. 2017) ............................................21

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
No. 1:04-CV-3066-JEC, 2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) .... 15, 17, 20, 22

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977)..........................................................15

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ......................................................11

*Dewey v. Volkswagen Aktiengesellschaft*,
558 F. App'x 191 (3d Cir. 2014).........................................................7

*Edmonds v. United States*,
658 F. Supp. 1126 (D.S.C. 1987) ....................................................17

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ....................................10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*George v. Academy Mortgage Corp. (UT)*,
 369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...............................................14

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
 No. 1:18-CV-20048-DPG, 2019 WL 2249941(S.D. Fla. May 24, 2019)............23

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
 No. 1:17-CV-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 6, 2019) ............12

*In re Checking Acct. Overdraft Litig.*,
 830 F. Supp. 2d. 1330 (S.D. Fla. 2011)........................................... 21, 24

*In re Domestic Air Transp. Antitrust Litig.*,
 148 F.R.D. 297 (N.D. Ga. 1993) .................................................. 11, 12

*In re Equifax Inc. Customer Data Security Breach Litig.*,
 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ............. passim

*In re Friedman's, Inc. Sec. Litig.*,
 2009 WL 1456698 (N.D. Ga. May 22, 2009). ....................................18

*In re Heartland Payment Sys., Inc.,*
 *851 F. Supp. 2d 1040 (S.D. Tex. 2012)* .................................................7

*In re Home Depot, Inc.*,
 931 F.3d 1065 (11th Cir. 2019)...........................................................8

*Johnson v. Ga. Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974)...................................................... 13, 14

Johnston v. Comerica Mortg. Corp.,
 83 F.3d 241 (8th Cir. 1996)...........................................................7, 8

*Keegan v. Am. Honda Motor Co, Inc.*,
 No. CV1009508MMMAJWX, 2014 WL 12551213 (C.D. Cal. Jan. 21, 2014)..23

*Lunsford v. Woodforest Nat'l Bank*,
 No. 1:12-CV-103-CAP, 2014 WL 12740375 (N.D. Ga. May 19, 2014)..............6

*Markos v. Wells Fargo Bank, N.A.*,
 No. 1:15-CV-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)............24

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Pinto v. Princess Cruise Lines Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007)..................................................................22

*Poertner v. Gillette Co.*,
  618 F. App'x 624 (11th Cir. 2015)..........................................................................9

*Waters v. Intern. Precious Metals Corp.,*
  190 F.3d 1291 (11th Cir. 1999)............................................................................21

*Wing v. Asarco Inc.*,
  114 F.3d 986 (9th Cir. 1997)................................................................................11

*Wolff v. Cash 4 Titles*,
  No. 03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .............. 10, 20

**Treatises**

*Attorneys' Fees in Class Actions: 2009-2013*,
  92 N.Y.U. Law Rev. 937 (2017) .................................................................. 10, 20

Manual for Complex Litigation (Fourth) § 21.7 (2004) ..................................... 7, 12

William B. Rubenstein, Newberg on Class Actions § 13:7 (5th ed. 2011)...............9

## I.    <u>INTRODUCTION</u>

This case involves an alleged defect in the HVAC system of millions of Mercedes vehicles that Plaintiffs contend results in mold, mildew, and foul odors, as a result of which owners and lessees paid out of pocket because Mercedes did not cover it under warranty. Plaintiffs and Mercedes-Benz USA, LLC and Daimler AG (jointly "Mercedes") agreed to, and the Court preliminarily approved, a nationwide class action settlement ("Settlement") that reimburses Class Members in cash for past out-of-pocket costs related to the alleged defect and establishes an enhanced, forward-looking warranty to cover those issues if and as they arise in the future. The Settlement covers some 2.5 million vehicles.  The past-repair portion and the forward-looking warranty are uncapped; Mercedes will pay all eligible claims. As discussed in greater detail below, the estimated value of the benefit to Class Members of the future-repairs warranty alone—*i.e.*, not including the cash reimbursement for past repairs—is between $30.8 million and $97.5 million. *See* Ex. 1, Decl. of Lucy P. Allen ("Allen Decl.) ¶ 29.

