# Exhibit 4 –  "Declaration of Ketan A. Patel"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| SUNIL AMIN, TRUSHAR PATEL, MANAN BHATT, MARY BLASCO, NICHOLAS BIASE, ROSA GRUE, JOHN DUDASIK, TODD BASLER, and GAIL MAHONEY, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>MERCEDES-BENZ USA, LLC, and DAIMLER AG,<br><br>    Defendants. | Case No. 1:17-cv-01701-AT<br><br><br><br>The Honorable Amy Totenberg |

**DECLARATION OF KETAN A. PATEL IN SUPPORT OF
CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES,
<u>AND SERVICE AWARDS TO CLASS REPRESENTATIVES</u>**

I, Ketan A. Patel, declare as follows:

1.      I am over the age of 18 years.

2.      I am the founder, manager, and owner of the law firm Corpus Law Patel, LLC ("CLP"), which is counsel for the Settlement Class in this action.  I respectfully submit this declaration in support of the Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards to the Class Representatives ("Motion"), in order to detail for the Court (a) the depth of work CLP conducted on behalf of the Settlement Class in this action; and (b) the discovery, mediation, and other work completed by all counsel in this case that enabled the parties to reach the Settlement Agreement in this case.   Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

## I.      Background and Experience

3.      I founded CLP in 2015. The firm focuses on product liability, medical malpractice, consumer, mass tort, class action, premises liability, and personal injury matters.

4.      CLP has experience in the litigation, trial, and settlement of personal injury and product defect cases.

5.      I have served as lead counsel or otherwise materially contributed to over $15 million in suit and pre-suit settlements and verdicts.

6.      I make substantial efforts to remain current on the law, including class action issues. In addition to familiarity with Rule 23 and the Class Action Fairness Act, I regularly read notable class action decisions at the trial, appellate and Supreme Court levels. I regularly attend bar association and Georgia State Law School meetings and events. I am a member of The American Association for Justice and have attended their seminar on class actions.

7.      My interest in complex, mass tort and product liability began early in my legal career. As a young lawyer, I litigated and ultimately recovered for my client in an MDL case involving kidney damage resulting from the usage of an over-the-counter bowel cleanser, *In Re: Oral Sodium Phosphate Solution,* MDL No. 2066 (N.D. Ohio).

8.      My work alongside lead counsel was recognized in an article published in the Daily Report, which is the official legal organ newspaper for Atlanta and Fulton County, Georgia, and Law.com. The case involved a fatal vehicle wreck resulting in a $7.5 million jury verdict (apportioned to $5.625 million). (*Fennell et al. v. Charter Communications et al*., No. 15-C-02590-S2, State Court of Gwinnett County). *See* Land, Greg, "Gwinnett Jury Awards $5.6M

in Fatal Interstate 285 Motorcycle Wreck," Law.com, May 29, 2018,

http://www.law.com/dailyreportonline/2018/05/29/gwinnett-jury-awards-5-6m-in-

fatal-interstate-285-motorcycle-wreck/.

9.     I have served as lead counsel on several product liability cases. These

include a bed frame collapse resulting in injury, a shuffleboard table collapse

resulting in serious injury, and a bathroom shelf tip-over resulting in death (*Smith*

*et al. v. Davies et al.*, No. 13-C-06404-S2, State Court of Gwinnett County). In

each of these cases, I reviewed the technical details and physically examined the

products in order to identify the defect and understand the incident causing the

loss. In the shuffleboard table case, I identified alterations made to the table and

investigated industry standards and practices to pinpoint the cause of failure.

10.     I have also served as lead counsel on several premises--liability cases.

These include a nightclub parking lot shooting resulting in permanent injury, a slip

and fall on an apartment complex sidewalk resulting in permanent paralysis, a

restaurant greasy ramp slip and fall resulting in permanent injury, and several

commercial retail slip-and-fall cases. In an apartment complex triple shooting case,

my investigation and work-up was essential to its ultimate multimillion dollar

resolution.

