IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SUNIL AMIN, TRUSHAR PATEL, MANAN BHATT, MARY BLASCO, NICHOLAS BIASE, ROSA GRUE, JOHN DUDASIK, TODD BASLER, and GAIL MAHONEY, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>MERCEDES-BENZ USA, LLC, and DAIMLER AG,<br><br>     Defendants. | Case No. 1:17-cv-01701-AT |

**ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES**

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Final Approval of Class Settlement [Doc. 112] and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to the Class Representatives [Doc. 80]. Plaintiffs, individually and on behalf of the proposed Settlement Class, and Defendants entered into a Class Action Settlement Agreement and Release and Amendment to Class Action Settlement Agreement and Release (collectively, "Settlement") that, if approved, resolves this litigation. (Docs. 63-1, 103-1.) The proposed Settlement Class is defined as a nationwide class of all current and former owners and lessees of

Mercedes-Benz 2008–19 C-Class, 2010–15 GLK-Class, 2012–17 CLS-Class, 2010–19 E-Class, 2015–19 GLA-Class, 2013–16 GL-Class, 2016–19 GLE-Class, 2017–19 GLS-Class, 2012–15 M-Class, and 2016–19 GLC-Class who purchased or leased their Vehicles in the United States.

On March 12, 2020, the Court ordered notice directed to the Class and scheduled a Fairness Hearing for September 9, 2020. (Doc. 75 at 4, 5.) Notice was sent to the Class via the Court-approved notice program, and the Class had an opportunity to respond. As of September 8, 2020, 16,828 claim forms from 15,870 Class Vehicles for reimbursement of Qualified Past Repairs for a total of 20,528 repairs were filed, a number likely to increase as Class Members may still submit claim forms for repairs occurring in the period between the Notice Date, May 11, 2020, and December 7, 2020, within 75 days of the date of repair. (Doc. 63-1, § 9.5.) In addition, 196 Class Members submitted timely and potentially valid opt-outs, and five Class Members objected.[1]

## II.    CLASS CERTIFICATION AND SETTLEMENT APPROVAL

When presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b). Class certification is proper when the proposed class meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b). Rule 23(a) requires: (1) numerosity, (2) commonality,

---

[1] One additional class member objected but withdrew his objection prior to the Final Approval hearing. (Docs. 86 & 87.)

(3) typicality and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

The Court analyzed these factors in its Preliminary Approval Order and finds no reason to disturb its earlier conclusions. (Doc. 75.) Rule 23(a)(1) is satisfied because the Class consists of over 2.5 million Class Vehicles and joinder of all Class Members is impracticable. Rule 23(a)(2) is satisfied because there are common issues of law and fact – the alleged common defect across Class Vehicles and Defendants' alleged omissions regarding their HVAC system and the alleged design defect. Rule 23(a)(3) is satisfied because the Class Representatives' claims are typical of those of Settlement Class Members. Rule 23(a)(4) is satisfied because the Class Representatives and Class Counsel fairly and adequately protected the interests of the Settlement Class. Rule 23(b)(3) is satisfied because the questions of law or fact common to the Settlement Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

Because the proposed Settlement satisfies Rules 23(a) and (b), the Court must next determine if the proposal is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). In preliminarily approving the Settlement, the Court analyzed Rule 23(e)(2) and concluded that it would be "likely be able to approve" the

Settlement. Doc. 75, at 4. Each prong of Rule 23(e)(2) is satisfied. Rule 23(e)(2)(A) is satisfied because the Plaintiffs and Class Counsel vigorously represented the Class. Rule 23(e)(2)(B) is satisfied because the Settlement was negotiated at arm's length by informed counsel acting in the best interests of their respective clients, and with the close participation of a well-respected mediator. Rule 23(e)(2)(C) is satisfied because (a) the relief provided for the Class is outstanding considering the costs, risk, and delay of trial and appeal; (b) direct notice to Class Members was effective; (c) Defendants will pay Class Counsel's attorneys' fees, expenses, and Class Representative service awards separately, without any reduction of Class Member recoveries; and (d) there are no undisclosed side agreements. Rule 23(e)(2)(D) is satisfied because the Settlement treats Class Members equitably by providing the same durational period of coverage for every Class Vehicle and the same sliding scale of reimbursement or coverage percentage based on the Vehicle's age/mileage.