To compensate them for the work undertaken to achieve this valuable result for the Class, Class Counsel request an award of $5.2 million in attorneys' fees and $200,000 for reimbursement of expenses reasonably incurred in connection with this litigation. Mercedes does not object to this award. Though at this time

Plaintiffs can only estimate the value of the future-warranty portion of the Settlement benefits, not the amount of cash reimbursement for past repairs, the requested fees represent, at most, 14.4% of this part of the total estimated value of the benefits the Settlement achieves for the Class, and likely far less. This falls well below the 30% average fee award and the 25% benchmark in this Circuit. A lodestar crosscheck, though not required, also supports the requested award: the $5.2 million in fees represents a modest multiplier of 1.41 on current lodestar, not including the years of additional work Class Counsel will perform, well in line with acceptable multipliers in this Circuit. And, all of the expenses were reasonably incurred on behalf of the Class. Thus, Class Counsel respectfully request that the Court approve an award of $5.2 million in attorneys' fees and $200,000 in expenses.

Class Counsel also request approval of an aggregate service award of $40,000 to be distributed among the nine Class Representatives, ranging from $6,000 to $2,500 each based on the number of physical in-person inspections conducted on their vehicles, to compensate them for their efforts on behalf of the Class. Mercedes agreed not to object to this award, and the award is warranted legally and factually. The Class Representatives have been informed of their allocation, and all have signed off on it.

Class Counsel respectfully request that the Court grant their motion.

## II.   **BACKGROUND AND PROCEDURAL HISTORY**

### A.   **Overview of the Litigation**

This Court is well-familiar with the allegations in this case (and two related cases pending in California and New Jersey). On May 9, 2016, Plaintiff Manan Bhatt and others filed an initial class complaint against Mercedes in the Central District of California (the "*Bhatt* Action"), alleging the pertinent facts on behalf of a California class. On May 11, 2017, Plaintiffs Sunil Amin and Trushar Patel filed the instant action in this District on behalf of a Georgia class. On December 12, 2018, Plaintiff Nicholas Biase and others filed a class action complaint in the District of New Jersey (the "*Biase* Action"). As part of the Settlement, the Parties agreed to Plaintiffs filing a first amended complaint, adding each claim and named plaintiff from the three lawsuits and Class Vehicles nationwide for purposes of effectuating the Settlement. The Court granted Plaintiffs' Unopposed Motion for Leave to File an Amended Complaint, and Plaintiffs filed the First Amended Complaint. [Dkts. 75 & 79.]

These cases were intensively litigated from inception. Plaintiffs engaged in extensive pre-filing factual investigation, as evidenced by the length and detail of each case's complaint. Class Counsel interviewed Class Vehicle owners and

researched online complaints. *See* Ex. 2, Declaration of Jonathan D. Selbin

("Selbin Decl.") ¶ 26. Further, prior to filing, Plaintiffs consulted leading experts in

mechanical engineering and chemistry who inspected vehicles, identified the

alleged design defect, and found mold. *Id.* ¶ 27. Later, Plaintiffs' experts

disassembled and analyzed Class Vehicle and competitors' HVAC system designs.

*Id.* ¶¶ 55-57.

Mercedes fought vigorously to dismiss these actions in multiple courts,

through multiple motions, and Plaintiffs succeeded at each turn. This Court and the

California court denied in total four motions to dismiss and two motions to strike.

*Id.* ¶¶ 30, 34, 41, 43. Daimler also refused to accept service (including through

their counsel who also represent MBUSA) forcing Plaintiffs to attempt service via

the Hague Convention. *Id.* ¶ 38. Ultimately, Plaintiffs were forced to file a motion

for service by alternate means. *Id.* ¶ 39.

Plaintiffs also conducted extensive discovery. Between September 2017 and

April 2019, Mercedes made approximately 19 document productions spanning

nearly three decades of materials which encompassed the vast majority of the Class

Vehicles. *Id.* ¶ 48. Additionally, Plaintiffs reviewed dense and voluminous

database documents, public TSB lists and parts diagrams for Class Vehicles and

their competitors. *Id.* ¶ 51. Plaintiffs also served subpoenas on third-party

suppliers. *Id.* ¶ 52.