11.     I have handled hundreds of personal injury cases involving everything from minor injury to permanent paralysis and death. For example, I served as counsel in a high-speed police chase vehicle fatality case (*Mersier et al. v. City of Atlanta et al*., No. 09EV007940, State Court of Fulton County). I have also worked on complex medical malpractice cases, including one involving a cardiac radiology misread resulting in unwarranted surgery. (*Murphy et al. v. Fulton-Dekalb et al*., No. 2006CV120699, Superior Court of Fulton County).

12.     I graduated from Georgia State Law School in 2008 and served as an intern clerk for The Honorable Robert Benham of the Supreme Court of Georgia while in my third year of law school.  I prosecuted cases on behalf of the Solicitor General of Henry County under the Third Year Practice Act and also interned at the United States Securities and Exchange Commission. I was a member of Jessup International Moot Court in law school. During my first summer as a law student, I was one of 25 1Ls selected nationwide to intern with the Army Judge Advocate General's Corps and was assigned to assist the JAG Corps. at the U.S. Army Reserve Headquarters in Fort McPherson, GA. Prior to founding CLP, I obtained a Master of Business Administration degree from The University of Georgia and worked for small and large Plaintiffs firms and a large nationwide insurance

company. As set forth above, I have experience litigating MDLs, product liability, premises liability, personal injury, and wrongful death cases.

13.    I am a member in good standing of the State Bar of Georgia and have been since 2008. I am admitted to the U. S. District Court for the Northern District of Georgia.

## II.    <u>Investigation and Settlement Negotiations</u>

14.    I have worked on every aspect of this matter since its inception. In or about 2013, I became aware of and began researching a possible defect in the Heating, Ventilation, and Air Conditioning (HVAC) systems in Mercedes vehicles causing foul odors. Following this, in or about September 2013, I reached out to Jonathan Selbin of Lieff, Cabraser, Heimann & Bernstein, LLP (LCHB) to discuss a potential case. Prior to filing (together with LCHB) the first suit regarding this issue (*Bhatt et al. v. Mercedes-Benz USA, LLC et al.*, 2:16-cv-3171-TJH-RAO (C.D. Cal.), I participated in an extensive investigation regarding this defect and regarding Defendants' vehicles. The investigation included speaking with vehicle owners to gather their experiences, vetting and retaining clients, working with experts to inspect the defective vehicles, and reviewing publicly available complaints, technical service bulletins, parts diagrams, parts lists, and warranty

documents. This work resulted in our experts finding mold and developing a theory of defect.

15.    I am thoroughly familiar with every aspect of this case. I reviewed over 200,000 pages of discovery produced by Defendants, which includes tens of thousands of pages of dense technical details, diagrams, and specifications. In addition, I researched thousands of pages of publicly available technical documents. Working with mechanical engineering, vehicle design, and chemistry experts, I personally examined numerous HVAC units of the kind involved in the instant case, as well as those of competitors, in order to understand their design and operation and to uncover, identify, and understand the defect. This defect was particularly challenging to investigate, identify, and prove due to the synergy of mechanical engineering, vehicle design, and chemistry factors enabling a chief symptom which concerns the sense of smell.

16.    In the present case, Plaintiffs' experts conducted at least 11 separate vehicle inspections (including one disassembly that resulted in testing/monitoring for over a month and eight separate testing sessions); they tested evaporators (multiple times to confirm results at various time periods); they tested competitor evaporators the same way; they compared and contrasted all of the original class vehicles' HVAC box designs and evaporator designs to one another (each body

style and each year within that body style), via visual depiction on parts diagrams, discovery produced blueprints/diagrams, and dealer part numbers and interchange lists. I was in constant communication with our experts regarding these inspections and testing, and coordinated the majority of this work. I was present for six inspections of four vehicles in addition to testing of numerous different HVAC assemblies.

17.    In addition to the technical work with Plaintiffs' experts, from the inception of each, I worked alongside LCHB attorneys and paralegals on the pleadings, motion practice, and discovery work in all three of the cases now consolidated in this action. I reviewed and edited all of the pleadings in these actions, as well as reviewing and editing the discovery work. I filed all of the pleadings in the present action. I also reviewed documents and other discovery material produced by Defendants.