Further, the Court finds that notice was given in accordance with the Preliminary Approval Order (Doc. 75), and that the form and content of that Notice, and the procedures for dissemination thereof, afforded adequate protections to Class Members and satisfy the requirements of Rule 23(e) and due process and constitute the best notice practicable under the circumstances.

On September 9, 2020, the Court held a hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement, and to consider each of the five objections to the Settlement. (*See* Docs. 88, 106–09.)

Under the Settlement Agreement, all 3.8 million potential Class Members who owned the 2.5 million Class Vehicles are entitled to the benefits of the extended and enhanced forward looking warranty repair coverage created by the Settlement. (Doc. 63-1, § 4.4.) Plaintiffs' expert economist, Lucy Allen, projected that the forward-looking financial benefit of the Agreement ranged between $30.8 million and $97.5 million based on an analysis of the estimated number of future repairs to Class Vehicles and the estimated total reimbursement costs for past repairs. (Doc. 80-2, ¶ 29.) Additionally, Plaintiffs were provided the option of seeking reimbursement for at least a portion of their documented expenditures for covered HVAC repairs through December 7, 2020. (Doc. 63-1, §9.5.)  When the value of the cash reimbursements for the already-filed claims is added to the expected future financial benefit of supplemental warranty coverage, the total value of the settlement is expected to range between $35.93 million and $103.66 million. In summary, the Agreement as a whole provides meaningful relief on a widespread class basis for the claimed economic injuries caused by the Vehicles' HVAC defect at issue in this litigation. (See, Motion for Approval, Doc. 112 at 18–19 ("The Settlement provides substantial relief to Class Members, delivered through a clear claims process[.]")

Generally, the five class members posing objections to the settlement raised concerns about the ongoing repair problems that had been posed by the alleged HVAC defect at issue and claims concerning the health issues caused by the alleged defect in the Class Vehicles. Two class members who filed objections on the docket

– Mr. Cosentino (Objection, Doc. 109) and Ms. Zapolski (Objection, Doc. 106) – appeared at the hearing and personally voiced their concerns to the Court at some length. Mr. Cosentino explained his experience trying to remedy the alleged moldy odor in his own vehicle over the past several years. Class counsel explained to Mr. Cosentino what sort of relief he would be entitled to under the settlement terms, as well as how to proceed if his local Mercedes-Benz dealership told him otherwise. Ms. Zapolski explained to the Court that her concern was primarily regarding the health and safety of family member occupants within her vehicle, and whether the settlement terms addressed potential personal injury issues. The Court and class counsel explained to Ms. Zapolski that the settlement explicitly carved out personal injury claims, so she was entitled to both participate in the settlement and also bring a separate claim relating to any health problems that she believed resulted from the alleged moldy odors in her vehicle. Two additional class members who did not file objections on the docket also appeared during the hearing and were able to voice their own concerns and questions regarding the operation of the settlement agreement and seemed satisfied by the explanations provided by class counsel.

As part of their response to these various class members, class counsel represented that they would be creating a system within their law firm to continue to monitor and address class member concerns regarding the settlement's implementation for as long as the settlement benefits are still being accessed by class members. For example, class members who purchased 2019 vehicles subject

6

to the settlement are able to access the benefits of this settlement through 2029,[2] and class counsel has committed to remaining available and engaged in ensuring that those class members may continue to access the settlement benefits. Class counsel also committed to remaining accessible to help resolve any issues relating to the settlement between class members and Mercedes Benz that might arise in connection with dealers' handling of HVAC repair matters covered under the Settlement Agreement or reimbursements covered by the Agreement. Class counsel further represented that, consistent with their normal class action litigation practice, they would be moving the class settlement website over to the control on their own law firm, and they committed to maintaining that website for as long as this settlement is accessible for any class members. Finally, as noted above, and in the Settlement, any personal injury claims are *not* released, and Class Members remain free to pursue them.

Certain objections also sought to materially alter the terms of the Settlement, e.g. by requesting reimbursement of the entire cost of Class Vehicles. (*See* Doc. 108.) That result, which would be difficult if not impossible to obtain in a successful verdict litigated to judgment and upheld on appeal, is the sort of "'wish list' which would be impossible to grant and is hardly in the best interests of the class" and would likely have undermined the chance of Plaintiffs' negotiation of a genuinely beneficial class wide settlement agreement. *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 297, 305 (N.D. Ga. 1993); *see also Hanlon v. Chrysler*

---

[2] The exact expiration date runs 10 years from the actual date of vehicle purchase or lease.

*Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

Accordingly, the five Class Members' objections are overruled. That said, the Court believes that the class members raised understandable concerns and that counsel and the Court carefully and pragmatically addressed the individual concerns of each objecting class member who appeared during the hearing as well as those raised by other select class members.

Having considered the Parties' motions and the Settlement (including the Amendment) together with all exhibits and attachments thereto, the record in this matter, and the briefs and arguments of counsel, and good cause appearing, the Court **GRANTS** the motions for the reasons set forth herein and **APPROVES** the class action settlement presented here.

At their request, the individuals who sought exclusion from the Settlement Class on a timely and proper basis are excluded from the Settlement Class. Class Counsel **SHALL** submit a comprehensive list of those individuals on September 17, 2020.

The Settlement Agreement is not an admission by Defendants or by any other Released Party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendants or any Released Party. Neither this Order, the Settlement, nor any document referred to herein, nor any action taken to carry out

the Settlement, may be construed as, or may be used as, an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against MBUSA or any of the other Released Parties.

## III.   THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES

Class Counsel requests an award of $5.2 million in attorneys' fees and $200,000 in expenses, as well as service awards in the amount of $40,000 total. (Doc. 80.) Defendants agreed to pay these amounts on top of, not out of, Class Members' recoveries. (*See* Doc. 63-1 §§ 5.3, 5.4.) No Class Member objected to the attorneys' fees and costs request or requests for service awards.

In this Circuit, courts evaluating attorneys' fees in a class action look first to the benefit obtained on behalf of class members. *See Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *11 (N.D. Ga. May 19, 2014) ("It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.") (citing *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991)). Here, the benefits to Class Members take two forms: reimbursement for past payments and a forward-looking extended and enhanced warranty.

Based on the claims filed to date, the value of the cash reimbursements for past payments could, if each claim is verified, range from $5.13 million to $6.16 million (representing the 20,528 repairs submitted through Class Members' claims as of September 8, 2020 multiplied by the average repair amount of $250 to $300).

(Declaration of Jennifer Keough, Doc. 111, ¶ 23.) This reimbursement amount will only increase as claims are submitted for repairs that occurred between the Notice Date, May 11, 2020, and December 7, 2020 which may be submitted within 75 days of the date of repair. (*See* Doc. 63-1, § 9.5.)

To value the forward-looking relief, Class Counsel submitted an expert declaration from Lucy Allen, an experienced economist and a Managing Director of NERA Economic Consulting. She undertook an analysis of the estimated future number of repairs to Class Vehicles and estimated reimbursement cost and opined that the value the forward-looking warranty relief is between $30.8 million and $97.5 million. (Doc. 80-2, ¶ 29.)

Combining these two components results in a total value of the Settlement for the Class of between $35.93 million and $103.66 million. In addition, Defendants are paying all costs of claims administration and notice, a total to date of $2.58 million.[3]

To determine the fee percentage from a constructive fund, courts add the requested fee and expenses to the denominator. *See In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019) (determining the "total benefit to the class" by "adding the requested fee, litigation expenses, and the cost of administration to the $2 million aggregate cap for claims"). Here, the combined total of the two Settlement components and notice and claims

---

[3] That number will increase as the Claims Administrator completes its work verifying and paying claims and assisting Class Members.

administration costs paid by Mercedes is $38.51 million to $106.24 million; adding the $5.2 million in fees and $200,000 in expenses takes that number to $43.91 million to $111.64 million. Class Counsel's requested fee of $5.2 million thus represents between 4.66% and 11.84% of the gross constructive settlement fund. This fee percentage falls well below the "average percentage fee award in this Circuit" which is "now at or above 30%, as 'courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund.'" *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *7 (S.D. Fla. Nov. 9, 2018) (*quoting Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017)).

Class Counsel's fee request is reasonable under the *Johnson* and *Camden I* factors. *See Camden I*, 946 F.2d at 775; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Specifically: (a) Class Counsel spent extensive time and labor litigating the case; (b) the case presented several novel and difficult questions, particularly those of a highly technical nature; (c) the case required a high level of skill and experience; (d) the requested fee is less than the customary percentage in contingent cases; (e) the case is being prosecuted on a purely contingent-fee basis; (f) the Settlement provides outstanding benefits; (g) the fee award is in line with – if not substantially lower than – awards in other class actions; and (h) Class Counsel faced a high degree of risk of no recovery.