In the spring of 2019, the Parties agreed to mediation, and engaged a highly respected and experienced mediator, the Hon. Edward Infante (ret.) of JAMS. *Id.* ¶ 60. They prepared comprehensive mediation briefs detailing the merits of their claims and defenses, including expert analysis and research on comparable cases. *Id.* ¶ 61. A full-day, in-person mediation in May 2019 ended without agreement, but the Parties agreed to continue mediating—exchanging additional information and having ongoing discussions with each other and with Judge Infante—to narrow the disputed issues. *Id.* ¶¶ 62-63. In July 2019, the Parties mediated in person again. *Id.* ¶ 64. On July 25, 2019, as a result of this intensive information exchange and negotiation the Parties reached an agreement-in-principle and term sheet. *Id.*

Only after reaching agreement on the terms of relief for the Class did the Parties begin negotiating Class Counsel's attorneys' fees. *Id.* ¶ 65; Ex. 3, Decl. of Hon. Edward A. Infante ("Infante Decl.") ¶ 7. After negotiating about fees for over a month without reaching resolution, the Parties sought Judge Infante's help in reaching an agreement on fees. *Id.* ¶ 66. On September 6, 2019, the Parties accepted Judge Infante's mediator's proposal on fees. *Id.* ¶ 67.

### B.    <u>The Settlement Provides Outstanding Benefits for the Class.</u>

The Settlement provides outstanding benefits to Class Members directly

responsive to the harm they incurred. It covers and estimated 2.5 million vehicles.

It entitles Class Members to cash reimbursement for out-of-pocket costs paid for

past repairs at both Authorized Service Centers and independent shops related to

the moldy and mildew odors originating from their HVAC systems. There is no

limit to the number of claims or amount of total money that Mercedes will pay to

reimburse qualified past repairs: all eligible claims will be paid. The Settlement

also provides a forward-looking extended warranty that covers qualified future

repairs to address the moldy odors for each vehicle for up to 10 years or 125,000

miles. In effect, the Settlement provides Class Members with an enhanced

warranty, one that reimburses them with cash for repairs for the last ten years and

covers those repairs ten years into the future.

## III.   <u>LEGAL STANDARD</u>

"It is well established that when a representative party has conferred a

substantial benefit upon a class, counsel is entitled to attorneys' fees based upon

the benefit obtained." *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP,

2014 WL 12740375, at *11 (N.D. Ga. May 19, 2014) (citing *Camden I

Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991)). When a class

settlement creates a fund for class members, attorneys' fees should be awarded to

class counsel under the common benefit doctrine based on a percentage of the

fund. See *Camden I*, 946 F.2d at 774; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Courts often classify fee arrangements as a "constructive common funds" and award fees on a percentage basis even when the settlement agreement states that attorneys' fees will be paid separately. *See, e.g.*, *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 197 (3d Cir. 2014) (applying the percentage-of-recovery method where the settlement agreement provided attorneys' fees would be paid separately from the reimbursement fund); *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 245–46 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery", and, "[a]ccordingly, the direct payment of attorney fees by defendants should not be a barrier to the use of the percentage of the benefit analysis."); *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012) (providing an overview of the constructive common-fund doctrine); *see also* Manual for Complex Litigation (Fourth) § 21.7 (2004) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class…").

"[T]here is no hard and fast rule mandating a certain percentage of a

common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774. Nevertheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund," although "an upper limit of 50 percent of the fund may be stated as a general rule, though even larger percentages have been awarded." *Id.* at 774.

## IV.   ARGUMENT

### A.   The Settlement Establishes a Constructive Common Fund.

The attorneys' fees Class Counsel request, and to which Mercedes has agreed not to object, are paid on top of, not out of, Class Members' recoveries. They were negotiated separately from, and only after, the benefits to Class Members, and were agreed to only on a mediator's proposal. *See* Infante Decl. ¶ 7. Nevertheless, the fees are "still best viewed as an aspect of the class' recovery." *Johnston Corp.*, 83 F.3d at 245–46. Thus, the Settlement should be treated as establishing a constructive common fund, and attorneys' fees awarded based on a percentage of the fund.