18.    I have spoken in detail with nearly one hundred class members regarding their experiences with this defect, and have been the primary liaison with all of the class representatives in this case since its inception. In fact, to ensure that any and all class member concerns are promptly and properly addressed, I frequently responded to class member questions literally within hours of contact.

19.     I participated in the arms-length mediation of this dispute with

Mediator Hon. Edward A. Infante (ret.) of JAMS. I was present for in-person

mediations in May 2019 and July 2019, where the negotiations were intense and

frequent. After many follow-up calls a term sheet was signed on July 25, 2019.

## III.   **Time and Expenses**

20.     I devoted my time and resources to prosecute the class action claims

in this matter on a contingent-fee basis.  As a regular practice, I track my time and

expenses contemporaneously.

21.     For roughly six years, I devoted a substantial portion of my firm's

primarily contingency-fee practice to this case without revenue, forgoing many

other cases along the way.

22.     As of April 13, 2020, I have spent over 3,132.8 hours intensively

litigating this case. *See* Exhibit A. This represented—across the three filed cases

—pre-suit investigation, briefing multiple motions, client work, discovery and

extensive expert work, and mediation and negotiation of the Settlement.

23.     I have consulted with other attorneys in Atlanta regarding their market

rates.

24.     I have reviewed hourly rates approved by this Court in other class

actions.

25.     I have substantial experience investigating and litigating complex civil actions, including products liability cases.

26.     I have reviewed billing rate surveys and that, for comparable litigation work performed by attorneys with comparable experience, the hourly rate average in Atlanta is that which is reflected in Exhibit A—in fact, the hourly rate in Exhibit A is slightly below the Atlanta average for 2019.

27.     I estimate that I will spend dozens or even hundreds of more hours assisting Class Members with their claims, as well as being "on call" for the next ten years as needed to assist with any issues that arise under the extended warranty.

28.     As of April 13, 2020, my firm has incurred $2,016.40 in expenses in connection with investigation, prosecution, and settlement of this case. These costs were reasonable and necessary to prosecute this matter. *See* Exhibit B.

29.     Class Counsel are seeking a service award for the nine Class Representatives in the total amount of $40,000.  Class Counsel propose to allocate the award among the nine Class Representatives based on the number of physical in-person inspections conducted on their vehicles, with individual awards allocated as follows: Manan Bhatt ($4,250), Mary Blasco ($6,000), Sunil Amin ($6,000), Trushar Patel ($6,000), Rosa Grue ($2,500), Todd Basler ($4,250), John Dudasik ($4,250), Gail Mahoney ($4,250), and Nicholas Biase ($2,500).

30.    I have notified all of the Class Representatives of the proposed allocation of the service award, and all Class Representatives have agreed to the proposed allocation.

I declare under penalty of perjury of the laws of Georgia and the United States that the foregoing is true and correct, and that this declaration was executed on April 13, 2020 in Atlanta, Georgia.

*/s/ Ketan A. Patel*_____
Ketan A. Patel

# EXHIBIT A

# CORPUS LAW PATEL, LLC

**Case:**          **MERCEDES-BENZ MOLDY HVAC**

**Date Range:**      **Case Inception to 04/13/2020**

## PARTNER

|  | HOURS | RATE | TOTAL |
|---|---|---|---|
| KETAN PATEL | 3,132.80 | 600.00 | 1,879,680 |

| **Case Total:** | **3,132.80** |  | **1,879,680** |
|---|---|---|---|

# EXHIBIT B

## CORPUS LAW PATEL, LLC

**Expense report for:**   **MERCEDES-BENZ MOLDY HVAC**

**Date Range:**   **Case Inception to 04/13/2020**

## Hard Costs Incurred

| | |
|---|---|
| Other Charges | $ 39.00 |
| Outside Copy Service | $ 26.88 |
| Supplies | $ 67.41 |
| Travel | $ 1,883.11 |
| **Total Hard Costs:** | **$ 2,016.40** |

| | | |
|---|---|---|
| **Total Case Costs:** | **$ 0.00** | **$ 2,016.40** |
| **Net Costs:** | **$ 0.00** | **$ 2,016.40** |