A lodestar cross-check confirms the reasonableness of the award sought. As of September 8, 2020, excluding time spent on their motion for attorney's fees,

Class Counsel's lodestar multiplier was 1.36, excluding any future hours spent assisting Class Members. Class Counsel submitted attorney declarations reflecting that they spent over 6,609 hours litigating this case and, using current billing rates for counsel and market rates that are reasonable and approved in other class actions including in this district, the total value of that work to date is $3,685,811. (Doc. 80-1 at 21 (citing Doc. 80-3, ¶ 72; Doc. 80-5, ¶ 22).) As of September 8, 2020, Class Counsel had billed 6,866.4 hours and the resulting multiplier is 1.36. This multiplier is below the average in other class action settlements in this Circuit. *See, e.g.*, *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (multiplier of 2.62 "is consistent with multipliers approved in other cases"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 & n.4 (N.D. Ga. Oct. 26, 2012) (multiplier of four times the lodestar was "well within" the accepted range and citing examples). And it does not account for the many hours Class Counsel can reasonably be expected to expend over the life of the Settlement overseeing it and assisting Class Members. Class Counsel's request for $5.2 million in fees is hereby **GRANTED**.

Class Counsel's request for expenses of $200,000 is appropriate and is granted "as a matter of course" in common fund cases. *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019). Class Counsel submitted attorney declarations detailing their expenses, which totaled $222,502.37, more than the $200,000 they seek. (Doc. 80-1, at 23 (citing Doc. 80-3, ¶ 79; Doc. 80-5, ¶ 28).) That amount includes the costs of experts, ordinary

litigation expenses, and the use of an international service specialist to serve Daimler through the Hague Convention. (*Id.*) Class Counsel's request for $200,000 in expenses is hereby **GRANTED**.

Finally, Plaintiffs request a $40,000 aggregate service award for the nine class representatives based on the number of in-person inspections conducted on their vehicles, with individual awards ranging from $6,000 to $2,500. Courts "routinely approve service awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class." *In re Equifax*, 2020 WL 256132, at *40. The aggregate service award of $40,000 is therefore **GRANTED.**

## IV.   CONCLUSION

Accordingly, the Court hereby orders, adjudges, finds, and decrees as follows:

1. The Court hereby **CERTIFIES** the Settlement Class and **GRANTS** the Motion for Final Approval of the Settlement. [Doc. 112.] The Court fully and finally approves the Settlement in the form contemplated by the Settlement Agreement (Docs. 63-1 & 103-1) and finds its terms to be fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23. The Court directs the consummation of the Settlement pursuant to the terms and conditions of the Settlement Agreement.

2. The Court **CONFIRMS** the appointment of Lieff Cabraser Heimann & Bernstein, LLP and Corpus Law Patel, LLC as Class Counsel.

3. The Court **CONFIRMS** the appointment of the Settlement Class Representatives named in the Settlement Agreement.

4. The Court **GRANTS** Class Counsel's request for attorneys' fees and costs, and **AWARDS** Class Counsel $5.2 million in attorneys' fees and $200,000 in expenses to be paid by Defendants separate from the relief available to the Class, in the time and manner prescribed by the Settlement. [Doc. 80.]

5. The Court **AWARDS** the Class Representatives an aggregate service award of $40,000 consisting of $6,000 to Mary Blasco, Sunil Amin, and Trushar Patel, $4,250 to Manan Bhatt, Todd Basler, John Dudasik, and Gail Mahoney, and $2,500 to Rosa Grue and Nicholas Biase.

6. The Court hereby discharges and releases the Released Claims as to the Released Parties, as those terms are used and defined in the Settlement Agreement.

7. The Court hereby permanently bars and enjoins the institution and prosecution by Class Plaintiffs and any Class Member of any other action against the Released Parties in any court or other forum asserting any of the Released Claims, as those terms are used and defined in the Settlement Agreement.

8. The Court further reserves and retains exclusive and continuing jurisdiction over the Settlement concerning the administration and enforcement of the Settlement Agreement and to effectuate its terms.

Accordingly, the Clerk shall enter a separate judgment consistent with the terms of this Order pursuant to Fed. R. Civ. P. 58.  **IT IS SO ORDERED** this 11th day of September, 2020.

**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**