The Settlement here is distinguishable from the fee arrangement the Eleventh Circuit rejected in *In re Home Depot, Inc.*, 931 F.3d 1065 (11th Cir. 2019). There, while the settlement agreement did specify that attorney's fees would

be paid separate from the class fund, the parties left the amount of those fees undetermined. *Id.* at 1071. The Court held that the constructive common fund doctrine does not apply "when the agreement provides that attorney's fees will be paid by the defendant separately from the settlement fund *and the amount of those fees is left completely undetermined.*" *Id.* at 1081 (emphasis added). Here, the amount of attorneys' fees is not "left completely undetermined"; Mercedes agreed to pay $5.4 million in attorneys' fees and expenses. Thus, the Settlement establishes a constructive common fund, and attorneys' fees should be based on a percentage of that fund.

Courts in this Circuit apply the common benefit percentage-of-the-fund method where, as here, a settlement creates an uncapped, "claims-made" settlement process. As the Eleventh Circuit has explained, "no principled reason counsels against" applying a percentage-of-recovery rule to claims-made settlements: "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant'; indeed, the two types of settlements are 'fully synonymous.'" *Poertner v. Gillette Co.*, 618 F. App'x 624, 629 n. 2 (11th Cir. 2015) (*quoting* 4 William B. Rubenstein, Newberg on Class Actions § 13:7 (5th ed. 2011)). Indeed, *Camden I* involved a settlement that created a reversionary common fund—"fully

synonymous" with the claims-made settlement here—and the Eleventh Circuit held that attorneys' fees should be determined by the percentage method in that case. 946 F.2d at 770, 774, 775.

### B.      Class Counsel's Fee is Reasonable Under the Percentage Method

In *Camden I*, the Court noted that awards typically range from 20% to 30% and that 25% is considered the "benchmark" percentage. 946 F.2d at 775. According to recent empirical studies, however, "the average percentage fee award in this Circuit is now at or above 30%, as 'courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund.'" *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 5905415, at *7 (S.D. Fla. Nov. 9, 2018) (quoting *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017)); *see also Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third."); T. Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Rev. 937, 951 (2017) (the median fee in the Eleventh Circuit from 2009 to 2013 was 33%).

The $5.2 million award Class Counsel seek, and Mercedes agreed to pay, is well below the 33% average fee award and the 25% benchmark. Where, as here,

the settlement involves an uncapped, as-yet-unknown amount, as opposed to a

known fund amount, attorneys' fees are awarded based on a "reliable estimate" of

the potential total benefits made available to the class. *In re Domestic Air Transp.*

*Antitrust Litig.*, 148 F.R.D. 297, 323 (N.D. Ga. 1993) (finding that expert

testimony provided a "reliable estimate for the purpose of examining the range of

value of the settlement"); *see also Wing v. Asarco Inc.*, 114 F.3d 986, 990 (9th Cir.

1997) (When it is "impossible to determine the 'actual' value of the recovery for

percentage purposes, . . . the court must estimate the total value of the

settlement."); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000)

("In applying the percentage-of-recovery method, [a court] must begin by making

a reasonable estimate of the settlement value.").

Here, a "reliable estimate" of the Settlement value is provided by Lucy P.

Allen, an experienced economist and the Managing Director of NERA Economic

Consulting, who conducted an analysis to estimate the market value just of the

future warranty relief provided to Class Members under the Settlement. She

calculated the estimated value of the future repairs using the following factors: (1)

the number of at-issue vehicles sold; (2) the estimated number of future HVAC

repairs; and (3) the estimated market price of an HVAC repair covered by the

Settlement. *See* Allen Decl. ¶ 8. While the total value of this Settlement cannot be

reliably estimated—because we do not yet know the amount of cash reimbursement claims for past repairs to be paid—Ms. Allen calculated the value of just the future-repairs component of the Settlement alone at $30.8 million and $97.5 million. *See* Allen Decl. ¶ 29.

In order to determine the fee percentage from this constructive fund, the proposed fees and expenses are added to the denominator. *See In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-CV-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 6, 2019) (determining the "total benefit to the class" by "adding the requested fee, litigation expenses, and the cost of administration to the $2 million aggregate cap for claims"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993) (holding that defendant's "payment of administrative expenses and attorney's fees" should be "included in the Court's calculation of the amount of the common fund" because it "inures to the benefit of the class"); Manual for Complex Litigation (Fourth) § 21.7 (2004) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel."). Thus, the fee percentage denominator—adding the $5.4 million award of fees and

expenses to Ms. Allen's estimate of the floor value just of the forward-looking warranty—results in a constructive common fund in this case between $36.2 million and $102.9 million, even before considering the additional value of cash reimbursement for past out-of-pocket costs. Class Counsel's requested fees represent *at most*, between 5% and 14.4% of the common fund, and surely substantially less, once the value of past repair reimbursements is included. Class Counsel's fee request is only a small percentage of the amount that would be permissible under controlling law. Class counsel respectfully submit that their requested fee—which is well below the benchmark fee award in this Circuit—is warranted.

> **C.** **Class Counsel's Fee Request is Reasonable Under the *Johnson* and *Camden I* Factors.**

Although 25% is the presumptive benchmark for determining the reasonableness of a fee award, the *Camden I* court specified that the percentage "may be adjusted up or down based on the circumstances of each case." 946 F.2d at 775. In considering whether to adjust the percentage up or down, the *Camden I* Court directed district courts to evaluate the factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), as well as any other pertinent considerations. *Camden I*, 946 F.2d at 776. These *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill

requisite to perform the legal services properly; (4) the preclusion of other

employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)

time limitations imposed by the client or circumstances; (8) the amount involved

and the results obtained; (9) the experience, reputation, and ability of the lawyers;

and (10) fee awards in similar cases.[1] *George v. Academy Mortgage Corp. (UT)*,

369 F. Supp. 3d 1356, 1376 (N.D. Ga. 2019). Other relevant factors include the

number of objections from class members, the risk undertaken by class counsel,

and the economics of handling class actions. *In re Equifax Inc. Customer Data

Security Breach Litig.*, 1:17-md-2800-TWT, 2020 WL 256132, at *32 (N.D. Ga.

Jan. 13, 2020).

      Given that the requested fee award is already significantly below the 25%

benchmark, none of the *Johnson* factors justifies any downward adjustment of the

fee award, and Class Counsel are not seeking an adjustment of the award above the

---

[1] Several of the *Johnson* factors are of limited relevance to this case or neutral and therefore not addressed: the undesirability of the case; the nature of the attorney-client relationship; the preclusion of other employment; and time limitations imposed by the client or circumstances. *Johnson* noted that civil rights attorneys who accept unpopular cases may suffer hardships deserving a higher fee, which Class Counsel did not face in accepting this case. Class Counsel also did not have a continuing attorney-client relationship with the named plaintiffs that would have caused them to offer a volume discount or reduced fee to obtain future business. Time limitations and the preclusion of other employment were no more or less significant in this case than in any large class action. Additionally, Plaintiffs will address any objections to the fee award in their reply brief.

benchmark. Nevertheless, the key factors weigh in favor of approval of the award.

### 1.   The Time and Labor Involved

Class Counsel spent over 6,609 hours intensively litigating this case. Selbin Decl. ¶ 72; Ex. 4, Declaration of Ketan A. Patel ("K. Patel Decl.") ¶ 22. This represented—across the three filed cases—pre-suit investigation, briefing multiple motions, discovery and extensive expert work, and mediation and negotiation of the Settlement. *Id*. Class Counsel will spend dozens or even hundreds of more hours assisting Class Members with their claims, as well as being "on call" for the next ten years as needed to assist with any issues that arise under the extended warranty. Selbin Decl. ¶ 73; K. Patel Decl. ¶ 27. This work is reasonable and justified in view of the issues, the complexity of the case, the manner in which the case was defended, and the result. This factor weighs in favor of approval of the requested fee award.

### 2.   The Novelty and Difficulty of the Questions

"It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *3 (N.D. Ga. Oct. 26, 2012) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception. This case presented several novel and difficult questions, many of

them centered on the highly technical nature of the facts of this case. Class Counsel

engaged in extensive pre-filing factual investigation, interviewing Class Vehicle

owners and researching online complaints, to confirm that moldy and mildew

odors originating from HVAC systems in Class Vehicles were similar and

widespread. Selbin Decl. ¶ 26-27; K. Patel Decl. ¶ 14. Class Counsel then

consulted leading experts in mechanical engineering and chemistry who inspected

vehicles, identified the alleged design defect, and found mold. Selbin Decl. ¶ 55-

56; K. Patel Decl. ¶ 14. Later, Plaintiffs' experts disassembled and analyzed Class

Vehicle and competitors' HVAC system designs. Selbin Decl. ¶ 57; K. Patel Decl.

¶ 16. Class Counsel reviewed dense and voluminous database documents, public

TSB lists and parts diagrams for Class Vehicles and their competitors. Selbin Decl.

¶ 51; K. Patel Decl. ¶ 15. Additional time and cost resulted from the difficulty of

serving a foreign defendant, Daimler, which refused to accept service (including

through their counsel who also represent Mercedes). Plaintiffs were forced to

attempt service via the Hague Convention and, ultimately, to file a motion for

service by alternate means. Selbin Decl. ¶ 37-39. The coordination of three

separate cases in different districts also raised novel and difficult questions. All of

these questions substantially increased Class Counsel's risk and the litigation's

complexity. This factor weighs in favor of approval of the requested fee award.

### 3.     The Skill Requisite to Perform the Legal Services Properly and the Experience, Reputation, and Ability of the Lawyers

This case required a high level of experience and skill. "[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Columbus Drywall*, 2012 WL 12540344, at *4 (citing *Edmonds v. United States,* 658 F. Supp. 1126, 1137 (D.S.C. 1987)). Plaintiffs' legal team includes lawyers for one of the oldest, largest, most respected, and most successful law firms in the country that represents plaintiffs in class actions. Selbin Decl. ¶ 3-17. It also includes an attorney with a thorough knowledge of the facts and highly technical details of the case and great skill in working with expert witnesses to test the strength of Plaintiffs' claims. K. Patel Decl. ¶ 14-16. Among other things, Mr. Patel personally participated in six testing session four vehicles and plus numerous HVAC assemblies and worked hand-in-hand with the experts to do such work. K. Patel Decl. ¶ 16. He also reviewed tens of thousands of pages of technical documents and diagrams from discovery and public sources, discussing these details, test findings, and Class Member experiences with expert witnesses. K. Patel Decl. ¶ 15, 18. Their experience and skill was needed given the complexity of the case and the quality of the opposition. The lawyers who represented Mercedes are also highly skilled and come from two of the nation's largest corporate defense firms. This factor weighs in favor of approval of the requested fee award.

### 4. The Customary Fee

Complex product defect litigation customarily is handled on a contingent fee basis, because consumers are unwilling and unable to pay substantial hourly rates and the potential recovery does not justify the economic investment. Contingent fees in such cases typically range from 33.3% to 40% of the recovery. *In re Equifax*, 2020 WL 256132, at *33. The requested fee is substantially below that range. This factor weighs in favor of approval the requested fee award.

### 5. Whether the Fee is Fixed or Contingent

Class Counsel prosecuted this case on a purely contingent-fee basis. Selbin Decl. ¶ 18; K. Patel Decl. ¶ 20. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *In re Equifax*, 2020 WL 256132, at *33 (quoting *Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1998)). A larger award is justified for attorneys who work on a contingent-fee basis because if the case is lost the attorneys will see no return for investing time and money in the case. *Id.* (citing *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009). This factor weighs in favor of approval of the requested fee award.

### 6. The Amount Involved and the Results Obtained

The Settlement provides outstanding benefits to Class Members directly

responsive to the harm they incurred. It provides for reimbursement for qualified past repairs and a forward-looking extended and enhanced warranty to cover qualified future repairs through Authorized Service Centers. The past-repair portion and forward-looking warranty are uncapped; Mercedes will pay all eligible claims. Settlement § 4.4-5, 5.1. The estimated value of the benefits made available to Class Members in the form of future repairs is between $30.8 million and $97.5 million. *See* Allen Decl. ¶ 29. Plaintiffs do not have sufficient data to determine the exact value of reimbursement of Class Members for past out-of-pocket costs, but such reimbursements will undoubtedly increase the value of the benefits for the Class. This factor weighs in favor of approval of the requested fee award.

### 7.   <u>Awards in Similar Cases</u>

The requested fee award is in line with—if not substantially lower than—awards in other class actions that have resulted in similarly impressive settlements. The fee represents, at most, *at most*, between 5% and 14.4% of the future-repairs portion of the common fund, and likely substantially less once the value of the past repair reimbursements is included. Following *Camden I*, percentage-based fee awards in the Eleventh Circuit have averaged around 33% of the class benefit. *See*, *e.g.*, *Wolff* , 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—

roughly one-third."); T. Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Rev. 937, 951 (2017) (the median fee from 2009 to 2013 was 33%). This factor weighs in favor of approval of the requested fee award.

### 8. The Risks Undertaken by Class Counsel and the Economics Involved in Prosecuting a Class Action

Prosecuting large-scale class action lawsuits on a contingency basis is inherently risky. Class Counsel's business model involves prosecuting a relatively small number of major class actions, going for some time without revenue, and relying on periodic fee awards to pay overhead and finance the millions of dollars needed to cover litigation expenses. Selbin Decl. ¶ 19.  For roughly six years, Class Counsel devoted a substantial portion of his firm's practice to this case without revenue, forgoing many other cases along the way. K. Patel Decl. ¶ 21. This case always involved a high degree of risk of no recovery. Without such an award of fees, the incentive to undertake a class action against experienced and well-paid defense counsel will be undercut, discouraging competent lawyers from acting as "private attorneys general," and thus weakening the deterrent impact of our consumer protection laws. *Columbus Drywall*, 2012 WL 12540344, at *7.

### D. Class Counsel's Fee Request is Reasonable Under a Lodestar Cross-Check.

The Eleventh Circuit has authorized courts to use the lodestar method to

- 20 -

cross-check the reasonableness of a percentage-based fee, but such a cross-check is not required. *In re Equifax*, 2020 WL 256132, at *39 (citing *Waters v. Intern. Precious Metals Corp.,* 190 F.3d 1291, 1298 (11th Cir. 1999)). In fact, "a cross-check can re-introduce the same undesirable incentives the percentage method is meant to avoid and for that reason courts regularly award fees without discussing lodestar at all." *Id.* (citing *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d. 1330, 1362 (S.D. Fla. 2011) and *Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC*, 275 F. Supp. 3d 1350, 1350 (N.D. Ga. 2017)); *see also In re Checking*, 830 F. Supp. 2d at 1362 ("The lodestar approach should not be imposed through the back door via a cross-check.").

Nevertheless, a lodestar cross-check confirms the reasonableness of the requested fee here. As of April 10, 2020, Class counsel and those under their direction have spent over 6,609 hours intensively litigating this case.[2] Selbin Decl. ¶ 72; K. Patel Decl. ¶ 22. Using current billing rates for counsel and market rates that are reasonable and approved in other class actions, Selbin Decl. ¶ 75-78; K. Patel Decl. ¶ 23-26, the value of this work is $3,685,811. Class Counsel expect to spend dozens or even hundreds of more hours assisting Class Members with their

---

[2] Should the Court want more detail, Class Counsel stand ready to provide itemized billing records *in camera.*

claims, as well as being "on call" for the next ten years as needed to assist with any issues that arise under the extended warranty, substantially increasing the total lodestar. Selbin Decl. ¶ 73; K. Patel Decl. ¶ 27.

When a lodestar cross-check is done in common fund cases, "courts typically apply a multiplier to reward counsel for their risk, the contingent nature of their fee, and the results obtained." *In re Equifax*, 2020 WL 256132, at \*39. Here, the requested fee represents Class Counsel's total current lodestar, excluding any future hours spent assisting Class Members, with a multiplier of 1.41, which is well below multipliers applied in lodestar cross-checks in other cases. *See*, *e.g.*, *In re Equifax*, 2020 WL 256132, at \*39 (multiplier of 2.62 "is consistent with multipliers approved in other cases"); *Columbus Drywall*, 2012 WL 12540344, at \*5 & n.4 (multiplier of four times the lodestar was "well within" the accepted range and citing examples); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (multipliers "'in large and complicated class actions' range from 2.26 to 4.5 while 'three appears to be the average.'") (internal quotations omitted).

### E.   Class Counsel's Expenses are Reasonable and Appropriate.

Mercedes agreed not to object to a request of $200,000 for reimbursement of expenses incurred by Class Counsel in connection with this litigation. "Courts

normally grant expense requests in common fund cases as a matter of course."

*Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019

WL 2249941, at *6 (S.D. Fla. May 24, 2019). "It is well settled that

'[e]xpenses such as reimbursement for travel, meals, lodging, photocopying, long-

distance telephone calls, computer legal research, postage, courier service,

mediation, exhibits, documents scanning, and visual equipment are typically

recoverable….'" *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-60629-CV, 2017

WL 5633312, at *10 (S.D. Fla. Aug. 7, 2017) (quoting *Keegan v. Am. Honda*

*Motor Co, Inc.*, No. CV1009508MMMAJWX, 2014 WL 12551213 (C.D. Cal. Jan.

21, 2014)).

   As of April 10, 2020, Class Counsel expended more than the $200,000 they

seek in expense reimbursement: $222,502.37.  This includes the costs of retaining

experts to investigate the nature and scope of the defect, both pre- and post-filing,

for engaging an international service specialist to serve Daimler through the Hague

Convention, and other ordinary litigation expenses.[3] Selbin Decl. ¶ 79; K. Patel

Decl. ¶ 28. These expenses—detailed in the declarations—were reasonable and

necessary for the successful prosecution of this case on behalf of the Class. Class

---

[3] Should the Court want more detail into Class Counsel's expenses, Class Counsel stand ready to provide itemized records *in camera.*

Counsel respectfully request that the Court approve reimbursement of $200,000 in expenses to Class Counsel.

### F.   The Requested Service Awards Are Appropriate.

While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (collecting cases). In fact, "courts routinely approve service awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class." *In re Equifax*, 2020 WL 256132, at 40 (approving service award of $2,500 for each class representative); *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d. at 1362 (approving service award of $10,000 each for each class representative); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-CV-01156-LMM, 2017 WL 416425, at *3 (N.D. Ga. Jan. 30, 2017) (approving service award of $20,000 for each class representative). The Settlement provides for an aggregate service award of $40,000. Class Counsel propose to allocate the award among the nine Class Representatives based on the number of in-person inspections conducted on their vehicles, with individual awards ranging from $6,000 to $2,500. K. Patel Decl. ¶ 29. Class Counsel has notified all of the

Class Representatives of the proposed allocation of the service award, and all Class Representatives have agreed to the proposed allocation. K. Patel Decl. ¶ 30. This is a reasonable award for the Class Representatives, who devoted substantial time and effort to this litigation working with their lawyers to prosecute their claims and achieve a settlement for the benefit of the entire class. But for these Class Representatives' service, other Class Members would have received nothing.

## V.   <u>CONCLUSION</u>

The Settlement in this case provides outstanding benefits to Class Members. Class Counsel's attorneys' fees and cost request is reasonable and appropriate, as is the requested service award, both of which are paid in addition to, not out of, Class Members' recoveries. Thus, Class Counsel respectfully request that the Court approve an award of $5.2 million in attorneys' fees, $200,000 for reimbursement of expenses reasonably incurred in connection with this litigation, and a service award totaling $40,000 to compensate the Class Representatives for the services they provided and the risks they incurred during the course of the class action litigation.

Dated: April 13, 2020                    Respectfully submitted,

                                         By: */s/ Ketan A. Patel*
                                             Ketan A. Patel

                                         Ketan A. Patel (State Bar Number 121099)
                                         kp@personalinjury-ga.com
                                         CORPUS LAW PATEL, LLC
                                         P.O. Box 724713
                                         Atlanta, Georgia 31139
                                         Telephone: (678) 597-8020
                                         Facsimile: (678) 826-4700


                                         Jonathan D. Selbin (admitted *pro hac vice*)
                                         jselbin@lchb.com
                                         Annika K. Martin (admitted *pro hac vice*)
                                         akmartin@lchb.com
                                         Sean A. Petterson (*pro hac vice* pending)
                                         spetterson@lchb.com
                                         LIEFF CABRASER HEIMANN &
                                         BERNSTEIN, LLP
                                         250 Hudson Street, 8th Floor
                                         New York, NY 10013-1413
                                         Telephone: (212) 355-9500
                                         Facsimile: (212) 355-9592

                                         *Attorneys for Plaintiffs and the Proposed
                                         Class*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Local Rule 5.1C, I hereby certify that this brief was prepared

using 14 point Times New Roman font with a top margin of not less than 1.5

inches and a left margin of not less than 1 inch.

Dated: April 13, 2020          Respectfully submitted.

By: <u>*/s/ Ketan A. Patel*</u>
    Ketan A. Patel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th Day of April, 2020, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

By: <u>/s/ *Ketan A. Patel*</u>
Ketan A. Patel